Robert Volynsky, Esq. (SBN 310600)
Email: rvolynsky@srf.law
Sichenzia Ross Ference LLP
1185 Avenue of the Americas, 37th Floor
New York, New York 10036
Telephone: (212) 930-9700
Facsimile: (212) 930-9725

Arash Shirdel, Esq. (SBN 247754)
Email: ashirdel@pacificpremierlaw.com
Pacific Premier Law Group
200 Sandpointe Avenue, Suite 500
Santa Ana, California 92707
Telephone: (949) 629-3690
Facsimile: (949) 313-0995

*Attorneys for Milton C. Ault III, Amos Kohn,*
*William B. Horne, Jeff Bentz, Mordechai*
*Rosenberg, Robert O. Smith, and Kristine Ault*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ETHAN YOUNG and GREG YOUNG, Derivatively on Behalf of Nominal Defendant, DPW HOLDINGS, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> MILTON C. AULT III, AMOS KOHN WILLIAM B. HORNE, JEFF BENTZ, MORDECHAI ROSENBERG, ROBERT O. SMITH, and KRISTINE AULT, <br><br> Defendants, <br><br> and <br><br> DPW HOLDINGS, INC., <br><br> Nominal Defendant. | Case No. 2:18-cv-6587 (SJO) (PLA) <br><br> **NOTICE OF MOTION TO DISMISS THE DERIVATIVE COMPLAINT PURSUANT TO FRCP 12(b)(6) and 23.1; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Judge:  Hon. S. James Otero <br><br> Date:  **February 4, 2019** <br> Time:  **10:00 a.m.** <br> Courtroom:  **350 West 1st Street** <br> **Courtroom 10C** <br> **Los Angeles, CA 90012** <br><br> **[Motion to Dismiss and Request for Judicial Notice Concurrently Filed]** |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 4, 2019, at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 10C, located at the United States District Court, 350 West 1st Street, Los Angeles, California 90012, the Honorable S. James Otero presiding, Defendants Milton C. Ault, III, Amos Kohn, William B. Horne, Jeff Bentz, Mordechai Rosenberg, Robert O. Smith, and Kristine Ault will move and hereby do move to dismiss Plaintiffs' Verified Shareholder Derivative Complaint pursuant to Federal Rules of Civil Procedure Rule 12(b)(6) for failure to state a claim and pursuant to Rule 23.1 for failing to serve a pre-suit demand on DPW Holdings. Inc.'s Board of Directors as required under Delaware law, or to allege particularized facts demonstrating that a pre-suit demand would be futile.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, Request for Judicial Notice, and Declaration of Robert Volynsky, the anticipated reply papers, all matters that may be properly considered in connection with this motion, and oral argument at the hearing.

As set forth in detail in the accompanying Declaration of Robert Volynsky, pursuant to Local Rule 7-3, the parties met and conferred regarding this motion on November 20, 2018.

Dated:  November 28, 2018

SICHENZIA ROSS FERENCE LLP

By:   /s/ *Robert Volynsky*
ROBERT VOLYNSKY (SBN 310600)
Attorneys for Defendants Milton Ault,
Amos Kohn, William Horne, Jeff Bentz,
Mordechai Rosenberg, Robert Smith and
Kristine Ault

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................ iii

I.    **PRELIMINARY STATEMENT** ....................................................1

II.   **LEGAL STANDARD** .................................................................1

III.  **ARGUMENT**.............................................................................2

     A. The Court Should Dismiss the Breach of Fiduciary Duty of
        Care Claims ...........................................................................2

       i.    Claims Based on Internal Control Deficiencies ...................3

             a.  The Directors Evaluate and Work to Improve
                DPW's Internal Controls ...........................................5

             b.  The Other "Disclosure Issues" Are Unrelated to
                DPW's Internal Controls ...........................................6

       ii.   Claims Based on the Code of Ethics Violations ..................6

       iii.  Claims Based on Violations of the NYSE Rules...................7

       iv.  Claims Based on Stock Issuances.......................................7

       v.   Claims Based on the Future Receipts Agreements..............9

       vi.  Claims Based on Compensation Awarded ........................10

       vii.  Claims Based on Alleged Misrepresentations...................12

     B. The Court Should Dismiss the Unjust Enrichment Claim ......13

IV.  **PLAINTIFFS FAIL TO ADEQUATELY PLEAD
DEMAND FUTILITY**.............................................................13

     A. Bentz, Rosenberg, Smith, Horne and Kohn are
        Independent Directors ...........................................................15

B.  Bentz, Rosenberg, Smith, Horne and Kohn are Disinterested Directors ................................................................18

**V.     CONCLUSION** ............................................................20

# TABLE OF AUTHORITIES

Cases

Akins v. Cobb,
    No. 18266, 2001 Del. Ch. LEXIS 135 (Del. Ch. Nov. 1, 2001) ........................ 11

Aronson v. Lewis,
    473 A.2d 805 (Del. 1984) ................................................................ 14

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) ........................................................................ 1

Beam v. Stewart,
    845 A.2d 1040 (Del. 2004) ............................................................. 16

Bell Atlantic Co. v. Twombly,
    550 U.S. 544 (2007) ........................................................................ 1

Bonner v. Melo,
    No. 17-cv-4719, 2018 U.S. Dist. LEXIS 122941 (N.D. Ca. July 23, 2018) ....... 12

Bodell v. General Gas & Elec. Corp.,
    140 A. 264 (Del. 1927) ..................................................................... 7

Brehm v. Eisner,
    746 A.2d 244 (Del. 2000) .................................................................. 7

City of Birmingham Ret. & Relief Sys. v. Good,
    177 A.3d 47 (Del. 2017) ............................................................. 4, 15

Continuing Creditors' Comm. of Star Telecomms. Inc. v. Edgecomb,
    385 F.Supp.2d 449 (D. Del. 2004) ................................................. 9, 10

Cooke v. Oolie,
    No. 11134, 1997 Del. Ch. LEXIS 92 (Del. Ch. June 23, 1997) ..................... 10

Forestal v. Caldwell,
    No. 16-cv-4492, 2016 U.S. Dist. LEXIS 191432
    (C.D. Ca. Nov. 14, 2016) ................................................. 13, 16, 17, 18

Friedman v. Dolan,
    No. 9425, 2015 Del. Ch. LEXIS 178 (Del. Ch. June 30, 2015) ........................... 11

In re Am. Apparel, Inc.,
    No. 14-cv-05230, 2015 U.S. Dist. LEXIS 191466
    (C.D. Ca. Apr. 25, 2015) ................................................................... 15, 18

In re Bidz.com, Inc. Deriv. Litig.,
    773 F.Supp.2d 844 (C.D. Ca. 2011) ............................................................ 10, 11

In re Cornerstone Therapeutics, Inc. S'holder Litig.,
    115 A.3d 1173 (Del. 2015) ...................................................................... 2, 3

In re Galena Biopharma, Inc. Deriv. Litig.,
    83 F.Supp.3d 1047 (D. Or. 2015) ............................................................... 7

In re Inv'rs Bancorp, Inc. Stockholder Litig.,
    177 A.3d 1208 (Del. 2017) ........................................................................ 11

In re Oracle Deriv. Litig.,
    No. 2017-0337, 2018 Del. Ch. LEXIS 92
    (Del. Ch. Mar. 19, 2018) ............................................ 16, 17, 18, 19, 20

In re Tyson Foods, Inc. Consol. S'holder Litig.,
    919 A.2d 563 (Del. Ch. 2007) .................................................................... 12

Kenney v. Gertel,
    No. 12-cv-02268, 2018 U.S. Dist. LEXIS 151343
    (N.D. Ca. Sept. 5, 2018) ......................................................................... 12, 14

Khoja v. Orexigen Therapeutics, Inc.,
    899 F.3d 988 (9th Cir. 2018) ..................................................................... 2

Laborers' Local v. Intersil,
    868 F.Supp.2d 838 (N.D. Ca. 2012) ............................................................ 11

LVI Grp. Invs., LLC v. NCM Grp. Holdings, LLC,
    No. 12067, 2017 Del. Ch. LEXIS 49 (Del. Ch. Mar. 29, 2017) ....................... 16

Mandalevy v. BofI Holding, Inc.,
    No. 17-cv-00667, 2018 U.S. Dist. LEXIS 102561 (S.D. Ca. June 19, 2018)........ 7

MCG Capital Corp. v. Maginn,
    No. 4521, 2010 Del. Ch. LEXIS 87 (Del. Ch. May 5, 2010) .............................. 13

NY Capital Asset Corp. v. F&B Fuel Oil Co.,
    No. 58499/2017, 2018 N.Y. Misc. LEXIS 786
    (Sup. Ct. West. Co. Mar. 8, 2018) ...................................................................... 9

Okla. Firefighters Pension & Ret. Sys. v. Corbat,
    No. 12151, 2017 Del. Ch. LEXIS 848 (Del. Ch. Dec. 18, 2017)...................... 3, 4

Oliver v. Boston Univ.,
    No. 16570, 2006 Del. Ch. LEXIS 75 (Del. Ch. Apr. 14, 2006) ........................... 9

Rales v. Blasband,
    634 A.2d 927 (Del. 1993) ............................................................................. 14, 18

Rich ex. rel. Fuqi Int'l, Inc. v. Chong,
    66 A.3d 963 (Del. Ch. 2013) ................................................................................ 3

Savin Bus. Machs. Corp. v. Rapifax Corp.,
    No. 5331, 1978 Del. Ch. LEXIS 725 (Del. Ch. Feb. 15, 1978) ........................... 9

Teamsters Union 25 Health Servs. & Ins. Plan v. Baiera,
    119 A.3d 44 (Del. Ch. 2015) ........................................... 7, 15, 16, 18, 20

Towers v. Iger,
    No. 15-cv-4609, 2017 U.S. Dist. LEXIS 217904
    (N.D. Ca. Mar. 10, 2017)........................................................................ 1, 13, 14

Wilkin v. Narachi,
    No. 12412, 2018 Del. Ch. LEXIS 70 (Del. Ch. Feb. 28, 2018) .............. 12, 15, 18

Wilkinson Floor Covering, Inv. v. Cap Call, LLC,
    No. 160256/2016, 2018 N.Y. Misc. LEXIS 1845
    (Sup. Ct. N.Y. Co. May 16, 2018)........................................................................ 9

Wood v. Baum,
    953 A.2d 136 (Del. 2008) ............................................................... 19, 20


Statutes/Rules

8 Del. C. §102(b)(7) ........................................................................... 2

Cal. Corp. Code. §30(c) ..................................................................... 2

Fed. R. Civ. P. 12(b)(6) ..................................................................... 1

Fed. R. Civ. P. 23.1(b)(3) ................................................................. 13

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   PRELIMINARY STATEMENT

The Complaint sets forth derivative claims for breach of fiduciary duty and unjust enrichment on behalf of DPW Holdings, Inc. ("DPW") against its six current directors (Milton Ault, Amos Kohn, William Horne, Jeff Bentz, Mordechai Rosenberg, and Robert Smith) and a former director (Kristine Ault ("K. Ault")) (collectively, the "Directors").[1] The claims are based on a barrage of topics*, inter alia*: internal controls deficiencies; stock issuances to unrelated parties; excessive compensation; violations of New York Stock Exchange ("NYSE") Rules; Future Receipts Agreements; related-party transactions; and misleading statements.  Plaintiffs, however, did not make a demand upon DPW's Board prior to initiating this action.

For the reasons below, the Court should dismiss the Complaint because: i) it fails to set forth viable claims against the Directors; and ii) Plaintiffs failed to make the required pre-action demand upon DPW's Board and their futility allegations are insufficient.

## II.   LEGAL STANDARD

The Court must dismiss a complaint when it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In analyzing a motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face" and "raise [that] right to relief above the speculative level." *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  A complaint meets the plausibility threshold when it "pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Courts "must consider the complaint in its entirety, as well as other sources courts ordinarily examine on [] motions to dismiss, in particular, documents incorporated by reference, and matters of which a court may take judicial notice." *Towers v. Iger*, No. 15-cv-4609, 2017

[1] As a result of the meet and confer held by Counsel, pursuant to L-R 7-3, Plaintiffs withdrew their claim for gross mismanagement.

U.S. Dist. LEXIS 217904, *9 (N.D. Ca. Mar. 10, 2017).  Here, the Complaint cites and quotes from numerous filings made by DPW with the U.S. Securities and Exchange Commission ("SEC").  *See* Request for Judicial Notice at Point I.  Thus, the Court may consider such documents in connection with the motion to dismiss.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).  The Court may also take judicial notice of SEC filings and undisputed facts therein.  *Id.* at 999.  Against this standard, the Court should dismiss all claims based on a breach of the fiduciary duty of care and the unjust enrichment claim.

## III.   ARGUMENT

### A.   The Court Should Dismiss the Breach of Fiduciary Duty of Care Claims

The Court should dismiss the breach of fiduciary duty of care claims asserted against the Directors because they are barred by exculpatory charter provisions and there are no allegations demonstrating bad faith by the Directors.

DPW's Certificate of Incorporation limits the personal liability of its Directors and provides, "[t]o the fullest extent permitted by the General Corporation Law of Delaware . . . a director of the Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director." (Declaration of Robert Volynsky (the "Volynsky Decl." Ex. A at Art. VII(1))).[2] Delaware law provides that a corporation may include in its certificate of incorporation a "provision eliminating or limiting the personal liability of a director to the corporation or its stockholders for monetary damages for breach of fiduciary duty as director" subject to a few enumerated exceptions, such as a breach of the duty of loyalty or intentional acts. 8 Del. C. §102(b)(7).  "The purpose of Section 102(b)(7) was to free up directors to take business risks without worrying about negligence lawsuits."  *In re Cornerstone*

---

[2] While it was a California corporation, DPW's Amended and Restated Articles of Incorporation (the "CA Certificate of Incorporation") also had an exculpatory provision, (*see* Volynsky Decl. Ex. B at Art. IV), that eliminated personal liability for its directors. *See* Cal. Corp. Code. §30(c).

*Therapeutics, Inc. S'holder Litig.*, 115 A.3d 1173, 1185 (Del. 2015).  Section 102(b)(7) requires dismissal of a complaint against any independent directors for breaches of a fiduciary duty of care.  *Id.* at 1187.  Even if a claim were to proceed against an interested director for a breach of the duty of loyalty, "the independent directors do not automatically have to remain defendants.  When the independent directors are protected by an exculpatory charter provision and the plaintiffs are unable to plead a non-exculpated claim against them, those directors are entitled to have the claims against them dismissed."  *Id.* at 1176.  Accordingly, the Court should dismiss the breach of the fiduciary duty of care claims.

i.    Claims Based on Internal Control Deficiencies

The Complaint alleges that the Directors breached their fiduciary duties by failing to maintain proper internal controls and caused DPW to file misleading financial statements and other filings with the SEC.  (Compl. ¶¶253, 317).  In *Rich ex. rel. Fuqi Int'l, Inc. v. Chong*, a stockholder brought a derivative action alleging that the directors, as here, breached their fiduciary duties of care and loyalty by failing to institute and maintain adequate internal controls over the company's accounting and financial reporting.  66 A.3d 963, 973-74 (Del. Ch. 2013).  The Court held that such a failure to monitor claim is known colloquially as a *Caremark* claim.  *Id.* at 981.  "*Caremark* provides that if directors have failed to put in place any system whereby they may be made aware of and oversee corporate compliance with law, they may be liable." *Okla. Firefighters Pension & Ret. Sys. v. Corbat*, No. 12151, 2017 Del. Ch. LEXIS 848, *3 (Del. Ch. Dec. 18, 2017).  An example of a director failing to put in place any such systems would be a corporation lacking an audit committee or the directors not utilizing the audit committee.  *See Rich,* 66 A.3d at 981.  "Conversely, where the board has an oversight system in place, but nonetheless fails to act to promote compliance, the directors may be liable, but only where their failure to act represents a non-exculpated breach of duty." *Okla. Firefighters*, 2017 Del. Ch. LEXIS 848, *3. "To imply director liability, the response of the directors must have been in bad faith.  The inaction must

suggest, not merely inattention, but actual scienter.  In other words, the conduct must imply that the directors are knowingly acting for reasons other than the best interest of the corporation." *Id.* at *4.  "Bad faith may be inferred where the directors knew or should have known that illegal conduct was taking place, yet took *no steps* in a good faith effort to prevent or remedy the situation."  *Id.* at *55.  "[A] *Caremark* claim is possibly the most difficult theory in corporation law upon which a plaintiff might hope to win judgment."  *City of Birmingham Ret. & Relief Sys. v. Good*, 177 A.3d 47, 55 (Del. 2017).

Initially, Plaintiffs concede that the Directors had put in place a system to be aware of, and oversee, corporate compliance: DPW's Audit Committee.  (Compl. ¶64) (quoting from the Audit Committee Charter).  Thus, the Directors satisfied *Caremark*'s first prong.

Plaintiffs allege, however, that DPW's internal controls failed because, on November 14, 2017, it announced that it was restating its Form 10-Q for the period ending June 30, 2017.  (*Id.* ¶¶181-184).  The Directors did not sit idle when this occurred. On the same day, they corrected the disclosure and caused an amended Form 10-Q to be filed.  (*Id.* ¶¶184-188).  Moreover, when DPW's auditor brought the issue to the Directors' attention, the Audit Committee "conducted an independent review and subsequently determined that [DPW] had misclassified its investment in real property as a current asset and omitted certain subsequent event disclosures." (Volynsky Decl. Ex. C at Item 4.02).  Thus, the Audit Committee took action when a red flag was presented. Although DPW filed an amended Form 10-Q, its "Total Assets, Total Liabilities, Total Equity, and the Condensed Consolidated Statements of Operations and Comprehensive Loss for any period was not affected by the misclassification."  (*Id.*).  No lawsuits were filed against DPW by any investor based on the restatement.  (*See id.* Ex. D at p. 42 (Item 3)).  At the time DPW filed its original and amended Form 10-Q, Kohn was the Company's President, CEO, CFO, and Principal Accounting Officer.  (*Id.* Ex. E at p. 45 and Ex. F at p. 48).

*a.     The Directors Evaluate and Work to Improve DPW's Internal Controls*

When DPW filed the amended Form 10-Q, it disclosed that "the Board has been actively engaged in developing a remediation plan to address ineffective controls." (Compl. ¶197).  Subsequently, on April 17, 2018, DPW filed its 2017 Form 10-K that discussed the Board's efforts, to date, to improve DPW's internal controls and its "Planned Remediation."  (Volynsky Decl. Ex. D at p. 60).  DPW disclosed that, until it hired a new CFO, its Audit Committee Chairman would: i) assist with documentation and implementation of policies and procedures for monitoring of controls; and ii) review all anticipated transactions, which were not considered in the ordinary course of business, to assist in the early identification of accounting issues and ensure that appropriate disclosures are made in DPW's financial statements.  (*Id.*).  Smith was the Audit Committee Chairman, had extensive experience in the accounting industry, and qualified as an "audit committee financial expert."  (*Id.* at pp. 63-64).  DPW had also increased the number of its general administration and finance employees from 6 in 2016 to 16 in 2017.  (*Id.* Ex. G at p. 8, *compare*, *id.* Ex. D at p. 10).  Finally, DPW stated that it was continuing to improve and simplify its internal process and to implement enhanced controls to address weaknesses in its internal controls.  (Volynsky Decl. Ex. D at p. 60).

On May 21, 2018, DPW filed its Form 10-Q for the period ending March 31, 2018, which stated that Management, with input, oversight, and support of the Board, had identified measures to strengthen DPW's control environment and internal control over financial reporting.  (Compl. ¶200).  During January 2018, DPW "hired a new CFO and engaged the services of a financial accounting advisory firm." (*Id.*).  Horne was the new CFO.  (*Id.* ¶201).  He has previously held supervisory positions at Price Waterhouse LLP and, over the past two decades, has served as the CFO for six companies: three public and three private.  (*Id.* ¶282).  The Board also provided that, until DPW expanded its internal accounting department, the Audit Committee Chairman would continue to: i) assist with documentation and implementation of policies and procedures for monitoring of controls; and ii) review all anticipated transactions, which were not considered in the ordinary

course of business, to assist in the early identification of accounting issues and ensure that appropriate disclosures are made in DPW's financial statements. (*Id.* ¶200).

Therefore, the Directors have been actively taking steps to improve DPW's internal controls.  While there is always room for improvement, as a result of these efforts, there have been no restatements of DPW's financial statements.  (*See generally,* Compl.).  Consequently, Plaintiffs cannot show that the Directors acted in bad faith.

        b.    *The Other "Disclosure Issues" Are Unrelated to DPW's Internal Controls*

The Complaint implies other disclosure issues plagued DPW by alleging that, from December 15, 2017 through February 12, 2018, DPW filed five amendments to prior SEC filings.  (Compl. ¶207).  The SEC filings, however, readily demonstrate that there was no internal control issue.  For example, on December 8, 2017, DPW filed a Form 8-K disclosing a financial transaction that it "expect[ed] to close . . . on or about December 11, 2017." (Volynsky Decl. Ex. H at Item 1.01).  On December 15, 2017, DPW filed an amended Form 8-K "solely to disclose the closing date to the transaction" as December 13, 2017 – after the original Form 8-K had been filed.  (*Id.* Ex. I at Item 1.01).  This was the case for the other disclosures.  (*See id.* Exs. J, K, L, M, *compare,* Exs. N, O, P, Q, respectively).  Thus, these other "Disclosure Issues" do not show a failure of DPW's internal controls or any bad faith by the Directors.

Accordingly, the Court should dismiss the *Caremark*-type breach of fiduciary duty claims because DPW had an Audit Committee in place, the Audit Committee has always had an active role in DPW and its financial reports, the Audit Committee has been working toward improving DPW's internal controls, and there have been no further material amendments to DPW's financial disclosures.  (*See* Compl.).

        ii.    <ins>Claims Based on the Code of Ethics Violations</ins>

The Complaint also asserts an unspecified breach of fiduciary duty by the Directors for failing to adhere to DPW's Code of Ethics.  (*See* Compl. ¶¶63, 317).  A Code of Ethics does not serve as a basis for a legal claim or support an inference of scienter because such Code of Ethics are "aspirational in nature and are not objectively

---

verifiable." *Mandalevy v. BofI Holding, Inc.*, No. 17-cv-00667, 2018 U.S. Dist. LEXIS 102561, *21 n.4 (S.D. Ca. June 19, 2018); *Brehm v. Eisner*, 746 A.2d 244, 256  (Del. 2000) (aspirational goals of ideal corporate governance practices, while very desirable, do not define standards of liability).  At best, any such claim would be a *Caremark* claim. *See e.g.*, *In re Galena Biopharma, Inc. Deriv. Litig.*, 83 F.Supp.3d 1047, 1067 n.6 (D. Or. 2015).  The Directors did not breach a *Caremark* duty.  (*See supra* at Point III(A)(i)).

### iii.   Claims Based on Violations of the NYSE Rules

Plaintiffs seek to assert a breach of fiduciary duty claim premised upon the NYSE admonishing DPW for failing to make public disclosures required by its rules and the NYSE's finding that DPW, at times, was not in compliance with Rule 801(h).  (*See* Compl. ¶¶206, 223).  The Court must dismiss this claim because a derivative plaintiff has "no standing to prosecute a violation of the NYSE Rules." *Teamsters Union 25 Health Servs. & Ins. Plan v. Baiera*, 119 A.3d 44, 59 (Del. Ch. 2015).

### iv.   Claims Based on Stock Issuances

The Complaint asserts a breach of fiduciary duty claim based on numerous stock issuances by DPW to raise capital.  (Compl. ¶¶149-158).  The Court should dismiss these claims because "[t]he discretion of a board of directors in the sale of its no par value stock should not be interfered with, except for fraud, actual or constructive, such as improper motive or personal gain or arbitrary action or conscious disregard of the interest of the corporation and rights of its stockholders."[3]  *Bodell v. General Gas & Elec. Corp.*, 140 A. 264, 267 (Del. 1927) (noting the ability of a corporation to secure funds from stock sales manifests an advantage for the corporation and its stockholders).  Here, aside from the purchase of the Series B Convertible Preferred Stock (the "Series B Preferred Stock") by Philou Ventures, LLC ("Philou"), each of the identified transactions involved the sale of DPW's securities to unrelated parties from which DPW secured needed funds. (Compl. ¶¶149-158).  There are no allegations that these transactions were anything but

---

[3] DPW's common stock was either no par value or had a *de minimis* par value of $0.001. (Volynsky Decl. Exs. G at p. 1, D at p. 1).

at arm's-length, and there are no allegations that any Director engaged in fraud in connection with the securities issued to unrelated parties or for personal gain.  (*See id.*).  With respect to the Series B Preferred Stock by Philou, the Directors acted reasonably and with a proper business purpose.  Before Philou acquired an interest in DPW, the NYSE had: i) notified DPW that it was no longer in compliance with its listing standards because DPW's stockholder equity had fallen below its listing standards; and ii) granted DPW a listing extension on the basis of a plan to regain compliance by June 19, 2017.  (Volynsky Decl. Ex. R at p. 20)  At that time, DPW had stated that: i) it would need to quickly raise capital to meet the NYSE listing requirements and fund its operations; ii) the proposed financing may include the sale of preferred stock; and iii) such funding may not be available on terms favorable to DPW.  (*Id.*).  Months later, Philou and DPW entered into a Securities Purchase Agreement wherein DPW agreed to sell the Series B Preferred Stock to Philou in an amount up to $5,000,000 in which Philou guaranteed to purchase the *greater* of: $1,000,000 in preferred stock or a sufficient amount of preferred stock to ensure that DPW had sufficient stockholder equity to meet the NYSE's continued listing standards.  (*Id.* Ex. S at Item 1.01).  Philou could convert the Series B Preferred Stock to common stock at a price equal to $0.70 per share.  *Id.*  On March 6, 2017, the date the parties entered into the agreement, DPW's stock closed at $0.60 per share.  (*Id.* Ex. T at 3/6/17).  By June 21, 2017, Philou had purchased $1,000,000 of the Series B Preferred Stock, and, on June 21, 2017, the NYSE notified DPW that it had regained compliance with its continued listing standards.  (*Id.* Ex. U at Item 3.02 and Ex. V at Item 8.01).  Therefore, the Directors acted for the benefit of the corporation and for a rational business purpose in approving the aforementioned securities transactions.

Plaintiffs further allege the Directors engaged in a practice of issuing shares at lower than fair market value in exchange for debt resulting in dilution and a depressed stock price.  (Compl. ¶149).  For example, quoting from the 2017 Form 10-K, Plaintiffs identified a conversion of principal and interest reported for a "November 5% Convertible Note" that was satisfied through the issuance of 1,851,667 shares of DPW's

stock, which resulted in DPW satisfying a $1,111,000 note using stock that had a fair market value over $9,000,000 – based on DPW's market price on the date of conversion. (*Id.* ¶150). These shares, however, were issued "based on the contractual rights provided in the November 5% Convertible Note" that provided the third-party holder the right to convert the outstanding debt to shares of DPW's common stock "at $0.60 per share." (Volynsky Decl. Ex. D at p. F-40). On the date that DPW issued the November 5% Convertible Note, its stock's closing price was $0.6099. (*Id.* Ex. T at 11/2/17). There is no breach of a fiduciary duty when a corporation issues shares to a third-party that had a contractual right to receive the shares. *Oliver v. Boston Univ.*, No. 16570, 2006 Del. Ch. LEXIS 75, *121 (Del. Ch. Apr. 14, 2006). Even if DPW had issued securities at a discount to market price, "[w]here a corporation in financial distress issues stock as a means to raise capital, its directors are given considerable latitude in fixing the price for the issuance." *Savin Bus. Machs. Corp. v. Rapifax Corp.*, No. 5331, 1978 Del. Ch. LEXIS 725, *14 (Del. Ch. Feb. 15, 1978); *Oliver*, 2006 Del. Ch. LEXIS 75, *121 (no breach where stock issued to third party at 36% discount to market price).

v.    Claims Based on the Future Receipts Agreements

The Complaint asserts that the Directors allowed DPW to enter into "unfair loan agreements" at "usurious rates of interest" – the Future Receipts Agreements. (*See* Compl. ¶¶121, 128-138) (identifying agreements with TVT Capital LLC). The Directors did not approve usurious loans because the Future Receipts Agreements are not loans or a usurious transaction. *See Wilkinson Floor Covering, Inv. v. Cap Call, LLC*, No. 160256/2016, 2018 N.Y. Misc. LEXIS 1845, *5-6 (Sup. Ct. N.Y. Co. May 16, 2018) (holding TVT Capital LLC's Future Receipts Agreement not usurious). As noted by another Court, the "purchase and sale of future receivables and sales proceeds [such as the Future Receipts Agreements] . . . are common commercial transactions expressly contemplated by the Uniform Commercial Code." *NY Capital Asset Corp. v. F&B Fuel Oil Co.*, No. 58499/2017, 2018 N.Y. Misc. LEXIS 786, *15 (Sup. Ct. West. Co. Mar. 8, 2018). Finally, Delaware Courts dismiss claims concerning "onerous short-term financial

obligations that burdened the Company" because such claims assert a potential duty of care violation – a claim for which directors are shielded by the exculpatory provision of Section 102(b)(7) and protected by the business judgment rule. *Continuing Creditors' Comm. of Star Telecomms. Inc. v. Edgecomb*, 385 F.Supp.2d 449, 455, 462-63 (D. Del. 2004); *Cooke v. Oolie*, No. 11134, 1997 Del. Ch. LEXIS 92, *40-41 (Del. Ch. June 23, 1997) (same).

### vi.   Claims Based on Compensation Awarded

The Complaint asserts a breach of fiduciary duty claim premised upon the Directors "improperly awarding themselves generous and excessive compensation." (Compl. ¶317). It also alleges that Compensation Committee members Rosenberg, Smith, and Bentz failed to adequately perform their oversight duties by approving excessive compensation for Ault, Horne, and Kohn. (*Id.* ¶312). To this end, Plaintiffs allege that key-employee Kohn's compensation under an Executive Compensation Agreement dated November 11, 2016 was excessive. (*Id.* ¶¶246-250, 312). They allege CEO Ault earns $400,000 per annum in cash and was awarded equity compensation under the terms of his Executive Employment Agreement. (*Id.* ¶¶234-239). And they allege that CFO Horne earns $250,000 per annum in cash and was awarded equity compensation under the terms of his Executive Employment Agreement. (*Id.* ¶¶241-242). Finally, while asserting that DPW's Directors received "large stock options," (*see* Compl. ¶227), the Complaint provides no specifics concerning the stock options, which were awarded at-the-money and vested over a four-year period. (Volynsky Decl. Ex. W at Item 5.02, *compare*, Ex. T at 11/28/17).

At the outset, "Delaware law has erected a high hurdle to challenging compensation packages." *In re Bidz.com, Inc. Deriv. Litig.*, 773 F.Supp.2d 844, 854 (C.D. Ca. 2011) (*citing Brehm v. Eisner*, 746 A.2d 244, 256 (Del. 2000)). This is so because "Delaware courts are hesitant to scrutinize executive compensation decisions, recognizing that it is the essence of the business judgment for a board to determine if a particular individual warrants large amounts of money." *Friedman v. Dolan*, No. 9425,

---

2015 Del. Ch. LEXIS 178, *17 (Del. Ch. June 30, 2015).  To rebut the business judgment presumption, plaintiff "must plead particularized facts sufficient to raise (1) a reason to doubt that the action was taken honestly and in good faith or (2) a reason to doubt that the board was adequately informed in making the decision." *Laborers' Local v. Intersil*, 868 F.Supp.2d 838, 846 (N.D. Ca. 2012) ("A board's decision on executive compensation is entitled to great deference.").  "A proper challenge to a compensation package requires a showing of bad faith or an exchange of corporate assets for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade." *Bidz.com,* 773 F.Supp.2d at 854.  Although the Complaint bemoans the amount of compensation awarded, it does not set forth particularized facts that the Compensation Committee's actions were in bad faith, that they were inadequately informed in making a decision, or the compensation is not warranted.  (*See* Compl.). Delaware Courts readily dismiss complaints that are devoid of facts relating to the process used by the board to decide to award employment benefits or the substantive reason for the board's decision.  *Akins v. Cobb*, No. 18266, 2001 Del. Ch. LEXIS 135, *15, 25-26 (Del. Ch. Nov. 1, 2001); *see also, Bidz.com*, 773 F.Supp.2d at 854 (finding allegations that director was awarded stock options were insufficient to meet pleading burden where there were no particular allegations that they "were awarded in bad faith, for an improper purpose or without consideration.").

Moreover, DPW's stockholders approved the equity component of Kohn's Executive Compensation Agreement. (Volynsky Decl. Ex. X at Item 5.07).  And the equity compensation awarded to Ault, Horne, and the Directors is subject to the approval of the Company's stockholders, which will be sought at the Company's next annual meeting. (*Id.* Ex. Z at pp. 17 (Ault), 19 (Horne), 21 (Directors)).  When directors submit their specific compensation decisions for approval by fully informed, uncoerced, and disinterested stockholders, stockholder ratification bars a claim for excessive compensation and warrants dismissal of the claim.  *See e.g., In re Inv'rs Bancorp, Inc. Stockholder Litig.*, 177 A.3d 1208, 1211 (Del. 2017).

vii.   Claims Based on Alleged Misrepresentations

The Complaint alleges the Directors breached their fiduciary duties when Ault made statements concerning DPW's investments in Super Crypto and Lux Hotel at the LD Micro presentation.  (Compl. ¶¶179, 219).  It does not, however, implicate any Board member other than Ault; consequently, there is not a substantial likelihood that any of the other Directors would face any personal liability for such alleged misstatements.  *See Kenney v. Gertel*, No. 12-cv-02268, 2018 U.S. Dist. LEXIS 151343, *22 (N.D. Ca. Sept. 5, 2018).  When a derivative claim against a director is based on "providing information in the absence of a request for shareholder action, a stockholder must allege that he received false communications from directors who were deliberately misinforming shareholders about the business of the corporation."  *Wilkin v. Narachi*, No. 12412, 2018 Del. Ch. LEXIS 70, *33-34 (Del. Ch. Feb. 28, 2018); *see also*, *Bonner v. Melo*, No. 17-cv-4719, 2018 U.S. Dist. LEXIS 122941, *10 (N.D. Ca. July 23, 2018) (a complaint must plead "facts that the alleged misstatements were made with *knowing falsity*.").  Moreover, "[w]hen shareholder action is absent, plaintiff must show reliance, causation and damages in order to establish a breach of the duty of loyalty."  *Wilkin*, 2018 Del. Ch. LEXIS 70, at *34.  A complaint "must demonstrate damages that flow from the failure to adequately *disclose* information, not that the information disclosed concerned matters for which damages are appropriate.  Plaintiffs must at the very least allege some connection between the lack of disclosure and an actual harm."  *In re Tyson Foods, Inc. Consol. S'holder Litig.*, 919 A.2d 563, 597 (Del. Ch. 2007) (dismissing claim where there was no showing of actual damages).  Here, the Complaint does not allege Ault's disclosures and statements were made in the context of requesting shareholder action or set forth any of the required elements for such a claim, including actual damages.  (*See* Compl. ¶¶179, 219).  Accordingly, the Court should dismiss the claims based on alleged disclosure misrepresentations.  *See Tyson Foods*, 919 A.2d at 597.

**B.     The Court Should Dismiss the Unjust Enrichment Claim**

Plaintiffs assert an unjust enrichment claim based upon the Directors receiving compensation and remuneration.  (Compl. ¶325).  The Court must dismiss the unjust enrichment claim asserted against Ault, Horne, and Kohn because the claim is barred by the express contracts between DPW and each of them – contracts expressly identified in the Complaint.  (*Id.* at ¶¶27, 38, 40).  As stated by the Delaware Chancery Court in a derivative action, "[a]t any rate, had demand been excused, [the corporation] would not have had a claim for unjust enrichment related [to compensation] that would have survived a Rule 12(b)(6) motion to dismiss.  Courts developed unjust enrichment as a theory of recovery to remedy the absence of a formal contract."  *MCG Capital Corp. v. Maginn*, No. 4521, 2010 Del. Ch. LEXIS 87, *89 (Del. Ch. May 5, 2010).  "[C]laims for unjust enrichment may survive a motion to dismiss when the validity of the contract is in doubt or uncertain.  When a complaint alleges an express, enforceable contract that controls the parties' relationship, however, a claim for unjust enrichment will be dismissed.  This is the case even where an enforceable contract gives rise to a fiduciary relationship between the parties."  *Id.* (holding plaintiff may not prosecute an unjust enrichment claim derivatively on behalf of the corporation because an express agreement existed between the corporation and its director). Therefore, the Court must dismiss the unjust enrichment claims asserted against Ault, Horne, and Kohn because express agreements exist between them and DPW.

**IV.     PLAINTIFFS FAIL TO ADEQUATELY PLEAD DEMAND FUTILITY**

In addition to surviving a challenge under Rule 12(b)(6), in a derivative action, plaintiff must also comply with Rule 23.1  *Forestal v. Caldwell*, No. 16-cv-4492, 2016 U.S. Dist. LEXIS 191432, *15 (C.D. Ca. Nov. 14, 2016).  Rule 23.1 governs derivative actions and requires a plaintiff to allege "with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors . . . and the reasons for the plaintiff's failure to obtain the action or for not making the effort."  Fed. R. Civ. P. 23.1(b)(3).  While Rule 23.1 involves the adequacy of the Complaint, "the substantive

law which determines whether demand is, in fact, futile is provided by the state of incorporation of the entity on whose behalf plaintiff is seeking relief." *Towers v. Iger*, No. 15-cv-4609, 2017 U.S. Dist. LEXIS 217904, *7 (N.D. Ca. Mar. 10, 2017).  Here, Delaware law governs because DPW is a Delaware corporation.  (Compl. ¶1).

Under Delaware law, a shareholder who has not made a prior demand on a board of directors may not bring a derivative action "until he has demonstrated, with particularity, the reasons why pre-suit demand would be futile." *Kenney v. Gertel*, No. 12-cv-02268, 2018 U.S. Dist. LEXIS 151343, *10 (N.D. Ca. Sept. 5, 2018).  Demand futility is gauged by the circumstances existing at the filing of the suit and concerns the then-sitting board of directors.  *Id.*  The Court "must determine futility on a case-by-case basis" and, while plaintiffs are entitled to all reasonable factual inferences that logically flow from the particularized facts alleged, "conclusory allegations are not considered as expressly pleaded facts of factual inferences." *Id.*  In the context of a pre-suit demand, "directors are entitled to a presumption that they fulfilled their fiduciary duties and the burden is upon plaintiff . . . to overcome that presumption with particularized factual allegations." *Towers,* 2017 U.S. Dist. LEXIS 217904, at *8.

Demand futility is determined under the standards established in either *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984) or *Rales v. Blasband*, 634 A.2d 927 (Del. 1993).  In *Aronson*, the Delaware Supreme Court held that a stockholder who challenged an action taken by the board considering the demand must allege particularized facts sufficient to raise doubt that: "(1) the directors are disinterested and independent [or] (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Rales,* 634 A.2d 927 (*quoting Aronson,* 473 A.2d at 814).  Under *Rales*, when a plaintiff does not challenge actions taken by a majority of the board considering the demand, the Complaint must allege particularized facts that "create a reasonable doubt that, as of the time the complaint is filed, the majority of the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Id.* at 934.

The Complaint does not challenge a specific transaction approved by the Board. Rather, it asserts that the "Board has permitted [the Directors] to funnel millions into several Ault-related entities." (Compl. ¶7). This allegation plainly seeks to challenge related-party transactions. (*See id.* ¶¶56-57). DPW's Audit Committee Charter, however, mandates that the Audit Committee "shall review and approve any related-party transactions involving the Company to the extent required by the NYSE" – not the Board. (Volynsky Decl. Ex. Y at ¶7). Plaintiffs also allege other failures by the Audit and Compensation Committees – committees that were comprised of less than a majority of the Board. (Compl. ¶¶196, 204, 311-312). Therefore, *Rales* is the applicable test to evaluate the demand futility allegations since the core of the Complaint attacks actions taken by one or more of DPW's Board's standing committees. *See Birmingham*, 177 A.3d at 55; *Teamsters*, 119 A.3d at 58 (applying *Rales* test when Audit Committee Charter required committee review and approval of related party transactions). In reality, however, "[t]he fact that *Rales*, rather than *Aronson*, governs here is of no moment, because – regardless of the applicable test – the demand futility argument focuses on whether there is a reason to doubt the impartiality of the directors, who hold the authority under 8 *Del. C.* §141(a) to decide whether to initiate, or refrain from entering, litigation." *Id.; see also, Wilkin,* 2018 Del. Ch. LEXIS 70 at *23, n.125 ("[t]he test articulated in *Aronson* and *Rales* are complementary versions of the same inquiry.").

## A.     Bentz, Rosenberg, Smith, Horne, and Kohn are Independent Directors

At the outset, "in the demand futility context, directors are presumed to be independent." *Teamsters*, 119 A.3d at 59. "Independence means that a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences." *Id.* To establish a lack of independence, the Complaint must show that each director is beholden to an interested director or so under their influence that their discretion would be sterilized. *In re Am. Apparel, Inc.*, No. 14-cv-05230, 2015 U.S. Dist. LEXIS 191466, *41 (C.D. Ca. Apr. 25, 2015).

Here, the Complaint alleges "demand is futile . . . as there does not exist a majority of independent directors as conceded by the Company in its latest SEC filing." (Compl. ¶16).  Plaintiffs argue that, in this filing, "DPW admits that: 'none of Messrs. Horne, Kohn or Ault meets the independence standards.'" (*Id.*).  This allegation critically omits that these directors do not meet the independent standards "as such term is defined by standards of the SEC and the NYSE American." (Volynsky Decl. Ex. Z at p. 11).  A stock exchange rule requirement is not dispositive of determining independence in the demand futility context.  *Forestal*, 2016 U.S. Dist. LEXIS 191432, at *31.  "Director independence under NYSE Rules is qualitatively different from, and thus does not operate as a surrogate for, this Court's analysis of independence under Delaware law for demand futility purposes." *Teamsters*, 119 A.3d at 61.  Delaware courts so concluded because stock exchange rules may involve bright line tests of independence, but "Delaware law requires a case-by-case fact specific inquiry based on well-plead factual allegations." *Forestal,* 2016 U.S. Dist. LEXIS 191432, at *31-32; *LVI Grp. Invs., LLC v. NCM Grp. Holdings, LLC*, No. 12067, 2017 Del. Ch. LEXIS 49, *24 (Del. Ch. Mar. 29, 2017) ("fact-intensive, director-by-director analysis is required to meet the pleading standard of demand futility.").  Here, the Complaint does not engage in a director by director fact intensive inquiry.  Rather, Plaintiffs baldly assert that the Directors "have longstanding ties to one another, which makes them incapable of independently considering a demand to commence litigation…." (Compl. ¶307).  This allegation fails to meet the requirements of Rule 23.1 to demonstrate demand futility.

First, "[t]angential, non-material business ties among parties are insufficient to demonstrate lack of independence, as are casual social relationships." *In re Oracle Deriv. Litig.*, No. 2017-0337, 2018 Del. Ch. LEXIS 92, at *5 (Del. Ch. Mar. 19, 2018); *see also*, *Beam v. Stewart*, 845 A.2d 1040, 1050 (Del. 2004) ("Allegations of mere personal friendship or a mere outside business relationship, standing alone, are insufficient to raise a reasonable doubt about a director's independence.").  Second, the Complaint is devoid of any particulars concerning any ties between Ault, on the one

hand, and either Kohn, Smith, Rosenberg or Bentz, on the other.  (Compl. ¶¶39, 291 (Kohn), 44, 295 (Smith), 45, 301 (Rosenberg), 46, 306 (Bentz)).  So too, with respect to considering the single transaction involving Kohn, the Complaint is devoid of any particulars concerning ties between Kohn, on the one hand, and either Horne, Smith, Rosenberg or Bentz, on the other.  (*Id.* ¶¶37, 282 (Horne), 44, 295 (Smith), 45, 301 (Rosenberg), 46, 306 (Bentz)).

In a further effort to assert futility, Plaintiffs contend that three Current Directors (Ault, Horne, and Kohn) are being "paid collectively at least $1 million in cash compensation annually" and that they "receive bonuses and equity incentive compensation as well."  (*Id*. ¶266).  It then asserts that the Directors' breaches of fiduciary duty "threaten [the Directors'] livelihood."  (*Id.* ¶278 (Horne)).  These allegations are insufficient to demonstrate that Horne and Kohn lack independence. Initially, the Complaint: i) alleges that Horne is also the CFO of Targeted Medical Pharma, Inc. ("Targeted"); ii) does not allege any connection between Targeted and Ault; and iii) states that Horne received cash compensation from Targeted in excess of $250,000.  (*Id.* ¶37).  As for Kohn, on November 30, 2016, he and DPW entered into an Employment Agreement, which established his compensation for 2017 and 2018 – an agreement established months before any transaction at issue in this case.  (Volynsky Decl. Ex. AA at Item 5.02).  Thus, Horne and Kohn are not beholden to any director, and the mere fact that they are also compensated officers is insufficient to show a lack of independence.  *See Forestal*, 2016 U.S. Dist. LEXIS 191432, at *29.  "Courts in this District, applying Delaware law, have held that demand futility cannot be pled merely on the basis of allegations that directors acted or would act to preserve their positions because if these allegations were sufficient to show lack of independence, every inside director would be precluded from considering a pre-suit demand."  *Id.*  Something more than simple compensation is required.  *Id.*  Finally, with respect to the other Directors, absent a showing of materiality, which is not shown in the Complaint, "the threat of

losing directors fees is ordinarily not enough to impugn a director's independence." *Oracle*, 2018 Del. Ch. LEXIS 92, at *50.

Finally, the Complaint alleges that, based on the failure "to properly disclose [a] related party transaction[,] Kohn cannot independently consider any demand to sue himself…." (Compl. ¶289). Notwithstanding that the disclosure had been corrected, there exists a majority of independent directors who may evaluate the Kohn related party transaction: Horne, Smith, Rosenberg, and Bentz. (*See id*. ¶¶184-186).

Accordingly, there exists a majority of independent directors who could exercise their business judgment in responding to a demand. *See Rales*, 634 A.2d at 934.

## B. Bentz, Rosenberg, Smith, Horne, and Kohn are Disinterested Directors

Under *Rales*, "[a] director is considered 'interested' and thus incapable of impartially considering a demand, when he or she faces a substantial likelihood of director liability." *Am. Apparel,* 2015 U.S. Dist. LEXIS 191466, at *41-42. Here, the Complaint merely alleges the Current Directors are interested because the alleged breaches of fiduciary duty would "expose [the Director] to liability" or subject them to "a substantial likelihood of liability." (*See* Compl. ¶¶278 (Horne), 288 (Kohn), 311 (Rosenberg, Smith, and Bentz)). Simple allegations of potential directorial liability, such as those set forth in the Complaint, are "insufficient to excuse demand, else the demand requirement itself would be rendered toothless, and directorial control over corporate litigation would be lost." *Teamsters*, 119 A.3d at 62.

A director is considered incapable of impartially considering a demand when the complaint sets forth particular facts showing that a director faces a "substantial likelihood of director liability." *Forestal*, 2016 U.S. Dist. LEXIS 191432, at *15. "The analysis of whether a majority of the board faces a substantial likelihood of personal liability is conducted on a claim-by-claim basis" and the "complained-of conduct must be so egregious on its face that the board could not have exercised its business judgment in responding to a stockholder demand to pursue those claims." *Wilkin*, 2018 Del. Ch. LEXIS 70, at *24-25. Here, DPW's Certificate of Incorporation exculpates its directors

---

from monetary liability for breaches of the duty of care.  Specifically, "[t]o the fullest extent permitted by the General Corporation Law of Delaware . . . a director of the Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director."  (Volynsky Decl. Ex. A at Art. VII(1)).[4]  "Where directors are contractually or otherwise exculpated from liability for certain conduct, then a serious threat of liability may only be found to exist if the plaintiff pleads a *non-exculpated* claim against the directors based on particularized facts."  *Wood v. Baum*, 953 A.2d 136, 141 (Del. 2008); *see also Oracle*, 2018 Del. Ch. LEXIS 92, at *32 (if there is an exculpatory charter provision, plaintiff must plead a non-exculpated claim against each director).  The Complaint has not plead any non-exculpated claims against Smith, Horne, Kohn, Rosenberg, and Bentz.

Exculpated directors do not face a serious prospect of liability unless the Complaint alleges with particularity that they "breached the duty of loyalty by acting in bad faith" in connection with the challenged transaction.  *Id.* at *33.  "The duty of loyalty requires directors to put the best interest of the corporation ahead of any other interest held by the directors and not shared by the stockholders."  *Id.*  To state a claim for bad-faith conduct, the Complaint must allege "either [1] an extreme set of facts to establish the disinterested directors were intentionally disregarding their duties or [2] that the decision under attack is so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad faith."  *Id.*  "Crucially, bad faith requires a showing that the directors acted with scienter, meaning they had actual or constructive knowledge that their conduct was legally improper."  *Id.* at *34.  In the transactional context, an "extreme set of facts is required to sustain a disloyalty claim premised on the notion that disinterested directors were intentionally disregarding their duties."  *Oracle*, 2018 Del. Ch. LEXIS 92, at *39.  With respect to "related party transactions," "Delaware law on this point is clear: board approval of a transaction, even

---

[4] The CA Certificate of Incorporation included a similar provision.  *See supra* at fn. 1.

one that later proves to be improper, without more, is an insufficient basis to infer culpable knowledge or bad faith on the part of individual directors." *Woods*, 953 A.2d at 141. "This is a high pleading standard, as Delaware courts typically frame a lack of good faith in terms of 'intentional' misconduct." *Teamsters*, 119 A.3d at 63. Here, the Complaint is devoid of any such bad faith or scienter allegations concerning Directors Horne, Kohn, Smith, Rosenberg, and Bentz. (*See* Compl.). As acknowledged by the Courts, "[a]s long as a board attempts to meet its duties, no matter how incompetently, the directors did not consciously disregard their obligations." *Oracle*, 2018 Del. Ch. LEXIS 92, at *34.

Accordingly, there is a majority of independent and disinterested directors (Horne, Kohn, Smith, Rosenberg, and Bentz) who could exercise their business judgment in responding to a demand concerning the Ault related-party transactions. Similarly, there is a majority of independent and disinterested directors (Horne, Smith, Rosenberg, and Bentz) who could exercise their business judgment in responding to a demand concerning the Kohn related-party transaction.

## V.    CONCLUSION

For the foregoing reasons, the Court should grant the motion to dismiss under Fed. R. Civ. P. 12(b)(6). To the extent that any claim is not dismissed under Rule 12(b)(6), the Court should dismiss the Complaint, pursuant to Fed. R. Civ. P. 23.1, for failing to adequately plead demand futility.

Dated:  November 28, 2018                    SICHENZIA ROSS FERENCE LLP

                                             By:    /s/ *Robert Volynsky*
                                             ROBERT VOLYNSKY (SBN 310600)

                                             Attorneys for Defendants Milton Ault,
                                             Amos Kohn, William Horne, Jeff Bentz,
                                             Mordechai Rosenberg, Robert Smith and
                                             Kristine Ault