Benjamin Heikali (SBN 307466)
E-mail: bheikali@faruqilaw.com
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885

*Attorneys for Plaintiffs Ethan Young and
Greg Young*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ETHAN YOUNG and GREG YOUNG, Derivatively on Behalf of Nominal Defendant, DPW HOLDINGS, INC., | CASE NO.: 2:18-cv-06587-SJO-PLA |
| Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| vs. | |
| MILTON C. AULT, III, AMOS KOHN, WILLIAM B. HORNE, JEFF BENTZ, MORDECHAI ROSENBERG, ROBERT O. SMITH, and KRISTINE AULT, | Hearing Date: February 4, 2019 Time: 10:00 a.m. Courtroom: 350 West 1st Street, Courtroom 10C Judge: Hon. S. James Otero |
| Defendants, | Complaint filed: July 31, 2018 |
| and | |
| DPW HOLDINGS, INC., | |
| Nominal Defendant. | |

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION**

1

# **TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ......................................................................1

II.   FACTUAL BACKGROUND...........................................................................2

    A.   The Defendants.......................................................................................2

III.  ARGUMENT ..................................................................................................3

    A.   Legal Standard .......................................................................................3

    B.   Demand is Excused as Futile ..................................................................6

         1.   Defendants T. Ault, Horne and Kohn Lack Independence and are Not Disinterested...........................................................7

         2.   The Remaining Directors Lack Independence and are Not Disinterested................................................................................9

         3.   The Motion to Dismiss Makes Many Erroneous Arguments Regarding Demand Futility......................................................10

    C.   The Complaint Properly States a Claim for Breach of Fiduciary Duty ...................................................................12

         1.   Allegations Not Addressed In the Motion to Dismiss .............13

         2.   The Motion to Dismiss is filled with Mischaracterizations and Misinterpretations of the Allegations in the Complaint.....17

    D.   The Complaint Properly States a Claim for Unjust Enrichment.........19

IV.  CONCLUSION.............................................................................................20

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION**

# TABLE OF AUTHORITIES

**Cases**                                                              **Page(s)**

*Amalgamated Bank v. Yahoo! Inc.*,
    132 A.3d 752 (Del. Ch. 2016) ................................................................8

*Aronson v. Lewis*,
    473 A.2d 805 (Del. 1984) ...............................................................4, 5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..........................................................................4

*Beneville v. York*,
    769 A.2d 80 (Del. Ch. 2000) ............................................................6

*Chen v. Howard-Anderson*,
    87 A.3d 648 (Del. Ch. 2014) ............................................................8

*David v. Baker*,
    129 Fed. App'x 358 (9th. Cir. 2005) ................................................3

*Del. Cnty. Emps. Ret. Fund v. Sanchez*,
    124 A.3d 1017 (Del. 2015) ............................................................4, 5

*In re eBay, Inc., S'holders Litig.*,
    C.A. No. 19988-NC, 2004 WL 253521 (Del. Ch. Feb. 11, 2004) ......................6

*In re EZCORP Inc. Consulting Agreement Derivative Litig.*,
    C.A. No. 9962-VCL, 2016 WL 301245 (Del. Ch. Jan. 25, 2016).......................9

*Frederick Hsu Living Tr. v. ODN Holding Corp.*,
    No. 12108-VCL, 2017 WL 1437308 (Del. Ch. Apr. 14, 2017) ..........................8

*Friedman v. Beningson*,
    C.A. No. 12232, 1995 WL 716762 (Del. Ch. Dec. 4, 1995)................................5

*Gantler v. Stephens*,
    965 A.2d 695 (Del. 2009) ................................................................8

*Grimes v. Donald*,
    673 A.2d 1207 (Del. 1996) ..............................................................4

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION**

*Harbor Fin. Partners v. Huizenga*,
   751 A.2d 879 (Del. Ch. 1999) ...............................................................6

*Int'l Equity Capital Growth Fund, L.P. v. Clegg*,
   C.A. No. 14995, 1997 WL 208955 (Del. Ch. April 22, 1997) ...........6

*In re Ltd., Inc. S'holders Litig.*,
   No. CIV.A. 17148-NC, 2002 WL 537692 (Del. Ch. Mar. 27, 2002) ................6

*Mizel v. Connelly*,
   C.A. No. 16638, 1999 WL 550369 (Del. Ch. July 22, 1999)..............5

*In re New Valley Corp. Derivative Litig.*,
   C.A. No. 17649, 2001 WL 50212 (Del. Ch. Jan. 11, 2001) ................5

*Orman v. Cullman*,
   794 A.2d 5 (Del. Ch. 2002) ...................................................................6

*In re Oxford Health Plans, Inc. Sec. Litig.*,
   192 F.R.D. 111 (S.D.N.Y. 2000) ...........................................................4

*Rales v. Blasband*,
   634 A.2d 927 (Del. 1993) .............................................................4, 5, 6

*Robbins & Co. ex rel. Israel v. A.C. Israel Enters., Inc.*,
   No. 7919, 1985 WL 149627 (Del. Ch. Oct. 2, 1985) ...........................5

*In re Rural Metro Corp. Stockholders Litig.*,
   88 A.3d 54 (Del. Ch. 2014) ....................................................................8

*Sandys v. Pincus*,
   152 A.3d 124 (Del. 2016) .......................................................................7

*In re Syntex Corp. Sec. Litig.*,
   95 F.3d 922 (9th Cir. 1996) .................................................................3, 4

*In re Tyson Foods, Inc. Consol. S'holder Litig.*,
   919 A.2d 563 (Del. Ch. 2007) ...............................................................6

*Walling v. Beverly Enters.*,
   476 F.2d 393 (9th Cir. 1973) .................................................................4

iii

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION**

*Wilkinson Floor Covering, Inv. v. Cap Call, LLC*,
 No. 160256/2016,
 2018 WL 2293196 (N.Y. Sup. Ct. May 16, 2018) ..............................................15

*Wyler Summit P'ship v. Turner Broad. Sys., Inc.*,
 135 F.3d 658 (9th Cir. 1998) .................................................................................4

**Statutes**

Del. Code § 102(b)(7) ...................................................................................................8

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION**

## I.   PRELIMINARY STATEMENT

This is a derivative action brought on behalf of DPW Holdings, Inc. ("DPW" or the "Company") against its current Board of Directors (the "Board"), a former director and certain of its current executive officers (collectively, the "Individual Defendants") seeking to remedy the Individual Defendants' breaches of fiduciary duty and unjust enrichment.

Defendant Milton "Todd" Ault, III ("T. Ault") is the Chairman and Chief Executive Officer ("CEO") of DPW.  After acquiring a controlling interest of the Company in September 2016, T. Ault has put a non-independent six-person Board in place that now includes himself and two other of the Company's executive officers.  The Board has proceeded to funnel millions of dollars into several Ault-related party entities to the direct detriment of the Company and its shareholders.  In order to finance these transactions, the Board has executed financing arrangements that have saddled DPW with substantial liabilities.  In a desperate attempt to raise cash the Board has also heavily diluted the Company's common stock.  While the Company has struggled to maintain its business as a going concern, T. Ault and the other officers of DPW have received lucrative compensation.  During T. Ault's tenure, the Company has failed to make proper disclosures with the SEC, struggled with internal control issues and has made many misleading statements to the investing public.

The Individual Defendants now seek to avoid any liability for their conduct by attempting to argue that Plaintiffs should have first made a demand upon the Board or that the Shareholder Derivative Complaint filed on July 31, 2018 (the "Complaint") fails to set forth viable claims.  For the reasons set forth below, the Individual Defendants' Motion to Dismiss ("MTD") should be denied.

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION**

## II.   FACTUAL BACKGROUND

### A.   The Defendants

DPW, formerly called Digital Power Corporation, held its initial public offering in 1996.  ¶ 23[1].  In September 2016, T. Ault and his wife Kristine Ault ("K. Ault" and, collectively, the "Aults") acquired a controlling interest in DPW using their company Philou Ventures, LLC ("Philou").  ¶¶ 2, 74.  In exchange for $1.5 million in cash, Philou received 40% of DPW's common stock and the right to appoint a number of directors to DPW's Board.  ¶¶ 2, 74, 76.

As part of the agreement by Philou, all of DPW's directors, other than the Company's then CEO and President Amos Kohn ("Kohn"), were to resign and Philou would appoint four new directors of its choosing.  ¶¶ 39, 76.  The remaining board seats were then filled by K. Ault, William B. Horne ("Horne"), Robert O. Smith ("Smith"), and Mordechai Rosenberg ("Rosenberg").  ¶¶ 77-79.  T. Ault then joined the Board as its sixth member and became Executive Chairman.  ¶ 79.

In December 2017, T. Ault took over the position of CEO along with remaining as the Executive Chairman of the Board.  ¶ 26.  After Ault became CEO, Kohn kept his position as the President of the Company and the CEO of the Company's subsidiary, Coolisys Technologies, Inc. ("Coolisys").  ¶ 39.  Kohn also served as interim CFO of the Company from July 2017 until January 2018.  ¶ 39.  Horne then took over as CFO in January 2018 while remaining a director (collectively, T. Ault, Kohn and Horne are referred to herein as "Officer Directors").  ¶ 37.  The Officer Directors receive collective cash compensation of more than $1 million annually as well as substantial equity compensation and incentive awards.  ¶ 10.  Following Horne's appointment as CFO, K. Ault resigned from her position as a director of the Company and Jeff Bentz ("Bentz") was appointed as the sixth director. ¶ 43, 46.  K. Ault's resignation was necessary in order for the Company to

---

[1] All references herein to "¶__ are to the corresponding paragraphs of the Plaintiffs' Verified Shareholder Derivative Complaint (ECF No. 1).

2

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION**

comply with NYSE listing requirements that at least 50% of the Board be made up of purportedly independent directors (Smith, Rosenberg and Bentz).  ¶ 226.

T. Ault has served as Chairman of Avalanche International Corp. ("AVLP") since September 2014, a separate entity that is thinly traded on the OTC under the ticker symbol AVLP and has disclosed substantial doubts about its ability to continue as a going concern due to negative working capital.  ¶ 56, 58, 112.  DPW discloses that AVLP is a related party entity that has received at least $10 million from DPW since September 2016, when T. Ault took control of DPW. ¶ 26.  Horne serves as CFO and a director of AVLP.  ¶ 37.  T. Ault also serves as Chairman of Alzamend Neuro, Inc. ("Alzamend"), a company he founded in 2016. ¶ 26.  At the time the Complaint was filed, Horne also served as CFO of Alzamend.  ¶ 37.

T. Ault has a checkered past with many prior legal issues that are discussed at length in the Complaint.  ¶¶ 29-36, 222.  T. Ault has been suspended by FINRA and ordered to pay fines and restitution.  ¶¶ 29-31.  T. Ault filed for bankruptcy for a company where he previously served as CEO, president and chairman.  ¶¶ 33-35.  He then filed for personal bankruptcy and proceeded to fail to comply with multiple bankruptcy procedures. ¶ 36.   T. Ault and his prior companies have also had numerous lawsuits filed against them based on fraud, breach of fiduciary duties and other improprieties, which remain undisclosed by the Company.  ¶ 36. Previously, Horne was the CFO of Patient Safety Technologies, Inc. while T. Ault was the CEO of that company.  ¶ 283.  Horne was a named defendant in a lawsuit along with T. Ault as a result of their time together at Patient Safety Technologies, Inc.  ¶ 283.

## III.   ARGUMENT

### A.   Legal Standard

On a motion to dismiss it is defendant's burden to show that plaintiff cannot state a claim for relief. *David v. Baker*, 129 Fed. App'x 358, 360 (9th. Cir. 2005). For purposes of evaluating a motion to dismiss, all factual uncertainties in the complaint must be construed in the light most favorable to the plaintiff. *In re Syntex*

3

*Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996).  The Court will dismiss only those claims for which it appears beyond doubt that plaintiff can prove no set of facts which would entitle him to relief.  *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  Any existing ambiguities must be resolved in favor of the pleading.  *Walling v. Beverly Enters.*, 476 F.2d 393, 396 (9th Cir. 1973).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Under Delaware law, it is well-settled that a pre-suit demand on a corporate board of directors need not be made if the facts alleged tend to demonstrate such a demand would have been futile.   *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984).  To establish demand futility with respect to a specific business decision of the Board under *Aronson*, the plaintiff must show that "(1) the directors are disinterested and independent [or] (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993) (*quoting Aronson*, 473 A.2d at 814).  Where there is not a challenged decision of the Board, demand is excused where the complaint raises a ***reasonable doubt*** that a majority of the directors are disinterested ***or*** independent.  *Id.* at 930.  As explained by the Delaware Supreme Court, "the concept of reasonable doubt is akin to the concept that the stockholder has a 'reasonable belief' that the board lacks independence . . . ." *Grimes v. Donald*, 673 A.2d 1207, 1217 n.17 (Del. 1996).  As other courts have pointed out when discussing this area of Delaware law: "there is no one test used to determine demand futility, since the issue is fact intensive and no two cases are alike." *In re Oxford Health Plans, Inc. Sec. Litig.*, 192 F.R.D. 111, 116 (S.D.N.Y. 2000).  Instead, the "law requires that all the pled facts regarding a director's relationship to the interested party be considered in full context in making the, admittedly imprecise, pleading stage determination of independence." *Del. Cnty. Emps. Ret. Fund v. Sanchez*, 124 A.3d 1017, 1022 (Del. 2015). Although there

are heightened pleading standards under Rule 23.1, "when a motion to dismiss for failure to make a demand is made, all reasonable inferences from the pled facts must nonetheless be drawn in favor of the plaintiff in determining whether the plaintiff has met its burden under *Aronson*." *Id.* at 1020.

Pursuant to Delaware law, "[d]irectorial interest also exists where a corporate decision will have a materially detrimental impact on a director . . . a director cannot be expected to exercise his or her independent business judgment without being influenced by the adverse personal consequences resulting from the decision." *Id.* at 936. Thus, a director is interested where they face a substantial likelihood of liability. *Aronson*, 473 A.2d at 815.

Independence, on the other hand, "means that a director's decision is based on the corporate merits of the subject before the board ***rather than extraneous considerations or influences***." *Id.* at 816 (emphasis added). A director also lacks independence where he or she is "beholden" to interested directors ***or*** "so under their influence that [his or her] discretion would be sterilized." *Rales*, 634 A.2d at 935-37. (citations omitted). Among other situations, a lack of independence has been found where: (i) a director holds a position as an employee of the corporation;[2] (ii) there are familiar relations which necessarily exert considerable influence over the director;[3] (iii) a controlling stockholder or dominating director exerts considerable influence over the director;[4] (iv) there are "current or past business, personal, and employment relationships with each other and the entities involved;"[5] (v) there is "a

---

[2] *Id.* at 937 ("there is a reasonable doubt that [an employee-director] can be expected to act independently considering his substantial financial stake in maintaining his current offices."). *See also Mizel v. Connelly*, C.A. No. 16638, 1999 WL 550369, at *3 (Del. Ch. July 22, 1999).

[3] *See Mizel*, 1999 WL 550369, at *4.

[4] *See Friedman v. Beningson*, C.A. No. 12232, 1995 WL 716762, at *5 (Del. Ch. Dec. 4, 1995); *Robbins & Co. ex rel. Israel v. A.C. Israel Enters., Inc.*, No. 7919, 1985 WL 149627, at *5 (Del. Ch. Oct. 2, 1985).

[5] *In re New Valley Corp. Derivative Litig.*, C.A. No. 17649, 2001 WL 50212, at *7 (Del. Ch. Jan. 11, 2001).

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION**

clear pattern of mutual advantage" between the directors;[6] and (vi) a director receives monetary benefits or equity awards.[7]

The detailed factual allegations of the Complaint raise a ***reasonable doubt*** as to all of the directors' ability to independently and disinterestedly evaluate the claims asserted in the Complaint, even though Plaintiffs are only required to demonstrate a reason to doubt the independence or disinterest of a majority of the directors; here, just three. *Rales*, 634 A.2d at 934. When a board consists of an even number of directors, a plaintiff need only show that demand is futile upon half of those directors.[8] The Complaint in this action more than satisfies these standards.

## B.    Demand is Excused as Futile

Plaintiffs need to show that three of the six DPW directors are incapable of independently or disinterestedly considering a demand. For the reasons discussed below, Plaintiffs are able to easily make this showing as three of DPW's directors, the Officer Directors, are executive officers who have been active participants in and have individually benefitted from the wrongdoing discussed throughout the Complaint. Moreover, although unnecessary for demand futility purposes, there are weighty reasons to doubt the independence and disinterestedness of all the remaining directors, especially Rosenberg and Smith. Furthermore, the Board's pattern of breaching their duties of loyalty, care and good faith (discussed below) could not have been the product of a valid exercise of business judgment.

---

[6] *Int'l Equity Capital Growth Fund, L.P. v. Clegg*, C.A. No. 14995, 1997 WL 208955, at *5 (Del. Ch. April 22, 1997). *See also Harbor Fin. Partners v. Huizenga*, 751 A.2d 879, 889 (Del. Ch. 1999).

[7] *In re eBay, Inc., S'holders Litig.*, C.A. No. 19988-NC, 2004 WL 253521, at *3 (Del. Ch. Feb. 11, 2004); *Orman v. Cullman*, 794 A.2d 5, 30 (Del. Ch. 2002).

[8] *See, e.g.*, *In re Ltd., Inc. S'holders Litig.*, No. CIV.A. 17148-NC, 2002 WL 537692, at *7 (Del. Ch. Mar. 27, 2002) ("plaintiffs meet their burden of demonstrating the futility of making demand on the board by showing that half of the board was either interested or not independent"); *see also In re Tyson Foods, Inc. Consol. S'holder Litig.*, 919 A.2d 563, 582, 589 (Del. Ch. 2007); *Beneville v. York*, 769 A.2d 80, 82, 86 (Del. Ch. 2000).

6

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION**

### 1. Defendants T. Ault, Horne and Kohn Lack Independence and are Not Disinterested

Defendants concede that T. Ault is not independent nor disinterested. *See* Defs.' Mem. at 15, 18. Kohn and Horne are also not independent nor disinterested. Both Horne and Kohn are highly paid officers of DPW. ¶¶ 240-52. Furthermore, both Horne and Kohn benefitted directly and indirectly from the wrongdoing alleged throughout the Complaint. According to the Schedule 14A Preliminary Proxy Statement filed with the SEC on July 30, 2018, DPW admits that: "none of Messrs. Horne, Kohn or Ault meets the independence standards." ¶ 16.[9] The Officer Directors' misconduct is the gravamen of the Complaint and as a result the Board lacks a majority of independent directors necessary to field a shareholder demand.

Horne is currently the CFO of DPW. ¶ 276. Prior to being appointed as CFO, Horne was appointed as a DPW director and audit committee chairman after T. Ault took control of the Company. ¶ 37. T. Ault has had a business relationship with Horne for many years across multiple companies. Horne is currently the CFO of AVLP and at the time of the Complaint was CFO of Alzamend, two companies in which T. Ault has a prominent role and which have engaged in many related party transactions with DPW to the detriment of the Company and the benefit of Horne. ¶¶ 119-20, 280-81. Previously Horne was the CFO of Patient Safety Technologies, Inc. while T. Ault was the CEO of that company. ¶ 283. Horne was a named defendant in a lawsuit along with T. Ault as a result of their time together at Patient Safety Technologies, Inc. ¶ 283.

Kohn is currently the President of DPW and CEO of Coolisys. ¶ 285. Horne, Kohn and T. Ault make up the three directors of Coolisys. ¶ 279. Previously, Kohn

---

[9] While Defendants note that a stock exchange rule requirement is not dispositive of determining independence in the demand futility context (Defs.' Mem. at 16), Delaware law has stated under similar rules that "[t]he NASDAQ rules' focus on whether directors can act independently of the company or its managers has important relevance to whether they are independent for purposes of Delaware law." *Sandys v. Pincus*, 152 A.3d 124, 133 (Del. 2016).

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION**

was DPW's President, CEO and CFO but relinquished the CEO position after T. Ault took control of the Company.  ¶ 39.  Kohn received a new employment agreement immediately after T. Ault took control of the Company.  ¶ 40.  As discussed below, Kohn orchestrated the use of Company funds to purchase a house for his daughter and failed to disclose this related party transaction at a time when he was serving as DPW's President, CEO and CFO.  Defs.' Mem. at 4; ¶ 289. Horne was the Audit Committee Chairman and T. Ault was the Chairman of the Board at the time the house was gifted to Kohn's daughter.  ¶¶ 26, 37, 186.  Kohn was also the interim CFO from July 2017 until January 2018, a time when funds were being funneled to AVLP in droves. ¶¶ 39, 108, 110.

Defendants' motion states that the Complaint has not plead any non-exculpated claims against Horne and Kohn because DPW's Certificate of Incorporation exculpates its directors.  Defs.' Mem. at 18-19.  Horne and Kohn are not afforded the protection of the Company's exculpatory provision as Delaware law limits exculpation to corporate directors, not officers.  8 Del. Code § 102(b)(7).  The Delaware courts have uniformly held that officers of a corporation cannot be exculpated.[10]  As alleged throughout the Complaint, Horne and Kohn were acting in their capacity as officers of the Company and, therefore, liability for their actions is not exculpated by DPW's Certificate of Incorporation.  Horne and Kohn are officers and were acting as officers at all relevant times with the exception of a short period of time where Horne was only a director; therefore, the Complaint has plead many non-exculpated claims against both of them.  Furthermore, both Horne and Kohn committed intentional infliction of harm upon the Company, in bad faith and breached their duty of loyalty rendering any potential exculpation inapplicable.

---

[10] *See Gantler v. Stephens*, 965 A.2d 695, 709 n.37 (Del. 2009).  *See also Frederick Hsu Living Tr. v. ODN Holding Corp.*, No. 12108-VCL, 2017 WL 1437308, at *37 (Del. Ch. Apr. 14, 2017); *Amalgamated Bank v. Yahoo! Inc.*, 132 A.3d 752, 787 (Del. Ch. 2016); *Chen v. Howard-Anderson*, 87 A.3d 648, 686 (Del. Ch. 2014); *In re Rural Metro Corp. Stockholders Litig.*, 88 A.3d 54, 86-87 (Del. Ch. 2014).

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION**

Therefore, three of the six directors are incapable of independently and disinterestedly considering a demand to commence litigation against themselves and the other Individual Defendants.  The demand futility analysis could end here as the Board does not have a majority of directors capable of independently considering a demand and, as a result, demand upon the Board is futile.

### 2.    The Remaining Directors Lack Independence and are Not Disinterested

Rosenberg, Smith and Bentz are not disinterested and lack independence from both T. Ault and Kohn.  While Plaintiffs do not need to show that any other members of the Board are incapable of fielding a demand in order to satisfy demand futility, there are many reasons why the remaining directors are unable to evaluate a demand independently and disinterestedly.  Rosenberg, Smith and Bentz have repeatedly either authorized or refused to act in the face of numerous transgressions by the Officer Directors while individually benefitting.[11]

Defendant Rosenberg has served as a director of the Company since 2015.  ¶ 45.  Rosenberg is a member of the Company's Audit Committee, Compensation Committee, and Nomination and Governance Committee ("NG Committee"). ¶¶ 45, 300.   In these roles, Rosenberg knew about the litany of wrongdoing being performed by the Officer Directors, made no apparent effort to stop it and failed to adequately perform his oversight responsibilities.   ¶¶ 311-12.  Pursuant to the September 2016 Philou Securities Purchase Agreement, Rosenberg was to resign from the Board.  ¶¶ 76, 299.   Two weeks after that agreement was executed, without further explanation, Philou waived its right to require the resignation of Rosenberg as a director of the Company and he remained in his position. ¶¶ 77, 299.  Rosenberg has received lucrative compensation for his role as a DPW director. ¶¶ 45, 302.

---

[11] *See In re EZCORP Inc. Consulting Agreement Derivative Litig.*, C.A. No. 9962-VCL, 2016 WL 301245, at *40 (Del. Ch. Jan. 25, 2016) (noting that eight prior decisions by a director makes it reasonable to infer that a director "could have difficulty reversing this pattern and authorizing a suit.").

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION**

1   Smith has a long history with the Company, having previously served as the

2   Company's President, CEO and Chairman of the Board.  ¶¶ 44, 293.  In September

3   2016, Philou granted the right to allow Kohn and Rosenberg to appoint Smith.  ¶¶

4   77-78.  Smith is the Chairperson of the Audit Committee and a member of the

5   Compensation Committee and NG Committee.  ¶¶ 44, 294.  In these roles, Smith

6   knew about the litany of wrongdoing being performed by the Officer Directors,

7   made no apparent effort to stop it and failed to adequately perform his oversight

8   responsibilities.  ¶¶ 311-12.  Smith has received lucrative compensation for his role

9   as a DPW director. ¶¶ 44, 296. The stock option awards Smith received represented

10   double what any other non-employee director received in 2017 and include unvested

11   stock options that vest monthly. ¶¶ 44, 297.

12   Defendant Bentz is the shortest tenured director having served since January

13   2018.  ¶ 46.  Bentz is a member of the Company's Audit Committee, Compensation

14   Committee, and NG Committee. ¶¶ 45, 305.  In these roles, Bentz knew about the

15   litany of wrongdoing, much of which occurred while he was on the Board or just

16   prior to his tenure, and made no apparent effort to stop it and failed to adequately

17   perform his oversight responsibilities.  ¶¶ 311-12.

18   ### 3.   The Motion to Dismiss Makes Many Erroneous Arguments Regarding Demand Futility

19

20   Defendants claim that "the complaint does not engage in a director by director

21   fact intensive inquiry" and that "Plaintiffs baldly assert that the Directors 'have

22   longstanding ties to one another, which makes them incapable of independently

23   considering a demand to commence litigation[.]'"  Defs.' Mem. at 16, citing to ¶

24   307.  This is plainly false. Plaintiffs, in fact, do engage in a director by director

25   intensive inquiry.  *See* ¶¶ 268-306.  After performing a director by director inquiry,

26   Plaintiffs provide further analysis on the Board's lack of independence and inability

27   to impartially consider a demand.  *See* ¶¶ 307-14.

28   The MTD attempts a convoluted theory whereby the directors are separated

10

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION**

based on Ault related-party transactions and Kohn related-party transactions. Defs.' Mem. at 16-17, 20. This desperate effort is seemingly for the purpose of confusing a relatively simple demand futility analysis and masking the indefensible lack of independence amongst the Board.  Not only is the analysis filled with many flaws, including an oversimplification of the actual allegations, but it also attempts to separate allegations from what is in actuality an intertwined scheme. The Board took the funds raised from the Future Receipts Agreements and stock issuances dispersed the funds to related parties controlled by T. Ault and distributed as compensation to the Officer Directors from both DPW and the related parties. ¶¶ 4-11. While performing this scheme, the Board also failed to make proper disclosures with the SEC, permitted materially false and misleading statements, and issued significant compensation to itself in the form of both cash and inflated equity.  ¶¶ 310-11, 317.

When discussing the more than $1 million in compensation paid to the Officer Directors for their roles as officers of DPW, the MTD uses quotes from irrelevant cases (*Forestal* and *Oracle*) that concern directors' fees and not compensation paid to officers.  Defs.' Mem. at 17-18.  The MTD's reference to Horne's $250,000 salary from Targeted Medical Pharma, Inc. omits that this amount was paid in 2015 and that there has been no publicly available information since that time.  Defs.' Mem. at 17; ¶ 37.   The MTD then continues, "[a]s for Kohn, on November 30, 2016, he and DPW entered into an Employment Agreement, which established his compensation for 2017 and 2018 – an agreement established months before any transaction at issue in this case." Defs.' Mem. at 17.  The MTD conveniently leaves out many important issues surrounding Kohn's compensation which support that he is beholden to T. Ault and the Board.  Kohn received his agreement after T. Ault acquired control over DPW and the employment agreement was then backdated by more than two months.  ¶ 247.  Kohn's agreement was for a 24-month term which was automatically renewed in September 2018.   ¶ 247.   Kohn's employment agreement was then amended on February 22, 2017 to also provide him with

11

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION**

warrants to purchase 317,460 shares of DPW common stock at an exercise price of $0.01 subject to vesting. ¶ 41. In addition to his $300,000 salary, Kohn received stock options and other compensation of more than $125,000 in 2017. ¶¶ 42, 250. Kohn's employment agreement also includes a term that increases his salary to $350,000 per annum provided that the Company achieves revenue of at least $10 million for the trailing four calendar months. ¶ 40. Mysteriously, in 2017 the Company had aggregate revenues of $10,001,000, triggering the increase in salary by a mere $1,000 in revenue. ¶ 42. Kohn was also permitted to use Company funds to purchase a house for his daughter in Israel. ¶¶ 185-86.

The MTD claims that "the Complaint is devoid of any such bad faith or scienter allegations concerning Directors Horne, Kohn, Smith, Rosenberg and Bentz." Defs.' Mem. at 20. As discussed above, Horne and Kohn are not protected by an exculpation clause. Moreover, the MTD does allege that Horne and Kohn put the interests of themselves ahead of the best interest of the corporation and its shareholders. Horne and Kohn acted in bad faith with intentional misconduct. Rosenberg, Smith and Bentz also acted in bad faith and consciously disregarded their obligations rendering any potential exculpation inapplicable. ¶¶ 311-12.

## C.   The Complaint Properly States a Claim for Breach of Fiduciary Duty

The Complaint alleges that the Individual Defendants breached their duties of loyalty, care and good faith by: (i) failing to act in the best interest of the Company; (ii) participating in transactions for the benefit of the Individual Defendants that harmed the Company; (iii) mismanaging the Company's finances; (iv) failing to implement and maintain a system of effective internal controls and procedures; (v) failing to adhere to the Company's applicable Code of Ethics; (vi) improperly awarding themselves generous and excessive compensation; and (vii) permitting the Company to issue materially false and misleading financial statements and other SEC filings. ¶ 317.

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION**

Defendants' MTD seemingly does not challenge the breach of fiduciary duty of loyalty and good faith, while only challenging the breach of fiduciary duty of care claim. *See* Defs.' Mem. at 2-3. Furthermore, Defendants do not address many of the allegations of misconduct made against the Individual Defendants.

### 1. Allegations Not Addressed In the Motion to Dismiss

In their MTD, the Defendants do not address many of the most salient and pertinent allegations in Plaintiffs' Complaint.

Strikingly, AVLP (or Avalanche International Corp.) is not mentioned once in the MTD. DPW's dealings with AVLP constitute a significant aspect of the allegations made throughout the Complaint yet the MTD fails to provide any defense to these allegations. *See* ¶¶ 91-127. Once T. Ault gained control of DPW, the Company began sending millions of dollars to AVLP, a separate entity but related party, as both purported loans and investments. ¶¶ 108, 111. AVLP is a thinly traded security that has very minimal assets on its balance sheet to make any repayments (according to the most recent financial information available) and the substantial investments into AVLP are imprudent and without business justification. ¶¶ 96-99, 112-15. As discussed, Ault is the chairman of AVLP and Horne is the CFO, two roles that they also perform for DPW. ¶ 127. Philou, T. Ault's company, has voting control over AVLP. ¶ 56. The actions of the Individual Defendants in orchestrating dealings with AVLP was improper and violated the duty of loyalty. ¶ 123.

The MTD also does not discuss the purported $50 million purchase order from MTIX, a company purchased by AVLP using funds provided by DPW, that DPW has continuously touted, yet DPW has not collected any revenue on this purchase order and its purported benefits to the Company will likely never materialize as alleged throughout the Complaint. ¶¶ 124-27. DPW has even paid off debts incurred by MTIX. ¶ 127.

Defendants' MTD fails to properly describe and offer a defense to the allegations related to Kohn using Company funds to provide his daughter with a

13

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION**

house in Israel.  ¶¶ 184-89.  Kohn's daughter is not mentioned in Defendants' MTD and the only mention of this related party transaction is in the context of the restatement and that the Company "misclassified" this item as a current asset, conveniently omitting from the MTD that the restatement included adding a related party disclosure and that the Company admitted for the first time in a Form 8-K that the property is actually being used by Kohn's daughter.  *See* Defs.' Mem. at 4; ¶ 185. When the house was gifted, Kohn was DPW's President, CEO, CFO, and Principal Accounting Officer.  Defs.' Mem. at 4.  It is also left unexplained why the Audit Committee needed their auditor to raise the issue of gifting a house to Kohn's daughter, something that the Board must have been well aware of.  The MTD then goes on to state that "Total Assets, Total Liabilities, Total Equity, and the Condensed Consolidated Statements of Operations and Comprehensive Loss for any period was not affected by the misclassification." Defs.' Mem. at 4.  This is a red herring. Defendants ignore that current assets were reduced when this restatement removed the entire $300,000 from current assets and reclassified the balance into an 'other investments' line item.  ¶ 189. Current assets are an important aspect of DPW's balance sheet, especially with the Company's solvency issues.  *Id.* Kohn's daughter will have the right to "purchase" the house for as little as $1 as stipulated in an agreement, executed more than five months after the property was purchased, that the Company only filed after the issue became public. ¶ 186.  Furthermore, the MTD does not discuss the additional items that required restatement including the addition of many items to the Company's June 30, 2017 subsequent events.  ¶¶ 190-95.  As alleged in the Complaint, the Company's failure to include these subsequent events appears to have been the result of selective omissions.  ¶ 195.

The MTD only discusses the Future Receipts Agreements by falsely claiming that these agreements are not "usurious loans because the Future Receipts Agreements are not loans or a usurious transaction."  Defs.' Mem. at 9.  The MTD is relying on a technicality created by the New York courts whereby certain future

14

receivables agreements are not considered loans and are therefore not a usurious loan under the definition of New York criminal usury. *See Wilkinson Floor Covering, Inv. v. Cap Call, LLC*, No. 160256/2016, 2018 WL 2293196, *2 (N.Y. Sup. Ct. May 16, 2018) ("because plaintiffs' obligation to pay them future receivables is conditioned on plaintiffs' receipt of such, the agreements at issue are not loans"). Plaintiffs are not alleging criminal usury and this New York case is wholly irrelevant. Moreover, the Complaint does allege that the Future Receipts Agreements entered by Defendants require that the Company "bears the risk for repayment regardless of whether or not the Company has any receipts, therefore in actuality the Future Receipts Agreements are loan agreements where the Company is the debtor." ¶ 130. The Future Receipts Agreements require substantial repayments on a daily and weekly basis over a short duration. ¶¶ 129, 131, 134. The defense provided by Defendants has no bearing on a breach of fiduciary duty claim and in no way provides a rebuttal to the prima facie unfair agreements described at length in the Complaint. *See* ¶¶ 128-39. During the second half of 2017 and first quarter of 2018 the Company "sold" future receipts of $9,836,900 for $6,989,000, which equals interest of approximately 41%. ¶¶ 121, 137, 139.[12]

The Company then used the funds raised through the Future Receipts

_____

[12] DPW has continued to enter into debt financing after the Complaint was filed, including two promissory notes in October and November 2018 with Cavalry Fund I LP. DPW announced in a Form 8-K filed with the SEC on December 31, 2018 that the Company has defaulted on the notes and that the lender has informed the Company that it will commence litigation unless it has been repaid the sum of $888,150. The Company filed another Form 8-K with the SEC on January 7, 2019, announcing that the Company was in default on a note that it entered on September 21, 2018 in the amount of $526,316 with Bellridge Capital L.P. As a result of the default, the Company announced that the interest rate on the note increased from 12% to 18% and an amount equal to a premium of thirty percent of all principal and interest shall be immediately added to the principal due under the note. These events occurred after the Complaint was filed, Plaintiffs could file for leave to amend the Complaint if the Court deems it necessary, however, this is a closely related byproduct of what has been alleged in the Complaint. *See* ¶¶ 135-136.

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION**

Agreements, and also significant stock issuances, to provide cash infusions to AVLP. ¶ 121. DPW has classified some of these cash infusions as investments into AVLP and others as loans. ¶¶ 109-11. The purported loans accrue interest at 12% per annum, significantly less than the more than 40% being paid on the Future Receipts Agreements, and DPW has pushed back the repayment of the interest and principal of the AVLP loans repeatedly. *See* ¶ 110. T. Ault and Horne are being compensated by AVLP, while T. Ault has voting control over AVLP. ¶¶ 7, 119. These actions are in direct violation of DPW's Code of Ethics and are a breach of the duty of loyalty. ¶¶ 122-23.

The MTD does not discuss cryptocurrency or the crypto mining operations other than the bloated cryptocurrency related revenue projections discussed in ¶ 179 of the Complaint. Plaintiffs' Complaint has many other allegations related to cryptocurrency that are not addressed in the MTD including that the Company is not on track to reach 10,000 cryptocurrency mining machines as promised (¶ 175), the Company has overpaid for its cryptocurrency mining equipment (¶ 176), the Company has not delivered its "AntEater" machines to the public within four weeks of the announced launch as promised (¶ 178) and whether the Company was truly using bitcoin as currency to pay down debt as announced by the Company (¶ 180).[13] The MTD also does not discuss the rapid rise and precipitous fall in the Company's stock price, driven by cryptocurrency hype that the Individual Defendants helped to foster and other misleading statements made by the Individual Defendants as alleged throughout the Complaint. ¶¶ 124-27, 174, 213, 217-21. A few weeks prior to the

---

[13] A lawsuit was filed against the Company and its subsidiary Super Crypto Mining, Inc. on November 28, 2018 (*Blockchain Mining Supply and Servs. Ltd. v. Super Crypto Mining, Inc. et al.*, Docket No. 1:18-cv-11099 (S.D.N.Y. Nov 28, 2018)), by the bitcoin mining company that sold DPW the machines discussed in   ¶ 177. According to the complaint, DPW failed to make payment on the remaining mining machines it ordered and never took possession of those machines. Plaintiffs could file an amended complaint if the Court deems it necessary, but this issue is a byproduct of what is already alleged in ¶¶ 175-77.

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION**

Complaint being filed, on July 10, 2018, DPW common stock was trading for $0.51, a steep decline from a high of $5.95 on December 13, 2017.  ¶ 174.

The MTD does not address the allegations pertaining to the Company's practice of issuing of shares to pay for various services under unfavorable terms and without proper disclosure which makes it impossible for shareholders to ascertain what services were provided and being paid for.  ¶¶ 144-46.

In addition to the allegations discussed above, there are many other allegations in Plaintiffs' Complaint that Defendants have not addressed and have provided no defense for whatsoever.

### 2. The Motion to Dismiss is filled with Mischaracterizations and Misinterpretations of the Allegations in the Complaint

While most of Plaintiffs' allegations are not refuted at all within Defendants' MTD, as discussed above, the allegations that are addressed in the MTD contain glaring mischaracterizations and misinterpretations of Plaintiffs' allegations.

For example, Defendants' argue that the "Court should dismiss the breach of fiduciary duty of care claims asserted against the Directors because they are barred by exculpatory charter provisions and there are no allegations demonstrating bad faith by the Directors." Defs.' Mem. at 2.  As discussed above, officers (Horne and Kohn) do not get the benefit of the exculpatory provisions because they were acting in their capacity as officers.  Moreover, the Complaint is filled with allegations of bad faith against all three Officer Directors and the remaining members of the Board, including intentional acts and breaches of the duty of loyalty as discussed at length herein and in the Complaint.  *See* ¶¶ 312-13.

Defendants argue that "Plaintiffs seek to assert a breach of fiduciary duty claim premised upon the NYSE admonishing DPW for failing to make public disclosures required by its rules and the NYSE's finding that DPW, at times was not in compliance with Rule 801(h)" and that this Court "must dismiss this claim because a derivative plaintiff has 'no standing to prosecute a violation of the NYSE

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION**

Rules.'"  Defs.' Mem. at 7.  This is a red herring; Plaintiffs are not attempting to prosecute a violation of the NYSE Rules.  Plaintiffs included these allegations (*see* ¶¶ 206-12, 223-26) in order to illustrate the Company's inept disclosures and inability to follow NYSE Rules which costs the Company money and risks its ability to stay listed and, as such, are state law breaches of fiduciary duty.[14]

The MTD states the "Complaint implies other disclosure issues plagued DPW by alleging that, from December 15, 2017 through February 12, 2018, DPW filed five amendments to prior SEC filings."  Defs.' Mem. at 6.  The MTD claims that these "other disclosure issues" were not related to DPW's internal controls issues.  Presumably, the MTD is referring to "other disclosure issues" as issues unrelated to the restatement.  While the Complaint does reference the five amendments during less than two months (¶ 207), it also references many other disclosure issues including the NYSE admonishing the Company for "failure to make immediate public disclosure of all material information concerning its affairs." ¶¶ 206, 208, 212. The Complaint also includes other financial reporting and disclosure issues. For example, DPW has an enormously overstated balance sheet, including inflated goodwill from the Microphase acquisition and improperly recognizing MTIX receivables that are likely never to be collected.  ¶ 217.

The MTD claims that "[a]lthough the Complaint bemoans the amount of compensation awarded, it does not set forth particularized facts that the Compensation Committee's actions were in bad faith, that they were inadequately informed in making a decision, or the compensation is not warranted." Defs.' Mem. at 11.  The Complaint is filled with facts that the compensation awarded to the Officer Directors was excessive, unwarranted and a result of the Compensation Committee violating their duties.  *See* ¶ 312. While the Company has struggled and

---

[14] On January 8, 2019, the Company announced that it had received a deficiency letter on January 4, 2019 from the NYSE American exchange.  According to a press release issued by the Company, the Company has until July 4, 2019 to demonstrate sustained price improvement or orchestrate a stock split of its shares.

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION**

is cash starved, the Officer Directors have received lavish compensation that included increased compensation for all directors during 2018.  *See* ¶¶ 10, 312.

As for DPW's issuance of more than 50 million shares of common stock in a little over a year discussed at length in Plaintiffs' Complaint (*see* ¶¶ 140-71). Defendants claim that there are "no allegations that any Director engaged in fraud in connection with the securities issued to unrelated parties or for personal gain." Defs.' Mem. at 7-8.  This is not accurate as Plaintiffs do allege personal gain.  The stock issuances were one of the two main ways that the Company received funds (the other being through the future receipts agreements). These funds were then funneled to AVLP and other related party entities for the personal gain of T. Ault, Horne and other related parties, and the funds were used to compensate the Officer Directors and the Board while the Company was cash starved and floundering.  ¶¶ 139-40, 142.  The MTD only provides a specific defense to one of the issuances and claims that there is no breach of fiduciary duty because the shares were issued pursuant to a contractual right.  Defs.' Mem. at 9. For the issuances that were at below market price, the MTD argues that a corporation in financial distress is given considerable latitude in fixing the price for its issuances.  Defs.' Mem. at 9. The financial distress, however, was self-inflicted by the Individual Defendants and rather than stop the transfers to AVLP and compensation to the Individual Defendants, the Board used its stock as currency to pay off principal and interest on loans at much greater than fair market value.  *See e.g.* ¶¶ 154-58.  There are also issuances to Ault-controlled related parties, Ault & Company and Philou, at favorable terms as discussed in the Complaint.  ¶¶ 170-71.

### D.  The Complaint Properly States a Claim for Unjust Enrichment

Contrary to Defendants' claims, Plaintiffs rely on more than just compensation through employment contracts to support the unjust enrichment claim.

T. Ault and Horne are both compensated by AVLP and AVLP is in turn funded by DPW.  ¶¶ 119-20.  According to the most recent available financial information

provided by AVLP, T. Ault is receiving $20,000 a month from AVLP.  ¶ 119.  There is no public information provided by AVLP regarding Horne's compensation as CFO of AVLP, however, AVLP has disclosed that Horne has been granted at least 1,000,000 shares of stock options to purchase AVLP common stock.  ¶ 119.  DPW and AVLP also provided funds to Alzamend, another entity controlled by Ault where Horne acts as CFO. ¶¶ 102-03.

There is stock compensation provided to all directors that is provided outside of any employment contract, including the large stock option grants that were provided to each director on November 28, 2017.  ¶ 227. There are director fees paid to the current non-officer directors, K. Ault and also paid to Horne when he was a director.  ¶¶ 38, 43-45. There is also the increase in Kohn's compensation; although contemplated by the employment contract, the actual increase in salary is a result of reported revenue and not the contract. ¶ 251. The Company has also entered into employment agreements and backdated the agreements months prior to the actual agreements being executed.  For example, T. Ault entered into an employment agreement on April 13, 2018 but with an effective date of November 15, 2017 or approximately five months prior to the date that the parties executed the agreement. ¶ 230.  Kohn's employment agreement was also given an effective date of more than two months prior to it being executed.  ¶ 247.  There are also the allegations that Kohn has been unjustly enriched as a result of the house that was provided to his daughter.  ¶¶ 184-89. Thus, Plaintiffs have sufficiently pled allegations for unjust enrichment against all Defendants.

## IV.    CONCLUSION

For each of the foregoing reasons, Defendants' motion to dismiss should be denied in its entirety.

Dated: January 10, 2019

**FARUQI & FARUQI, LLP**

By: */s/ Benjamin Heikali*

Attorneys for Plaintiffs
Benjamin Heikali (SBN 307466)

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION**

10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: 424-256-2884
Facsimile: 424-256-2885
E-mail: bheikali@faruqilaw.com

**FARUQI & FARUQI, LLP**
Stuart J. Guber (admitted *pro hac vice*)
Alex B. Heller (admitted *pro hac vice*)
1617 John F. Kennedy Boulevard
Suite 1550
Philadelphia, PA 19103
Telephone: 215-277-5770
Facsimile:  215-277-5771
E-mail: sguber@faruqilaw.com
               aheller@faruqilaw.com

*Attorneys for Plaintiffs*

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION**