UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

CASE NO.: 2:18-cv-6587 SJO           DATE: February 25, 2019

TITLE:     Ethan Young and Greg Young, derivatively on behalf of DPW Holdings, Inc. v. Milton C. Ault, III, et. al.

========================================================================
PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE

Victor Paul Cruz                                    Not Present
Courtroom Clerk                                     Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF(S):**               **COUNSEL PRESENT FOR DEFENDANT(S):**

Not Present                                         Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND** [Docket No. 24].

This matter is before the Court on Defendants Milton C. Ault III, Amos Kohn, William B. Horne, Jeff Bentz, Mordechai Rosenberg, Robert O. Smith, Kristine Ault, and Nominal Defendant DPW Holdings, Inc.'s Motion to Dismiss ("Mot.") Plaintiffs' Complaint and Request for Judicial Notice ("RJN"), filed November 28, 2018. Plaintiffs Ethan Young and Greg Young ("Plaintiffs") opposed the Motion ("Opposition") on January 10, 2019, and Defendants replied ("Reply") on January 21, 2019. For the following reasons, the Court **GRANTS** Defendants' Motion and **DISMISSES** Plaintiffs' Complaint **WITH LEAVE TO AMEND**. Plaintiff shall have **ten (10) days** from the date of this order to file an amended complaint. Defendants shall have **ten (10) days** thereafter to respond.

I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs, stockholders of Nominal Defendant DPW, bring a shareholder derivative action for the benefit of DPW. (Compl. ¶¶ 1, 21-22.) The central allegations in the complaint are as follows.

DPW is a holding company that owns subsidiaries engaged in commercial and defense solutions, cryptocurrency blockchain mining, commercial lending, and advanced textile technology. (Compl. ¶ 1.) Plaintiffs are citizens of Ohio and are shareholders of DPW. (Compl. ¶¶ 21-22.)

In September 2016, Defendants Milton C. Ault III and Kristine Ault ("Aults") acquired a controlling interest in DPW, around 40% of the Company's common stock. (Compl. ¶¶ 2, 23.) After this transaction, Plaintiffs contend that DPW went from having a positive working capital to being insolvent. (Compl ¶ 3.) According to Plaintiffs, the losses incurred by DPW stemmed from Defendants' mismanagement of the Company and their breaches of their fiduciary duty to their investors.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

CASE NO.:  <u>2:18-cv-6587</u>                              DATE: <u>February 25, 2019</u>

Specifically, after taking control of DPW, Milton Ault became Chief Executive Officer and Chairman of the Board of DPW.  (Compl. ¶ 4.)  The Aults also purportedly appointed friends and cronies to leadership positions in DPW.  According to the Complaint, the Aults and the other individual Defendants then engaged in a series of questionable transactions that ultimately devastated the economic viability of DPW.  This led to significant losses by DPW, which gave way to the instant lawsuit.

The Court summarizes some of the questionable transactions undertaken by Defendants below.[1]  For example, under the leadership of the Aults, DPW purportedly entered into financing arrangements that saddled DPW with significant short-term liabilities, including large loans secured by DPW's future receipts.  (Compl. ¶ 4.)  During the second half of 2017 and the first quarter of 2018, Defendants Milton C. Ault, William Horne, and Amos Kohn, all three of whom are officers and directors of DPW, caused DPW to raise $6,989,000 in exchange for future receipts of $9,836,900, which constituted a predatory 41% interest rate.  (Compl. ¶ 4.)  Milton Ault and other officers of DPW also caused DPW to issue tens of millions of additional shares of common stock at lower than market price in order to pay off debt.  (Compl. ¶ 5.)  The Board of DPW also permitted the company to funnel millions of dollars into several entities owned by the Aults, such as Avalanche International Corporation, MTIX Limited, and Alzamend Neuro, Inc. (Compl. ¶¶ 7-8, 10.)  Although it did not make financial sense to spend money on these entities, the Aults nevertheless did so.

The Complaint alleges that DPW sought to acquire a majority interest in WSI Industries, Inc. ("WSI") in 2017.  WSI's board responded in a negative fashion, highlighting DPW's questionable transactions and the fact that DPW had made public misstatements about its investments. (Compl. ¶ 12.)

Based on the purported mismanagement of DPW by Defendants, Plaintiffs brought the instant derivative lawsuit against DPW.  Plaintiffs allege causes of action for: (1) breach of fiduciary duty, (Compl. ¶¶ 315-23); (2) unjust enrichment (Compl. ¶¶ 324-27); and (3) gross mismanagement of DPW (Compl ¶¶ 328-332.)   Plaintiffs also argue that they did not make a demand on the Board of DPW prior to bringing this lawsuit because such a demand would have been futile.  (Compl. ¶ 16.)

These proceedings followed.

///
///
///

---

[1]  In the interest of brevity, the Court omits the lion's share of the allegations in Plaintiff's Complaint for purposes of the factual summary in this order.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

CASE NO.: **2:18-cv-6587**　　　　　　　　　　DATE: **February 25, 2019**

II.　　**DISCUSSION**

Defendants move to dismiss Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(6) and 23.1. (*See generally* Mot., ECF No. 24.) As part of its briefing on this Motion, Defendants' also file a Request for Judicial Notice ("RJN"). (*See* ECF No. 26, RJN 1.) Plaintiffs do not object to Defendants' RJN.

The Court begins by addressing the RJN and then turns to the substance of the Motion itself.

　　A.　　Request For Judicial Notice

Federal Rule of Evidence 201(b)(2) permits courts to take judicial notice of facts that are "not subject to reasonable dispute" in that they are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). A court "may take judicial notice of court filings and other matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). A court may also consider "a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *Swartz v. KPMG LLIP*, 476 F.3d 756, 763 (9th Cir. 2007).

Defendants request that the Court take judicial notice of the following:

　　(1)　　DPW's Certificate of Incorporation filed with the Secretary of State of the State of Delaware ("Exhibit A");

　　(2)　　DPW's Amended and Restated Articles of Incorporation, and subsequent amendments thereto, filed with the Secretary of State of the State of California ("Exhibit B");

　　(3)　　The relevant pages from DPW's Form 8-K filed on November 14, 2017 with the SEC ("Exhibit C");

　　(4)　　The relevant pages from DPW's From 10-K filed on April 17, 2018 with the SEC ("Exhibit D");

　　(5)　　The relevant pages from DPW's Form 10-Q filed on August 21, 2017 with the SEC ("Exhibit E");

　　(6)　　The relevant pages from DPW's Form 10-Q/A filed on November 14, 2017 with the SEC ("Exhibit F");

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

**CASE NO.:**   2:18-cv-6587                         **DATE: February 25, 2019**

(7)       The relevant pages from DPW's Form 10-K filed on April 10, 2017 with the SEC ("Exhibit G");

(8)       The relevant pages from DPW's Form 8-K filed on December 8, 2017 with the SEC ("Exhibit H");

(9)       The relevant pages from DPW's Form 8-K/A filed on December 15, 2017 with the SEC ("Exhibit I");

(10)      The relevant pages from DPW's Form 8-K filed on December 8, 2017 with the SEC ("Exhibit J"), ("Exhibit K"), ("Exhibit L");

(11)      The relevant pages from DPW's Form 8-K filed on January 24, 2018 with the SEC ("Exhibit M")

(12)      The relevant pages from DPW's Form 8-K/A filed on December 15, 2017 with the SEC ("Exhibit N", "Exhibit O", "Exhibit P");

(13)      The relevant pages from DPW's Form 8-K/A filed on February 12, 2018 with the SEC ("Exhibit Q");

(14)      The relevant pages from DPW's Form 10-Q filed on August 15, 2016 with the SEC ("Exhibit R");

(15)      The relevant pages from DPW's Form 8-K filed on March 9, 2017 with the SEC ("Exhibit S");

(16)      The relevant pages of DPW's historical stock price published by NASDAQ ("Exhibit S");

(17)      The relevant pages from DPW's Form 8-K filed on June 5, 2017 with the SEC ("Exhibit U", "Exhibit V");

(18)      The relevant pages from DPW's Form 8-K filed on December 4, 2017 with the SEC ("Exhibit W", "Exhibit X");

(19)      The relevant pages from DPW's Audit Committee Charter obtained from its website ("Exhibit Y");

(20)      The relevant pages from DPW's Preliminary Proxy Statement Schedule 14A filed on July 30, 2018 with the SEC ("Exhibit Z");

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

CASE NO.:   2:18-cv-6587                           DATE: **February 25, 2019**

(21)   The relevant pages from DPW's Form 8-K filed on December 15, 2016 with the SEC ("Exhibit AA").

(*See* RJN 1-4.)  Pursuant to Rule 201, the Court takes judicial notice of DPW's SEC filings and the undisputed facts contained therein, as well as all matters of public record, noted as Exhibits B, C, D, E, F, G, H, I, J, K, L, M, N, O, P, Q, R, S, U, V, W, X, Z, and AA.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).  The Court may also take judicial notice of a company's reported stock price history and a company's Certificate of Incorporation in a derivative action.  *See Wilson v. Edison Int'l Inc.*, No. 15-cv-09139, 2016 U.S. Dist. LEXIS 183660, *18 (C.D. Cal. July 6, 2016); *Towers v. Iger*, No. 15-4609, 2017 U.S. Dist. LEXIS 217904, *9 (N.D. Cal. Mar. 10, 2017).  The Court therefore takes judicial notice of Exhibits A and T.  Because Plaintiffs' Complaint references and contains excerpts from DPW's Audit Committee Charter, the Court also takes judicial notice of Exhibit Y.  (*See* Compl. ¶ 64.)

Thus, the Court **GRANTS** Defendants' RJN in its entirety.

B.   Legal Standard For 12(b)(6) and 23.1 Motion To Dismiss

1.   12(b)(6)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of the claims asserted in the complaint."  *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-200 (9th Cir. 2003).  In evaluating a motion to dismiss, a court accepts the plaintiff's factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff.  *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *see Ileto*, 349 F.3d at 1200.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  To plead sufficiently, Plaintiff must proffer "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plausibility requires "more than a sheer possibility that the defendant has acted unlawfully," instead, a claim must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Where a complaint pleads facts that are merely

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority    ____
Send        ____
Enter       ____
Closed      ____
JS-5/JS-6   ____
Scan Only   ____

CASE NO.:   **2:18-cv-6587**                              DATE: **February 25, 2019**

consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (internal quotation marks omitted).

       2.      <u>Demand Futility Under FRCP 23.1</u>

In addition to complying with the requirements of Rule 8, a plaintiff in a shareholder derivative action must also comply with the requirements of Rule 23.1.  *See Forestal v. Caldwell,* 2016 U.S. Dist. LEXIS 191432, *15 (C.D. Cal. Nov. 14, 2016).  "The derivative form of action permits an individual shareholder to bring 'suit to enforce a corporate cause of action against officers, directors, and third parties.'" *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991) (quoting *Ross v. Bernhard*, 396 U.S. 531, 534 (1970).  "Devised as a suit in equity, the purpose of the derivative action was to place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of 'faithless directors and managers.'" *Id.* (quoting *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 548 (1949)).

"A shareholder seeking to vindicate the interests of a corporation through a derivative suit must first demand action from the corporation's directors or plead with particularity the reasons why such demand would have been futile."  *Rosenbloom v. Pyott*, 765 F.3d 1137, 1148 (9th Cir. 2014) (quoting *In Re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 983 (9th Cir. 1999) (citing Fed.R.Civ.P. 23.1)).  "The purpose of this demand requirement in a derivative suit is to implement the basic principle of corporate governance that the decisions of a corporation—including the decision to initiate litigation—should be made by the board of directors of the majority of shareholders."  *Id.* (internal quotations and citations omitted).  Because DPW is incorporated in Delaware, the Court applies Delaware substantive law to the dispute.  (*See* Compl. ¶ 1.).  *See Kamen*, 500 U.S. at 98-99; *Rosenbloom*, 765 F.3d at 1148 ("[T]he substantive law which determines whether demand is, in fact, futile is provided by the state of incorporation of the entity on whole behalf the plaintiff is seeking relief.") (citation omitted)).

Under Delaware law, an exception to the demand requirement applies if the shareholder bringing a derivative suit can show that such a demand would be futile "because the directors are incapable of making an impartial decision regarding whether to institute such litigation."  *Id.*  Here, Plaintiffs failed to make any demand on the board, and therefore must show demand futility in order to have standing to pursue their claims.  *See Forestal*, 2016 U.S. Dist. LEXIS 191432, at *16.

Plaintiffs must state with particularity "the reasons for not obtaining the action or not making the effort."  Fed. R. Civ. P. 23.1(b)(3)(B).  "Because of the extraordinary nature of a shareholder derivative suit, Rule 23.1 establishes stringent conditions for bringing such a suit."  *Forestal*, 2016

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

CASE NO.: **2:18-cv-6587**        DATE: **February 25, 2019**

U.S. Dist. LEXIS 191432, at *16 (citing *Potter v. Hughes*, 546 F.3d 1051, 1058 (9th Cir. 2008) ("[S]trict compliance with Rule 23.1 and the applicable substantive law is necessary before a derivative suit can wrest control of an issue from the board of directors.").

Under Delaware law, demand futility "is gauged by the circumstances existing at the commencement of a derivative suit and concerns the board of directors sitting at the time the complaint is filed." *Rosenbloom*, 756 F.3d at 1148 (internal quotations omitted). The Court determines futility on a case-by-case basis, and "[p]laintiffs are entitled to all reasonable factual inferences that logically flow from the particularized facts alleged." *Id.* However, "conclusory allegations are not considered as expressly pleaded facts of factual inferences." *Id.*

Delaware courts apply the *Aronson* test if the derivative action challenges a particular decision or transaction of the corporation's board of directors. *See Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984); *see Forestal*, 2016 U.S. Dist. LEXIS 191432, at *18-19. Under the *Aronson* test, the plaintiff "must plead particularized facts that create a reasonable doubt that either (1) the directors were disinterested or independent, or (2) the challenged transaction was the product of a valid exercise of business judgment." *See In re Bidz.com, Inc. Derivative Litigation*, 773 F.Supp.2d 844, 851 (C.D. Cal. 2011); *see Aronson*, 473 A.2d at 812. Under the first prong of the *Aronson* test, "a director's interest may be shown by demonstrating a potential personal benefit or detriment to the director as a result of the decision." *Rosenbloom*, 765 F.3d at 1149. Thus, "directors who are sued have a disabling interest for pre-suit demand purposes when the potential for liability may rise to a substantial likelihood." *Id.*

When no particular action of the board is challenged, the "subject of the derivative suit is not a business decision of the Board but rather a violation of the Board's oversight duties." *Wood v. Baum*, 953 A.2d 136, 140 (Del. 2008). Under those facts, the test for demand futility is simply whether the plaintiff has plead particularized facts that "create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Rales v. Blasband*, 634 A.2d 927, 933–34 (Del. 1993). "The disqualifying interest or lack of independence must afflict one half of the board." *Id.* at 933.

The Court ultimately concludes that, in the instant case, demand is excused as futile because Plaintiffs have pled sufficient facts showing that a majority of the Board is not independent or uninterested. However, Plaintiffs have failed to plead the facts necessary to state a claim against Defendants for breach of fiduciary duty, unjust enrichment, and gross mismanagement. Accordingly, the Court dismisses the Complaint under Rule 12(b)(6), but grants Plaintiffs leave to amend the Complaint.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

CASE NO.:  **2:18-cv-6587**                              DATE: **February 25, 2019**


    C.    <u>Application of Demand Futility Standard</u>

The Court begins by addressing whether demand is excused as futile.  Under either the *Aronson* or *Rales* test, Plaintiffs must show that at least three of the six Board Defendants were interested or lacked independence to show that demand was futile.  *See In re INFOUSA S'holders Litig.*, 953 A.2d 963, 989-990 (Del. Ch. 2007) ("Plaintiffs must show that a majority–or in a case where there are an even number of directors, exactly half–of the board was incapable of considering a demand.")

Plaintiffs argue that all of the Director Defendants, including Kohn and Horne, have "longstanding ties to one another," rendering them incapable of considering a demand to commence litigation against themselves and the other Defendants.  However, "[a]llegations of mere personal friendship or a mere outside business relationship, standing alone, are insufficient to raise a reasonable doubt about a director's independence."  *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1048 (Del. 2004) ("[A] plaintiff must plead facts that would support the inference that because of the nature of a relationship or additional circumstances other than the interested director's stock ownership or voting power, the non-interested director would be more willing to risk his or her reputation than risk the relationship with the interested director.").  "Demand is not excused solely because the directors would be deciding to sue themselves."  *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 121 (Ch. Del. 2009).

At the outset, "in the demand futility context, directors are presumed to be independent." *Teamsters Union 25 Health Servs. & Insurance Plan v. Baiera*, 119 A.3d 44, 59 (Del. Ch. 2015).  "Independence means that a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences."  *Id.*  To establish a lack of independence, the Complaint must show that each director is beholden to an interested director or so under their influence that their discretion would be sterilized.  *In re Am. Apparel, Inc.*, No. 14-cv-05230, 2015 U.S. Dist. LEXIS 191466, *41 (C.D. Cal. Apr. 25, 2015).  Under Delaware law, senior corporate officers generally lack independence for purposes of evaluating matters that implicate the interests of a controller.[2]  In those circumstances, a reasonable doubt exists as to

---

    [2]    *Rales*, 634 A.2d at 937 (holding that President and CEO of a corporation could not impartially consider a litigation demand which, if granted, would have resulted in a suit adverse to significant stockholders); *In re The Student Loan Corp. Deriv. Litig.*, 2002 WL 75479, at *3 (Del. Ch. Jan. 8, 2002) ("In the case of [the CEO], to accept such a [litigation] demand would require him to decide to have Student Loan sue Citigroup, an act that would displease a majority stockholder in a position to displace him from his lucrative CEO position."); *Mizel v. Connolly*, 1999 WL 550369, at *3 (Del. Ch. July 22, 1999) (observing that President and CEO of corporation whose position constituted his principal employment

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

CASE NO.: **2:18-cv-6587**  DATE: **February 25, 2019**

whether the officer "can impartially consider a demand" that would involve taking action "materially adverse to [the controller's] interests." *In re Ezcorp Inc. Consulting Agreement Derivative Litig.*, C.A. No. 9962-VCL, 2016 WL 301245 at *35 (Del. Ch. Jan. 25, 2016).

Further, "when a director is employed by or receives compensation from other entities, and where the interested party who would be adversely affected by pursuing litigating controls or has substantial influence over those entities, a reasonable double exists about that director's ability to impartially consider a litigation demand." *Id.* See *Rales*, 634 A.2d at 937 (finding reasonable doubt of director's independence where director was "beholden to the [controlling stockholders] in light of his employment" at another company where controlling stockholders were directors and owned a majority of the stock); *Beam ex rel Martha*, 833 A.2d at 978 (finding executive employee of one of Martha Stewart's companies beholden to Stewart and thus incapable of impartiality as to a demand); *Kahn v. Tremont Corp.*, 1994 WL 162613, *2 (Del. Ch. Apr. 21, 1994) (finding reasonable doubt existed as to whether directors who served as officers of controller's affiliates could consider a litigation demand).

The Court now turns to whether Plaintiffs alleged sufficient facts showing that Defendants T. Ault, Horne, and Kohn, DPW's CEO, CFO, and President, respectively, are independent and uninterested. If so, Defendants did not need to raise a demand with the Board prior to bringing the instant lawsuit.

---

was not independent for demand-futility purposes where underlying transaction was between corporation and its controller); *Steiner v. Meyerson*, 1995 WL 441999, at *10 (Del. Ch. July 19, 1995) ("The facts alleged appear to raise a reasonable doubt that Wipff, as president, chief operating officer, and chief financial officer, would be unaffected by [the CEO and significant "tockholder's interest] in the transaction that the plaintiff attacks."); see *Bakerman v. Sidney Frank Imp. Co.*, 2006 WL 3927242, at *9 (Del. Ch. Oct. 10, 2006) (holding that reasonable doubt existed as to ability of insider managers of LLC to address a litigation demand focusing on the entity's controllers); *see also MCG Capital Corp. v. Maginn*, 2010 WL 1782271, at *20 (Del. Ch. May 5, 2010) ("There may be a reasonable doubt about a director's independence if his or her continued employment and compensation can be affected by the directors who received the challenged benefit.:); *In re Cooper Co., Inc. S'holders Deriv. Litig.*, 2000 WL 1664167, at *6 (Del. Ch. Oct. 31, 2000) (finding reasonable doubt existed as to ability of two directors, one of whom was also CEO and Treasurer and the other who was also Vice President and General Counsel, to consider litigation demand addressing actions by other directors).

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority       _____
Send           _____
Enter          _____
Closed         _____
JS-5/JS-6      _____
Scan Only      _____

CASE NO.:   <u>2:18-cv-6587</u>                    DATE: <u>February 25, 2019</u>

      a.    <u>Defendant T. Ault Is An Interested Party</u>.

Neither party denies that Defendant T. Ault is an interested party. (Compl. 108-09; Opp. 15.) The Complaint cites numerous transactions in which T. Ault's interests, financial or otherwise, are at stake if liability were imposed. The Court agrees and concludes that T. Ault is an interested party and not independent for the purposes of the demand.

      b.    <u>Horne Is Not Independent</u>.

The Court concludes that Horne is not independent or uninterested. According to the Complaint, Defendant Horne is the CFO of both DPW and AVLP, as well as AVLP's audit committee chairman. (Compl. ¶ 101.) Defendant T. Ault, already deemed an interested party in this case, is Chairman of the Board at AVLP. (Compl. ¶ 127.) Plaintiffs allege that DSW has invested enough money in AVLP to own 83.8% of the company, and its various investments of millions of dollars to fund AVLP directly benefit both T. Ault and Horne. (Compl. ¶ 120.) Plaintiffs assert that DPW's investments in AVLP are speculative, that AVLP's common stock is "thinly-traded with no volume at all," and AVLP has already defaulted on several loans to other outside lenders. (Compl. ¶ 112.) Further, DPW has a 3-year, $50 million purchase order from MTIX, a company owned by AVLP, but has yet to receive "any cash at all" from the order. (Compl. ¶ 126.) Plaintiffs argue that Horne, as CFO of both DPW and AVLP, knew or should have known that MTIX "does not have the resources" to fund the purchase order and that it was unlikely the order would ever be fulfilled. (Compl. ¶ 126.) DPW has also provided loans to AVLP in the principal amount of $5,584,000, and, in addition to other transactions, AVLP has issued warrants to DPW to purchase over 11 million shares of AVLP common stock. (*See generally* Compl. 47-52.)

On balance, these facts generate a reasonable doubt as to Horne's ability to consider a demand, which may require taking action materially adverse to AVLP and T. Ault's interests. As CFO of AVLP, Horne is beholden to both T. Ault, as Chairman of the Board, and AVLP's shareholders. As both a controlling shareholder of DPW and a director of AVLP, T. Ault clearly has substantial influence over Horne's employment at both companies, and Horne may feel strongly subject to T. Ault's dominion. Additionally, the Court doubts that Horne could consider a demand on its merits without also considering the adverse consequences an affirmative vote could have on the millions of dollars worth of transactions and investments between DPW and AVLP that has allegedly supported AVLP's operations. A decision by the Board to bring suit against T. Ault could have potentially significant consequences for Horne in relation to his continued employment at both DPW and AVLP. Thus, there is a reasonable doubt that Horne can be expected to act independently considering his substantial financial stake in maintaining his current offices.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

CASE NO.:  2:18-cv-6587                              DATE: **February 25, 2019**

The Court therefore concludes that Defendant Horne is interested and not independent for the purpose of considering Plaintiffs' demand.

        c.        <u>Kohn Is Not Independent</u>.

The Court also concludes that Kohn is not independent or uninterested. Kohn is DPW's President and CEO of the Company's subsidiary, Coolisys Technologies, Inc. (Compl. ¶ 39.) Because Kohn is a senior corporate officer of DPW, doubts likewise exist as to whether he can impartially consider a demand that would involve taking action materially adverse to a controller's interests. T. Ault is a controlling shareholder of DPW and a director of Coolisys, and thus Kohn may be beholden to T. Ault's interests and Kohn's own financial interest in maintaining his offices at both companies. Although Kohn's employment alone does not render him independent, *see Forestal*, 2016 U.S. Dist. LEXIS 191432, at * 21, his own conduct as alleged in the Complaint is likely to subject him to liability.

A director is considered incapable of impartially considering a demand when he or she faces a "'**substantial likelihood** of director liability." *Silicon Graphics*, 183 F.3d at 970; *See Rales*, 634 A.2d at 936 ("[i]n such circumstances, a director cannot be expected to exercise his or her independent business judgment without being influenced by the adverse personal consequences from the decision."). Defendants argue that the Certificate of Incorporation's exculpatory provision exempts the directors from monetary liability for a breach of their fiduciary duties. Plaintiffs counter that corporate officers, including Kohn, are not exempt from fiduciary liability by an exculpatory provision under Delaware law.

The Court agrees with Plaintiffs, noting that officers are not excused from liability for a breach of their fiduciary duties **acting in their capacity as officers**. 8 Del. § 102(b)(7) (authorizing "a provision eliminating or limiting the personal liability of a director to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director"); *see Chen v. Howard-Anderson*, 87 A.3d 648, 686 (Del. Ch. 2014) (holding that an officer serving as CEO and director was liable for breach of fiduciary duty after the plaintiff assembled evidence sufficient to support a claim against him while acting in his capacity as an officer). However, the facts alleged support a substantial likelihood that Kohn is liable for a breach of his duty of good faith, a determination unaffected by the applicability of the exculpatory provision. *See Forestal*, 2016 U.S. Dist. LEXIS 191432, at *22 (both corporate officers and exculpated directors are held liable for a breach of the duty of loyalty, bad faith conduct, intentional misconduct, or knowing violations of the law).

"A failure to act in good faith may be shown, for instance, where the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation." *Stone v. Ritter*, 911

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

CASE NO.:  2:18-cv-6587                                    DATE: **February 25, 2019**

A.2d 362, 369 (Del. 2006); *see In re RJR Nabisco, Inc. S'holders Litig.*, 1989 WL 7036, at *15 (Del. Ch. Jan. 31, 1989) (a fiduciary acts with bad faith when they could be "shown to have caused a transaction to be effectuated (even one in which he had no financial interest) for a reason unrelated to a pursuit of the corporation's best interests").  Delaware courts have also found that because "shareholders are entitled to honest communication from directors, given with complete candor and good faith," directors who issue false and misleading statements to shareholders "face a significant likelihood of personal liability . . . and may be considered to be interested for purposes of demand."  *In re INFOUSA*, 953 A.2d at 991.  "Communications that depart from this [honest] expectation, particularly where it can be shown that the directors involved issued their communication with the knowledge that it was deceptive or incomplete, violate the fiduciary duties that protect shareholders."  *Id.* at 990.

Plaintiffs allege that Kohn purchased a $300,000 property in Israel using the Company's funds.  (Compl. ¶ 184.)   A November 14, 2017 Form 8-K stated that the property would "serve as a facility for the Company's business operations." (Compl. ¶ 184.)  However, five months after the property was purchased, auditors flagged the transaction, causing the Company to disclose that Kohn had instead gifted the property to his daughter. (Compl.  ¶ 187.)  The Company further "did not make Kohn's daughter pay for the house or otherwise undo this unfair transaction."  (Compl. ¶ 187.)

Although the mere threat of personal liability is insufficient to render a director interested in a transaction, the purported willingness of Kohn to materially misrepresent the nature of the benefits provided to his daughter until an audit revealed the discrepancy strikes the Court as egregious enough to render Kohn likely to face personal liability.  Plaintiffs plead particularized facts demonstrating a substantial likelihood that Kohn is liable for his conscious failure to disclose a transaction which directly benefitted a family member.  At the very least, the Complaint gives rise to a reasonable inference that the Company's failure to include the subsequent events and transactions surrounding the "gifting" were the result of selective omissions by Kohn and others.  In sum, Kohn holds senior officer positions at two companies at which T. Ault has considerable influence and used $300,000 of DPW funds to purchase a house in Israel for personal use completely unrelated to the Company's business endeavors.  In light of these circumstances, the Court concludes that Kohn is incapable of impartiality to consider Plaintiffs' demand.

The Court concludes that the Complaint alleges sufficient facts showing that three of the six directors are not independent or uninterested.  The Court therefore excuses demand as futile.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority　　　\_\_\_\_\_
Send　　　　 \_\_\_\_\_
Enter　　　　\_\_\_\_\_
Closed　　　 \_\_\_\_\_
JS-5/JS-6　　\_\_\_\_\_
Scan Only　　\_\_\_\_\_

CASE NO.:  <u>2:18-cv-6587</u>                          DATE: <u>February 25, 2019</u>

      D.      <u>First Cause of Action: Breach of Fiduciary Duty</u>

The Court now turns to whether Plaintiffs have plead sufficient facts to state a claim against the directors for breach of fiduciary duty. "When determining whether directors have breached their fiduciary duties, Delaware corporate law distinguishes between the standard of conduct and the standard of review." *In re Trados, Inc. S'holder Litig.*, 73 A.3d 17, 35 (Del. Ch. 2013). The standard of conduct dictates what directors are expected to do and is defined by the content of the duties of loyalty and care. *See id.* "The standard of review is the test that a court applies when evaluating whether directors have met the standard of conduct" and describes "what a plaintiff must first plead and later prove to prevail." *Id.* at 36. Under Delaware law:

> [T]he standard of review depends initially on whether the board members (I) were disinterested and independent (the business judgment rule), (ii) faced potential conflicts of interest because of the decisional dynamics present in particular recurring and recognizable situations (enhanced scrutiny), or (iii) confronted actual conflicts of interest such that the directors making the decision did not comprise a disinterested and independent board majority (entire fairness).

*Id.* In the instant case, Plaintiffs' first claim is generally plead as against "the Individual Defendants." (Compl. ¶ 315.) The Complaint alleges that, collectively, Defendants breached their duties of loyalty, care, and good faith by: (i) failing to act in the best interest of the Company; (ii) participating in transactions for the benefit of the Individual Defendants that harmed the Company; (iii) mismanaging the Company's finances; (iv) failing to implement and maintain a system of effective internal controls and procedures; (v) failing to adhere to the Company's applicable Code of Ethics; (vi) improperly awarding themselves generous and excessive compensation; and (vii) permitting the Company to issue materially false and misleading financial statements and other SEC filings. (Compl. ¶ 317.)

The Court finds that Plaintiffs' claim, as plead, is too broad to definitively support the application of a specific standard of review in relation to Defendants' alleged conduct. Further, Defendants contend that the claims for breach of the fiduciary duty of care against the Directors are barred because an exculpatory charter provision exempts their liability. (Mot. to Dismiss 3.) Plaintiffs argue that the exculpatory provision does not apply to Defendants T. Ault, Horne, and Kohn as corporate officers, and the Complaint is "filled with allegations" of non-exculpated claims against the officer-directors and the remaining members of the Board. (Opp. 17.) As with the demand futility analysis, the Court agrees with Plaintiffs regarding the applicability of the exculpatory provision as to Defendants T. Ault, Horne, and Kohn acting in their officer capacities. *See* 8 Del. § 102(b)(7) (exempting directors from liability for a breach of the duty of care but providing no such exemption for officers). However, the Court concludes that Plaintiffs' allegations are insufficiently plead.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority \_\_\_\_\_
Send \_\_\_\_\_
Enter \_\_\_\_\_
Closed \_\_\_\_\_
JS-5/JS-6 \_\_\_\_\_
Scan Only \_\_\_\_\_

CASE NO.: **2:18-cv-6587**           DATE: **February 25, 2019**

The exculpatory provision prevents the Board of Directors from being held liable for monetary damages due to a breach of fiduciary duty. *See Forestal*, 2016 U.S. Dist. LEXIS 191432, at *21. Their personal liability is limited to "breaches of loyalty, bad faith conduct, intentional misconduct, knowing violations of the law," or for any transaction from which the director derived an improper personal benefit. *Id.* See 8 Del. § 102(b)(7); *see Chen*, 87 A.3d at 676 ("The totality of these limitations or exceptions is to eliminate director liability only for duty of care violations.") (internal quotations and citation omitted).

In the instant case, Plaintiffs must therefore plead a non-exculpated claim for a breach of fiduciary duty against each independent director protected by an exculpatory charter provision, or that director will be entitled to be dismissed from the suit. *See In re Cornerstone Therapeutics, Inc. Stockholder Litig.*, 115 A.3d 1173, 1179 (Del. 2015). "That rule applies regardless of the underlying standard of review for the transaction." *Id.* "**The liability of the directors must be determined on an individual basis because the nature of their breach of duty (if any), and whether they are exculpated from liability for that breach, can vary for each director**." *In re Emerging Communications Inc. S'holders Litig.*, 2004 WL 1305745, at *38 (Del. Ch. Jun.4, 2004).

The Court concludes that Plaintiffs have failed to plead sufficient facts for the Court to effectively analyze each individual directors' liability. Directors and officers T. Ault, William B. Horne, and Amos Kohn are not protected by the exculpatory provision while acting in their capacities as CEO, CFO, and President, respectively. Here, the independent directors protected by the exculpatory charter provision are Defendants Robert O. Smith, Mordecai "Moti" Rosenberg, and Jeff Bentz. However, the Complaint fails to separately plead specific claims for a breach of fiduciary duty against each of these individual directors. Further, Plaintiffs do not allege specific facts demonstrating a breach of loyalty, bad faith conduct, intentional misconduct, knowing violations of the law, or an improper personal benefit derived from a transaction attributed to each, or any, of the exculpated directors which would implicate liability. In fact, the entirety of the 114-page Complaint only specifically references Smith, Rosenberg, and Bentz to indicate their professional backgrounds, positions on the Board or other committees, and their compensation or stock options. (*See generally* Compl.)

The majority of the Complaint alleges specific instances of misconduct against Defendants T. Ault, K. Ault, Horne, and Kohn. The only facts that would implicate any liability against Defendants Smith, Rosenberg, and Bentz are those actions Plaintiffs allege were taken by "the Company" or the committees on which those Defendants were apart, including "the Compensation Committee,""the Audit Committee," or "the NG Committee." (*See* Compl. 19-20, 32-109.) Even if Plaintiffs successfully plead facts to support a breach of fiduciary duties against these collective entities, it is impossible for the Court to determine the nature of the liability as to each of the individual directors acting within "the Company" or specific committee. Although the Complaint may contain sufficient facts to support a breach of fiduciary duties as to Defendants

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority    ____
Send        ____
Enter       ____
Closed      ____
JS-5/JS-6   ____
Scan Only   ____

CASE NO.:  2:18-cv-6587                            DATE: **February 25, 2019**

T. Ault, Horne, and Kohn, the Court does not further address the merits of these claims because Plaintiffs only plead a breach of fiduciary duties against the "Individual Defendants" as a whole. (*See* Compl. 109-111.)

Thus, the Court **GRANTS** Defendants' Motion and dismisses Plaintiffs' first cause of action for failure to state a claim **with leave to amend**.

    E.    Second And Third Causes of Action: Unjust Enrichment and Gross Mismanagement

Plaintiffs' remaining claims derive from the first cause of action. Thus, the Court concludes that Plaintiffs' Unjust Enrichment and Gross Mismanagement claims likewise fail to state a claim under Rule 12(b)(6).

The Court **GRANTS** Defendants' Motion as to Plaintiffs' second and third causes of action.

III.    RULING

For the foregoing reason, the Court **GRANTS** Defendants' Motion and **DISMISSES** Plaintiffs' Complaint **WITH LEAVE TO AMEND**. Plaintiffs have **fourteen (14) days** from the date of this Order to file a First Amended Complaint. Defendants have **fourteen (14) days** thereafter to respond.

IT IS SO ORDERED.