Robert Volynsky, Esq. (SBN 310600)
Email: rvolynsky@srf.law
Sichenzia Ross Ference LLP
1185 Avenue of the Americas, 37th Floor
New York, New York 10036
Telephone: (212) 930-9700
Facsimile: (212) 930-9725

Arash Shirdel, Esq. (SBN 247754)
Email: ashirdel@pacificpremierlaw.com
Pacific Premier Law Group
200 Sandpointe Avenue, Suite 500
Santa Ana, California 92707
Telephone: (949) 629-3690
Facsimile: (949) 313-0995

*Attorneys for Defendants and
Nominal Defendant*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ETHAN YOUNG and GREG YOUNG, Derivatively on Behalf of Nominal Defendant, DPW HOLDINGS, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> MILTON C. AULT III, AMOS KOHN WILLIAM B. HORNE, JEFF BENTZ, MORDECHAI ROSENBERG, ROBERT O. SMITH, and KRISTINE AULT, <br><br> Defendants, <br><br> and <br><br> DPW HOLDINGS, INC., <br><br> Nominal Defendant. | Case No. 2:18-cv-6587 (SJO) (PLA) <br><br> **NOTICE OF MOTION TO DISMISS THE AMENDED DERIVATIVE COMPLAINT PURSUANT TO FRCP 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Judge:  Hon. S. James Otero <br><br> Date:  **May 6, 2019** <br> Time:  **10:00 a.m.** <br> Courtroom:  **350 West 1st Street Courtroom 10C Los Angeles, CA 90012** <br><br> **[Motion to Dismiss and Volynsky Declaration Concurrently Filed]** |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 6, 2019, at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 10C, located at the United States District Court, 350 West 1st Street, Los Angeles, California 90012, the Honorable S. James Otero presiding, Defendants Milton C. Ault, III, Amos Kohn, William B. Horne, Jeff Bentz, Mordechai Rosenberg, Robert O. Smith, and Kristine Ault, as well as Nominal Defendant DPW Holdings, Inc., will move and hereby do move to dismiss Plaintiffs' First Amended Verified Shareholder Derivative Complaint pursuant to Federal Rules of Civil Procedure Rule 12(b)(6) for failure to state a claim.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, and Declaration of Robert Volynsky, the anticipated reply papers, all matters that may be properly considered in connection with this motion, and oral argument at the hearing.

As set forth in detail in the accompanying Declaration of Robert Volynsky, pursuant to Local Rule 7-3, the parties met and conferred regarding this Motion on March 21, 2019.

Dated:  March 25, 2019

SICHENZIA ROSS FERENCE LLP

By:   /s/ *Robert Volynsky*
ROBERT VOLYNSKY (SBN 310600)
Attorneys for Defendants Milton Ault, Amos Kohn, William Horne, Jeff Bentz, Mordechai Rosenberg, Robert Smith and Kristine Ault, and Nominal Defendant DPW Holdings, Inc.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... ii

I.     PRELIMINARY STATEMENT ...................................................1

II.     LEGAL STANDARD .................................................................1

III.     ARGUMENT................................................................................3

       A.     The Court Should Dismiss the Breach of Fiduciary
            Duty of Care Claims................................................................3

           i.     Claims Against Smith, Rosenberg, and Bentz............................3

               1.     Claims Based on Internal Control Deficiencies ..............5

                    a.     The Directors Evaluate and Work to Improve
                         DPW's Internal Controls........................................7

                    b.     DPW's Code of Ethics Does Not Define Standards
                         For Purported Breaches of Fiduciary Duties..........8

               2.     Claims Based on Stock Issuances....................................8

               3.     Claims Based on Compensation Awarded .....................10

               4.     Claims Based on the Future Receipts Agreements ........12

           ii.     Claims Against K. Ault....................................................14

           iii.     Claims Against Horne......................................................16

           iv.     Claims Against Kohn.......................................................18

       B.     The Court Should Dismiss the Unjust Enrichment Claims.................18

IV.     CONCLUSION ........................................................................20

# <u>TABLE OF AUTHORITIES</u>

Cases

Bell Atlantic Co. v. Twombly,
    550 U.S. 544 (2007)......................................................................................... 1

Bodell v. General Gas & Elec. Corp.,
    140 A. 264 (Del. 1927)..................................................................................... 9

Brehm v. Eisner,
    746 A.2d 244 (Del. 2000) ................................................................................ 11

Calma v. Templeton,
    114 A.3d 563 (Del. Ch. 2015) ......................................................................... 19

City of Birmingham Ret. & Relief Sys. v. Good,
    177 A.3d 47 (Del. 2017).................................................................................... 6

Friedman v. Dolan,
    No. 9425, 2015 Del. Ch. LEXIS 178 (Del. Ch. June 30, 2015)........................... 11

In re Bidz.com, Inc. Deriv. Litig.,
    773 F.Supp.2d 844 (C.D. Ca. 2011) ............................................................. 10, 11

In re Galena Biopharma, Inc. Deriv. Litig.,
    83 F.Supp.3d 1047 (D. Or. 2015) ...................................................................... 8

In re Inv'rs Bancorp, Inc. Stockholder Litig.,
    177 A.3d 1208 (Del. 2017)................................................................................ 20

In re Oracle Deriv. Litig.,
    No. 2017-0337, 2018 Del. Ch. LEXIS 92
    (Del. Ch. Mar. 19, 2018) ................................................................................. 14

In re Trados., Inc. S'holder Litig.,
    73 A.3d 17 (Del. Ch. 2013) ............................................................................. 17

JLL Consultants, Inc. v. Gothner,
    558 B.R. 116 (Bankr. D. Del. 2016).................................................................. 11

Laborers' Local v. Intersil,
        868 F.Supp.2d 838 (N.D. Ca. 2012) .................................................. 11

Mandalevy v. BofI Holding, Inc.,
        No. 17-cv-00667, 2018 U.S. Dist. LEXIS 102561 (S.D. Ca. June 19, 2018) ........ 8

MCG Capital Corp. v. Maginn,
        No. 4521, 2010 Del. Ch. LEXIS 87 (Del. Ch. May 5, 2010) ........................... 19

Moran v. Household Int'l, Inc.,
        490 A.2d 1059 (Del. Ch. 1985) .................................................. 11, 12

Nelson v. Emerson,
        No. 2937, 2008 Del. Ch. LEXIS 56 (Del. Ch. May 6, 2008) ........................... 11

NY Capital Asset Corp. v. F&B Fuel Oil Co.,
        No. 58499/2017, 2018 N.Y. Misc. LEXIS 786
        (Sup. Ct. West. Co. Mar. 8, 2018) ........................................ 13

Okla. Firefighters Pension & Ret. Sys. v. Corbat,
        No. 12151, 2017 Del. Ch. LEXIS 848 (Del. Ch. Dec. 18, 2017) ..................... 5, 6

Oliver v. Boston Univ.,
        No. 16570, 2006 Del. Ch. LEXIS 75 (Del. Ch. Apr. 14, 2006) ......................... 10

Rich ex. rel. Fuqi Int'l, Inc. v. Chong,
        66 A.3d 963 (Del. Ch. 2013) ............................................ 5, 6

Savin Bus. Machs. Corp. v. Rapifax Corp.,
        No. 5331, 1978 Del. Ch. LEXIS 725 (Del. Ch. Feb. 15, 1978) ......................... 10

Teamsters Union 25 Health Servs. & Ins. Plan v. Baiera,
        119 A.3d 44 (Del. Ch. 2015) ........................................ 17

Towers v. Iger,
        No. 15-cv-4609, 2017 U.S. Dist. LEXIS 217904
        (N.D. Ca. Mar. 10, 2017) .................................................. 2

Wilkinson Floor Covering, Inv. v. Cap Call, LLC,
    No. 160256/2016, 2018 N.Y. Misc. LEXIS 1845
    (Sup. Ct. N.Y. Co. May 16, 2018)........................................................ 13

Wood v. Baum,
    953 A.2d 136 (Del. 2008)............................................................ 14, 17


Statutes/Rules

Fed. R. Civ. P. 12(b)(6).................................................................... 1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   PRELIMINARY STATEMENT

In sum and substance, the Amended Complaint is a regurgitation of Plaintiffs' original Complaint – riddled with conclusory allegations and lacking specific conduct attributed to specific directors – that the Court had dismissed for failing to assert specific allegations based on each individual director's conduct. [DE 42] (the "Order").[1]  Despite the Court's finding that, *inter alia*, the exculpatory charter provision shields, at minimum, Smith, Rosenberg and Bentz; its directive to plead non-exculpated claims against Smith, Rosenberg and Bentz; and its criticism towards Plaintiffs for amalgamating individual defendants together rather than alleging individualized claims against each individual defendant, the Amended Complaint contains little to no material modifications.  Indeed, the only substantive changes in the Amended Complaint are found in Paragraphs 318-320, 327-329, and 336, wherein Plaintiffs repeatedly assert the same allegations and claims that the Court had rejected as too vague and too remote to withstand a motion to dismiss.

Accordingly, and for the reasons below, the Court should dismiss the Amended Complaint.

## II.   LEGAL STANDARD

The Court must dismiss a complaint when it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In analyzing a motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face" and "raise [that] right to relief above the speculative level." *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  "Plausibility requires 'more than sheer possibility that the defendant has acted unlawfully,' instead, a claim must contain 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[1] In the interest of brevity, unless otherwise set forth herein, the defined terms herein have the same meaning ascribed to them in the original Motion to Dismiss [DE 24].

misconduct alleged.'"  [Order at p. 5 *citing Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)].
Specifically, where, as here, "a complaint pleads facts that are merely consistent with a
defendant's liability, it stops short of the line between possibility and plausibility of
entitlement to relief."  *Id.*  Courts "must [also] consider the complaint in its entirety, as
well as other sources courts ordinarily examine on [] motions to dismiss, in particular,
documents incorporated by reference, and matters of which a court may take judicial
notice."  *Towers v. Iger*, No. 15-cv-4609, 2017 U.S. Dist. LEXIS 217904, *9 (N.D. Ca.
Mar. 10, 2017).[2]  Additionally, and as the Court noted in its Order, when determining
whether directors have breached their fiduciary duties, Delaware law "distinguishes
between the standard of conduct and the standard of review."  (Order, p. 13).  "[T]he
standard of review is the test that a court applies when evaluating whether directors have
met the standards of conduct."  (*Id.*, *citing In re Trados., Inc. S'holder Litig.*, 73 A.3d 17,
35 (Del. Ch. 2013)).  The Court specifically articulated that: "[t]he standard of review
depends initially on whether the board members (i) were disinterested and independent
(the business judgment rule), (ii) faced potential conflicts of interest because of the
decisional dynamic present in particular recurring and recognizable situations (enhanced
scrutiny), or (iii) confronted actual conflicts of interest such that the directors making the
decision did not comprise a disinterested and independent board majority (entire
fairness)."  *Id.*

Applying this standard, the Amended Complaint fails to assert viable claims
against each individual defendant.

---

[2] The Court had previously taken judicial notice of documents submitted with
Defendants' original motion to dismiss.  (Order at pp. 3-5).  Defendants submit certain of
the judicially noticed documents, with their original exhibit identifiers, as exhibits to the
contemporaneously filed Declaration of Robert Volynsky (the "Volynsky Decl.").

## III.  ARGUMENT

### A.  The Court Should Dismiss the Breach of Fiduciary Duty of Care Claims

Initially, the Court should dismiss the breach of fiduciary duty of care claims asserted against the individual directors – for actions taken in their director capacity – because they are barred by exculpatory charter provisions and there are no allegations demonstrating bad faith by the individual directors.

Specifically, the Court had already determined that Smith, Rosenberg and Bentz are independent directors, who are protected by DPW's exculpatory charter provision (Order, at p. 14), and the Amended Complaint does not supplement any facts that would change this prior determination.  Similarly, although the exculpatory clause does not protect officers, the Amended Complaint's allegations and claims, with limited exceptions, are based on conduct undertaken by Ault, Horne and Kohn as directors – not officers.  Indeed, with respect to Horne, all claims against him prior to January 25, 2018, the date that he became an officer, are purely based on his role as a director, and there are no allegations concerning any action that Horne took *as an officer* in the Amended Complaint.  So too, K. Ault was never an officer; therefore, any alleged conduct by her occurred in her capacity as a director.  She also ceased being a director on January 23, 2018 (being replaced by Bentz), so it is factually impossible for any claim to arise against her based on allegations that took place after January 23, 2018.

Moreover, for the additional reasons demonstrated below, the Court should dismiss the breach of fiduciary duty of care claims.

#### i.  Claims Against Smith, Rosenberg and Bentz

At the outset, the Court should dismiss the extraneous cause of action for breach of fiduciary duty asserted against Smith, Rosenberg and Bentz because it is based exclusively upon purported actions by these individuals in their corporate committee roles.  The Court had expressly stated in its Order that "[t]he only facts that would implicate any liability against Defendants Smith, Rosenberg and Bentz are those actions Plaintiffs allege were taken by 'the Company' or the committees on which those

---

Defendants were apart, including 'the Compensation Committee,' 'the Audit Committee,' or 'the NG Committee'" and that such lack of specificity rendered it "impossible for the Court to determine the nature of the liability as to each of the individual directors acting within 'the Company' or specific committee." (Order, p. 14). Notwithstanding, the Amended Complaint disregards this principle and injects *even more* allegations about Smith, Rosenberg and Bentz acting within their roles on their respective committees.

For example, as against Smith, the Amended Complaint asserts that he "is the chairperson of the Audit Committee and a member of the Compensation Committee and NG Committee" and thereafter qualifies each and every alleged breach of fiduciary duty claim based on these roles. (Am. Compl. ¶328). Specifically,

> **As a member of the NG Committee**, Smith breached his fiduciary duties loyalty (sic) and good faith by permitting the Officer/Director schemes to continue unabated and failing to report the wrongdoing to the public or to the appropriate authorities. **As a member of the Compensation Committee**, Smith breached his duty of loyalty and acted in bad faith by reviewing, recommending and/or approving the Officer/Director Defendants (sic) excessive compensation while the Company was cash starved. **As the chairperson of the Audit Committee** . . . . Smith breached his fiduciary duties of loyalty and good faith, and his duties pursuant to the Audit Committee Charter, by approving the statements described herein which were made during his tenure on the Audit Committee . . . . (*Id.* (emphasis added)).

The Amended Complaint made near identical allegations against Rosenberg and Bentz utilizing the same language and allegations – often merely replacing Smith's name with either Rosenberg or Bentz. (*See id*. ¶¶329-330, *compare*, ¶328). Plaintiffs engaged in such cut-n-paste pleading despite the fact (as earlier acknowledged in the Amended Complaint), that Bentz did not become a director of DPW until January 24, 2018 and he had no involvement with any of the identified transactions that occurred prior to that date.

(*See id*. ¶¶46, 187).  These allegations, on their face, are patently insufficient as they make plain that the entirety of Plaintiffs' claims are premised upon Smith, Rosenberg and Bentz's actions as directors, and more narrowly, as members of a "specific committee."

Indeed, the Amended Complaint does not contain any allegations as to whether Smith, Rosenberg or Bentz (or the other individual directors) considered any proposed transaction, how they failed to make an informed business decision, how they acted in bad faith with respect to a particular transaction or how they failed to fulfill their individual duties as a director for any transaction.  (*See generally*, Am. Compl.).  Thus, the Amended Complaint does not provide any grounds to implicate any of the three standards of review articulated by the Court in its Order: the business judgment rule, enhanced scrutiny, or entire fairness.

Moreover, as shown below, the alleged transactions or occurrences that serve as the foundation for the breach of fiduciary duty of care claims are similarly deficient.

### 1.   *Claims Based on Internal Control Deficiencies*

The Amended Complaint fuses its prior claims relating to internal controls and DPW's Code of Ethics by asserting that the Directors breached their fiduciary duties by failing to maintain proper internal controls, thereby violating DPW's Code of Ethics and causing DPW to file misleading financial statements and other filings with the U.S. Securities and Exchange Commission ("SEC").  (Am. Compl. ¶¶203, 253, 317 (Ault, Kohn and Horne), ¶327 (Smith, Rosenberg and Bentz)).

In *Rich ex. rel. Fuqi Int'l, Inc. v. Chong*, the Court held that a claim based on a breach of fiduciary duty arising from an alleged failure to institute and maintain adequate internal controls over the company's accounting and financial reporting is a claim known colloquially as a *Caremark* claim.  66 A.3d 963, 981 (Del. Ch. 2013).  "*Caremark* provides that if directors have failed to put in place any system whereby they may be made aware of and oversee corporate compliance with law, they may be liable." *Okla. Firefighters Pension & Ret. Sys. v. Corbat*, No. 12151, 2017 Del. Ch. LEXIS 848, *3 (Del. Ch. Dec. 18, 2017).  An example of a director failing to put in place any such

systems would be a corporation lacking an audit committee or the directors not utilizing the audit committee.  *See Rich,* 66 A.3d at 981.  "Conversely, where the board has an oversight system in place, but nonetheless fails to act to promote compliance, the directors may be liable, but only where their failure to act represents a non-exculpated breach of duty."  *Okla. Firefighters*, 2017 Del. Ch. LEXIS 848, *3.  *"To imply director liability, the response of the directors must have been in bad faith.  The inaction must suggest, not merely inattention, but actual scienter."  *Id.* at *4.  "Bad faith may be inferred where the directors knew or should have known that illegal conduct was taking place, yet took *no steps* in a good faith effort to prevent or remedy the situation."  *Id.* at *55.  "[A] *Caremark* claim is possibly the most difficult theory in corporation law upon which a plaintiff might hope to win judgment."  *City of Birmingham Ret. & Relief Sys. v. Good*, 177 A.3d 47, 55 (Del. 2017).

Initially, Plaintiffs concede that the Directors satisfied *Caremark*'s first prong because they had put in place a system to be aware of, and oversee, corporate compliance: DPW's Audit Committee.  (Am. Compl. ¶64).  The Amended Complaint, however, alleges that DPW's internal controls failed because, on November 14, 2017, DPW announced that it was restating its Form 10-Q for the period ending June 30, 2017. (*Id.* ¶¶181-184).  The Directors did not sit idly by when this occurred.  On the same day, they corrected the disclosure and caused an amended Form 10-Q to be filed.  (*Id.* ¶¶184-188).  Moreover, when DPW's auditor brought the issue to the Directors' attention, the Audit Committee "conducted an independent review and subsequently determined that [DPW] had misclassified its investment in real property as a current asset and omitted certain subsequent event disclosures." (Volynsky Decl. Ex. C at Item 4.02).  Thus, the Audit Committee took action when a red flag was presented.  No lawsuits were filed against DPW by any investor based on the restatement.  (*See id.* Ex. D at p. 42 (Item 3)). At the time DPW filed its original and amended Form 10-Q, Kohn was the Company's President, CEO, CFO, and Principal Accounting Officer.  (*Id.* Ex. E at p. 45 and Ex. F at p. 48).

*a.*      *The Directors Evaluate and Work to Improve DPW's Internal Controls*

When DPW filed the amended Form 10-Q, it disclosed that "the Board has been actively engaged in developing a remediation plan to address ineffective controls." (Am. Compl. ¶197).  Subsequently, on April 17, 2018, DPW filed its 2017 Form 10-K, which discussed the Board's efforts, to date, to improve DPW's internal controls and its "Planned Remediation." (Volynsky Decl. Ex. D at p. 60).  DPW disclosed that, until it hired a new CFO, its Audit Committee Chairman would: i) assist with the documentation and implementation of policies and procedures for monitoring of controls; and ii) review all anticipated transactions, which were not considered in the ordinary course of business, to assist in the early identification of accounting issues and ensure that appropriate disclosures are made in DPW's financial statements. (*Id.*).  Smith was the Audit Committee Chairman, had extensive experience in the accounting industry, and qualified as an "audit committee financial expert." (*Id.* at pp. 63-64).  DPW had also increased the number of its general administration and finance employees from 6 in 2016 to 16 in 2017. (*Id.* Ex. G at p. 8, *compare*, *id.* Ex. D at p. 10).  Finally, DPW stated that it was continuing to improve and simplify its internal processes and to implement enhanced controls to address weaknesses. (*Id.* Ex. D at p. 60).

On May 21, 2018, DPW filed its Form 10-Q for the period ending March 31, 2018, which stated that Management, with input, oversight, and support of the Board, had identified measures to strengthen DPW's control environment and internal control over financial reporting. (Am. Compl. ¶200).  During January 2018, DPW "hired a new CFO and engaged the services of a financial accounting advisory firm." (*Id.*).  Horne was the new CFO. (*Id.* ¶201).  Prior to his appointment, he held supervisory positions at Price Waterhouse LLP and, over the past two decades, has served as the CFO for six companies: three public and three private. (*Id.* ¶282).  The Board also provided that, until DPW expanded its internal accounting department, the Audit Committee Chairman would continue to: i) assist with documentation and implementation of policies and procedures for monitoring of controls; and ii) review all anticipated transactions, which

were considered not in the ordinary course of business, to assist in the early identification of accounting issues and ensure that appropriate disclosures are made in DPW's financial statements. (*Id.* ¶200).

Therefore, the Directors have been actively taking steps to improve DPW's internal controls.  While there is always room for improvement, as a result of these efforts, there have been no restatements of DPW's financial statements.  (*See generally,* Am. Compl.).  Consequently, Plaintiffs cannot show that the Directors acted in bad faith.

  **b.** *DPW's Code of Ethics Does Not Define the Standards for Purported Breaches of Fiduciary Duties*

The Amended Complaint doubles-down on this discrete alleged breach by further postulating that Defendants' purported failure to instill internal controls violates DPW's Code of Ethics.  (*See* Am. Compl. ¶¶63, 203, 317 (Ault, Kohn and Horne), 327 (Smith, Rosenberg and Bentz)).  A Code of Ethics, however, does not serve as a basis for a legal claim or support an inference of scienter because such Code of Ethics are "aspirational in nature and are not objectively verifiable."  *Mandalevy v. BofI Holding, Inc.*, No. 17-cv-00667, 2018 U.S. Dist. LEXIS 102561, *21 n.4 (S.D. Ca. June 19, 2018); *Brehm v. Eisner*, 746 A.2d 244, 256 (Del. 2000) (aspirational goals of ideal corporate governance practices, while very desirable, do not define standards of liability).  At best, any such claim would be a *Caremark* claim.  *See e.g.*, *In re Galena Biopharma, Inc. Deriv. Litig.*, 83 F.Supp.3d 1047, 1067 n.6 (D. Or. 2015).  The Directors did not breach a *Caremark* duty.

  **2.** *Claims Based on Stock Issuances*

The Amended Complaint also asserts a breach of fiduciary duty claim based on numerous stock issuances by DPW to raise capital.  (Am. Compl. ¶¶149-158).  The Court should dismiss these claims because "[t]he discretion of a board of directors in the sale of its no par value stock should not be interfered with, except for fraud, actual or constructive, such as improper motive or personal gain or arbitrary action or conscious

disregard of the interest of the corporation and rights of its stockholders."[3]  *Bodell v. General Gas & Elec. Corp.*, 140 A. 264, 267 (Del. 1927) (noting the ability of a corporation to secure funds from stock sales manifests an advantage for the corporation and its stockholders).  Here, aside from the purchase of DPW's Series B Convertible Preferred Stock (the "Series B Preferred Stock") by Philou Ventures, LLC ("Philou"), each of the identified transactions involved the sale of DPW's securities to unrelated parties from which DPW secured needed funds.[4]  (Am. Compl. ¶¶149-158).  There are no allegations that these transactions were anything but at arm's-length, and there are no allegations that any Director engaged in fraud in connection with the securities issued to unrelated parties or for personal gain.  (*See id.*).  Plaintiffs further allege that each Director engaged in a practice of issuing shares at lower than fair market value in exchange for debt which resulted in dilution and a depressed stock price.  (*Id*. ¶149).  For example, quoting from the 2017 Form 10-K, Plaintiffs identified a conversion of principal and interest reported for a "November 5% Convertible Note" that was satisfied through the issuance of 1,851,667 shares of DPW's stock, which resulted in DPW satisfying a $1,111,000 note using stock that had a fair market value over $9,000,000 – based on DPW's market price on the date of conversion.  (*Id*. ¶150).  These shares, however, were issued "based on the contractual rights provided in the November 5% Convertible Note," which provided the third-party holder the right to convert the outstanding debt to shares of DPW's common stock "at $0.60 per share."  (Volynsky Decl. Ex. D at p. F-40).  On the date that DPW issued the November 5% Convertible Note, its stock's closing price was $0.6099.  (*Id*. Ex. T at 11/2/17).  There is no breach of a fiduciary duty when a corporation issues shares to a third-party that had a contractual

---

[3] DPW's common stock was either no par value or had a *de minimis* par value of $0.001. (Volynsky Decl. Exs. G at p. 1, D at p. 1).

[4] For the discussion addressing the issuance of the Series B Preferred Stock to Philou, *see* infra at Point III(A)(ii).

right to receive the shares.  *Oliver v. Boston Univ.*, No. 16570, 2006 Del. Ch. LEXIS 75, *121 (Del. Ch. Apr. 14, 2006).  Even if DPW had issued securities at a discount to market price, "[w]here a corporation in financial distress issues stock as a means to raise capital, its directors are given considerable latitude in fixing the price for the issuance." *Savin Bus. Machs. Corp. v. Rapifax Corp.*, No. 5331, 1978 Del. Ch. LEXIS 725, *14 (Del. Ch. Feb. 15, 1978); *Oliver*, 2006 Del. Ch. LEXIS 75, *121 (no breach where stock issued to third-party at a 36% discount to market price).  Thus, the Court should dismiss all claims based on the issuance of stock to third-parties.

### 3.   *Claims Based on Compensation Awarded*

The Amended Complaint asserts a breach of fiduciary duty claim against Ault, Kohn and Horne premised upon the Directors "improperly awarding themselves generous and excessive compensation," (Am. Compl. ¶317), against Smith, Rosenberg and Bentz, **in their committee roles**, for "act[ing] in bad faith by reviewing, recommending and/or approving the Officer/Director Defendants excessive cash compensation while the Company was cash-starved," (*id.* ¶328 (Smith), ¶329 (Rosenberg), ¶330 (Bentz)), and against K. Ault for "act[ing] in bad faith by approving the Officer/Director Defendants excessive compensation."  (*id.* ¶338).

Notably, aside from the aforementioned sparse allegation, the only other reference to Smith, Rosenberg and Bentz's alleged bad faith conduct is contained in a singular, conclusory sentence that "[t]he conduct by Smith, Rosenberg and Bentz was in bad faith."  (*Id.* ¶331).  Plaintiffs' inability to allege particularized facts to substantiate this wholly conclusory claim is telling and insufficient to carry their burden to demonstrate a breach of fiduciary duty by Smith, Rosenberg and Bentz.  *In re Bidz.com, Inc. Deriv. Litig.*, 773 F.Supp.2d 844, 854 (C.D. Ca. 2011) (finding allegations that director was awarded stock options were insufficient to meet pleading burden where there were no particular allegations that they "were awarded in bad faith, for an improper purpose or without consideration.").  Delaware law has erected a high hurdle to challenging compensation packages.  *Id.* (*citing Brehm v. Eisner*, 746 A.2d 244, 256 (Del. 2000)).

It is also well settled that "[a] board's decisions relating to executive compensation are protected by the business judgment rule." *JLL Consultants, Inc. v. Gothner*, 558 B.R. 116, 128 (Bankr. D. Del. 2016). Indeed, "Delaware courts are hesitant to scrutinize executive compensation decisions, recognizing that it is the essence of the business judgment for a board to determine if a particular individual warrants large amounts of money." *Friedman v. Dolan*, No. 9425, 2015 Del. Ch. LEXIS 178, *17 (Del. Ch. June 30, 2015). To rebut the business judgment presumption, plaintiff "must plead particularized facts sufficient to raise (1) a reason to doubt that the action was taken honestly and in good faith or (2) a reason to doubt that the board was adequately informed in making the decision." *Laborers' Local v. Intersil*, 868 F.Supp.2d 838, 846 (N.D. Ca. 2012) ("A board's decision on executive compensation is entitled to great deference."). "A proper challenge to a compensation package requires a showing of bad faith or an exchange of corporate assets for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade." *Bidz.com,* 773 F.Supp.2d at 854. Moreover, it is a fundamental principle that absent any allegations identifying who, specifically, approved the challenged compensation package, the plaintiff cannot rebut the business judgment rule. *See Nelson v. Emerson*, No. 2937, 2008 Del. Ch. LEXIS 56, at *9 (Del. Ch. May 6, 2008). The Amended Complaint falls woefully short of meeting this stringent standard. *See id*., at *46 (noting that plaintiff's failure to provide specifics regarding the Board's decision awarding compensation was "not at all excused by any lack of information on his part.").

Here, the Amended Complaint undermines Plaintiffs' contention that Smith, Bentz and Rosenberg acted in bad faith by acknowledging that, at minimum, Smith, Bentz and Rosenberg conducted a degree of diligence by "reviewing" the compensation packages, which is dispositive of Smith, Bentz and Rosenberg's efforts to make an informed decision concerning executive compensation. (Am. Compl. ¶¶328-330); *see also Moran v. Household Int'l, Inc.*, 490 A.2d 1059, 1074 (Del. Ch. 1985) ("[I]n the absence of fraud

or bad faith, directors will not be held liable for mistakes of judgment in actions arguably taken for the benefit of the corporation.").

Related, and even more attenuated, is the allegation that K. Ault acted in bad faith and breached her fiduciary duties by "approving the Officer/Director Defendants excessive compensation." (Am. Compl. ¶338). Glaringly absent from the Amended Complaint is any allegation stating whether K. Ault actually voted on the allegedly excessive compensation packages or abstained from such voting. (*See id.*). At minimum, Plaintiffs' own allegations belie this assertion with respect to Horne and Ault's Executive Employment Agreements, dated January 25, 2018 and April 13, 2018, respectively, because K. Ault, who resigned as a director on January 23, 2018, was not a member of the Board when DPW entered into these agreements. (*Id.* ¶¶43, 225-226, 230, 241). Against this backdrop, the Court should dismiss the breach of fiduciary duty claims against Smith, Rosenberg, Bentz and K. Ault.

With respect to these same allegations cast against Ault, Horne and Kohn, Plaintiffs asserts that Ault, Horne and Kohn awarded excessive compensation to themselves. (*Id.* ¶317). The Amended Complaint, however, alleges that it was the "Compensation Committee [that] completed and recommended approval of the proposed Executive Employment Agreement with Milton "Todd" Ault, III." (*Id.* ¶232 (Ault); *see also id.* ¶327 (Compensation Committee reviewing, recommending and awarding compensation to Officer/Director Defendants)). Ault, Horne and Kohn were not on the Compensation Committee, so they did not award compensation, excessive or otherwise, to themselves. (*Id.* ¶51).

Accordingly, the Court should dismiss the breach of fiduciary duty claims.

4.    *Claims Based on the Future Receipts Agreements*

The Amended Complaint tactically asserts that Defendants Ault, Horne and Kohn, in their roles as officers, allowed DPW to enter into "unfair loan agreements" at "unreasonable rates of interest" – the Future Receipts Agreements – while Smith,

Rosenberg and Bentz permitted these transactions to occur.[5] (*See* Am. Compl. ¶¶4, 121, 128-138, 327) (identifying agreements with TVT Capital LLC).

Importantly, the Amended Complaint does not provide any factual support for cloaking Ault, Horne and Kohn in their officer capacities, especially in light of the fact that the pertinent allegations – namely Paragraphs 128-138 – generally state that these agreements were entered into by "***the Company***," without ascribing any specific actions to any particular individuals. (*See id.* ¶¶128-138) (emphasis added). Indeed, with respect to Horne, the Company only entered into two of the Future Receipts Agreements while he was an Officer. (*Id.* ¶¶129-131) (referencing "multiple Agreements" in 2017 and "nine" in 2018, of which only two had occurred after January 25, 2018). For this reason alone, the Court should dismiss this claim. (Order, p. 14 ("It is impossible for the Court to determine the nature of the liability as to each of the individual directors acting within 'the Company' or specific committee.").

Notwithstanding, the Directors did not approve usurious (or "unreasonable") loans because the Future Receipts Agreements are not loans or usurious transactions. *See Wilkinson Floor Covering, Inv. v. Cap Call, LLC*, No. 160256/2016, 2018 N.Y. Misc. LEXIS 1845, *5-6 (Sup. Ct. N.Y. Co. May 16, 2018) (finding TVT Capital LLC's Future Receipts Agreement not usurious). As noted by another Court, the "purchase and sale of future receivables and sales proceeds [such as the Future Receipts Agreements] . . . are common commercial transactions expressly contemplated by the Uniform Commercial Code." *NY Capital Asset Corp. v. F&B Fuel Oil Co.*, No. 58499/2017, 2018 N.Y. Misc. LEXIS 786, *15 (Sup. Ct. West. Co. Mar. 8, 2018). Indeed, the Future Receipts Agreements are not so "unreasonable" as DPW's Chief Executive Officer had, on many

---

[5] The only variation between Paragraph 121 of the original Compliant and the Amended Complaint is that Plaintiffs changed the word "usurious" to "unreasonable." Notwithstanding Plaintiffs' choice of verbiage in Paragraph 121, the Amended Complaint later alleges that such rates were "usurious." (Am. Compl. ¶312) ("[E]specially in light of the usurious rates of interest paid on the Future Receipts Agreements…").

occasions, "personally guaranteed" the Company's obligations under the Future Receipts Agreements. (*See* Am. Compl. ¶131).

Accordingly, the Court should dismiss the breach of fiduciary duty claims.

ii.   Claims against K. Ault

The Amended Complaint replicates similar "committee" allegations asserted against Smith, Rosenberg and Bentz into its third cause of action against K. Ault. (*Id.* ¶338). Indeed, the Amended Complaint's allegation that she "approv[ed]" excessive compensation is defeated by Plaintiffs' acknowledgement that the agreements awarding the compensation to Ault and Horne were entered into by DPW *after* K. Ault had resigned as a Director. (*See supra* Point III(A)(i)(3)). K. Ault was never an officer of DPW; consequently, any claim for breach of the fiduciary duty of care is barred by DPW's Charter's exculpatory provision because there are no specific allegations of bad faith by K. Ault in the Amended Complaint. *See Wood v. Baum*, 953 A.2d 136, 141 (Del. 2008); *In re Oracle Deriv. Litig.*, No. 2017-0337, 2018 Del. Ch. LEXIS 92, at *32 (Del. Ch. Mar. 19, 2018).

The only allegations of alleged wrongdoing by K. Ault broadly allege that she had "orchastrat[ed] a scheme to first obtain control of the Company . . . for her personal benefit while serving on the Board." (Am. Compl. ¶337). The "scheme" to obtain control of the Company refers to the purchase of the Series B Preferred Stock by Philou while K. Ault was a Director. (*Id.* ¶83). There is, however, no allegation that K. Ault voted – as opposed to abstaining – in the Board's approval of the sale of the Series B Preferred Stock. (*See id., generally)*. So too, there are no allegations that DPW's then-directors did not fully inform themselves of the particulars of the transaction or that the transaction did not serve a business purpose for DPW. (*Id.*) Rather, DPW's securities filings with the SEC, of which the Court has previously taken judicial notice (Order at pp. 3-5), evidence that DPW's then-Directors acted reasonably and with a proper business purpose.

Before Philou acquired an interest in DPW, the NYSE had: i) notified DPW that it was no longer in compliance with its listing standards because DPW's stockholder equity had fallen below its continued listing standards; and ii) granted DPW a listing extension on the basis of a plan to regain compliance by June 19, 2017.  (Volynsky Decl. Ex. R at p. 20).  At that time, DPW had stated that: i) it would need to quickly raise capital to meet the NYSE listing requirements and fund its operations; ii) the proposed financing may include the sale of preferred stock; and iii) such funding may not be available on terms favorable to DPW.  (*Id.*).  Months later, Philou and DPW entered into a Securities Purchase Agreement wherein DPW agreed to sell the Series B Preferred Stock to Philou in an amount up to $5,000,000 in which Philou guaranteed to purchase the *greater* of: $1,000,000 in preferred stock or a sufficient amount of preferred stock to ensure that DPW had sufficient stockholder equity to meet the NYSE's continued listing standards. (*Id.* Ex. S at Item 1.01).  Pursuant to the Securities Purchase Agreement, Philou could convert the Series B Preferred Stock to common stock at a price equal to $0.70 per share, which per NYSE Rules, was subject to stockholder approval and later obtained.  *See id.* On March 6, 2017, the date the parties entered into the agreement, DPW's stock closed at $0.60 per share.  (*Id.* Ex. T at 3/6/17).  By June 2, 2017, Philou had purchased $1,000,000 of the Series B Preferred Stock, and, on June 21, 2017, the NYSE notified DPW that it had regained compliance with its continued listing standards.  (*Id.* Ex. U at Item 3.02 and Ex. V at Item 8.01).  Therefore, in contrast to the Amended Complaint's bald allegations, the judicially-noticed SEC filings evidence that the Directors acted for the benefit of the corporation and for a rational business purpose in approving the aforementioned securities transactions.

Accordingly, the Court should dismiss all breach of fiduciary duty claims asserted against K. Ault, as well as the other Defendants, that are premised upon the Series B Preferred Stock transaction or the "scheme to first obtain control of the Company."

### iii.   Claims against Horne

The Amended Complaint alleges that Horne breached his fiduciary duties of loyalty, care and good faith by, *inter alia,* "caus[ing] the Company to engage in the schemes set forth herein including participating in transactions for the benefit of himself including the related party transactions with AVLP [Avalanche International Corp.] while Horne is serving as the CFO as AVLP and AVLP's audit committee chairman." (Am. Compl.¶319).  It also alleges unspecified breaches of fiduciary duty because he purportedly "allow[ed] the Company to enter into the Future Receipts Agreements at unreasonably high interest rates and issue tens of millions of shares of the Company's common stock under the terms and for the purposed described herein." (*Id.*).  As set forth below, these claims are belied by the factual allegations in the Amended Complaint.

First, with respect to Avalanche International Corp. ("AVLP"), the Amended Complaint's allegations are intertwined with Plaintiffs' contention that "T. Ault had overseen" DPW's investments in AVLP.  (*Id.* ¶93).  Indeed, aside from stating Horne's position at AVLP (*Id.* ¶101), the Amended Complaint is devoid of any specific misconduct attributable to Horne in connection with DPW's dealings with AVLP while Horne served as a director or officer of the Company.  (*See id. generally*).  This is for good reason, as Horne was not appointed as an officer of DPW until January 25, 2018 (*Id.* ¶225) – well after the overwhelming majority of the related-party transactions were effectuated and share issuances to third-parties had occurred.  (*Id.* ¶110 (describing notes entered into with AVLP on October 5, 2016, November 30, 2016, and February 22, 2017, as well as additional funding that occurred prior to December 31, 2017); ¶¶150-153 (describing stock issuances prior to January 25, 2018)).

Second, Plaintiffs cannot escape the aforementioned inconvenient facts and, to the extent that Plaintiffs are seeking to hold Horne liable for actions taken in his capacity as a director, Plaintiffs must, in the first instance, allege a non-exculpated claim against Horne, which they have failed to do.  (*See* Order, p. 13 (implying that the exculpatory charter provision can apply to Horne if he is not acting in his officer capacity)).

Notwithstanding, even if the Court finds that the Amended Complaint does assert non-exculpated claims against Horne, which it should not, it would still need to dismiss these claims, as the Amended Complaint fails to allege two threshold elements – that Horne did not abstain from voting on any alleged related party transactions and that Horne acted in bad faith in relation to these transactions.  (*See* Am. Compl., *generally*). In the absence of these indispensable allegations, the Court's review of such transactions is limited to determining "whether the business decision made was rational in the sense of being one logical approach to advancing the corporation's objective." *In re Trados S'holder Litg.*, 73 A.3d at 43.  "Only when a decision lacks any rationally conceivable basis will a court infer bad faith and a breach of duty." *Id.*

Third, insomuch as the Amended Complaint attempts to hold Horne liable in connection with the Kohn related-party transaction: the real estate acquisition in Israel (the "Israel Transaction"), the Court need look no further than Paragraph 184 of the Amended Complaint, wherein Plaintiffs cite to a Form 8-K that pre-dated Horne's tenure as an officer, which expressly alleges that "then CEO Defendant Kohn purchased certain property in Israel using Company funds," without any mention of the other Defendants, including Horne, in connection with this transaction.  (Am. Compl. ¶184).  Indeed, at that juncture, Horne was only a director of DPW and his actions, if any, would be shielded by DPW's Charter's exculpatory clause.  With respect to such "related party transactions," "Delaware law on this point is clear: board approval of a transaction, even one that later proves to be improper, without more, is an insufficient basis to infer culpable knowledge or bad faith on the part of individual directors." *Wood v. Baum*, 953 A.2d 136, 141 (Del. 2008).  "This is a high pleading standard, as Delaware courts typically frame a lack of good faith in terms of 'intentional' misconduct." *Teamsters Union 25 Health Servs. & Ins. Plan v. Baiera*, 119 A.3d 44, 63 (Del. Ch. 2015).  Here, the Amended Complaint only states bald, conclusory statements that Horne – as well as the other Defendants – acted "knowingly or recklessly" or in "bad faith" and is otherwise devoid of any specific allegations of intentional misconduct or bad faith by Horne or Directors K. Ault, Smith,

Rosenberg and Bentz.  (*See* Am. Compl. ¶319 (Horne); ¶328 (Smith); ¶329 (Rosenberg); ¶330 (Bentz); ¶338 (K. Ault)).

Accordingly, the Court should dismiss all breach of fiduciary duty claims asserted against Horne.

      iv.     Claims against Kohn

The Amended Complaint sets forth a laundry list of alleged breaches by Kohn, *as a Director* that are, in sum and substance, the same claims asserted against independent directors Smith, Rosenberg and Bentz.  (*See id.* ¶320).  In cursory fashion, the Amended Complaint asserts that Kohn breached various duties concerning, *inter alia*, the Future Receipts Agreements, the issuances of DPW's stock, excessive compensation, and internal controls.  (*Id.*, *compare*, ¶328 (Smith), ¶329 (Rosenberg), ¶330 (Bentz)).  The Amended Complaint's allegations, in this regard, pertain to Kohn's role as a director – a role and conduct that is shielded by DPW's Charter's exculpatory provision.

Although Kohn's actions, *as an officer*, are not shielded by the exculpatory provision, the Amended Complaint only alleges one instance in which he was acting *as an officer*: the Israel Transaction and the disclosure of same in DPW's securities filings.  (*Id.* ¶¶184-189).  The Amended Complaint contains no other allegations concerning any other transaction in which Kohn was acting *as an officer*.  (*See id. generally*).  All other allegations and claims pertain to his role *as a director.*  (*Id.*).  Consequently, the Court should dismiss the breach of fiduciary duty of care claims asserted against Kohn, *as a director*, including, *inter alia*, claims premised upon the Future Receipts Agreements, the issuances of DPW's stock, excessive compensation, and internal controls.

**B.**    **The Court Should Dismiss the Unjust Enrichment Claims**

The Court should dismiss the unjust enrichment claims because:  i) they are duplicative of the breach of fiduciary duty claims; ii) the claim against Ault, Kohn and Horne is barred by written contracts; and iii) the claims against Smith, Rosenberg, Bentz and K. Ault are barred because the director compensation awarded was subject to stockholder approval.

Notwithstanding the Court's dismissal of the unjust enrichment claim on the grounds that it was "derive[d] from the first cause of action [breach of fiduciary duty]" (Order at p. 15), the Amended Complaint recasts the unjust enrichment claim into two causes of action – one against Ault, Kohn and Horne and another against Smith, Rosenberg, Bentz and K. Ault. (Am. Compl. ¶¶342-347). Each of these causes of action are based on the course of conduct that is the basis for the breach of fiduciary duty claims. (*Id.* ¶¶343, 346). And they each seek the same relief. (*Id.*, *compare*, ¶¶223-252, 256). As a result, the Court should dismiss the unjust enrichment claims because they are duplicative of the breach of fiduciary duty claims. *See e.g., Calma v. Templeton*, 114 A.3d 563, 591 (Del. Ch. 2015) ("At the pleadings stage, an unjust enrichment claim that is entirely duplicative of  a breach of fiduciary duty claim – *i.e.*, where both claims are premised on the same purported breach of fiduciary duty – is frequently treated 'in the same manner when resolving a motion to dismiss.'").

The Court should also dismiss the unjust enrichment claim asserted against Ault, Horne and Kohn because it is barred by the express contracts between DPW and each of them – contracts expressly identified in the Amended Complaint. (Am. Compl. ¶¶27, 38, 40). As stated by the Delaware Chancery Court in a derivative action, "[a]t any rate, had demand been excused, [the corporation] would not have had a claim for unjust enrichment related [to compensation] that would have survived a Rule 12(b)(6) motion to dismiss. Courts developed unjust enrichment as a theory of recovery to remedy the absence of a formal contract." *MCG Capital Corp. v. Maginn*, No. 4521, 2010 Del. Ch. LEXIS 87, *89 (Del. Ch. May 5, 2010). "[C]laims for unjust enrichment may survive a motion to dismiss when the validity of the contract is in doubt or uncertain. When a complaint alleges an express, enforceable contract that controls the parties' relationship, however, a claim for unjust enrichment will be dismissed. This is the case even where an enforceable contract gives rise to a fiduciary relationship between the parties." *Id.* (holding plaintiff may not prosecute an unjust enrichment claim derivatively on behalf of the corporation because an express agreement existed between the corporation and its

---

director).  Therefore, the Court should dismiss the unjust enrichment claim asserted against Ault, Kohn and Horne.

The Court should also dismiss the unjust enrichment claim asserted against the non-officer directors (K. Ault, Smith, Rosenberg, and Bentz) because that claim does not assert how the director compensation received by them was excessive.  The Amended Complaint simply asserts that DPW's Directors received "large stock options." (*See* Am. Compl. ¶227).  It provides no specifics concerning the stock options, which were awarded at-the-money and vested over a four-year period. (Volynsky Decl. Ex. W at Item 5.02, *compare*, Ex. T at 11/28/17).  Moreover, the equity compensation awarded to the Directors is subject to the approval of the Company's stockholders, which was sought at the Company's next annual meeting. (*Id.* Ex. Z at p. 21).  When directors submit their specific compensation decisions for approval by fully informed, uncoerced, and disinterested stockholders, stockholder ratification bars a claim for excessive compensation and warrants dismissal of the claim.  *See e.g., In re Inv'rs Bancorp, Inc. Stockholder Litig.*, 177 A.3d 1208, 1211 (Del. 2017).

Accordingly, the Court should dismiss the unjust enrichment claims.

## V.  CONCLUSION

For the foregoing reasons, the Court should grant the motion to dismiss under Fed. R. Civ. P. 12(b)(6).

Dated:  March 25, 2019

SICHENZIA ROSS FERENCE LLP

By:   /s/ *Robert Volynsky*
ROBERT VOLYNSKY (SBN 310600)

Attorneys for Defendants Milton Ault, Amos Kohn, William Horne, Jeff Bentz, Mordechai Rosenberg, Robert Smith, Kristine Ault and Nominal Defendant DPW Holdings Inc.