Case 2:18-cv-06587-SJO-PLA Document 25-26 Filed 11/28/18 Page 1 of 12 Page ID #:407

Exhibit Z

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

# SCHEDULE 14A

Proxy Statement Pursuant to Section 14(a) of the Securities Exchange Act of 1934

Filed by the Registrant ☒
Filed by a Party other than the Registrant ☐

Check the appropriate box:
☒ Preliminary Proxy Statement
☐ Confidential, For Use of the Commission Only (as Permitted by Rule 14a-6(e)(2))
☐ Definitive Proxy Statement
☐ Definitive Additional Materials
☐ Soliciting Material Pursuant to § 240.14a-12

# DPW HOLDINGS, INC.

(Name of Registrant as Specified in its Charter)

(Name of Person(s) Filing Proxy Statement, if other than the Registrant)

Payment of Filing Fee (Check the appropriate box):
☒ No fee required
☐ Fee computed on table below per Exchange Act Rules 14a-6(i) (1) and 0-11.

(1) Title of each class of securities to which transaction applies:
(2) Aggregate number of securities to which transaction applies:
(3) Per unit price or other underlying value of transaction computed pursuant to Exchange Act Rule 0-11 (set forth the amount on which the filing fee is calculated and state how it was determined):
(4) Proposed maximum aggregate value of transaction:
(5) Total fee paid:

☐ Fee paid previously with preliminary materials:

☐ Check box if any part of the fee is offset as provided by Exchange Act Rule 0-11(a)(2) and identify the filing for which the offsetting fee was paid previously. Identify the previous filing by registration statement number, or the Form or Schedule and the date of its filing.
(1) Amount Previously Paid:
(2) Form, Schedule or Registration Statement No.:
(3) Filing Party:
(4) Date Filed:

Case 2:18-cv-06587-PA-PLA Document 46-13 Filed 03/25/19 Page 3 of 12 Page ID #:899
Case 2:18-cv-06587-SJO-PLA Document 25-26 Filed 11/28/18 Page 3 of 12 Page ID #:409

11/19/2018 https://www.sec.gov/Archives/edgar/data/896493/000121465918005040/p728180pre14a.htm

**DPW HOLDINGS, INC.**
201 Shipyard Way
Newport Beach, CA 92663
Telephone: (510) 657-2635

## NOTICE OF 2018 ANNUAL MEETING OF STOCKHOLDERS

We cordially invite you to attend the 2018 Annual Meeting of Stockholders of DPW Holdings, Inc. ("**DPW**" or the "**Company**"). Our 2018 Annual Meeting will be held on Friday, September 7, 2018 at __:00 a.m. ET at _____, You will be able to attend the 2018 Annual Meeting and vote by visiting www.proxyvote.com if you are a beneficial owner and at www.investorvote.com/DPW if you are a registered holder. To enter the meeting, you must have your control number that is shown on the proxy card accompanying this Proxy Statement.

Details regarding logging onto and attending the meeting over the website and the business to be conducted are described in the Proxy Card included with this Proxy Statement. We have also made available a copy of our 2017 Annual Report with this Proxy Statement. We encourage you to read our Annual Report. It includes our audited financial statements and provides information about our business and products.

The purpose of the meeting is:

1. To elect the six (6) director nominees named in the Proxy Statement to hold office until the next annual meeting of stockholders;

2. To ratify the appointment of Marcum, LLP, as the Company's independent registered public accounting firm for the fiscal year ending December 31, 2018;

3. To approve (i) the grant of 1,000,000 shares of Common Stock, which shares shall vest ratably over 48 months beginning on January 1, 2020, (ii) the grant of options to purchase 500,000 shares of Common Stock at an exercise price of $0.80, which option will vest over 60 months, and the issuance of the shares of Common Stock issuable upon exercise of such option, and (iii) the CEO Performance Award, each pursuant to the terms of the Ault Employment Agreement (defined herein) dated June 17, 2018, in order to comply with the listing rules of the NYSE American;

4. To approve (i) the grant of 1,000,000 shares of Common Stock, which shares shall vest in installments of two hundred thousand (200,000) shares annually over five (5) years beginning on January 1, 2019, and (ii) the grant of options to purchase 500,000 shares of Common Stock at an exercise price of $2.32, which option will vest over 60 months, and the issuance of the shares of Common Stock issuable upon exercise of such option pursuant to the terms of the Horne Employment Agreement (defined herein) dated January 25, 2018, in order to comply with the listing rules of the NYSE American;

5. To approve equity issuances to directors and executive officers of the Company, in order to comply with the listing rules of the NYSE American;

6. To approve the issuance of (i) 1,333,333 shares of Common Stock pursuant to the conversion of a Senior Secured Convertible Promissory Note, at a conversion price equal to $0.75 per share, and (ii) up to 400,000 shares of Common Stock, in accordance with the Securities Purchase Agreement dated July 2, 2018, in order to comply with the listing rules of the NYSE American;

7. To adopt the Company's 2018 Stock Incentive Plan; and

8. To act on such other matters as may properly come before the meeting or any adjournment thereof.

Only stockholders of record at the close of business on August __, 2018, will be entitled to attend and vote at the meeting. The proxy materials will be mailed to stockholders on or about August 13, 2018.

**Important Notice Regarding the Availability of Proxy Materials for the 2018 Annual Meeting of Stockholders to be held on September 7, 2018:**

This Proxy Statement and our 2017 Annual Report on Form 10-K
are available at www.edocumentview.com/DPW

Case 2:18-cv-06587-PA-PLA Document 46-13 Filed 03/25/19 Page 4 of 12 Page ID #:900
Case 2:18-cv-06587-SJO-PLA Document 25-26 Filed 11/26/18 Page 4 of 12 Page ID #:410

11/19/2018 https://www.sec.gov/Archives/edgar/data/896493/000121465918005040/p728180pre14a.htm

BY ORDER OF THE BOARD OF DIRECTORS

Milton C. Ault III
Chief Executive Officer and Chairman of the Board
_____, 2018

<u>HOW TO VOTE</u>: Your vote is important. Whether or not you plan to attend the annual meeting, please vote as soon as possible by either (1) mailing your completed and signed proxy card(s) to DPW Holdings, Inc., 201 Shipyard Way, Newport Beach, CA 92663, Attention: Corporate Secretary, (2) calling the toll-free number printed on your proxy card(s) and following the recorded instructions or (3) visiting the website indicated on your proxy card(s) and following the on-line instructions. You may revoke a previously submitted proxy at any time prior to the annual meeting. If you decide to attend the annual meeting and wish to change your proxy vote, you may do so automatically by voting in person at the annual meeting.

Case 2:18-cv-06587-PA-PLA Document 46-13 Filed 03/25/19 Page 5 of 12 Page ID #:901
Case 2:18-cv-06587-SJO-PLA Document 25-26 Filed 11/28/18 Page 5 of 12 Page ID #:411

11/19/2018 https://www.sec.gov/Archives/edgar/data/896493/000121465918005040/p728180pre14a.htm

## TABLE OF CONTENTS

| | Page |
|---|---|
| INFORMATION CONCERNING THE ANNUAL MEETING | 1 |
| QUESTIONS AND ANSWERS ABOUT THESE PROXY MATERIALS AND VOTING | 3 |
| PROPOSAL NO. 1: ELECTION OF DIRECTORS | 8 |
|    Information about the Nominees | 8 |
|    Involvement in Certain Legal Proceedings | 10 |
|    Family Relationships | 11 |
|    Board Independence | 11 |
|    Stockholder Communications with the Board | 11 |
|    Meetings and Committees of the Board | 11 |
|    Board Committees | 11 |
|    Section 16(a) Beneficial Ownership Reporting Compliance | 13 |
|    Code of Ethics | 13 |
|    Director Compensation | 13 |
|    Required Vote and Board Recommendation | 14 |
| PROPOSAL NO. 2: RATIFICATION OF APPOINTMENT OF OUR INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM | 15 |
|    Review of the Company's Audited Financial Statements for the Fiscal Year Ended December 31, 2017 | 15 |
|    Fees Paid to Auditors | 15 |
|    Pre-Approval Policies and Procedures | 15 |
|    Required Vote and Board Recommendation | 16 |
| REPORT OF THE AUDIT COMMITTEE OF THE BOARD OF DIRECTORS | 16 |
| PROPOSAL NO. 3: APPROVAL OF THE CHIEF EXECUTIVE OFFICER'S EMPLOYMENT AGREEMENT DATED JUNE 17, 2018 | 17 |
|    Description of the Employment Agreement | 17 |
|    Why the Company Needs Stockholder Approval | 18 |
|    Effect of Proposal on Current Stockholders | 18 |
|    Further Information | 18 |
|    Required Vote and Board Recommendation | 18 |
| PROPOSAL NO. 4: APPROVAL OF THE CHIEF FINANCIAL OFFICER'S EMPLOYMENT AGREEMENT DATED JANUARY 25, 2018 | 19 |
|    Description of the Employment Agreement | 19 |
|    Why the Company Needs Stockholder Approval | 19 |
|    Effect of Proposal on Current Stockholders | 19 |
|    Further Information | 20 |
|    Required Vote and Board Recommendation | 20 |
| PROPOSAL NO. 5: APPROVAL OF EQUITY ISSUANCES TO DIRECTORS AND EXECUTIVE OFFICERS | 21 |
|    Terms of the Transaction | 21 |
|    Why the Company Needs Stockholder Approval | 21 |
|    Effect of Proposal on Current Stockholders | 21 |
|    Further Information | 21 |
|    Required Vote and Board Recommendation | 21 |
| PROPOSAL NO. 6: APPROVAL OF THE CONVERSION OF A $1,000,000 CONVERTIBLE PROMISSORY NOTE CONVERTIBLE INTO 1,333,333 SHARES OF COMMON STOCK AND THE ISSUANCE OF 400,000 SHARES OF COMMON STOCK | 22 |
|    Terms of the Transaction | 22 |
|    Why the Company Needs Stockholder Approval | 22 |
|    Effect of Proposal on Current Stockholders | 22 |
|    Further Information | 23 |
|    Required Vote and Board Recommendation | 23 |
| PROPOSAL NO. 7: APPROVAL OF THE 2018 STOCK INCENTIVE PLAN | 24 |
|    Overview | 24 |
|    Summary of the 2018 Plan | 24 |
|    Types of Awards | 26 |
|    New Plan Benefits under the 2018 Plan | 28 |
|    U.S. Federal Income Tax Considerations | 28 |
|    Required Vote and Board Recommendation | 29 |
| INFORMATION ABOUT THE EXECUTIVE OFFICERS | 30 |

| | |
|---|---|
| **EXECUTIVE COMPENSATION** | 30 |
| Summary Compensation Table | 30 |
| Employment Agreement with Milton C. Ault, III | 30 |
| Employment Agreement with William B. Horne | 31 |
| Employment Agreement with Amos Kohn | 32 |
| Advisory Vote on Executive Compensation | 33 |
| Outstanding Equity Awards at Fiscal Year-End | 33 |
| Stock Option Plans | 33 |
| 401(k) Plan | 34 |
| **SECURITY OWNERSHIP OF CERTAIN BENEFICIAL OWNERS AND MANAGEMENT** | 34 |
| Equity Compensation Plan Information | 35 |
| **CERTAIN RELATIONSHIPS AND RELATED TRANSACTIONS** | 35 |
| **PROPOSALS OF STOCKHOLDERS FOR THE 2019 ANNUAL MEETING** | 37 |
| **OTHER BUSINESS** | 37 |
| **APPENDIX A – ANNUAL REPORT ON FORM 10-K FOR THE FISCAL YEAR ENDED DECEMBER 31, 2017** | A-1 |
| **APPENDIX B – 2018 STOCK INCENTIVE PLAN** | B-1 |

ii

Case 2:18-cv-06587-PA-PLA Document 46-13 Filed 03/25/19 Page 7 of 12 Page ID #:903
Case 2:18-cv-06587-SJO-PLA Document 25-26 Filed 11/28/18 Page 7 of 12 Page ID #:413

11/19/2018                    https://www.sec.gov/Archives/edgar/data/896493/000121465918005040/p728180pre14a.htm

2. Mr. Ault was CEO, President and Chairman of Zealous Holdings, Inc. that filed for bankruptcy protection under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on February 20, 2009, in the U.S. Bankruptcy Court, Central District of California. This Chapter 11 filing was subsequently converted to a Chapter 7 filing by order of the Bankruptcy Court. Zealous Holdings, Inc. was not an entity that was entitled to a discharge under the bankruptcy code. As such Zealous Holdings, Inc. did not receive a discharge. Ultimately, Zealous Holdings, Inc. ceased doing business and was permanently closed.

3. Mr. Ault filed for bankruptcy protection under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on December 8, 2009, in the U.S. Bankruptcy Court, Central District of California. This Chapter 13 filing was subsequently converted to a Chapter 7 filing by order of the Bankruptcy Court and months later, the petition being withdrawn and dismissed without prejudice.

Except as set forth in our discussion below in "Certain Relationships and Related Transactions," none of our directors or executive officers has been involved in any transactions with us or any of our directors, executive officers, affiliates or associates which are required to be disclosed pursuant to the rules and regulations of the SEC.

**Family Relationships.**

None.

**Board Independence**

Our Board has undertaken a review of the independence of each director and director nominee and has determined that Messrs. Smith, Bentz and Rosenberg are independent, and that each director who serves on or is nominated for each of its committees is independent, as such term is defined by standards of the SEC and the NYSE American. None of Messrs. Horne, Kohn or Ault meets the independence standards.

**Stockholder Communications with the Board**

The Company's stockholders may communicate with the Board, including non-executive directors or officers, by sending written communications addressed to such person or persons in care of DPW Holdings, Inc., Attention: Secretary, 201 Shipyard Way, Newport Beach, CA 92663. All communications will be compiled by the Secretary and submitted to the addressee. If the Board modifies this process, the revised process will be posted on the Company's website.

**Meetings and Committees of the Board**

During the fiscal year ended December 31, 2017, the Board held seven meetings and acted by unanimous written consent fifteen times, the Audit Committee held three meetings, the Nominating and Governance Committee held no meeting and the Compensation Committee held one meeting. The Board and Board committees also approved certain actions by unanimous written consent. We encourage, but do not require, our Board members to attend the annual meeting of stockholders. ___ directors attended our 2017 Annual Meeting of Stockholders.

**Board Committees**

The Board has standing Audit and Compensation and Nominating and Governance Committees. Information concerning the membership and function of each committee is as follows:

| Name | Audit Committee | Compensation Committee | Nominating and Governance Committee |
|---|---|---|---|
| Amos Kohn | | | |
| Milton "Todd" Ault, III | | | |
| William Horne | | | |
| Robert O. Smith | ** *** | ** | * |
| Jeffrey A. Bentz | * | * | * |
| Moti Rosenberg | * | * | ** |

\* Member of Committee
\*\* Chairman of Committee
\*\*\* "Audit committee financial expert" as defined in SEC regulations.

11

EXHIBIT Z
156

PROPOSAL NO. 3

APPROVAL OF THE CHIEF EXECUTIVE OFFICER'S EMPLOYMENT AGREEMENT DATED JUNE 17, 2018

Description of the Employment Agreement

On June 17, 2018, the Company entered into a ten year executive employment agreement with Milton C. Ault, III, to serve as Chief Executive Officer (the "**Ault Employment Agreement**"). For his services, Mr. Ault will be paid a salary of $400,000 per annum subject to such further upward adjustments as shall be determined annually by the Compensation Committee of the Board of Directors (the "**Compensation Committee**").

Pursuant to the terms and subject to the conditions set forth in the Ault Employment Agreement, if the Company meets or exceeds criteria adopted by the Compensation Committee for earning bonuses which shall be adopted by the Compensation Committee annually, Mr. Ault is eligible to receive an annual bonus, which percentage shall be based on achievement of applicable performance goals determined by the Compensation Committee.

Further, Mr. Ault is entitled to receive equity participation as follows: (A) a grant of restricted stock in the aggregate amount of 1,000,000 shares of common stock, which shares shall vest ratably over 48 months beginning on January 1, 2020, provided, however, that such shares may, in whole or in part, in the discretion of the Compensation Committee, vest immediately upon the filing of an Annual Report on Form 10-K with the SEC that shows that the Company's revenues for the applicable fiscal year reached or exceeded $100,000,000; notwithstanding the foregoing, before the Company accelerates any such vesting, the Company's Compensation Committee must prior thereto have obtained the consent of Mr. Ault, which consent may be withheld in his discretion, and (B) an option to purchase 500,000 shares of common stock of the Company at a per share price equal to $0.80, which option will vest over 60 months.

In addition the foregoing, Mr. Ault shall be eligible to receive a performance-based award (the "**CEO Performance Award**"), provided that the Company, for any given fiscal year during the term of this Agreement, meets the following criteria: (A) an increase in revenue, as calculated under GAAP over the previous fiscal year as reported in the Annual Report on Form 10-K or successor form for such fiscal year; provided that any increase less than thirty-five percent (35%) (the "**Revenue Percentage**") shall reduce the CEO Performance Award correspondingly; (B) positive net income, as calculated under GAAP, as reported in the Annual Report on Form 10-K or successor form for such fiscal year, provided that any increase less than five percent (5%) (the "**Net Income Percentage**") shall reduce the CEO Performance Award correspondingly; and (C) positive net cash flow from operations on a year-to-year basis, where cash flow is defined as the net amount of cash and cash-equivalents being transferred into and out of the Company. The CEO Performance Award shall consist of a number of shares of the Company's common stock having a maximum value equal to ten percent (10%) of any appreciation in the Company's Market Capitalization (as defined in the Ault Employment Agreement) above the High Water Mark (as defined in the Ault Employment Agreement) as measured by the daily average closing bid price of the Company's common stock for the applicable fiscal year subject to proration obtained by the product of Revenue Percentage and the Net Income Percentage. If the CEO Performance Award in a fiscal year is less than ten percent (10%) due to a reduction caused by an annual shortfall in either the Revenue Percentage or the Net Income Percentage, the prior year's targets would be deemed to have been achieved if a corresponding overage in a subsequent fiscal year results in the achievement of the cumulative targets. The annual and cumulative targets for revenue and net income, which are provided solely for the purpose of establishing cumulative totals, are set forth in the Ault Employment Agreement.

Upon termination of Mr. Ault's employment (other than upon the expiration of the employment), Mr. Ault shall be entitled to receive: (A) any earned but unpaid base salary through the termination date; (B) all reasonable expenses paid or incurred; and (C) any accrued but unused vacation time.

Further, unless Mr. Ault's employment is terminated as a result of his death or disability or for cause or he terminates his employment without good reason, then upon the termination or non-renewal of Mr. Ault's employment, the Company shall pay to Mr. Ault a "**Separation Payment**" as follows: (A) an amount equal to four (4) weeks of base salary for each full year of service and credit for his service commencing from September 22, 2016, (B) should Mr. Ault provide the Company with a separation, waiver and release agreement within 60 days of termination, then the Company shall: (i) pay his base salary until the last to occur (the "**Separation Period**") of (1) the expiration of the remaining portion of the initial term or the then applicable renewal term, as the case may be, but in no event an amount greater than the Base Salary payable should either such period expire within two years, or (2) the 12-month period commencing on the date Mr. Ault is terminated, payable in one lump sum; (ii) provide during the Separation Period the same medical, dental, long-term disability and life insurance; and (iii) pay an amount equal to the product obtained by multiplying (x) the maximum annual bonus as Mr. Ault would have been otherwise entitled to receive by (y) the fraction in which the numerator is the number of calendar months worked including the entire month in which severance occurred and the denominator of which is 12; and (iv) all outstanding options and other equity awards shall immediately vest and become fully exercisable for a period of 24 months. Finally, upon the occurrence of a change in control, Mr. Ault will be paid an amount equal to the greater of: (i) five times his then current Base Salary or (ii) the Separation Payment amount set forth above, without regard to whether Mr. Ault continues in the employ of the Company or its successor.

17

### Why the Company Needs Stockholder Approval

Rule 711 of the NYSE American requires stockholder approval with respect to the establishment of (or material amendment to) a stock option or purchase plan or other equity compensation arrangement pursuant to which options or stock may be acquired by officers, directors, employees, or consultants.

### Effect of Proposal on Current Stockholders

If this Proposal No. 3 is adopted, based on the issuance of shares pursuant to the Ault Employment Agreement (and provided the Company has sufficient authorized shares of Common Stock), a maximum of 1,500,000 shares of Common Stock would be issuable, setting aside the number of shares of common stock issuable pursuant to the CEO Performance Award, which figure is not calculable with any reasonable degree of certainty. Based on the number of shares of Common Stock outstanding as of the Record Date, such shares would represent ____% of our total outstanding shares (giving effect to such issuance). The issuance of such shares may result in significant dilution to our stockholders, and afford them a smaller percentage interest in the voting power, liquidation value and aggregate book value of the Company. The sale or any resale of the Common Stock issued pursuant to the Executive Employment Agreement could cause the market price of our Common Stock to decline.

### Further Information.

The terms of the Ault Employment Agreement are complex and only briefly summarized above. For further information, please refer to the descriptions contained in the Company's Current Report on Form 8-K filed with the SEC on June 18, 2018, and the transaction documents filed as exhibits to such report. The discussion herein is qualified in its entirety by reference to such filed transaction documents.

### Required Vote and Board Recommendation

Approval of the Ault Employment Agreement requires the receipt of the affirmative vote of a majority of the shares of the Company's Common Stock present in person or by proxy and voting at the Meeting.

**The Board unanimously recommends a vote "FOR" the approval of (i) the grant of 1,000,000 shares of Common Stock, which shares shall vest ratably over 48 months beginning on January 1, 2020, (ii) the grant of options to purchase 500,000 shares of Common Stock at an exercise price of $0.80, which option will vest over 60 months, and the issuance of the shares of Common Stock issuable upon exercise of such option, and (iii) the CEO Performance Award, each pursuant to the terms of the Ault Employment Agreement, dated June 17, 2018, in order to comply with Rule 711 of the NYSE American.**

18

PROPOSAL NO. 4

APPROVAL OF THE CHIEF FINANCIAL OFFICER'S EMPLOYMENT AGREEMENT DATED JANUARY 25, 2018

Description of the Employment Agreement

On January 25, 2018, the Company entered into a five year employment agreement with William B. Horne, to serve as Chief Financial Officer and Executive Vice President of the Company and its subsidiaries (the "**Horne Employment Agreement**"). For his services, Mr. Horne will be paid a salary of $250,000 per annum subject to such further upward adjustments as shall be determined annually by the Board.

Upon signing of the Horne Employment Agreement, Mr. Horne became entitled to a signing bonus in the amount of $25,000. In addition, Mr. Horne is eligible to receive an annual cash bonus equal to a percentage of his annual base salary based on achievement of applicable performance goals determined by the Compensation Committee.

Further, Mr. Horne is entitled to receive equity participation as follows: (A) a grant of restricted stock in the aggregate amount of 1,000,000 shares of common stock, which shares shall vest in installments of two hundred thousand (200,000) shares annually over five (5) years beginning on January 1, 2019, provided, however, that such shares may, in whole or in part, in the discretion of the Compensation Committee, vest immediately upon the filing of an Annual Report on Form 10-K with the SEC that shows that the Company's revenues for the applicable fiscal year reached or exceeded $100,000,000; notwithstanding the foregoing, before the Company accelerates any such vesting, the Company's Compensation Committee must prior thereto have obtained the consent of Mr. Horne, which consent may be withheld in his discretion, and (B) an option to purchase 500,000 shares of common stock of the Company at a per share price equal to the closing price of $2.32, the closing market price of the shares of common stock on January 24, 2018, which option will vest over 60 months.

Upon termination of Mr. Horne's employment (other than upon the expiration of the employment), Mr. Horne shall be entitled to receive: (A) any earned but unpaid base salary through the termination date; (B) all reasonable expenses paid or incurred; and (C) any accrued but unused vacation time.

Further, unless Mr. Horne's employment is terminated as a result of his death or disability or for cause or he terminates his employment without good reason, then upon the termination or non-renewal of Mr. Horne's employment, the Company shall pay to Mr. Horne a "**Separation Payment**" as follows: (A) an amount equal to four weeks of base salary for each full year of service, (B) should Mr. Horne provide the Company with a separation, waiver and release agreement within 60 days of termination, then the Company shall: (i) pay his base salary until the last to occur of (1) the expiration of the remaining portion of the initial term or the then applicable renewal term, as the case may be, or (2) the 12-month period commencing on the date Mr. Horne is terminated, payable in one lump sum; (ii) provide during the Separation Period the same medical, dental, long-term disability and life insurance; and (iii) pay an amount equal to the product obtained by multiplying (x) the maximum annual bonus as Mr. Horne would have been otherwise entitled to receive by (y) the fraction in which the numerator is the number of calendar months worked including the entire month in which severance occurred and the denominator of which is 12; and (iv) all outstanding options and other equity awards shall immediately vest and become fully exercisable for a period of 24 months. Finally, upon the occurrence of a change in control, Mr. Horne will be paid an amount equal to four times his Separation Payment.

Why the Company Needs Stockholder Approval

Rule 711 of the NYSE American requires stockholder approval with respect to the establishment of (or material amendment to) a stock option or purchase plan or other equity compensation arrangement pursuant to which options or stock may be acquired by officers, directors, employees, or consultants.

Effect of Proposal on Current Stockholders

If this Proposal No. 4 is adopted, based on the issuance of shares pursuant to the Horne Employment Agreement (and provided the Company has sufficient authorized shares of Common Stock), a maximum of 1,500,000 shares of Common Stock would be issuable. Based on the number of shares of Common Stock outstanding as of the Record Date, such shares would represent ____% of our total outstanding shares (giving effect to such issuance). The issuance of such shares may result in significant dilution to our stockholders, and afford them a smaller percentage interest in the voting power, liquidation value and aggregate book value of the Company. The sale or any resale of the Common Stock issued pursuant to the Horne Employment Agreement could cause the market price of our Common Stock to decline.

19

11/19/2018 https://www.sec.gov/Archives/edgar/data/896493/000121465918005040/p728180pre14a.htm

### Further Information.

The terms of the Horne Employment Agreement are complex and only briefly summarized above. For further information, please refer to the descriptions contained in the Company's Current Report on Form 8-K filed with the SEC on January 25, 2018, and the transaction documents filed as exhibits to such report. The discussion herein is qualified in its entirety by reference to such filed transaction documents.

### Required Vote and Board Recommendation

Approval of the Horne Employment Agreement requires the receipt of the affirmative vote of a majority of the shares of the Company's Common Stock present in person or by proxy and voting at the Meeting.

The Board unanimously recommends a vote "FOR" the approval of (i) the grant of 1,000,000 shares of Common Stock, which shares shall vest in installments of two hundred thousand (200,000) shares annually over five (5) years beginning on January 1, 2019, and (ii) the grant of options to purchase 500,000 shares of Common Stock at an exercise price of $2.32, which option will vest over 60 months, and the issuance of the shares of Common Stock issuable upon exercise of such option pursuant to the terms of the Horne Employment Agreement (defined herein) dated January 25, 2018, in order to comply with Rule 711 of the NYSE American.

20

## PROPOSAL NO. 5

## APPROVAL OF EQUITY ISSUANCES TO DIRECTORS AND EXECUTIVE OFFICERS

### Terms of the Transaction

On November 28, 2017, each director received options to purchase 100,000 shares of Common Stock at an exercise price of $1.38 per share for a term of ten (10) years, other than Messrs. Ault and Smith, who received 500,000 and 200,000 options, respectively. The options shall vest in monthly 1/48th increments over four (4) years and are subject to stockholder approval.

On January 24, 2018, Mr. Bentz received options to purchase 275,000 shares of Common Stock at an exercise price of $2.23, which options shall vest ratable over a term of three (3) years and are subject to stockholder approval.

On June 17, 2018, the Board approved the grant of additional options to purchase shares of Common Stock at $0.80 per share to vest over a period of four years, as follows: (i) 100,000 shares of Common Stock to Mr. Bentz, (ii) 290,000 shares of Common Stock to Mr. Rosenberg and (iii) 232,500 shares of Common Stock to Mr. Smith. The options shall vest ratably over sixty (60) months and are subject to stockholder approval.

### Why the Company Needs Stockholder Approval

Rule 711 of the NYSE American requires stockholder approval with respect to the establishment of (or material amendment to) a stock option or purchase plan or other equity compensation arrangement pursuant to which options or stock may be acquired by officers, directors, employees, or consultants.

### Effect of Proposal on Current Stockholders

If this Proposal No. 5 is adopted, provided the Company has sufficient authorized shares of Common Stock, a maximum of 1,997,500 shares of Common Stock would be issuable. Based on the number of shares of Common Stock outstanding as of the Record Date, such shares would represent ___% of our total outstanding shares (giving effect to such issuance). The issuance of such shares may result in significant dilution to our stockholders, and afford them a smaller percentage interest in the voting power, liquidation value and aggregate book value of the Company. The sale or any resale of the Common Stock issued could cause the market price of our Common Stock to decline.

### Required Vote and Board Recommendation

The grant of options set forth in this Proposal No. 5 to the directors of the Company requires the receipt of the affirmative vote of a majority of the shares of the Company's Common Stock present in person or by proxy and voting at the Meeting.

**The Board unanimously recommends a vote "FOR" the approval of equity issuances to directors and executive officers of the Company, in order to comply with Rule 711 of the NYSE American.**

21