UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

| | | | |
|---|---|---|---|
| **CASE NO.:** | CV 18-06587 SJO | **DATE:** | May 21, 2019 |

**TITLE:** Ethan Young and Greg Young, derivatively on behalf of DPW Holdings, Inc. v. Milton C. Ault, III, et. al.

========================================================================
**PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                                   Not Present
Courtroom Clerk                                    Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF(S):**              **COUNSEL PRESENT FOR DEFENDANT(S):**

Not Present                                        Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND** [Docket No. 46].

This matter is before the Court on Defendants Milton C. Ault III, Amos Kohn, William B. Horne, Jeff Bentz, Mordechai Rosenberg, Robert O. Smith, Kristine Ault, and Nominal Defendant DPW Holdings, Inc.'s Motion to Dismiss ("Mot.") Plaintiffs' First Amended Complaint ("FAC"), filed March 25, 2019. Plaintiffs Ethan Young and Greg Young ("Plaintiffs") opposed the Motion ("Opposition") on April 15, 2019, and Defendants replied ("Reply") on April 22, 2019. The Court found the matter suitable for disposition without oral argument. *See* Fed. R. Civ. P. 78(b). For the following reasons, the **Court GRANTS IN PART AND DENIES IN PART** Defendants' Motion **with leave to amend**. If Plaintiffs elect to do, Plaintiffs must file any amendments to the operative complaint within **ten (10)** days from the date of this order.

I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs, stockholders of Nominal Defendant DPW, bring a shareholder derivative action for the benefit of DPW. (FAC ¶¶ 1, 21-22, ECF 44.) Plaintiffs assert the following causes of actions: (1) breach of fiduciary duty against Defendants T. Ault, Kohn, and Horne; (2) breach of fiduciary duty against Defendants Smith, Rosenberg, and Bentz; (3) breach of fiduciary duty against Defendant K. Ault; (4) Unjust Enrichment against Defendants Ault, Kohn and Horne; and (5) Unjust Enrichment against Defendants Smith, Rosenberg, Bentz, and Ault. (FAC ¶¶ 315-347.) The central allegations in the FAC are identical to those found in the original complaint. Thus, the statement of facts in this Court's prior order remains an accurate, and complete summary of the factual background of this case. (*See* Order Granting In Part Defs.' Mot. to Dismiss With Leave to Amend ("Order") 1-2, ECF 42.)

Plaintiffs initiated the instant action by filing their original complaint on July 31, 2018. (*See* Compl., ECF 1.) On November 28, 2018, Defendants filed a motion to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 23.1, arguing that the Complaint failed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

| | |
|---|---|
| CASE NO.: <u>CV 18-06587 SJO</u> | DATE: <u>May 21, 2019</u> |

to state a viable claim against Defendants and "Plaintiffs failed to make the required pre-action demand upon DPW's Board and their futility allegations were insufficient." (Notice of Mot. and Mot. to Dismiss Pursuant to FRCP 12(b)(6) and 23.1 (First Mot. To Dismiss) 1, ECF 24.) On February 25, 2019, this Court granted in part Defendant's First Motion To Dismiss with leave to amend, holding that Plaintiffs did not state a viable claim and excusing the demand requirement as futile. (*See generally* Order.)

Plaintiffs subsequently filed their FAC on March 11, 2019. (*See* FAC.) On March 25, 2019, Defendants filed the instant Motion, asserting that Plaintiffs still has not stated a viable claim against Defendants. (Notice of Mot. and Mot. to Dismiss FAC ("Mot."), ECF 46.)

These proceedings followed.

II.     <u>LEGAL STANDARD</u>

   A.     <u>Federal Rule of Civil Procedure 12(b)(6)</u>

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of the claims asserted in the complaint." *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-200 (9th Cir. 2003). In evaluating a motion to dismiss, a court accepts the plaintiff's factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see Ileto*, 349 F.3d at 1200. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). To plead sufficiently, Plaintiff must proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility requires "more than a sheer possibility that the defendant has acted unlawfully," instead, a claim must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

   B.     <u>Breach of Fiduciary Duty</u>

"A claim for breach of fiduciary duty requires proof of two elements: (1) that a fiduciary duty existed and (2) that the defendant breached that duty." *Beard Research, Inc. v. Kates*, 8 A.3d 573, 601 (Del. Ch. 2010). . "When determining whether directors have breached their fiduciary duties,

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

CASE NO.: **CV 18-06587 SJO**          DATE: **May 21, 2019**

Delaware corporation law distinguishes between the standard of conduct and the standard of review." *In re Trados, Inc. S'holder Litig.*, 73 A.3d 17, 35 (Del. Ch. 2013). The standard of conduct dictates what directors are expected to do and is defined by the content of the duties of loyalty and care. *See id.* "The standard of review is the test that a court applies when evaluating whether directors have met the standard of conduct" and describes "what a plaintiff must first plead and later prove to prevail." *Id.* at 36. Under Delaware law:

> [T]he standard of review depends initially on whether the board members (I) were disinterested and independent (the business judgment rule), (ii) faced potential conflicts of interest because of the decisional dynamics present in particular recurring and recognizable situations (enhanced scrutiny), or (iii) confronted actual conflicts of interest such that the directors making the decision did not comprise a disinterested and independent board majority (entire fairness).

*Id.* "Delaware's default standard of review is the business judgment rule." *Id.* at 43 (internal quotations omitted). "Under the business judgment rule, a court will not second-guess the fiduciary's decision as long as it has any rational business purpose, even if the decision ends up being flawed in hindsight." *In re Ultimate Escapes Holdings, LLC*, 551 B.R. 749, 761 (D. Del. 2016). The business judgment rule is a presumption that "in making a business decision the directors of a corporation acted on an informed basis, ... and in the honest belief that the action taken was in the best interests of the company [and its shareholders]." *In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 746–47 (Del.Ch.2005) ("Walt Disney I") (internal quotation marks and citations omitted). "This presumption applies when there is no evidence of fraud, bad faith, or self-dealing in the usual sense of personal profit or betterment on the part of the directors." *Id.* at 747 (internal quotation marks and citations omitted).

A plaintiff, as the party challenging the fiduciary decision, carries the burden of rebutting the presumption. *In re Ultimate Escapes Holdings*, 551 B.R. at 761. To rebut the presumption, a plaintiff must "demonstrate by a preponderance of evidence that the defendants violated their fiduciary duties and/or committed waste." *Walt Disney*, 907 A.2d at 756. "More specifically, in the area of director action [as opposed to inaction], plaintiffs must prove by a preponderance of the evidence that the presumption of the business judgment rule does not apply either because the directors breached their fiduciary duties, acted in bad faith or that the directors made an unintelligent or unadvised judgment, by failing to inform themselves of all material information reasonably available to them before making a business decision." *Id.* (internal quotation marks and citations omitted). If a plaintiff successfully rebuts the presumption, the burden shifts to defendants to prove by a preponderance of the evidence that the decision at issue was "entirely fair" to the corporation and its shareholders. *Id.* at 757.

///

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

CASE NO.: **CV 18-06587 SJO**                    DATE: **May 21, 2019**

III.     DISCUSSION

       A.     First, Second, and Third Cause of Action: Breach of Fiduciary Duty

In the instant case, Plaintiffs have grouped Defendants into three groups for the breach of duty causes of action: (1) T. Ault, Kohn, and Horne (collectively, "Officer Directors"); (2) Smith, Rosenberg, and Bentz (collectively, "Committee Member Directors"; and (3) former director K. Ault. (*See* FAC ¶¶ 315-41.)  Unlike in the original complaint where Plaintiffs merely alleged that collectively, Defendants breached duties of loyalty, care, and good faith, the FAC attempts to describe each Defendant's specific misconduct. (*See* FAC ¶¶ 318-20, 328-30, 337-38.)

The Court will first address the allegations against Committee Member Directors.  The Court will then consider the allegations against the remaining Defendants.  The Court organizes this latter analysis by transaction, determining whether the FAC pleads enough facts with respect to a given transaction to sustain a cause of action for breach of fiduciary duty.

       1.     Breach of Fiduciary Duty Claims Against Defendants Smith, Rosenberg, and Bentz Are Dismissed Without Leave To Amend.

In the previous order, this Court held that Committee Member Directors are protected by the exculpatory charter provision. (*See* Order 14.)  The exculpatory provision exempts the Board of Directors from being held liable for monetary damages due to a breach of fiduciary duty. *See Forestal*, 2016 U.S. Dist. LEXIS 191432, at *21.  Liability of directors protected by the exculpatory provision is limited to "breaches of loyalty, bad faith conduct, intentional misconduct, knowing violations of the law," or for any transaction from which the director derived an improper personal benefit. *Id.*  See 8 Del. § 102(b)(7).  Moreover, "**[t]he liability of the directors must be determined on an individual basis because the nature of their breach of duty (if any), and whether they are exculpated from liability for that breach, can vary for each director**." *In re Emerging Communications Inc. S'holders Litig.*, 2004 WL 1305745, at *38 (Del. Ch. Jun.4, 2004).

This Court also concluded in the previous Order that "the Complaint fails to separately plead specific claims for a breach of fiduciary duty against each of these individual directors":

> Plaintiffs do not allege specific facts demonstrating a breach of loyalty, bad faith conduct, intentional misconduct, knowing violations of the law, or an improper personal benefit derived from a transaction attributed to each, or any, of the exculpated directors which would implicate liability. In fact, the entirety of the 114-page Complaint only specifically references Smith, Rosenberg, and Bentz to indicate their professional backgrounds, positions

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:** <u>CV 18-06587 SJO</u>      **DATE:** <u>May 21, 2019</u>

> on the Board or other committees, and their compensation or stock options. (*See generally* Compl.)
>
> . . . The only facts that would implicate any liability against Defendants Smith, Rosenberg, and Bentz are those actions Plaintiffs allege were taken by "the Company" or the committees on which those Defendants were apart, including "the Compensation Committee," "the Audit Committee," or "the NG Committee." (*See* Compl. 19-20, 32-109.) Even if Plaintiffs successfully plead facts to support a breach of fiduciary duties against these collective entities, it is impossible for the Court to determine the nature of the liability as to each of the individual directors acting within "the Company" or specific committee.

(Order 14.) Plaintiffs have not stated any new facts in the FAC that implicate Smith, Rosenberg, and Bentz as individuals. The most substantive change in the FAC is that Plaintiffs attempted to plead specific claims against each of the Committee Member Directors. (*See* FAC ¶¶ 328-30.) However, these descriptions are composed of predominantly conclusory statements that merely assert that these three Defendants had actual or constructive knowledge of the alleged schemes, and breached their fiduciary duty by either approving a course of conduct harmful to the DPW or by failing to accurately report material facts to the public. (*See id.*) Plaintiffs use almost identical language and allegations against each of the Committee Member Directors without providing any specific information about whether an individual Committee Member Director made an uninformed business decision, acted in bad faith, or failed to fulfil their individual duties as a director. (*See generally* FAC.) Thus, like the Complaint, the FAC fails to separately plead specific claims for a breach of fiduciary duty against each of these directors.

Thus, the Court **GRANTS** Defendants' Motion as to the breach of fiduciary claims against Committee Member Directors. The Court **DISMISSES** the causes of action against Committee Member Directors **with leave to amend**.

> 2.   <u>Breach of Fiduciary Duty Claims Against Defendants T. Ault, Kohn, Horne and K. Ault</u>

The claims against Officer Directors and former director K. Ault arise out of many of the same transactions or occurrences. For example, Plaintiffs allege that T. Ault, Kohn, and K. Ault violated their duty of loyalty by approving related party transactions such as the one with Avalanche International, Corp. ("AVLP") and assert that T. Ault, Kohn, and Horne "failed to act in the best interest of the Company as described herein including allowing the Company to enter into the Future Receipts Agreements. . . ." Accordingly, it makes little sense for the Court to organize the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

CASE NO.: **CV 18-06587 SJO**                       DATE: **May 21, 2019**

remainder of its analysis by defendant.  Instead, the Court will organize the analysis by the underlying transaction or occurrence, to determine if the conduct pled would sustain a cause of action for breach of fiduciary duty as to Defendants T. Ault, Kohn, Horne, or K. Ault.

As enumerated below, the Court **GRANTS IN PART** the Motion, and **DENIES IN PART** the Motion.  If Plaintiffs elect not to amend the operative complaint, this means that the instant lawsuit can only proceed with respect to certain transactions or occurrences purportedly undertaken by the Officer Directors and Former Director K. Ault.  Plaintiffs cannot proceed with this lawsuit with respect to the transactions or occurrences for which the Court **GRANTS** this Motion below (assuming that Plaintiffs do not amend the complaint).

a.       Claims Based on Transactions With AVLP

Plaintiffs argue that T. Ault, K. Ault and Horne violated their duty of loyalty by participating in transactions with AVLP, a related party.  (FAC ¶¶ 318, 319, 337.)  Specifically, Plaintiffs contend that this is an instance where these directors stand on both sides of the transaction and personally benefit.  (*See* FAC ¶¶ 318, 319, 337.)

To determine whether participating in the AVLP transactions constitutes a breach of fiduciary duty, the Court must first determine the standard of review for these actions.  *See In re Trados*, 73 A.3d at 35.  Under Delaware law, "[w]hen a transaction involving self-dealing by a controlling shareholder is challenged, the applicable standard of judicial review is entire fairness, with the defendants having the burden of persuasion."  *Ams. Mining Corp. V. Theriault*, 51 A.3d 1213, 1239 (Del. 2012).  Here, T. Ault is a controlling shareholder and director for both DWP and AVLP.  Thus, the standard of review is "entire fairness."  (*See* FAC ¶¶ 2, 91-92; Opposition 5 n. 2.)

The determination that the appropriate standard of review is entire fairness "normally will preclude dismissal of a complaint on a Rule 12(b)(6) motion to dismiss." *Calma on Behalf of Citrix Systems, Inc. v. Templeton,* 114 A.3d 563, 589 (Del. Ch. 2015) *(quoting Orman v. Cullman*, 794 A.2d 5, 20 n. 36 (Del. Ch. 2002)).  However, "[e]ven in a self-interested transaction in order to state a claim a shareholder must allege some facts that tend to show that the transaction was not fair."  *Id.* "The concept of fairness has two basic aspects: fair dealing and fair price."  *Weinberger v. UOP, Inc.*, 457 A.2d 701, 710 (Del. 1983).  Fair dealing focuses on "when the transaction was timed, how it was initiated, structured, negotiated, disclosed to the directors, and how the approvals of the directors and the stockholders were obtained."  *Id.* Fair price focuses on the economic and financial aspect of the transaction.  *See id.*

Based on the facts in the FAC, it is reasonable to conclude that there was not fair dealing in the transactions with AVLP.  Plaintiffs assert that DWP invested millions of dollars to fund AVLP

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

CASE NO.: **CV 18-06587 SJO**  DATE: **May 21, 2019**

between September 2016 and July 2018. (FAC ¶¶ 93, 120.) Defendants have not provided any facts about these transactions, such as how they were initiated or structured, that would support a conclusion of fair dealing. (*See generally* Motion; Reply.) However, Plaintiffs have provided sufficient facts to show that the board that provided the approvals was not independent. During this period of time at AVLP, T. Ault was the Chairman of the Board, and Horne was the CFO and a director, as well as the audit committee chairman. (FAC ¶ 101.) Until her resignation on April 25, 2018, K. Ault served as the manager of Philou Ventures, a company that acquired AVLP in May 2014 owned by the Aults. (FAC ¶ 56, 81.) For most of this time period, Horne, T. Ault, and K. Ault also served on DWP's six-person Board. (See FAC ¶ 43, 79; Opposition 1.) Horne became a director of DWP in October 2016, and T. Ault became the Chairman of the DWP's Board in March 2017. (FAC ¶ 79.) K. Ault served as a director of DWP from October 2016 until her resignation on January 23, 2018, at which time Bentz took her place on the Board. (FAC ¶ 43.) Further, Kohn, who was not independent or uninterested, served on this Board. (FAC ¶ 39.) Because Kohn was an officer at DPW and DPW's subsidiary, Coolisys Technologies, Inc., he likely lacked independence when making decisions that may not align with the interests of the controlling shareholder, T. Ault. (FAC ¶¶ 2, 39, 91-92; Opposition 5 n. 2.); *see Frederick Hsu*, 2017 WL 1437308, at *30 ("[S]enior corporate officers generally lack independence for purposes of evaluating matters that implicate the interests of the controller." (internal quotations and citations omitted)). Thus, at all relevant times, at least half the DWP Board was not independent. Either half of the DWP board were on both sides of the transaction or there were two directors on either side of the transaction and one senior officer that cannot be considered independent.

With respect to the price of the transactions at issue, Plaintiffs assert that DPW transferred approximately $5.6 million in cash to AVLP and purchased 709,633 shares of AVLP common stock even though AVLP's Form 10-Q for the first quarter of 2016 stated that "at February 29, 2016, the Company's current liabilities significantly exceed current assets, resulting in negative working of $2,129,516." (FAC ¶¶ 93, 98.) Based on these facts alone, it appears reasonably conceivable that the price of these transactions with AVLP were not entirely fair. Defendants have not provided any facts that would suggest otherwise. (*See generally* Motion.) Thus, Plaintiffs have pled sufficient facts to state a claim against T. Ault, K. Ault and Horne for breach of fiduciary duty due to involvement in transactions with AVLP.

The Court **DENIES** the Motion with respect to the transactions with AVLP.

///
///
///
///
///

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

CASE NO.:   **CV 18-06587 SJO**               DATE: **May 21, 2019**

   b.  Claims Based on MTIX Purchase Order

The FAC states that Officer Directors and K. Ault "had actual or constructive knowledge that the Company issued materially false and misleading statements and failed to correct the Company's public statements and representations." (FAC ¶¶ 318-320.) It also alleges more specifically that DWP continues to state publicly that it has received a $50 million purchase order from MTIX, a company acquired by AVLP in August 2017, even though "Individual Defendants knew, or should have known, that MTIX does not have the resources to fund a $50 million purchase order." (FAC ¶¶ 116, 127.)

When a derivative claim is based on "providing information in the absence of a request for shareholder action, . . . plaintiff must show reliance, causation, and damages in order to establish a breach of the duty of loyalty." *Wilkin v. Narachi*, No. 12412, 2018 WL 1100372, *33-34 (Del. Ch. Feb. 28, 2018). "For a disclosure claim to be viable, it must demonstrate damages that flow from the failure to adequately disclose information. . . . Plaintiffs must at the very least allege some connection between the lack of disclosure and an actual harm." *In re Tyson Foods, Inc. Consol. S'holder Litig.*, 919 A.2d 563, 597 (Del. Ch. 2007). Plaintiffs did not discuss any actual harm that resulted from the disclosures at issue in the FAC. Even in the most pertinent sections of the FAC, namely the sections describing the MTIX purchase order (FAC ¶¶ 124-27.), the damages to DPW caused by the individual defendants (FAC ¶¶ 253-47.), and Count I (FAC ¶¶ 315-23.), there are no facts linking the alleged disclosures to a harm experienced by shareholders. Therefore, Plaintiffs fail to state a claim regarding statements DWP publicly disclosed about the MTIX purchase order.

The Court **GRANTS** the Motion with respect to the MTIX purchase order.

   c.  Claims Based on Future Receipts Agreements

Plaintiffs claim that in their capacity as DWP officers, Officer Directors T. Ault, Horne and Kohn failed to act in the best interest of the company by allowing the Company to enter into the agreements between July 6, 2017, through which the Company received funding of $6,989,000 in exchange for $9,835,900 future receipts, paying an interest rate of approximately 41% ("Future Receipts Agreements"). (*See* FAC ¶¶ 4, 318-320.) It is well-established that "[a] corporate officer can be held personally liable for the torts he commits and cannot shield himself behind a corporation when he is a participant." *Stonington Partners, Inc. v. Lernout & Hauspie Speech Products, N.V.*, No. C.A. 18524-NC, 2002 WL 31439767, at *8 n. 27 (Del. Ch. 2002) (citing *Brandywine Mushroom Co. v. Hockessin Mushroom Prods.*, 682 F.Supp. 1307, 1314 (D. Del.1988)); *see T.V. Spano Bldg. Corp. v. Wilson*, 584 A.2d 523, 530 (Del.Super.1990)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

| CASE NO.: CV 18-06587 SJO | DATE: May 21, 2019 |
|---|---|

("[C]orporate officers are liable for their tortious conduct even though they were acting officially for the corporation in committing the tort.").

Here, Plaintiffs assert that "T. Ault, Horne, and Kohn were all officers when some or all of the Future Receipts Agreements were entered" and "[o]fficers run the day to day operations of a company." (Opposition 17; *see* FAC ¶¶ 26, 37, 39, 128-39.) Construing the facts in the light most favorable to the Plaintiff, this suggests that these defendants, in their capacity as officers, indeed participated in the decision-making process to enter into the agreements at issue. These facts plausibly give rise to a claim of breach of fiduciary duty.

The Court **DENIES** the Motion with respect to future receipt agreements.

    d.  Claims Based on Stock Issuances

Plaintiffs further allege that Officer Directors and K.Ault breached their fiduciary duty by allowing DWP to issue millions of shares of the Company's common stock. (FAC ¶¶ 5, 318-20.) In just over a year, from April 2017 until May 2018, "the Company issued over 50 million shares, thereby diluting shareholder interest." (FAC ¶ 5.)

In their Opposition, Plaintiffs argue that claims based on stock issuances should not be dismissed because personal gain motivated the decision to issue these securities. (*See* Opposition 18.) The Court agrees. Under Delaware law, courts give deference to a board of director's decision in sale of its no par value stock, "except for fraud, actual or constructive." *Bodell v. General Gas & Electric Corp.*, 140 A. 264, 267 (Del. 1927); *see Garza v. TV Answer, Inc.*, Civ. A. No. 12784, 1993 WL 77186 (Del. Ch. 1993). Fraud in this context includes "improper motive or personal gain or arbitrary action or conscious disregard of the interests of the corporation and the rights of its stockholders." *Bodell*, 140 A. at 267. In the instant case, DWP allegedly used the funds from the stock issuances "to make loans to related parties including AVLP." (FAC ¶ 142.) As discussed above, directors, including T. Ault and Korne, hold director and officer positions at companies that are related parties. (*See* FAC ¶ 101.) Moreover, when engaging in decisions regarding funding for AVLP, the Court already concluded that at all relevant times, the Board did not have a majority of independent directors. Because directors would personally benefit from DWP investing in the companies like AVLP where they hold director and officer positions and at least half of DWP's board was likely not independent, it is reasonable conceivable that the stock issuances were the result of desire for personal gain.

Plaintiffs further allege that DWP issued shares to Ault-controlled related parties such as Ault & Company and Philou Ventures. (*See* FAC ¶ 101.) Given that the Aults own a controlling interest in DWP, this is a transaction where the controllers are on both sides. Thus, the appropriate

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority \_\_\_\_\_
Send \_\_\_\_\_
Enter \_\_\_\_\_
Closed \_\_\_\_\_
JS-5/JS-6 \_\_\_\_\_
Scan Only \_\_\_\_\_

| CASE NO.: <u>CV 18-06587 SJO</u> | DATE: <u>May 21, 2019</u> |
|---|---|

standard of review for these transactions is "entire fairness." *See Ams. Mining Corp. V. Theriault*, 51 A.3d at 1239. Defendants, again, do not provide any information to indicate that there was fair dealing. Further, the boards that approved these transactions were not independent. In 2017, when Ault & Company purchased their shares, the Aults were both on DWP's board and on both sides of the transaction, and, as the Court determined above, Kohn was on the board and was not independent. (FAC ¶¶ 101, 170.) In the first quarter of 2018 when Philou Ventures received Series B Convertible stocks, K. Ault may have already resigned, but around the same time Director Kohn became the CFO. (FAC ¶¶ 39, 43.) As determined previously, directors who are also senior officers may be beholden to the interest of T. Ault, the controller. *See* Frederick Hsu, 2017 WL 1437308, at *30 ("[S]enior corporate officers generally lack independence for purposes of evaluating matters that implicate the interests of the controller." (internal quotations and citations omitted)). Thus, where at all relevant times the Board is not comprised of a majority of independent directors, Defendants likely cannot show these transactions were products of fair dealing. Further, DWP issued shares of DWP common stock to Ault & Company and Philou Ventures at below market price, suggesting that the price was not fair. (FAC ¶ 170.) As such, it is reasonably conceivable that the issuance of stock to related parties on favorable terms were not entirely fair transactions.

Accordingly, the facts that Plaintiffs have alleged regarding stock issuances are sufficient to state a claim against Officer Directors and K. Ault for breach of fiduciary duty with respect to claims based on stock issuances. The Court **DENIES** the Motion in this regard.

### f. Claims Based on Cryptocurrency

Next, Plaintiffs assert that Defendants breached their fiduciary duty because DWP made misleading statements about its cryptocurrency business. (*See* FAC ¶¶ 172-80.) However, nowhere in the FAC does Plaintiff provide facts linking these misleading statements to harm experienced by shareholders. As the Court stated above, "[f]or a disclosure claim to be viable, it must demonstrate damages that flow from the failure to adequately disclose information." *In re Tyson Foods, Inc. Consol. S'holder Litig.*, 919 A.2d at 597. The Court has already concluded that where Plaintiffs fail to do so, Plaintiffs have not pled sufficient facts to state a claim.

To the extent Plaintiffs are alleging that Defendants should be held liable for investing in cryptocurrency, Plaintiffs have not alleged sufficient facts to state a claim. (*See* FAC ¶¶ 172-80.) Investment in cryptocurrency is a transaction protected by the business judgment rule since there are no facts suggesting fraud, bad-faith or self-dealing with respect to these transactions. (*See id.*); *Walt Disney I*, 907 A.2d 747 (The business judgment rule "applies when there is no evidence of fraud, bad faith, or self-dealing in the usual sense of personal profit or betterment on the part of the directors." (internal quotation marks and citations omitted)). Under the business

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

| | |
|---|---|
| CASE NO.: **CV 18-06587 SJO** | DATE: **May 21, 2019** |

judgment rule, a court will defer to the fiduciary's decision "as long as it has any rational business purpose, even if the decision ends up being flawed in hindsight." *In re Ultimate Escapes*, 551 B.R. at 761. When DWP first began investing in cryptocurrency, there was a hype surrounding cryptocurrency that caused its stock to increase in value. (FAC ¶¶ 174.) This suggests that at the time the Company began its cryptocurrency endeavors, it was not entirely irrational to believe that these were investments that could increase profits.

Accordingly, Plaintiff has not stated claim based on facts alleged regarding Defendants' cryptocurrency ventures. The Court **GRANTS** the Motion with respect to Plaintiff's allegations that Defendants' transactions involving cryptocurrency breached their fiduciary duty.

        g.    <u>Claims Based on Financial Statement Reporting and Internal Controls</u>

Plaintiffs argue that Director Officer should be held liable for "failing to implement and maintain a system of effective internal controls and procedures." (FAC ¶¶ 174.) Claims of breach of fiduciary duty arising from an alleged bad faith failure to implement and maintain adequate internal controls are colloquially known as "*Caremark* actions." *See Rich ex rel. Fuqi Intern., Inc. V. Yu Kwai Chong,* 66 A.3d 963, 980 (Del. Ch. 2013).

A Caremark claim is "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *In re Caremark Intern. Inc. Derivative Litigation*, 698 A.2d 959, 967 (Del. Ch. 1996). In *Stone v. Ritter*, the Court concluded that "only a sustained or systematic failure of the board to exercise oversight—such as an utter failure to attempt to assure a reasonable information and reporting system exists—will establish the lack of good faith that is a necessary condition to liability." 911 A.2d 362, 369 (2006) (quoting *Caremark*, 698 A.2d at 971). A plaintiff can successfully assert a *Caremark* claim under two scenarios:

> (a) the directors utterly failed to implement any reporting or information system or controls, or (b) having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention.

*Id.* at 370. "Where directors fail to act in the face of a known duty to act, thereby demonstrating a conscious disregard for their responsibilities, they breach their duty of loyalty by failing to discharge that fiduciary obligation in good faith." *Id.*

In the instant case, it is not reasonably conceivable that Plaintiffs prevail on a *Caremark* claim by showing that directors utterly ailed to implement any controls. DWP has an auditing committee

MINUTES FORM 11
CIVIL GEN             Page 11 of 14         : ___
                                                       Initials of Preparer

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

CASE NO.: **CV 18-06587 SJO**          DATE: **May 21, 2019**

responsible for "retention, compensation and oversight of auditors," and serves as "an independent monitor of the Company's financial reporting process and internal control over financial reporting."  (FAC ¶ 64.)  The committee "is empowered to investigate any matters brought to its attention," and have "full access to all books, records, facilities, and personnel of the Company and the power to retain outside counsel, auditors, or other experts." (*Id.*) Based on these facts from the FAC, it is reasonable to conclude that DWP had internal controls in place.

It is also not reasonably conceivable that Plaintiffs will prevail in showing that Officer Directors's failure to monitor are so egregious that they are disabled from being informed of risks or problems.  In November 2017, "the Company conceded in multiple SEC filings that its internal controls are ineffective and in need of remediation." (FAC ¶ 196.)  DWP disclosed in its 2017 Form 10-K that "[o]ur management has concluded that as of December 31, 2017, our internal control over financial reporting was not effective."  (FAC ¶ 198.)  Subsequently, the company hired a new CFO, a financial accounting advisory firm, and expanded its internal accounting department. (FAC ¶ 200.)  This is evidence that DWP's internal controls that were in place were maintained and could flag issues or deficiencies.  This also suggests that DWP was actively working to remedy any problems requiring attention.

Thus, Plaintiffs have not stated facts sufficient to establish a *Caremark* claim for bad faith failure to monitor.  The Court **GRANTS** the Motion with respect to allegations in the FAC that Defendants failed to implement internal controls and procedures.

        h.        <u>Claims Based on Board and Officer Compensation</u>

Plaintiffs also assert that DPW's Officer Directors received cash and equity compensation and incentive awards that were excessive. (*See* FAC ¶ 10.)  Plaintiffs contend that the appropriate standard for reviewing the Board's decision to award such compensation is "entire fairness." The Court agrees.  Director self-compensation decision are conflicted transactions that are beyond the protection of the business judgment rule. *Calma*, 2015 WL 1951930, at *8 (citing *Texlon Corp. V. Meyerson*, 802 A.2d 257, 265 (Del. 2002).  "[T]he receipt of self-determined benefits is subject to an affirmative showing that the compensation arrangements are fair to the corporation." *Texlon Corp.* at 265.

The Court begins by determining whether this is a case of directors approving their own compensation.  The compensation awards at issue are compensation awarded to Officer Directors in consideration for their services as executive officers of the Company.  According to Plaintiffs, the Compensation Committee reviewed and recommended the compensation awards at issue but did give their approval because approval of employment agreements require the full Board's approval under DWP's Charter.  (*See* FAC ¶¶ 65, 232, 241, 248.)  Thus, for these decisions to constitute as self-compensation, a majority of the Board must be interested.  In this

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

CASE NO.: **CV 18-06587 SJO**                    DATE: **May 21, 2019**

context, interested directors are those that are also hold an officer position at DWP at the time the compensation is being approved.

Kohn's Executive Employment Agreement is dated November 30, 2016. (FAC ¶¶ 247.) At this time, there were five directors on the board, and Kohn was the only one who also served as an officer. (*See* FAC ¶¶ 26, 37, 39, 43-46.) This means that the majority of the board was disinterested, and the decision to approve Kohn's compensation was not one resulting in self-determined benefits. Therefore, this decision is protected by the business judgment rule.

The Board approved T. Ault's employment agreement on June 18, 2018. (FAC ¶¶ 232.) The Court assumes, since the FAC does not state explicitly, that Horne's compensation was approved sometimes before or around January 25, 2018, when he became CFO. (FAC ¶¶ 241.) In January, at all relevant times, there were six members on the Board. The only change in Board membership occurred in January when K. Ault resigned and Bentz took her place. This is inconsequential to the Court's analysis, as both K. Ault and Bentz were not officers and thus were disinterested in this context. During this time, there were three disinterested directors on the Board. Thus, whether the transaction is one involving self-compensation is dependent on whether the director receiving the officer compensation voted in favor of approval of their own compensation award, facts not provided in the FAC. The Court must therefore assume that the Board was disinterested in T. Ault's employment agreement.

However, even if the transaction was one where directors approved their own compensation and the entire fairness standard applied, it is not reasonably conceivable that Plaintiffs would succeed in stating a claim based on decision to grant allegedly excessive compensation awards. Under Delaware law,"[e]ven in a self-interested transaction in order to state a claim a shareholder must allege some facts that tend to show that the transaction was not fair." *Calma on Behalf of Citrix Systems, Inc. v. Templeton,* 114 A.3d 563, 589 (Del. Ch. 2015). Here, unlike in *Calma* where the plaintiff provided facts indicating that the company's director compensation practices were not in line with those at comparable public companies, Plaintiffs provide no facts to show that the compensations AWP's officer's received were excessive and not within the realm of standard practices when compared with compensation practices at companies of similar profile.

Ultimately, the Court **GRANTS** the Motion with respect to Plaintiffs' allegations that DPW's Officer Directors beached their respective fiduciary duties by receiving cash and equity compensation and incentive awards that were excessive.

                i.      <u>Claims Based on Violation of DPW's Code of Ethics</u>

Plaintiffs also allege breach of fiduciary duty by asserting that Defendants violated DWP's Code of Ethics. (FAC ¶¶ 317, 337.) The Court agrees with Defendants that statements in the Code of Ethics are not "actionable because they are aspirational in nature and are not objectively

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority
Send
Enter
Closed
JS-5/JS-6
Scan Only

**CASE NO.:** CV 18-06587 SJO          **DATE:** May 21, 2019

verifiable." *Mandalevy v. Bofl Holdings, Inc.*, 2018 WL 3032588, at *7 n.4 (S.D. Cal. 2018) (citing *Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1276 (9th Cir. 2017)).

The Court **GRANTS** the Motion with respect to any allegations of breach of fiduciary duty based on violating the Code of Ethics.

      B.    Second And Third Causes of Action: Unjust Enrichment and Gross Mismanagement

Plaintiffs' remaining claims of unjust enrichment derive from the causes of action alleging breach of the duty of loyalty. Because the Court allows certain portions of the breach of fiduciary duty causes of action to stand, the Court permits the unjust enrichment causes of action to remain in this litigation as well. The Court **DENIES** the Motion with respect to the unjust enrichment causes of action.

    III.    RULING

For the foregoing reason, the Court **GRANTS IN PART** the Motion and **DISMISSES** certain portions of the operative complaint in this action. This order is granted **with leave to amend.** Plaintiffs shall file any amendments to the FAC within **ten (10)** days from the date of this order.

IT IS SO ORDERED.