Robert Volynsky, Esq. (SBN 310600)
Email: rvolynsky@srf.law
Sichenzia Ross Ference LLP
1185 Avenue of the Americas, 37th Floor
New York, New York 10036
Telephone: (212) 930-9700
Facsimile: (212) 930-9725

Arash Shirdel, Esq. (SBN 247754)
Email: ashirdel@pacificpremierlaw.com
Pacific Premier Law Group
200 Sandpointe Avenue, Suite 500
Santa Ana, California 92707
Telephone: (949) 629-3690
Facsimile: (949) 313-0995

*Attorneys for Defendants and
Nominal Defendant*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ETHAN YOUNG and GREG YOUNG, Derivatively on Behalf of Nominal Defendant, DPW HOLDINGS, INC., | Case No. 2:18-cv-6587 (SJO) (PLA) |
| Plaintiffs, | **ANSWER TO THE FIRST AMENDED SHAREHOLDER DERIVATIVE COMPLAINT** |
| vs. | |
| MILTON C. AULT III, AMOS KOHN WILLIAM B. HORNE, and KRISTINE AULT, | |
| Defendants, | |
| and | |
| DPW HOLDINGS, INC., | |
| Nominal Defendant. | |

Nominal Defendant DPW Holdings, Inc. ("DPW" or the "Company") and Defendants Milton C. Ault, III ("Ault"), Amos Kohn, William B. Horne, and Kristine Ault ("K. Ault"), as well as Nominal Defendant DPW (collectively, "Defendants"),[1] by and through their undersigned attorneys, upon knowledge of their own actions and upon information and belief as to all other matters, respond to the First Amended Verified Shareholder Derivative Complaint, as modified by the Court's Order dated May 21, 2019, as follows:

1.      Admit the allegations.

2.      Deny the allegations except admit that: in September 2016, Philou Ventures, LLC ("Philou Ventures") entered into an agreement with DPW and a third-party wherein Philou Ventures paid $1.5 million in cash to the third-party and received DPW's common stock constituting approximately 40.06% of DPW's outstanding shares of common stock; at the time, K. Ault was the Manager of Philou Ventures; and the agreement provided Philou Ventures with the right to appoint a number of directors to DPW's Board of Directors (the "Board").

---

[1] On May 21, 2019, the Court entered an order dismissing, with leave to amend, the independent director defendants Jeff Bentz, Mordechai Rosenberg, and Robert Smith (the "Dismissed Defendants"). The Court provided Plaintiffs with ten days to amend their claims against the Dismissed Defendants. Plaintiffs did not file a further amended complaint.

3.     Deny the allegations except admit that: the identified Form 10-Qs set forth DPW's working capital as of the dates stated therein and its Form 10-Q filed August 21, 2017 contains the quoted material therein.

4.     Deny the allegations except admit that: Ault became DPW's CEO and Chairman of the Board; DPW subsequently incurred short-term liabilities, loans secured by DPW's future receipts; Horne became DPW's Chief Financial Officer on January 25, 2018; Kohn is DPW's President; Ault, Horne, and Kohn are Directors; and DPW entered into agreements to sell its future receipts during the second half of 2017 and the first quarter of 2018 in which it received $6,989,000.

5.     Deny the allegations except admit that: as set forth in DPW's securities filings, the Company has issued shares of DPW's common stock at various prices, some of which included a discount to market price.

6.     Deny the allegations except admit that: on March 9, 2017, DPW and Philou Ventures entered into a Preferred Stock Purchase Agreement wherein Philou Ventures had the right to purchase up to 500,000 shares of Series B Preferred Stock and refer to the aforementioned agreement for the full and complete terms thereof; and at April 25, 2018, Philou Ventures had purchased an aggregate of 125,000 shares of the Series B Preferred Stock, and further aver that DPW was prohibiting from issuing common stock shares from the Series B Preferred Stock until shareholder approval of such issuance was obtained, as required by the applicable NYSE American listing rules, and, on December

---

ANSWER TO THE FIRST AMENDED SHAREHOLDER DERIVATIVE COMPLAINT

28, 2017, DPW received shareholder approval of the conversion of up to 500,000 shares of the Series B Preferred Stock into shares of common stock and the exercise of warrants to purchase common stock in accordance with the Preferred Stock Purchase Agreement.

7.   Deny the allegations except admit that: that DPW made several investments into Avalanche International Corp. ("AVLP"), in which, at March 31, 2018, DPW had provided loans to AVLP in the principal amount of $5,584,000; Ault is AVLP's Chairman and Horne is AVLP's Chief Financial Officer; and admit that Philou Ventures owned 50,000 shares of AVLP's Class A Preferred Stock, which represented 80% of all votes entitled to be voted at a meeting of shareholders.

8.   Aver that no response is required for the allegations concerning MTIX because the claims based on MTIX have been dismissed pursuant to the Order dated May 21, 2019, deny the remaining allegations except admit that: DPW' subsidiary, DP Lending, had made loans to Alzamend Neuro, Inc. ("Alzamend") in the amount of $44,000, which, at March 31, 2018, the outstanding principal amount of the loans had been repaid, and Ault is the Chairman and Horne was the Chief Financial Officer of Alzamend through December 15, 2018.

9.   Deny the allegations.

10.   Deny the allegations except admit that: that DPW, at March 31, 2018, had provided loans to AVLP in the principal amount of $5,584,000, and issued shares as reported in its securities filings; DPW's securities filings set forth the amount of

compensation to be paid by DPW to Ault, Horne, and Kohn, that the then-most recent compensation information available for AVLP indicated that, as of February 29, 2016, Ault was receiving $240,000 per annum and, although Horne was CFO, AVLP had not made a disclosure concerning his compensation.

11.   Aver that no response is required for the allegations concerning DPW's internal controls because the claims based on internal controls have been dismissed pursuant to the Order dated May 21, 2019, and otherwise admit the allegations.

12.   Deny allegations except admit that: DPW had made a proposed tender offer to WSI Industries, Inc. ("WSI"), which WSI's board of directors rejected.

13.   Deny the allegations except admit that: WSI had requested additional information from DPW.

14.   Deny the allegations except admit that: Ault had entered into the "FINRA Settlement", Ault and one of his companies had previously filed for bankruptcy protection, and the bankruptcy proceeding filed by Zealous Holdings, Inc.("Zealous") was closed on May 16, 2011 without a discharge.

15.   Deny the allegations except admit that: Ault's personal bankruptcy had been dismissed at his request.

16.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

17.   Deny the allegations.

ANSWER TO THE FIRST AMENDED SHAREHOLDER DERIVATIVE COMPLAINT

18.     Admit the allegations.

19.     Admit the allegations.

20.     Admit the allegations.

21.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations.

22.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations.

23.     Admit the allegations.

24.     Admit the allegations.

25.     Admit the allegations.

26.     Deny the allegations except admit that: the allegations concerning Ault's positions with the identified entities and that he is a citizen of California.

27.     Deny the allegations except admit that: pursuant to an Independent Contractor Agreement, Ault received $15,000 in cash per month as a consultant beginning on November 1, 2016; subsequently, DPW entered into the "Restated Agreement" with Ault and later the "T. Ault Executive Employment Agreement" with Ault.

28.     Admit the allegations.

29.     Deny the allegations except admit that: Ault had previously held Series 7, 24, and 63 securities licenses, managed four domestic hedge funds and one bond fund, and entered into the "FINRA Settlement."

30.     Admit the allegations.

31.     Deny the allegations.

32.     Admit the allegations.

33.     Admit the allegations.

34.     Admit the allegations.

35.     Admit the allegations.

36.     Deny the allegations except admit that: Ault filed for personal bankruptcy under Chapter 11, Case No. 09-bk-23696, the Trustee moved to convert the case from Chapter 11 to Chapter 7, the Bankruptcy Court subsequently converted the case to Chapter 7, on May 19, 2011, based on Ault's motion, the Court dismissed the case; Ault and/or his companies have had lawsuits filed against them.

37.     Deny the allegations except admit that: Horne held the titles and positions stated therein except that, as of December 15, 2018, he was no longer Alzamend's Chief Financial Officer, and aver that he is a citizen of Washington.

38.     Deny the allegations except admit that: for 2017, Horne received $80,000 in cash compensation and option awards, and DPW entered into the "Horne Executive Employment Agreement" with Horne.

---

ANSWER TO THE FIRST AMENDED SHAREHOLDER DERIVATIVE COMPLAINT

39.     Admit the allegations and aver that Kohn is currently the CEO of the following subsidiaries of DPW: Digital Power Corporation, Coolisys Technologies, Inc., and Microphase Corporation.

40.     Deny the allegations except admit that: DPW entered into the "Kohn Executive Employment Agreement" with Kohn.

41.     Deny the allegations except admit that: DPW granted Kohn the options referenced therein for which Kohn had forfeited options to purchase 535,000 shares of common stock previously granted to him under DPW's 2012 Stock Incentive Plan, and that DPW subsequently amended the Kohn Executive Employment Agreement that replaced the restricted stock signing bonus provided to Kohn with the referenced ten-year warrant grant.

42.     Deny the allegations except admit that, in 2017, DPW achieved revenues exceeding $10,000,000.

43.     Deny the allegations except admit that: in September 2016, K. Ault was appointed a DPW Director, and on January 23, 2018, she resigned as a Director, and she is a citizen of California.

44.     Admit the allegations.

45.     Admit the allegations.

46.     Deny the allegations and aver that he is a citizen of Alaska.

47.     Aver that there are no factual allegations to either admit or deny.

48.    Aver that there are no factual allegations to either admit or deny.

49.    Aver that there are no factual allegations to either admit or deny.

50.    Aver that there are no factual allegations to either admit or deny.

51.    Aver that there are no factual allegations to either admit or deny.

52.    Aver that there are no factual allegations to either admit or deny.

53.    Deny the allegations except admit that: at that time, Philou Ventures was a family partnership in which MCKEA Holdings, LLC ("MCKEA") was the majority member, and K. Ault was the Manager of Philou Ventures, and she was the Manager and owner of MCKEA, and Philou Ventures entered into a Security Purchase Agreement with Telkoor Telecom Ltd. to acquire shares representing over 40% of DPW.

54.    Deny the allegations except admit that: at April 13, 2018, Philou Ventures beneficially owned approximately 12% of DPW's common stock, and that it had purchased 125,000 shares of DPW's Series B Preferred Stock.

55.    Deny the allegations except admit that: in May 2014, Philou Ventures acquired 1,875,000 shares of AVLP's common stock, which then equated to 73.96% of the outstanding shares.

56.    Deny the allegations except admit that: in May 2014, Philou Ventures acquired 1,875,000 shares of AVLP's common stock, which then equated to 73.96% of the outstanding shares, Philou Ventures holds 80% of all AVLP shareholder votes through preferred stock issued to it, Ault became AVLP's Chairman and Horne became

---

ANSWER TO THE FIRST AMENDED SHAREHOLDER DERIVATIVE COMPLAINT

its Chief Financial Officer, as well as a Director, and aver that Horne had been designated

AVLP's "audit committee financial expert.".

57.    Admit the allegations.

58.    Admit the allegations.

59.    Admit the allegations.

60.    Admit the allegations.

61.    Deny the allegations.

62.    Aver that there are no factual allegations to either admit or deny.

63.    Aver that no response is required for the allegations concerning the Code of

Ethics because the claims based on the Code of Ethics have been dismissed pursuant to

the Order dated May 21, 2019.

64.    Aver that no response is required for the allegations concerning the Audit

Committee because the claims based on internal controls have been dismissed pursuant to

the Order dated May 21, 2019.

65.    Aver that no response is required for the allegations concerning the

Compensation Committee because the claims based on compensation awarded have been

dismissed pursuant to the Order dated May 21, 2019.

66.    Deny the allegations.

67.    Deny the allegations.

68.     Admit the allegations and aver that Digital Power Corporation is also a wholly-owned subsidiary of DPW.

69.     Admit the allegations.

70.     Admit the allegations.

71.     Deny the allegations except admit that: as reported in the identified Form 10-Q, DPW had cash and cash equivalents of almost $1.3 million, an accumulated deficit of $11.2 million, a net loss of $165,000, and no going concern disclosure was contained therein.

72.     Deny the allegations except admit that: as reported in its Form 10-K, DPW had cash and cash equivalents of almost $996,000, positive working capital of $1,963,000, an accumulated deficit of $12.1 million, a net loss of $1.1 million, and that it contains a going concern disclosure.

73.     Deny the allegations except aver that: in September 2016, Philou Ventures entered into an agreement with DPW and a third-party wherein Philou Ventures paid $1.5 million in cash to the third-party and received DPW's common stock constituting approximately 40.06% of DPW's outstanding shares of common stock.

74.     Admit the allegations.

75.     Admit the allegations except refer the Court to the full context of the quoted letter for the omitted information to put the quoted material in the proper context.

76.     Admit the allegations.

77.     Admit the allegations.

78.     Admit the allegations.

79.     Admit the allegations.

80.     Admit the allegations.

81.     Deny the allegations except admit that: K. Ault had been a Manager of Philou Ventures and after her resignation, Ault & Company became the Manager.

82.     Admit the allegations.

83.     Deny the allegations except admit that: Philou Ventures entered into the Preferred Stock Purchase Agreement, which provided Philou Ventures with the right to participate in future financings, to purchase up to 500,000 Series B Preferred Stock, the right to receive certain warrants as set forth in the referenced Form 10-K filing, as well as the allegation that Philou Ventures has purchased 125,000 shares of the Series B Preferred Stock.

84.     Deny the allegations.

85.     Admit the allegations.

86.     Admit the allegations.

87.     Admit the allegations.

88.     Deny the allegations except admit that: subject to shareholder approval, the Series B Preferred Stock provided that the right to convert into common stock upon the

earlier of 60 months from March 24, 2017 or upon DPW reaching gross revenues of $10 million in the aggregate over four consecutive quarters.

89.     Deny the allegations except aver that the Certificate of Determination of Preferences, Rights, and Limitations of Series B Convertible Preferred Stock sets forth the priority rank of the Series B Preferred Stock.

90.     Admit the allegations.

91.     Deny the allegations.

92.     Admit the allegations.

93.     Admit the allegations.

94.     Admit the allegations and aver that they pertain to AVLP's operations occurring prior to November 30, 2015.

95.     Admit the allegations.

96.     Admit the allegations.

97.     Admit the allegations.

98.     Admit the allegations.

99.     Admit the allegations.

100.    Admit the allegations.

101.    Deny the allegations except admit that: Ault has personally guaranteed certain AVLP loans and Horne has been the CFO and a Director of AVLP and aver that he had been designated AVLP's "audit committee financial expert."

102.   Deny the allegations except admit that: DPW' subsidiary, DP Lending had made loans to Alzamend in the amount of $44,000, which, at March 31, 2018, the outstanding principal amount of the loans had been repaid, Ault is the Chairman and Horne was the Chief Financial Officer of Alzamend through December 15, 2018, and Phil Mansour was its CEO.

103.   Admit the allegations.

104.   Admit the allegations.

105.   Admit the allegations.

106.   Denies the allegations except admit that: DPW had a 83.81% beneficial ownership of AVLP's common stock, and Philou Ventures owned 50,000 shares of AVLP's Class A Preferred Stock, which represented 80% of all votes entitled to be voted at a meeting of shareholders.

107.   Deny the allegations except admit that: DPW has invested a significant amount of cash into AVLP and aver that DPW restructured the AVLP convertible notes to provide DPW terms more consistent with the closing of the acquisition of MTIX, which was finalized on August 21, 2017, and the restructuring deceased the conversion price of DPW's existing notes and provided 100% warrant coverage.

108.   Admit the allegations.

109.   Admit the allegations.

110.   Admit the allegations.

ANSWER TO THE FIRST AMENDED SHAREHOLDER DERIVATIVE COMPLAINT

111.   Deny the allegations except admit that: at March 31, 2018, DPW had provided loans to AVLP in the principal amount of $5,584,000.

112.   Deny the allegations except admit that: AVLP's common stock is thinly traded and it had, in the past, defaulted on several loans to lenders other than DPW.

113.   Deny the allegations except admit that: DPW cancelled the initial loan agreements with AVLP and entered into a new loan agreement with AVLP.

114.   Admit the allegations.

115.   Admit the allegations.

116.   Admit the allegations.

117.   Admit the allegations.

118.   Aver that no response is required for the allegations concerning the MTIX Ltd. ("MTIX") purchase order because the claims based on the MTIX purchase order have been dismissed pursuant to the Order dated May 21, 2019.

119.   Admit the allegations.

120.   Deny the allegations except admit that, as disclosed in its securities filings over the past several years, DPW's Auditors have expressed concern about its ability to continue as a going concern.

121.   Deny the allegations except admit that: DPW issued shares to unrelated parties to raise capital, including shares issued at a discount to the current market price, it

---

ANSWER TO THE FIRST AMENDED SHAREHOLDER DERIVATIVE COMPLAINT

entered into future receipts agreements, and, at March 31, 2018, DPW had provided loans to AVLP in the principal amount of $5,584,000.

122.   Aver that no response is required for the allegations concerning the DPW's Code of Ethics because the claims based on the DPW's Code of Ethics have been dismissed pursuant to the Order dated May 21, 2019.

123.   Deny the allegations.

124.   Aver that no response is required for the allegations concerning the MTIX purchase order because the claims based on the MTIX purchase order have been dismissed pursuant to the Order dated May 21, 2019.

125.   Aver that no response is required for the allegations concerning the MTIX purchase order because the claims based on the MTIX purchase order have been dismissed pursuant to the Order dated May 21, 2019.

126.   Aver that no response is required for the allegations concerning the MTIX purchase order because the claims based on the MTIX purchase order have been dismissed pursuant to the Order dated May 21, 2019.

127.   Aver that no response is required for the allegations concerning the MTIX purchase order because the claims based on the MTIX purchase order have been dismissed pursuant to the Order dated May 21, 2019.

128.   Deny the allegations except admit that: DPW has entered into future receipts agreements.

129.   Deny the allegations except admit that: the quoted passage is set forth in DPW's 2017 Form 10-K.

130.   Deny the allegations except admit that: DPW entered into the future receipts agreements pursuant to which it sold its future receipts up to $5,632,000 for the purchase price amount of $4,100,000.

131.   Admit the allegations.

132.   Admit the allegations.

133.   Deny the allegations except admit that: DPW issued 150,000 shares of common stock as part of the consideration for one of the Future Receipts Agreements and it had granted warrants in connection with other such agreements.

134.   Deny the allegations except admit that: DPW entered into the future receipts agreements pursuant to which it sold its future receipts up to $5,632,000 for the purchase price amount of $4,100,000, and the repayment terms and amounts, which were set forth in detail in the securities filing quoted in paragraph 131.

135.   Admit the allegations.

136.   Deny the allegations except admit that, as disclosed in its securities filings over the past several years, DPW's Auditors have expressed concern about its ability to continue as a going concern.

137.   Deny the allegations except admit that: DPW entered into the future receipts agreements pursuant to which it sold its future receipts up to $9,700,000 for the purchase price amount of $6,989,000.

138.   Deny the allegations.

139.   Deny the allegations.

140.   Deny the allegations except admit that: as disclosed in its securities filings, DPW has issued shares since the beginning of 2017.

141.   Admit the allegations.

142.   Deny the allegations except admit that: the purpose of the stock issuances is to raise capital for DPW's activities and operations.

143.   Deny the allegations except admit that: DPW has issued shares to pay for various services.

144.   Admit the allegations.

145.   Admit the allegations.

146.   Admit the allegations.

147.   Deny the allegations except admit that: as disclosed in its securities filing, on occasion, DPW has issued shares to extinguish debts.

148.   Admit the allegations.

149.   Deny the allegations except admit that: DPW issued shares to unrelated parties to raise capital, including shares issued at a discount to the current market price.

150.   Deny the allegations and aver that the share issuance reference therein was "based upon the contractual rights" held by the holder of the Convertible Note.

151.   Deny the allegations and aver that the share issuance reference therein was the result of the conversion of debt pursuant to a Convertible Note.

152.   Deny the allegations and aver that the share issuance reference therein was the result of the conversion of debt pursuant to a Convertible Note.

153.   Deny the allegations and aver that the share issuance reference therein was the result of the conversion of debt pursuant to a Convertible Note.

154.   Deny the allegations except admit that: DPW issued shares to unrelated parties to raise capital, including shares issued at a discount to the current market price or to non-parties based on the contractual rights of the lenders.

155.   Denies the allegations except admits that: DPW's closing price on the date stated, and that on January 3, 2018, it issued 37,750 unregistered shares to satisfy the amount stated therein.

156.   Denies the allegations except admits that: DPW's closing price on the date stated, and that on January 10, 2018, it issued 377,678 unregistered shares to satisfy the amount stated therein.

157.   Denies the allegations except admits that: DPW's closing price on the date stated, and that on January 12, 2018, it issued 921,645 unregistered shares to satisfy the amount stated therein.

158.   Denies the allegations except admits that: as disclosed in its 2017 Form 10-K, on December 5, 2017, DPW entered into a subscription agreement with investors for the sale of 640,000 shares of common stock at $1.25 per share, and on December 5, 2017, DPW's stock closed at $3.66 per share.

159.   Denies the allegations except admits that: the quoted passage is set forth in its 2017 Form 10-K.

160.   Denies the allegations except admits that: the quoted passage is set forth in its 1Q 2018 Form 10-Q.

161.   Admit the allegations.

162.   Admit the allegations.

163.   Admit the allegations.

164.   Admit the allegations.

165.   Admit the allegations.

166.   Aver that no response is required for the allegations concerning cryptocurrency because the claims based on cryptocurrency have been dismissed pursuant to the Order dated May 21, 2019 and deny the remaining non-cryptocurrency allegations.

167.   Deny the allegations except admit that: the quoted passage is set forth in its 1Q 2018 Form 10-Q.

168.   Admit the allegations.

169.   Deny the allegations except admit that: DPW's stock issuances, which generated capital for the company, diluted existing shareholders.

170.   Deny the allegations except admit that: on October 5, 2017, Ault & Company purchased 75,000 shares of common stock at $0.60 per share and a warrant to purchase up to 75,000 shares of common stock at $0.60 per share for an aggregate purchase price of $45,000, aver that DPW's stock's closing price on October 5, 2017, was $0.5291 per share, and admit that: the aforementioned shares and warrants were not issued by DPW until May 8, 2018.

171.   Deny the allegations except admit that: the quoted passage is set forth in DPW's 1Q 2018 Form 10-Q and aver that it pertains to subsequent issued shares under the Preferred Stock Purchase Agreement, and on March 9, 2017, the date that Philou Ventures and DPW entered into the Preferred Stock Purchase Agreement, which provided Philou Ventures the right to convert preferred shares into common shares at an exercise price equal to $0.70 per share, DPW's common stock's closing price was $0.60 per share.

172.   Aver that no response is required for the allegations concerning cryptocurrency because the claims based on cryptocurrency have been dismissed pursuant to the Order dated May 21, 2019.

---

173.   Aver that no response is required for the allegations concerning cryptocurrency because the claims based on cryptocurrency have been dismissed pursuant to the Order dated May 21, 2019.

174.   Aver that no response is required for the allegations concerning cryptocurrency because the claims based on cryptocurrency have been dismissed pursuant to the Order dated May 21, 2019.

175.   Aver that no response is required for the allegations concerning cryptocurrency because the claims based on cryptocurrency have been dismissed pursuant to the Order dated May 21, 2019.

176.   Aver that no response is required for the allegations concerning cryptocurrency because the claims based on cryptocurrency have been dismissed pursuant to the Order dated May 21, 2019.

177.   Aver that no response is required for the allegations concerning cryptocurrency because the claims based on cryptocurrency have been dismissed pursuant to the Order dated May 21, 2019.

178.   Aver that no response is required for the allegations concerning cryptocurrency because the claims based on cryptocurrency have been dismissed pursuant to the Order dated May 21, 2019.

179.   Aver that no response is required for the allegations concerning cryptocurrency because the claims based on cryptocurrency have been dismissed pursuant to the Order dated May 21, 2019.

180.   Aver that no response is required for the allegations concerning cryptocurrency because the claims based on cryptocurrency have been dismissed pursuant to the Order dated May 21, 2019.

181.   Admit the allegations.

182.   Admit the allegations.

183.   Deny the allegations except admit that: DPW and Marcum determined that DPW's previously issued Form 10-Q for the quarter ending June 30, 2017 should no longer be relied upon.

184.   Admit the allegations.

185.   Deny the allegations.

186.   Deny the allegations except admit that: the referenced Trust Agreement and Tenancy in Common Agreement were executed on November 16, 2017 and effective as of May 14, 2017 and admit that: the quoted passage is set forth in the Tenancy in Common Agreement.

187.   Deny the allegations except admit that: prior to the restatement, DPW had not disclosed the transaction in its securities filings.

188.   Admit the allegations.

ANSWER TO THE FIRST AMENDED SHAREHOLDER DERIVATIVE COMPLAINT

189.   Deny the allegations except admit that: DPW amended its Form 10-Q for the six months ending June 30, 2017 to restate the misclassification of payments made towards the purchase of the Israel property that were classified as a current asset in prepaid expenses and which should have been recorded as a non-current asset and identified as Other investments, related party.

190.   Deny the allegations except admit that: DPW amended its Form 10-Q for the six months ending June 30, 2017 to include additional disclosures in paragraphs 3, 4, and 17 of the Company's Subsequent Events Note 16 to disclose additional subsequent events.

191.   Deny the allegations except admit that: on April 25, 2017, DPW formed Coolisys Technologies, Inc. and, July 7, 2017, DPW entered into an agreement to acquire the intellectual property of Coolisys.com, which consisted of the trademarks, domain and content of www.Coolisys.com.

192.   Deny the allegations except admit that: Microphase had received the default notice identified therein.

193.   Deny the allegations except admit that: DPW had agreed to provide Ault with non-cash compensation valued at 2% of the personal guarantees that he provided on behalf of DPW and aver that, to date, Ault had not received any non-cash compensation for any of his personal guarantees.

---

ANSWER TO THE FIRST AMENDED SHAREHOLDER DERIVATIVE COMPLAINT

194.   Deny the allegations and aver that the identified disclosures were set forth in the original Form 10-Q and were not restated.

195.   Aver that no response is required for the allegations concerning the Audit Committee because the claims based on internal controls have been dismissed pursuant to the Order dated May 21, 2019.

196.   Aver that no response is required for the allegations concerning the Audit Committee because the claims based on internal controls have been dismissed pursuant to the Order dated May 21, 2019.

197.   Aver that no response is required for the allegations concerning the Audit Committee because the claims based on internal controls have been dismissed pursuant to the Order dated May 21, 2019.

198.   Aver that no response is required for the allegations concerning the Audit Committee because the claims based on internal controls have been dismissed pursuant to the Order dated May 21, 2019.

199.   Aver that no response is required for the allegations concerning the Audit Committee because the claims based on internal controls have been dismissed pursuant to the Order dated May 21, 2019.

200.   Aver that no response is required for the allegations concerning the Audit Committee because the claims based on internal controls have been dismissed pursuant to the Order dated May 21, 2019.

201.   Aver that no response is required for the allegations concerning the Audit Committee because the claims based on internal controls have been dismissed pursuant to the Order dated May 21, 2019.

202.   Aver that no response is required for the allegations concerning the Audit Committee because the claims based on internal controls have been dismissed pursuant to the Order dated May 21, 2019.

203.   Aver that no response is required for the allegations concerning the Audit Committee because the claims based on internal controls have been dismissed pursuant to the Order dated May 21, 2019.

204.   Aver that no response is required for the allegations concerning the Audit Committee because the claims based on internal controls have been dismissed pursuant to the Order dated May 21, 2019.

205.   Aver that no response is required for the allegations concerning the Audit Committee because the claims based on internal controls have been dismissed pursuant to the Order dated May 21, 2019.

206.   Deny the allegations except admit that: on November 20, 2017, the NYSE issued a letter to DPW indicated that the NYSE American (the "Exchange") had concluded that DPW had failed to comply with Section 401(a) of the Exchange's Company Guide, which requires that a listed company make immediate public disclosure of all material information concerning its affairs.

207.   Admit the allegations and aver that amendments were required because the closing date of the disclosed transaction was not known at the time of the original Form 8-K filing.

208.   Deny the allegations.

209.   Admit the allegations.

210.   Admit the allegations.

211.   Admit the allegations.

212.   Admit the allegations.

213.   Admit the allegations.

214.   Admit the allegations.

215.   Deny the allegations except admit that: the quoted passage is set forth in DPW's 2017 Form 10-K.

216.   Admit the allegations.

217.   Deny the allegations.

218.   Deny the allegations except admit that: one of the continued listing standards for the Exchange is $6 million in shareholder equity if there are reported losses from operations and/or net losses in the last five fiscal years.

219.   Deny the allegations except admit that: DPW made the statements and disclosures stated therein.

220.   Deny the allegations except admit that: DPW has acquired 98.1% of I.AM, Inc. as disclosed in its securities filings.

221.   Deny the allegations except admit that: DPW had acquired a 9% ownership of WSI's common stock, DPW made a proposed tender offer to WSI, which WSI's Board rejected, and WSI had requested additional information from DPW.

222.   Deny the allegations except admit that: Ault had been sanctioned by FINRA, Zealous and Ault had previously filed for bankruptcy, and either Ault or Zealous had been a party to the cases identified therein.

223.   Aver that no response is required for the allegations concerning Board and Officers' Employment and Compensation because the claims based on Board and Officer Compensation have been dismissed pursuant to the Order dated May 21, 2019.

224.   Aver that no response is required for the allegations concerning Board and Officers' Employment and Compensation because the claims based on Board and Officer Compensation have been dismissed pursuant to the Order dated May 21, 2019.

225.   Aver that no response is required for the allegations concerning Board and Officers' Employment and Compensation because the claims based on Board and Officer Compensation have been dismissed pursuant to the Order dated May 21, 2019.

226.   Admit the allegations.

227.   Aver that no response is required for the allegations concerning Board and Officers' Employment and Compensation because the claims based on Board and Officer Compensation have been dismissed pursuant to the Order dated May 21, 2019.

228.   Aver that no response is required for the allegations concerning Board and Officers' Employment and Compensation because the claims based on Board and Officer Compensation have been dismissed pursuant to the Order dated May 21, 2019.

229.   Aver that no response is required for the allegations concerning Board and Officers' Employment and Compensation because the claims based on Board and Officer Compensation have been dismissed pursuant to the Order dated May 21, 2019.

230.   Aver that no response is required for the allegations concerning Board and Officers' Employment and Compensation because the claims based on Board and Officer Compensation have been dismissed pursuant to the Order dated May 21, 2019.

231.   Aver that no response is required for the allegations concerning Board and Officers' Employment and Compensation because the claims based on Board and Officer Compensation have been dismissed pursuant to the Order dated May 21, 2019.

232.   Aver that no response is required for the allegations concerning Board and Officers' Employment and Compensation because the claims based on Board and Officer Compensation have been dismissed pursuant to the Order dated May 21, 2019.

233.   Aver that no response is required for the allegations concerning Board and Officers' Employment and Compensation because the claims based on Board and Officer Compensation have been dismissed pursuant to the Order dated May 21, 2019.

234.   Aver that no response is required for the allegations concerning Board and Officers' Employment and Compensation because the claims based on Board and Officer Compensation have been dismissed pursuant to the Order dated May 21, 2019.

235.   Aver that no response is required for the allegations concerning Board and Officers' Employment and Compensation because the claims based on Board and Officer Compensation have been dismissed pursuant to the Order dated May 21, 2019.

236.   Aver that no response is required for the allegations concerning Board and Officers' Employment and Compensation because the claims based on Board and Officer Compensation have been dismissed pursuant to the Order dated May 21, 2019.

237.   Aver that no response is required for the allegations concerning Board and Officers' Employment and Compensation because the claims based on Board and Officer Compensation have been dismissed pursuant to the Order dated May 21, 2019.

238.   Aver that no response is required for the allegations concerning Board and Officers' Employment and Compensation because the claims based on Board and Officer Compensation have been dismissed pursuant to the Order dated May 21, 2019.

239.   Aver that no response is required for the allegations concerning Board and Officers' Employment and Compensation because the claims based on Board and Officer Compensation have been dismissed pursuant to the Order dated May 21, 2019.

240.   Admit the allegations and aver that Horne has subsequently resigned from his position with Target Medical Pharma, Inc.

241.   Aver that no response is required for the allegations concerning Board and Officers' Employment and Compensation because the claims based on Board and Officer Compensation have been dismissed pursuant to the Order dated May 21, 2019.

242.   Aver that no response is required for the allegations concerning Board and Officers' Employment and Compensation because the claims based on Board and Officer Compensation have been dismissed pursuant to the Order dated May 21, 2019.

243.   Admit the allegations.

244.   Admit the allegations.

245.   Aver that no response is required for the allegations concerning Board and Officers' Employment and Compensation because the claims based on Board and Officer Compensation have been dismissed pursuant to the Order dated May 21, 2019.

246.   Aver that no response is required for the allegations concerning Board and Officers' Employment and Compensation because the claims based on Board and Officer Compensation have been dismissed pursuant to the Order dated May 21, 2019.

247.   Aver that no response is required for the allegations concerning Board and Officers' Employment and Compensation because the claims based on Board and Officer Compensation have been dismissed pursuant to the Order dated May 21, 2019.

248.   Aver that no response is required for the allegations concerning Board and Officers' Employment and Compensation because the claims based on Board and Officer Compensation have been dismissed pursuant to the Order dated May 21, 2019.

249.   Aver that no response is required for the allegations concerning Board and Officers' Employment and Compensation because the claims based on Board and Officer Compensation have been dismissed pursuant to the Order dated May 21, 2019.

250.   Aver that no response is required for the allegations concerning Board and Officers' Employment and Compensation because the claims based on Board and Officer Compensation have been dismissed pursuant to the Order dated May 21, 2019.

251.   Aver that no response is required for the allegations concerning Board and Officers' Employment and Compensation because the claims based on Board and Officer Compensation have been dismissed pursuant to the Order dated May 21, 2019.

252.   Aver that no response is required for the allegations concerning Board and Officers' Employment and Compensation because the claims based on Board and Officer Compensation have been dismissed pursuant to the Order dated May 21, 2019.

253.   Aver that no response is required for the allegations concerning internal controls because the claims based on internal controls have been dismissed pursuant to the Order dated May 21, 2019.

254.   Deny the allegations.

255.   Deny the allegations.

256.   Aver that no response is required for the allegations concerning Board and Officers' Employment and Compensation because the claims based on Board and Officer Compensation have been dismissed pursuant to the Order dated May 21, 2019.

257.   Deny the allegations.

258.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

259.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

260.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

261.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

262.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

263.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

264.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

265.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

266.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

267.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

268.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

269.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

270.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

271.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

272.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

273.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

274.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

275.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

276.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

277.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

278.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

279.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

280.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

281.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

282.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

283.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

284.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

285.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

286.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

287.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

288.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

289.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

290.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

291.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

292.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

293.    Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

294.    Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

295.    Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

296.    Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

297.    Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

298.    Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

299.    Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

300.    Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

301.    Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

302.    Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

303.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

304.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

305.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

306.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

307.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

308.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

309.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

310.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

311.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

312.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

313.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

314.   Aver that no response is required for the allegations concerning demand futility because the issue had been resolved by Order dated February 25, 2019.

315.   Defendants repeat and reassert each of the aforementioned responses to the allegations incorporated herein.

316.   Deny the allegations except admit that: Ault, Kohn and Horne owe DPW fiduciary duties set forth under Delaware law.

317.   Deny the allegations.

318.   Deny the allegations.

319.   Deny the allegations.

320.   Deny the allegations.

321.   Deny the allegations.

322.   Deny the allegations.

323.   Deny the allegations.

324.   Defendants repeat and reassert each of the aforementioned responses to the allegations incorporated herein.

325.   Aver that no response is required for the allegations concerning the Dismissed Defendants because the claims against them have been dismissed pursuant to the Order dated May 21, 2019.

326.   Aver that no response is required for the allegations concerning the Dismissed Defendants because the claims against them have been dismissed pursuant to the Order dated May 21, 2019.

327.   Aver that no response is required for the allegations concerning the Dismissed Defendants because the claims against them have been dismissed pursuant to the Order dated May 21, 2019.

328.   Aver that no response is required for the allegations concerning the Dismissed Defendants because the claims against them have been dismissed pursuant to the Order dated May 21, 2019.

329.   Aver that no response is required for the allegations concerning the Dismissed Defendants because the claims against them have been dismissed pursuant to the Order dated May 21, 2019.

330.   Aver that no response is required for the allegations concerning the Dismissed Defendants because the claims against them have been dismissed pursuant to the Order dated May 21, 2019.

331.   Aver that no response is required for the allegations concerning the Dismissed Defendants because the claims against them have been dismissed pursuant to the Order dated May 21, 2019.

332.   Aver that no response is required for the allegations concerning the Dismissed Defendants because the claims against them have been dismissed pursuant to the Order dated May 21, 2019.

333.   Aver that no response is required for the allegations concerning the Dismissed Defendants because the claims against them have been dismissed pursuant to the Order dated May 21, 2019.

334.   Defendants repeat and reassert each of the aforementioned responses to the allegations incorporated herein.

335.   Deny the allegations except admit that: K. Ault owed DPW fiduciary duties set forth under Delaware law.

336.   Deny the allegations except admit that: K. Ault owed DPW fiduciary duties set forth under Delaware law.

337.   Deny the allegations.

338.   Deny the allegations.

339.   Deny the allegations.

340.   Deny the allegations.

341.   Deny the allegations.

342.   Defendants repeat and reassert each of the aforementioned responses to the allegations incorporated herein.

343.   Deny the allegations.

344.    Deny the allegations.

345.    Defendants repeat and reassert each of the aforementioned responses to the allegations incorporated herein.

346.    Aver that no response is required for the allegations concerning the Dismissed Defendants because the claims against them have been dismissed pursuant to the Order dated May 21, 2019.

347.    Aver that no response is required for the allegations concerning the Dismissed Defendants because the claims against them have been dismissed pursuant to the Order dated May 21, 2019.

### First Affirmative Defense

Plaintiffs' claims are barred by lack of standing because they have not provided proof of stock ownership in the Company.

### Second Affirmative Defense

Plaintiffs' claims are barred, in part, by the doctrine of laches.

### Third Affirmative Defense

Plaintiffs' claims are barred, in whole or in part, by limitations on Defendants' personal liability as set forth in the Company's Delaware Certificate of Incorporation and 8 *Del. C.* §102(b)(7) and/or as set forth in its California Amended and Restated Articles of Incorporation and *Cal. Corp. Code.* §30(c).

### Fourth Affirmative Defense

Some or all of the claims are barred by 8 *Del. C.* §141(e) because Defendants relied in good faith upon information, opinions, reports, or statements presented by professionals or experts, who were selected with reasonable care, on matters within their professional or expert competence.

### Fifth Affirmative Defense

Some or all of the claims are barred by 8 *Del. C.* §144(a) because the transactions at issue were reviewed and approved by either a Committee comprised of disinterested and independent directors or by a majority of disinterested and independent directors.

### Sixth Affirmative Defense

Defendants' actions are protected by the business judgment rule because their actions were on an informed basis, for a rational business purpose, and with an honest belief that the action was in the best interest of the Company and its shareholders.

### Seventh Affirmative Defense

Prior to Defendants' actions, the Company was faced with the imminent delisting of its securities from the NYSE American Exchange.  As a result of Defendants' actions, the Company was able to satisfy the NYSE American Exchange's continued listing standard, and the Company remains listed on the NYSE American Exchange.

### Eighth Affirmative Defense

The Company's stock issuances to raise capital was in the best interest of the Company and its shareholders.

### Ninth Affirmative Defense

The Company's issuance of stock to Ault & Company was not at below market price because, at the date that Ault & Company purchased the stock, the Company's stock-price closed below the contractual purchase price per share.

### Tenth Affirmative Defense

The Future Receipt Agreements were not usurious loans or loans with unreasonable rates of interest, but rather, they were commercially reasonable agreements that are contemplated by the Uniform Commercial Code.

### Eleventh Affirmative Defense

The challenged transactions were entirely fair to the Company and its shareholders, and they were authorized, approved, or ratified by the Company's Board.

### Twelfth Affirmative Defense

The challenged transaction involving the real property in Israel was for the benefit of the Company because it provided the Company with the exclusive right to use the property as a residence/office facility for the Company's subsidiary, Coolisys Technologies, Inc., as well as its affiliates, in order to oversee its European operations and to expand its business in the hi-tech industry located in Israel.

### Thirteenth Affirmative Defense

With respect to certain challenged transactions, one or more of the individual Defendants did not participate as either an officer or director in the action.

### Fourteenth Affirmative Defense

The Defendants' actions were in good faith and for the benefit of the Company and its shareholders.

### Fifteenth Affirmative Defense

Defendants were not unjustly enriched at the expense of the Company or its shareholders.

### Sixteenth Affirmative Defense

Defendants have insufficient knowledge or information upon which to form a belief about whether there may be as yet unstated affirmative defenses available, and therefore expressly: i) reserve the right to amend or supplement their Answer with additional affirmative defenses; and ii) reserve the right to assert any and all additional defenses under federal, state, common or foreign law if discovery shows that such defense would be appropriate.

WHEREFORE, Defendants respectfully request that the Court enter an order:

a.  dismissing the Amended Complaint;

b.  denying all claims for relief asserted by Plaintiffs against Defendants;

c.  awarding Defendants their reasonable attorneys' fees and professionals' fees and costs; and

d.  awarding such other relief as the Court deems just and proper.

Dated:  June 27, 2019                          SICHENZIA ROSS FERENCE LLP

By:   /s/ *Robert Volynsky*
ROBERT VOLYNSKY (SBN 310600)
Attorneys for Defendants and Nominal
Defendant DPW Holdings Inc.