**FARUQI & FARUQI, LLP**
Benjamin Heikali (SBN 307466)
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885
Email: bheikali@faruqilaw.com

*Counsel for Plaintiffs*

[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ETHAN YOUNG and GREG YOUNG, Derivatively on Behalf of Nominal Defendant, DPW HOLDINGS, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> MILTON C. AULT III, AMOS KOHN, WILLIAM B. HORNE, and KRISTINE AULT, <br><br> Defendants, <br><br> and <br><br> DPW HOLDINGS, INC., <br><br> Nominal Defendant. | Case No. 2:18-cv-06587-SJO-PLA <br><br> **PLAINTIFFS' UNOPPOSED NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date: March 30, 2020 <br> Time: 10:00 a.m. <br> Courtroom: 10C <br><br> Hon. S. James Otero |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 30, 2020 at 10:00 a.m., or as soon thereafter as this matter may be heard in the United States District Court for the Central District of California, 350 W. First Street, Courtroom 10C, Los Angeles, CA 90012, Pursuant to Federal Rule of Civil Procedure 23.1(c), and upon the Stipulation of Settlement dated and filed with the Court on February 24, 2020 (the "Stipulation"),[1] plaintiffs Ethan Young and Greg Young ("Plaintiffs"), derivatively on behalf of DPW Holdings, Inc. ("DPW" or the "Company"), respectfully submit this unopposed Motion, which moves this Court for entry of an Order in the form attached as Exhibit B to the Stipulation (the Parties' proposed "Preliminary Approval Order"):

1.      Granting preliminary approval of the proposed Settlement on the terms set forth in the Stipulation;

2.      Approving the proposed substance and form of the Notice and Summary Notice, attached as Exhibit C and Exhibit D to the Stipulation;

3.      Preliminarily approving Plaintiffs' Counsel's mutually agreed upon Fee and Expense Award; and

4.      Scheduling a date for the Final Hearing on the Settlement.

The Parties' proposed Preliminary Approval Order includes blanks for the date and time of the Settlement Hearing, which the Court must complete in order to properly effectuate the Settlement.  In this regard, Plaintiffs and Defendants request the following schedule, if the Court preliminarily approves the Settlement:

---

[1] Terms not defined herein shall have the meanings ascribed to them in the Stipulation.

i

| Event | Time for Compliance |
|---|---|
| Deadline for filing the Summary Notice in a Current Report on a Form 8-K with the U.S. Securities and Exchange Commission, publishing the Summary Notice via a press release, and posting the Notice together with the Stipulation (with Exhibit A to the Stipulation) on DPW's corporate website | Not later than ten (10) calendar days following the entry of the Preliminary Approval Order |
| Deadline for Plaintiffs to file papers in support of the final approval of Settlement and the Fee and Expense Award | At least twenty-eight (28) calendar days prior to the Final Hearing |
| Deadline for any shareholder objections by DPW Shareholders to the Settlement to be filed with the Court | At least twenty-one (21) calendar days prior to the Final Hearing |
| Deadline for Plaintiff to file of any response to objections, if any, by DPW Shareholders | At least seven (7) calendar days prior to the Final Hearing |
| Final Hearing date | Fifty-five (55) calendar days after entry of the Preliminary Approval Order, or later at the Court's convenience |

Each of the dates for the events set forth above are tied either to the entry of the proposed Preliminary Approval Order or to the Final Hearing date, the latter of which Plaintiffs respectfully requests to be scheduled approximately fifty-five (55) days after the entry of the Preliminary Approval Order, or at a later date at the Court's convenience. If this schedule is not convenient for the Court, Plaintiffs request that the Court utilize similar time intervals for the events in completing the proposed Preliminary Approval Order.

For the reasons set forth in the Stipulation, this Motion, and the accompanying Memorandum of Points and Authorities in Support thereof, Plaintiffs respectfully

request that the Court find that the proposed Settlement merits preliminary approval and enter the Preliminary Approval Order.

This motion is made following the conference of counsel. Defendants do not oppose this motion.

Dated:  February 24, 2020

By: */s/ Alex B. Heller*
Alex B. Heller
**FARUQI & FARUQI, LLP**
1617 John F. Kennedy Boulevard, Suite 1550
Philadelphia, PA 19103
Telephone: (215) 277-5770
Email: aheller@faruqilaw.com

Benjamin Heikali, SBN 307466
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Email: bheikali@faruqilaw.com

*Counsel for Plaintiffs Ethan Young and Greg Young*

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................... 1

II.     PROCEDURAL HISTORY OF THE ACTIONS AND THE PARTIES'
        SETTLEMENT NEGOTIATIONS ............................................................ 2

III.    THE SETTLEMENT .................................................................................. 4

IV.     ARGUMENT ............................................................................................. 5

        A.      The Role of the Court in the Approval of a Derivative
                Settlement ....................................................................................... 5

        B.      The Court Should Preliminarily Approve the Settlement and
                Consider Final Approval After Notice is Provided to DPW
                Shareholders ................................................................................... 7

V.      NOTICE ................................................................................................... 11

VI.     SCHEDULING OF EVENTS .................................................................. 13

VII.    CONCLUSION ....................................................................................... 144

# TABLE OF AUTHORITIES

**CASES**                                                                        **PAGE(S)**

*Bushansky v. Armacost*,
  Case No. 12-cv-01597-JST,
  2014 WL 2905143 (N.D. Cal. June 25, 2014).....................................................12

*Carlough v. Amchem Prods., Inc.*,
  158 F.R.D. 314 (E.D. Pa. 1993)..........................................................................12

*Cohn v. Nelson*,
  375 F. Supp. 2d 844 (E.D. Mo. 2005) ...................................................................5

*Ellis v. Naval Air Rework Facility*,
  87 F.R.D. 15 (N.D. Cal. 1980) ..............................................................................6

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) ....................................................................................5

*HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*,
  No. 3:07cv-02245-MMA-NLS,
  2010 WL 4027632 (S.D. Cal. Oct. 14, 2010) ........................................................8

*Hefler v. Wells Fargo & Co.*,
  No. 4:16-cv-05479-JST,
  2018 WL 4207245 (N.D. Cal. Sept. 4, 2018)........................................................8

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)............................................................................................10

*In re Hewlett-Packard Co. S'holder Derivative Litig.*,
  716 F. App'x 603 (9th Cir. 2017).......................................................................12

*Ingram v. Coca-Cola Co.*,
  200 F.R.D. 685 (N.D. Ga. 2001) ........................................................................10

*In re Jiffy Lube Sec. Litig.*,
  927 F.2d 155 (4th Cir. 1991) ................................................................................8

*In re Lorazepam & Clorazepate Antitrust Litig.*,
  205 F.R.D. 369 (D.D.C. 2002) ...........................................................................11

*In re McKesson HBOC, Inc. ERISA Litig.*,
  391 F. Supp. 2d 844 (N.D. Cal. 2005)................................................................11

v

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ...................................................................... 6, 8, 9

*In re Pac. Enterprises Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ................................................................................. 5

*In re Paypal Litig.*,
   No. C-02-1227-JF PVT,
   2004 WL 2445244 (N.D. Cal. Oct. 13, 2004) ................................................... 11

*Peak Fin., LLC v. Hassett*,
   Case No. 2:15-cv-01590-GMN-CWH,
   2016 U.S. Dist. LEXIS 147565 (D. Nev. Oct. 20, 2016) ................................... 13

*In re Rambus Inc. Derivative Litig.*,
   Case No. C 06-3513 JF (HRL),
   2009 WL 166689 (N.D. Cal. Jan. 20, 2009) ..................................................... 12

*Satchell v. Fed. Express Corp.*,
   No. C 3:03-cv-02878-SI,
   2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ................................................... 10

*Shlensky v. Dorsey*,
   574 F.2d 131 (3d Cir. 1978) ................................................................................. 6

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ................................................................................. 6

**STATUTES**

Fed. R. Civ. P. 23 ....................................................................................................... 5

**OTHER AUTHORITIES**

Alba Conte and Herbert B. Newberg, 4 Newberg on Class Actions
   (4th Ed. 2002) ...................................................................................................... 6

Manual for Complex Litigation §30.41 (3d ed. 1995) ......................................... 7, 11

Use of Electronic Media for Delivery Purposes, SEC Release No. 33-7233,
   60 Fed. Reg. 53458, 53459 (Oct. 6, 1995) ....................................................... 12

Plaintiffs Ethan Young and Greg Young ("Plaintiffs"),[2] by and through their undersigned counsel, hereby submit this memorandum of points and authorities in support of their unopposed motion for preliminary approval of the settlement of the above-captioned shareholder derivative action (the "Action") brought on behalf of DPW Holdings, Inc. ("DPW" or the "Company").

## I.    INTRODUCTION

Plaintiffs are pleased to inform the Court that after engaging in hard-fought litigation and extensive, arm's-length negotiations, the Parties to the Action have agreed to the Settlement, which fully, finally, and forever resolves, discharges, and settles the Released Claims, while providing substantial benefits to DPW and DPW Shareholders, in the form of extensive corporate governance reforms.  As a result of the filing, pendency, and settlement of the Action, DPW will implement the valuable corporate governance reforms, which are attached as Exhibit A to the Stipulation (the "Reforms").  The significant Reforms are designed to address and prevent the recurrence of the issues that gave rise to the litigation. In addition, in recognition of the substantial benefits provided to DPW and DPW shareholders as a result of the settlement of the Action, the Company agrees to cause Defendants' insurer to pay Plaintiffs' Counsel's agreed-to Fee and Expense Award of $600,000 (the "Fee and Expense Award"), subject to approval by the Court.  Stip. § V.

The Settlement is fair, reasonable, and adequate.  The Settlement constitutes an appropriate resolution of litigation of substantial complexity and is within the range of possible approval, thereby satisfying the test courts typically employ in reviewing a settlement for preliminary approval.  Accordingly, Plaintiffs respectfully request the Court to: (i) preliminarily approve the Settlement set forth in the Stipulation; (ii) approve the form of the Notice and Summary Notice, and direct the dissemination of

---

[2] All capitalized terms not defined herein shall have the same definitions as set forth in the Stipulation and Agreement of Settlement dated and filed with the Court on February 24, 2020 (the "Stipulation," or "Stip.").

the Notice and Summary Notice as contemplated by the Stipulation; and (iii) schedule a hearing to entertain any objections by DPW Shareholders and to consider final approval of the Settlement (the "Final Hearing").

## II.   PROCEDURAL HISTORY OF THE ACTION AND THE PARTIES' SETTLEMENT NEGOTIATIONS

Plaintiffs' Counsel performed an extensive and thorough investigation relating to the claims and the underlying events alleged in the Action, including, but not limited to, reviewing and analyzing numerous public filings with the United States Securities and Exchange Commission ("SEC") and other publicly available information. Plaintiffs then commenced the above-captioned action against the Individual Defendants in the U.S. District Court for the Central District of California (the "Court"), asserting claims derivatively on behalf of DPW. Plaintiffs filed their first complaint on July 31, 2018 ("Initial Complaint"), asserting, among other things, that the Individual Defendants had breached their fiduciary duties.   The detailed Initial Complaint, comprised of 332 paragraphs and 114 pages, was filed against the Individual Defendants, as well as the following current members of the board of directors: Jeff Bentz, Robert O. Smith and Mordechai Rosenberg.

On November 28, 2018, Defendants filed a Motion to Dismiss the Initial Complaint.  The motion to dismiss was fully briefed and on February 25, 2019, the Court granted in part and denied in part the Motion to Dismiss the Initial Complaint with leave to amend.

On March 11, 2019, Plaintiffs filed an Amended Complaint (the "Amended Complaint").   On March 25, 2019, the Defendants filed a Motion to Dismiss the Amended Complaint.  The Parties fully briefed the Motion to Dismiss the Amended Complaint.  On May 21, 2019, the Court issued an order denying in part the Motion to Dismiss the Amended Complaint (the "May 21, 2019 Order"), in which the Court: (i) dismissed Jeff Bentz, Robert O. Smith and Mordechai Rosenberg; and (ii) held, *inter alia*, that with respect to the other Defendants named in the Amended Complaint,

Plaintiffs (a) adequately pled demand futility, (b) sufficiently alleged claims for breach of fiduciary duty related to certain transactions, and (c) adequately pled a claim for unjust enrichment.  The May 21, 2019 Order permitted Plaintiffs' breach of fiduciary duty allegations surrounding certain transactions to proceed, including: (i) claims based on related party transactions; (ii) claims based on loans and other debt financing; and (iii) claims based on stock issuances. On June 27, 2019, Defendants filed an answer to the Amended Complaint.

Plaintiffs propounded Requests for the Production of Documents on August 7, 2019, to which Defendants served responses and objections on September 6, 2019.

On October 21, 2019, the Parties and the Defendants' directors and officers liability insurance carrier participated in a day-long mediation in New York, New York (the "Mediation"), which was presided over by Jed D. Melnick, Esq. of JAMS (the "Mediator"). At the Mediation, the Parties reached an agreement in principle with respect to the material terms of the corporate governance reforms to be instituted by DPW.  As consideration for the Settlement, DPW will institute extensive corporate governance reforms, the terms of which are fully set forth in Exhibit A attached to the Stipulation.

Only after agreeing in principle to the material terms of the Reforms to be instituted by DPW did the Parties begin to negotiate, with the assistance of the Mediator, the attorneys' fees and expenses to be paid to Plaintiffs' counsel.  The Parties did not reach an agreement on attorneys' fees and expenses at Mediation.

Following Mediation, with the assistance of the Mediator, the Parties continued to discuss attorneys' fees and expenses to be paid by the Defendants' directors and officers liability insurance.  On October 28, 2019, the Parties reached an agreement on the attorneys' fees and expenses to be paid to Plaintiffs' counsel.

As a result of the extensive, arm's-length negotiations among the Parties, on January 21, 2020 the Parties finalized the complete terms of the Reforms as set forth in

3

Exhibit A attached hereto, which includes the material terms that the Parties agreed to at Mediation.

## III.   THE SETTLEMENT

As discussed above, the Parties, through their respective, highly experienced counsel, have engaged in good-faith and protracted arm's-length negotiations to resolve the Action.  Their diligence and extensive discussions culminated in the Stipulation, which fully sets forth the terms and conditions of the Settlement.  As discussed above, as a result of the initiation, prosecution, pendency, and proposed Settlement of the Action, DPW's board of directors (the "Board") will adopt by resolution, or other means as appropriate, the corporate governance reforms set forth in Exhibit A to the Stipulation.  The Reforms call for changes, modifications, and improvements to DPW's corporate governance. *See* Stip., Ex. A. The Reforms require the removal of a non-independent director from the Board and the appointment of two new independent directors, thus resulting in a board composed of five independent directors and two non-independent directors.  *Id.* The Reforms also institute heightened independence requirements for Board members to qualify as independent.  *Id.* The Reforms require that the two new independent directors be appointed to a three-member Governance Committee, which is tasked with, *inter alia*, reviewing related party transactions subject to a newly created related party transaction policy.  *Id.* Moreover, the Reforms institute an enhanced definition for identifying related parties.  *Id.*  Additionally, the Governance Committee is also tasked with reviewing the Company's issuance of stock. *Id.* The Reforms also require the Company's Audit Committee to review all debt financing, including loans and future receipts agreements. *Id.* Furthermore, the Reforms include amendments and improvements to the Company's Bylaws, Audit Committee Charter, whistleblower policy, and compensation clawback policy.  *Id.*  The Reforms, thus, directly address the allegations made in the Action that this Court sustained pursuant to the May 21, 2019 Order.  Further, as the Court previously found, the Company lacked a majority of independent Board members.  The Reforms address

and remediate the Company's lack of a Board composed of a majority of independent members and requires that a majority of the Board remain independent throughout the five-year term for the Reforms.

The releases in the Settlement are appropriately tailored to claims brought on behalf of the Company arising from the allegations of the complaint in this Action. The Settlement makes clear that Plaintiffs are releasing certain claims held derivatively on behalf of DPW or by DPW itself. The Plaintiffs are not releasing any direct claims held by any current, former, or future stockholder of DPW.

## IV.   ARGUMENT

### A.    The Role of the Court in the Approval of a Derivative Settlement

There is a strong policy favoring compromises that resolve litigation, "particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995). The "[s]ettlements of shareholder derivative actions are particularly favored because such litigation 'is notoriously difficult and unpredictable.'" *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005).

Federal Rule of Civil Procedure 23.1 governs a district court's analysis of the fairness of a settlement of a shareholder derivative action. *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 377 (9th Cir. 1995). Under Rule 23.1, a derivative action "may be settled, voluntarily dismissed, or compromised only with the court's approval. Notice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders." Fed. R. Civ. P. 23.1(c).

The Ninth Circuit provided factors which may be considered in evaluating the fairness of a class action settlement:

> The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in

> settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

As Rules 23 and 23.1 of the Federal Rules of Civil Procedure both require court approval for the compromise of class and derivative actions, the factors laid out for determining whether to approve a class action settlement are also applicable to derivative settlements. *See* Alba Conte and Herbert B. Newberg, 4 *Newberg on Class Actions* § 22:109 (4th ed. 2002); *see also Shlensky v. Dorsey*, 574 F.2d 131, 147 (3d Cir. 1978) ("While in *Girsh v. Jepson* we discussed the necessity of considering such factors in determining the fairness of the settlement of a class action in order to protect the rights of absent members of the class of plaintiffs, it is clear that the same factors are relevant in a shareholders' derivative suit.").

The district court must exercise "sound discretion" in approving a settlement. *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). Therefore, in exercising its discretion, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. The Ninth Circuit defines the limits of the inquiry to be made by the court in the following manner:

> Therefore, the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators.

*Id.* (emphasis added).

**B.    The Court Should Preliminarily Approve the Settlement and Consider Final Approval After Notice is Provided to DPW Shareholders**

At the Final Hearing, the Court will have before it detailed papers submitted in support of the Settlement and will be asked to make a determination as to whether the Settlement is fair, reasonable, adequate, and in the best interest of those whose claims will be extinguished.  While Plaintiffs believe that the Settlement merits this Court's final approval, at this time Plaintiffs respectfully request only that the Court grant preliminary approval of the Settlement.  To grant preliminary approval, the Court need only conclude that the settlement of the claims against the Individual Defendants is "within the range of possible approval" to preliminarily approve the Settlement for the purposes of providing notice and holding a future fairness hearing.[3]

Plaintiffs respectfully submit that this Court may easily find that the Settlement is "within the range of possible approval."  As a threshold matter, the Settlement was reached after extensive arm's-length negotiations between and among counsel for the Plaintiffs and the Defendants, and provides substantial benefits to the Company and DPW Shareholders while eliminating the expense, risk, and delay inherent in such complex litigation, including the very real risk of no recovery.  Moreover, the Company approved the Settlement only after determining that the Settlement of the Action under the terms set forth in the Stipulation, including the institution of the Reforms,

---

[3]    As the *Manual for Complex Litigation* explains:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*Manual for Complex Litigation* §30.41, at 237 (3d ed. 1995).

7

substantially benefits the Company.  Stip. ¶¶ 2, 7.  Under these circumstances, Plaintiffs respectfully submit that the Settlement is "within the range of possible approval" and should be preliminarily approved.

Further, reference to some of the factors considered by courts in granting final approval of derivative and class action settlements lends support to Plaintiffs' belief that the Settlement should not only be preliminarily approved, i.e., that it is within the range of possible approval, but that it also should receive final approval after notice is provided to DPW Shareholders.  *Officers for Justice*, 688 F.2d at 625.  In determining whether a settlement is fair, courts focus on whether the settlement was reached as a result of good faith bargaining at arm's-length without collusion.  *See In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991).  As discussed above, each element of the Settlement was extensively negotiated between experienced counsel with a firm understanding of the strengths and weaknesses of the claims and defenses asserted, is the product of significant give and take by the Parties, and was reached only after extensive negotiations between counsel for the Plaintiffs and the Defendants with the assistance of an experienced Mediator.  *Hefler v. Wells Fargo & Co.*, No. 4:16-cv-05479-JST, 2018 WL 4207245, at *9 (N.D. Cal. Sept. 4, 2018) ("in light of the fact that the Settlement was reached after the parties engaged in motion practice and participated in multiple days of formal mediation, the Court concludes that the negotiations and agreement were non-collusive."); *HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*, No. 3:07cv-02245-MMA-NLS, 2010 WL 4027632, at *2 (S.D. Cal. Oct. 14, 2010) ("Counsel for the parties participated in arm's length negotiations for several months before reaching an agreement. All parties are represented by competent, experienced litigators, and the active involvement of the Honorable [Daniel] Weinstein (Ret.) as a mediator during a substantial portion of the negotiations weighs considerably in favor of concluding this is not a collusive settlement.").

An evaluation of the benefits of a settlement must also be tempered by recognition that any compromise involves concessions by each settling party.  Indeed,

"the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624. Although Plaintiffs believe that the claims asserted in the Action are meritorious, liability was by no means a foregone conclusion.

The continued litigation would be extremely complex, costly, and of substantial duration. Document discovery would need to be completed, depositions would need to be taken, experts would need to be designated, and expert discovery conducted. DPW and the Individual Defendants' expected motions for summary judgment would need to be briefed and argued, and if defeated, then a trial would be held. Indeed, significant risks remained in getting past DPW's and the Defendants' anticipated motions for summary judgment, and obtaining a favorable judgment at the conclusion of trial. Even if liability were established, the amount of recoverable damages would still pose significant issues and be subject to further litigation. The Settlement eliminates these and other risks of continued litigation while providing DPW and DPW Shareholders substantial benefits. *See Id.* at 625.

It is also clear that even a victory at trial is no guarantee that the judgment would ultimately be sustained on appeal or by the trial court. The Settlement avoids this potential further delay in providing DPW and DPW Shareholders the benefits of the Reforms. It is important for DPW and DPW Shareholders that substantial corporate governance reforms are quickly enacted, which this Settlement requires. Add to these post-trial and appellate risks the difficulty and unpredictability of a lengthy and complex trial – where witnesses could suddenly become unavailable or the fact-finder could react to the evidence in unforeseen ways – and the benefits of the Settlement become all the more apparent.

Significant weight should also be attributed to counsel's belief that this settlement is in the best interest of all those affected by the settlement. *See Id.* at 625. Plaintiffs, DPW, and the Individual Defendants have independently considered the Settlement, and they all agree that it is in the best interests of DPW and DPW Shareholders. Stip.

§§ I, 2, 7. Here, Plaintiffs' Counsel has extensive experience in the area of shareholder representative litigation. As a result of extensive experience in these types of cases, Plaintiffs' Counsel has unique insight into the legal and factual issues presented. In particular, Plaintiffs' Counsel utilized that expertise and experience to effectively and efficiently prosecute the Action and reach an outstanding result for DPW and DPW Shareholders. In addition, the parties employed the services of an experienced Mediator. *See Satchell v. Fed. Express Corp.*, No. C 3:03-cv-02878-SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

In addition to the terms of the Settlement being fair, adequate, and reasonable, the negotiated and agreed-to Fee and Expense Award to be paid to Plaintiffs' Counsel is reasonable. In recognition of the substantial benefits provided to DPW and DPW Shareholders as a result of the settlement of the Action, DPW agreed to cause Defendants' director and officer liability insurance carrier to pay Plaintiffs' Counsel the Fee and Expense Award of $600,000 for Plaintiffs' Counsel's attorneys' fees and expenses. Stip. ¶ 7. Here, the Parties, along with the Defendants' directors and officers liability insurance carrier, and with the assistance of the Mediator, negotiated the Fee and Expense Award to be paid by the insurer. Stip. § I. These negotiations resulted in a Fee and Expense Award that is consistent with the benefits conferred upon DPW and DPW Shareholders. The United States Supreme Court has endorsed this type of consensual resolution of attorneys' fees issues in these kinds of cases as the ideal toward which litigants should strive. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee."); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 695 (N.D. Ga. 2001) (where, as here, there is no evidence of collusion and no detriment to the parties, the court should give "substantial weight to a negotiated fee amount[.]").

Finally, in connection with final approval of the proposed Settlement, Plaintiffs'

Counsel will seek Court approval for case contribution awards in the amount of $2,500 each as compensation to Plaintiffs for their time, effort and service as representative plaintiffs in the Action (the "Service Awards").  The Service Awards shall be funded from the Fee and Expense Award to the extent approved by the Court.  It is well settled that "[c]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 400 (D.D.C. 2002) (alteration in original); *In re McKesson HBOC, Inc. ERISA Litig.*, 391 F. Supp. 2d 844, 851 (N.D. Cal. 2005) (approving $5,000 incentive awards); *In re PayPal Litig.*, No. C-02-1227-JF PVT, 2004 WL 2445244, at *2 (N.D. Cal. Oct. 13, 2004) (approving $2,500 incentive awards).

Accordingly, for all of the foregoing reasons, Plaintiffs respectfully submit that preliminary approval of the Settlement should be granted.

## V.   NOTICE

Plaintiffs seek Court approval of the form and manner of the Notice and Summary Notice, attached to the Stipulation as Exhibits C and D.  The Stipulation provides that DPW shall publish the Summary Notice via a press release to be widely distributed by a reputable press release distribution service, file the Summary Notice in a Current Report on a Form 8-K with the SEC that includes a link to the Stipulation (with the Reforms attached as Exhibit A to the Stipulation) and Notice that shall be posted on the Investor Relations portion of DPW's website, and post the Notice together with the Stipulation on the Investor Relations portion of DPW's corporate website.  Stip. ¶ 6.  The Notice and Summary Notice provides information relating to: (i) the Settlement terms; (ii) the date of the Final Hearing; and (iii) the protocol for DPW Shareholders to comment upon the proposed Settlement.

Rule 23.1 does not require individual notice of a shareholder derivative settlement, as is required for a class action, but rather provides for notice only "in the manner that the court orders," thus affording the Court substantial discretion.  Because

no individual claims are at stake, and because a direct notice program would be costly enough to swallow up the benefits of most derivative settlements, notice of a derivative settlement under Rule 23.1 by publication only is appropriate.  The contents of the Notice and Summary Notice, "describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *In re Hewlett-Packard Co. S'holder Derivative Litig.*, 716 F. App'x 603, 609 (9th Cir. 2017) (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). Thus, the form and manner of the proposed Notice and Summary Notice to DPW Shareholders constitutes the best notice practicable under the circumstances and satisfies the requirements of Rule 23.1, due process, and any other applicable law.  *Carlough v. Amchem Prods., Inc.*, 158 F.R.D. 314, 323 (E.D. Pa. 1993) ("notice by publication 'may be the principal means for informing [shareholders] of their . . . rights.'") (citing *Manual for Complex Litigation* § 30.211, *supra* note 2, at 221).

Indeed, the Parties' proposed method of notice has been approved by numerous courts as reasonable and sufficient to satisfy due process.[4]  Accordingly, the proposed form and plan of notice warrant this Court's approval.

_____

[4] The use of website posting coupled with other publication has gained broad acceptance in light of the rapid transition of the investment community from a paper-based to a web-based disclosure system. *See* Use of Electronic Media for Delivery Purposes, 60 Fed. Reg. 53458, 53459 (Oct. 13, 1995) (to be codified at 17 C.F.R. pts. 231, 241 & 271) ("The Commission believes that the use of electronic media should be at least an equal alternative to the use of paper-based media.").  The notice program that the Parties stipulated to employ in this case – publication by a press release, posting on DPW's website, and the filing of a Form 8-K with the SEC – is akin to the means of notice that has been widely used in similar shareholder derivative settlements and approved by numerous courts as meeting due process. *See, e.g.*, *Bushansky v. Armacost*, Case No. 12-cv-01597-JST, 2014 WL 2905143, at *6 (N.D. Cal. June 25, 2014) (requiring a notice plan to include a link on defendant's investor relations website that leads to a webpage to be displayed for a minimum of 30 days, a press release to be issued by defendant, and a Form 8-K filing with the SEC); *In re Rambus Inc. Derivative Litig.*, Case No. C 06-3513 JF (HRL), 2009 WL 166689, at *2 (N.D. Cal. Jan. 20, 2009) (approving settlement where notice included a link on a company website, press release,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## VI.   SCHEDULING OF EVENTS

Plaintiffs' Counsel propose the following schedule for the publication of the proposed Notice and Summary Notice, the filing of submissions in support of final approval of the Settlement, the timing regarding any objections by DPW Shareholders and any response(s) thereto, and the Final Hearing. This schedule is similar to those used and approved by courts in derivative settlements and provides due process to DPW Shareholders with respect to their rights concerning the Settlement.

| Event | Time for Compliance |
| --- | --- |
| Deadline for filing the Summary Notice in a Current Report on a Form 8-K with the U.S. Securities and Exchange Commission, publishing the Summary Notice via a press release, and posting the Notice together with the Stipulation (with Exhibit A to the Stipulation) on DPW's corporate website | Not later than ten (10) calendar days following the entry of the Preliminary Approval Order |
| Deadline for Plaintiffs to file papers in support of the final approval of Settlement and the Fee and Expense Award | At least twenty-eight (28) calendar days prior to the Final Hearing |
| Deadline for any shareholder objections to the Settlement to be filed with the Court | At least twenty-one (21) calendar days prior to the Final Hearing |
| Deadline for Plaintiffs to file any response to objections, if any, by DPW Shareholders | At least seven (7) calendar days prior to the Final Hearing |

---

and a Form 8-K filing with the SEC). *See also Peak Fin., LLC v. Hassett*, Case No. 2:15-cv-01590-GMN-CWH, 2016 U.S. Dist. LEXIS 147565, at *3-4, *6-7, *9 (D. Nev. Oct. 20, 2016) (approving settlement where notice comprised filing of a Form 8-K with the SEC, and the company's posting on its website).

13

| Event | Time for Compliance |
|-------|---------------------|
| Final Hearing date | Fifty-five (55) calendar days after entry of the Preliminary Approval Order, or later at the Court's convenience |

## VII.  CONCLUSION

Given the benefits the Settlement provides to DPW and DPW Shareholders, Plaintiffs respectfully request the Court to: (i) preliminarily approve the proposed Settlement; (ii) approve the form and manner of the Notice and Summary Notice, and direct the publication of the Notice and Summary Notice; and (iii) schedule the Final Hearing.


Dated:  February 24, 2020

By: */s/ Alex B. Heller*
Alex B. Heller
**FARUQI & FARUQI, LLP**
1617 John F. Kennedy Boulevard, Suite 1550
Philadelphia, PA 19103
Telephone: (215) 277-5770
Email: aheller@faruqilaw.com

Benjamin Heikali, SBN 307466
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Email: bheikali@faruqilaw.com

*Counsel for Plaintiffs Ethan Young and Greg Young*

14