# EXHIBIT A

## EXHIBIT A

## DPW CORPORATE GOVERNANCE REFORMS

The Board of Directors (the "**Board**") of DPW Holdings, Inc. (the "**Company**" or "**DPW**") shall adopt and/or maintain resolutions and amendments to committee Charters and/or Bylaws[1] within thirty (30) days of issuance of the Order and Final Judgment to ensure adherence to the following corporate governance policies (the "**Reform(s)**"), which shall remain in effect for no less than five (5) years, subject to any of the following: (a) a determination by a majority of the independent directors that the Reform is no longer in the best interest of the Company, including, but not limited to, due to circumstances making the Reform no longer applicable, feasible, or available on commercially reasonable terms, or (b) modifications which the Company reasonably believes are required by applicable law or regulation. If a Reform is eliminated or modified, the Board shall within twenty (20) business days adopt a replacement provision that accomplishes substantialy the same objective; provided, however, that no such replacement provision need be adopted if, in the reasonable good faith business judgment of a majority of the Board's independent directors, it is not possible or reasonably feasible to do so.

Defendants acknowledge that in the course of the Parties'[2] negotiations at arm's length, the Reforms were first presented to the Defendants, and as a result of the filing, pendency, and settlement of the Action, DPW agreed to implement the Reforms. Defendants acknowledge and agree that Plaintiffs in the above-captioned Action were a primary factor in the adoption and implementation of the Reforms set forth herein. The Parties agree that the Reforms will confer a substantial benefit to DPW and DPW's shareholders. The Reforms are set forth below:

---

[1] The term "Bylaws" refers to the Bylaws of DPW, dated September 25, 2017 and incorporated by reference in the Company's September 30, 2019 Form 10-Q field with the SEC on November 19, 2019.

[2] Terms not defined herein shall have the meanings ascribed to them in the Stipulation.

1.    **REMOVAL OF CURRENT BOARD MEMBER AND APPOINTMENT OF NEW BOARD MEMBERS**

As part of the settlement current Board member Amos Kohn shall resign as a director and President of the Company and two (2) new independent directors ("**New Independent Directors**") are to be appointed to the Board.[3] The two (2) New Independent Directors shall be "independent directors" as defined in Section 2(a) below. By appointing these two (2) New Independent Directors, the Board will have seven (7) directors, including five (5) directors that the Company considers independent, pursuant to Section 2(a). One (1) of the two (2) New Independent Directors shall be appointed to the Company's three-member Audit Committee and shall be an audit committee financial expert (the "**Expert**") as such term is defined by the Securities and Exchange Commission (the "**Commission**"). Both of the two (2) New Independent Directors shall be appointed to the Company's three-member Nomination and Governance Committee (the "**Governance Committee**"). The Governance Committee will have at least three (3) members at all times during the time period of this agreement. At all time during the five (5) year period of this agreement the Board will be composed of a majority of independent directors.

2.    **COMPOSITION OF THE BOARD OF DIRECTORS**

(a)    Each of the independent directors shall meet the definition and requirements of an independent director under Section 803 of the NYSE American rules and other applicable listing requirements. In addition, the Company shall revise its Bylaws to require that independence be defined as follows:

1.    is not, and in the past four (4) years has not been, employed by the Company or any of its subsidiaries or affiliates, or employed by any company that is a "Related Party," as such term is defined herein;

2.    does not receive, and in the past four (4) years has not received, any remuneration as an advisor or consultant, excluding legal counsel, to the Company or any of its subsidiaries, executive officers or directors as qualified by Section 2(a)(viii), below;

3.    does not have, and in the past four (4) years has not had, any material business relationship or engaged in any material transaction with the

---

[3] One of whom has been appointed as of December 30, 2019. This individual is not the Expert required to be appointed hereunder but has been appointed to serve on the Governance Committee.

Company or any of its subsidiaries other than his or her service as a director as qualified by Section 2(a)(viii), below;

       4.    is not, and in the past four (4) years has not been, affiliated with or employed by any present or former independent auditor or financial advisor, of the Company or any of its subsidiaries or affiliates;

       5.    is not, and in the past four (4) years has not been, a director, executive officer and/or consultant of any company for which any executive officer of DPW serves as a director, executive officer, employee and/or consultant;

       6.    is not, and in the past four (4) years has not been, a member of a law firm that has been engaged by the company during the one (1) year prior to the date that Motion for Preliminary Approval is filed;

       7.    is not a member of the immediate family of a person who is not independent pursuant to subsections (i)-(vi), above, and;

       8.    a director is deemed to have received remuneration (other than remuneration as a director, including remuneration provided to a non-executive Chairman of the Board, Committee Chairman, or Lead Director), directly or indirectly, if remuneration, other than *de minimis* remuneration, was paid by the Company, its subsidiaries, or affiliates, to any entity in which the director has a beneficial ownership interest of ten percent (10%) or more or voting control of five percent (5%) or more of such entity, or to an entity by which the director is employed or self-employed other than as a director.  Remuneration is deemed *de minimis* remuneration if such remuneration is $120,000 or less in any calendar year.

       9.    In addition to the requirements of Section 2(a) above, each of the three (3) members of the Governance Committee will have the same independence requirement as audit committee members pursuant to Section 803(B)(2) of the NYSE American rules, applicable listing requirements and Rule 10A-3 under the Securities Exchange Act of 1934, provided, however, that the members of the Governance need not meet the requirements of Section 803B(2)(iii).

    (b)    The Board will determine if each proposed independent director is independent as defined above.

    (c)    Each independent director shall provide immediate notice of any change in circumstances related to his or her independent status.

    (d)    The Company shall exercise its reasonable best efforts to ensure that all

directors be present at the Company's annual meeting of shareholders either by telephone or in person.

(e)     All directors shall be required to annually attend at least seventy-five percent (75%) of all Board meetings, either in person or by telephone. Additionally, all directors shall be required to annually attend at least seventy-five (75%) of all meetings of each of the committees on which they serve, either in person or by telephone.

(f)     The Company expects that all directors shall keep themselves apprised of all developments that affect their ability to competently perform their work.  The Company will ensure that its directors have the resources to receive education and training as necessary.

(g)     No person shall serve as a member of the DPW Board for a period of time exceeding twenty (20) years.

## 3.     RELATED PARTY TRANSACTION COMPLIANCE

The Company shall create a Related Party Transaction Policy (the "**Policy**") that will be administered by the Governance Committee. The responsibilities of the Governance Committee as it concerns Related Party Transaction Policy shall include:

(a)     Review all transactions deemed a Related Party Transaction (as hereinafter defined) by the full Board.

(b)     Recommend to the Board whether the Company should enter into the reviewed Related Party Transaction.

(c)     Complying with the Policy as set forth in Section 4.

## 4.     RELATED PARTY TRANSACTION POLICIES AND PROCDURES

(a)     **Policy:** It is the policy of the Board of DPW that all Related Party Transactions, as that term is defined in the Policy, shall be subject to review in accordance with the procedures set forth below. The Board has determined that the Governance Committee is best suited to review all Related Party Transactions and the Governance Committee Charter will be revised accordingly.

(b)     **Procedures:** The Governance Committee shall review the material facts of all prospective Related Party Transactions and shall first provide its

recommendation to approve or disapprove of the Related Party Transactions to the full Board, subject to the exceptions described below.  After receiving the Governance Committee recommendation, the Board's independent directors will vote upon whether or not to enter into the Related Party Transaction. Where advance Governance Committee review of a Related Party Transaction is not feasible, then the Related Party Transaction shall be reviewed subsequently by the Governance Committee (and such transaction may be ratified subsequently by the Governance Committee). In connection with its review of a Related Party Transaction, the Governance Committee will take into account, among other factors it deems appropriate, whether the Related Party Transaction is on terms no less favorable than terms generally available to an unaffiliated third-party under the same or similar circumstances and the extent of the Related Party's interest in the Related Party Transaction.

Management shall present to the Governance Committee the following information, to the extent relevant, with respect to actual or potential Related Party Transactions:

     1. A general description of the transaction(s), including the material terms and conditions.

     2. The name of the Related Party and the basis on which such person or entity is a Related Party.

     3. The Related Party's interest in the transaction(s), including the Related Party's position or relationship with, or ownership of, any entity that is a party to or has an interest in the transaction(s).

     4. The approximate dollar value of the transaction(s), and the approximate dollar value of the Related Party's interest in the transaction(s) without regard to amount of profit or loss.

     5. In the case of a transaction providing for periodic payments or installments, the aggregate amount of all periodic payments or installments expected to be made.

     6. In the case of indebtedness, the aggregate amount of principal to be outstanding and the rate or amount of interest to be payable on such indebtedness.

     7. Any other material information regarding the transaction(s) or the Related Party's interest in the transaction(s).

The Governance Committee shall be authorized to review in advance and provide standing pre-approval in advance for certain Related Party Transactions or categories of Related Party Transactions. The Governance Committee has reviewed the Related Party Transactions described below in "Standing Pre-Approval for Certain Related Party Transactions" and determined that each of the Related Party Transactions described therein shall be deemed to have been reviewed and approved in advance by the Governance Committee under the terms of the Policy. Nothing herein shall affect the full Board's authority to require approval pursuant to the Company's Bylaws or Governance Committee Charter.

Each director who is a Related Party with respect to a particular Related Party Transaction shall disclose all material information to the Governance Committee concerning such Related Party Transaction and his or her interest in such transaction.

If a Related Party Transaction will be ongoing, the Governance Committee may establish guidelines for the Company's management to follow in its ongoing dealings with the Related Party. Thereafter, the Governance Committee shall periodically review and assess ongoing relationships with the Related Party. Any material amendment, renewal or extension of a transaction, arrangement or relationship previously reviewed under the Policy shall also be subject to subsequent review thereunder.

The Policy is intended to augment and work in conjunction with other Company policies having any code of conduct, code of ethics and/or conflict of interest provisions.

(c)     **Definitions:**

A **"Related Party Transaction(s)"** is any financial transaction, arrangement or relationship or series of similar transactions**,** arrangements or relationships (including any indebtedness or guarantee of indebtedness) in which:

> (1) the aggregate amount involved will or may be expected to exceed $120,000 in any calendar year;

> (2) the Company or any of its subsidiaries is a participant; and

> (3) any Related Party has or will have a direct or indirect interest.

A **"Related Party"** is:

(4) a related party according to the definitions as set forth in SEC Item 404 of Regulation S-K, 17 C.F.R. §229.404 and the Instructions thereto;

(5) any entity where:

(i) an officer, director, or consultant of the Company serves as an officer, director, or consultant of the entity;

(ii) an officer, director, or consultant of the Company has a 10% or greater beneficial ownership interest in the entity, either individually or through his/her interest in another entity; or

(iii) an officer, director, or consultant of the Company exercises voting control of the entity through ownership of securities in that entity either individually or through his/her interest in another entity;

(6) Avalanche International Corp., Alzamend Neuro, Inc., Ault & Company, MTIX International, Philou Ventures, LLC and any of their respective subsidiaries, affiliates and successors in interest.

(d)   **Standing Pre-Approval For Certain Related Party Transactions.** The Governance Committee has reviewed the types of Related Party Transactions described below and determined that each of the following Related Party Transactions shall be deemed to have been reviewed in advance and pre-approved by the Governance Committee, even if the aggregate amount involved will exceed $120,000.

(1) Director Compensation: In consultation with the Compensation Committee, any compensation paid to a director if the compensation is required to be reported in the Company's proxy statement under Item 402 of Regulation S-K.

(2) Transactions Where All Shareholders Receive Proportional Benefits: Any transactions, arrangements or relationships where the Related Party's interest arises solely from the ownership of the Company's common stock and all holders of the Company's common stock received the same benefit on a pro rata basis (e.g., dividends or stock splits).

(3) Transactions Involving Competitive Bids: Any transactions, arrangements or relationships involving a Related Party where the rates or charges involved are determined by competitive bids.

(4) Regulated Transactions: Any transactions, arrangements or relationships with a Related Party involving the rendering of services as a common or contract carrier, or public utility, at rates or charges fixed in conformity with law or governmental authority.

(e)     **Disclosure:** All Related Party Transactions that are required to be disclosed in the Company's filings with the Commission, as required by the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended, and related rules and regulations, shall be so disclosed in accordance with such laws, rules and regulations. The material terms of the Policy shall be disclosed in the Company's Annual Report on Form 10-K or in the Company's proxy statement, as required by applicable laws, rules and regulations.

(f) **Administrative Measures:** Management shall institute appropriate administrative measures to provide that all Related Party Transactions are not in violation of, and are reviewed in accordance with, the Policy.

(g) **Interpretation:** In any circumstance where the terms of the Policy differ from any existing or newly enacted law, rule, regulation or standard governing the Company, the law, rule, regulation or standard will take precedence over the Policy.

## 5.     IMPROVEMENTS TO THE AUDIT COMMITTEE CHARTER

DPW shall adopt a resolution to amend the Audit Committee Charter.  The amended Audit Committee Charter shall be posted on the Company's website.  The Audit Committee Charter shall be amended as follows:

(a)     The Audit Committee, with the assistance of the Compliance Officer, shall review, reassess and update as necessary the Code of Ethics and Business Conduct (the "**Code of Conduct**") at least annually.

(b)     The Audit Committee shall review Whistleblower complaints (as described herein), in consultation with and under the supervision of DPW's legal counsel and present an account of the review to the full Board at each regularly scheduled meeting as necessary.

(c)     All Company employees shall be required to cooperate with Audit Committee investigations.  Any failure to cooperate shall be grounds for discipline

by the Board.  This applies to all Company employees and consultants, including, but not limited to, the CEO and CFO;

(d)     The Audit Committee shall receive annually a report listing all trades in DPW securities engaged in by Section 16 officers;

(e)     The Company's independent auditing firm shall be rotated every five (5) years (the Audit Committee Charter shall be amended accordingly) beginning in the year 2025; and

(f)     The Audit Committee shall compile a list of potential independent auditors and conduct the necessary preemptive due diligence to ensure that the Company is not without an Independent Registered Public Accounting Firm (a "**Firm**") for more than thirty (30) days upon the resignation or termination of its current Firm.

## 6.     REVIEW OF DEBT FINANCING

The Audit Committee shall have specific tasks concerning debt financing that includes review and oversight over all loans and Future Receipts Agreements.[4] The Audit Committee shall review all debt financing, including loans and Future Receipts Agreements, that are greater than $250,000.  The Audit Committee will make a recommendation to the full Board.  The full Board will vote on whether to enter the transaction.  The Audit Committee shall not delegate its responsibilities under this section to anyone else including, but not limited to, the Company's executives or another Board committee. The Audit Committee Charter will be updated accordingly.

## 7.     REVIEW OF STOCK ISSUANCES

The Governance Committee shall have specific tasks concerning stock or other securities issuances by the Company that includes review and oversight over all stock and other securities issuances.  The Governance Committee will make a recommendation to the full board.  The full Board will vote on whether to enter the transaction.  The Governance Committee shall not delegate their responsibilities under this section to anyone else including, but not limited to, the Company's

---

[4] The term "Future Receipts Agreements" is defined as follows: agreements whereby the Company receives funds in exchange for a promise to pay back the funds received using future receipts or future receivables of the Company.  Future Receipts Agreements include agreements whereby the Company is required to make repayment regardless of whether or not the Company has any receipts or receivables.

executives or another Board committee. The Governance Committee Charter will
be updated accordingly.

## 8.     EXECUTIVE REPORTS

At each regularly scheduled Board meeting, the CFO shall provide a written
report as to the Company's financial condition and prospects, including, but not
limited to, a discussion of all reasons for material increases in expenses and
liabilities, if any, and material decreases in revenues and earnings, if any,
management plans for ameliorating or reversing such negative trends and the success
or failure of any such plans presented in the past.  All Section 16 officers shall make
written reports to the Board regarding their respective areas of responsibility at least
quarterly and shall meet at least quarterly with the Board.

## 9.     WHISTLEBLOWERS

The Board shall require management to adopt a specific written policy
protecting whistleblowers (the "**Whistleblower Policy**") that consists of the
following and shall include such policy on the Company's website.

(a)     The Company's Whistleblower Policy shall:

(1)     Encourage interested parties to bring forward ethical and legal
violations and/or a reasonable belief that ethical and legal violations have occurred
to the Audit Committee, or the Company's General Counsel so that action may be
taken to resolve the problem.  These complaints shall be reviewed by the Audit
Committee (as established in the current Audit Committee Charter), in consultation
with and under the supervision of DPW's legal counsel, and presented to the full
Board; and

(2)     The policy shall communicate effectively that DPW is serious
about adherence to its corporate governance policies.

(b)     The Whistleblower Policy – with the endorsement of the Board and the
most senior management of the Company – must adequately notify employees, and,
independent contractors of DPW of the following:

(1)     Whistleblower complaints may be directed to the Audit
Committee and/or the Company's General Counsel, and the complaints will be
handled by these parties anonymously and in confidence;

(2)    If a whistleblower brings his or her complaint to an outside regulator or other governmental entity, he or she will be protected by the terms of the Whistleblower Policy just as if he or she directed the complaint to the Audit Committee and/or the General Counsel;

(3) Retaliation of any kind against any employee who files a complaint or voices a concern under this policy is strictly prohibited. Employees determined to have engaged in retaliatory behavior may be subject to discipline, which could include termination of employment;

(4)    If an employee is subject to an adverse employment decision as a result of whistleblowing, the employee may file a complaint with the Department of Labor, or other government agency, within 90 days of the alleged violation (a failure to report such claims within the 90-day window does not foreclose any other available legal remedy);

(c)    The Whistleblower Policy shall reward successful whistleblowers. Towards that end, the minimum award to a whistleblower uncovering corruption, fraud and/or similar unlawful activities at DPW shall be $25,000, in addition to any award that the employee may be entitled to from any government agencies.

(d)    The Company shall remind employees of whistleblower options and whistleblower protections in employee communications provided at least twice a year.

## 10.    CLAWBACK POLICY FOR RESTATEMENTS

Within six (6) months of the date of the approval of the Order and Final Judgment, the Board shall approve a resolution requiring that, in the event that DPW is required under Generally Accepted Accounting Principles ("**GAAP**") to prepare an accounting restatement to correct an accounting error on an interim or annual financial statement included in a report on Form 10-Q or 10-K, due to material noncompliance with any financial reporting requirement under the federal security laws, the Board shall determine whether the restatement was caused by the knowing misconduct of the CEO, CFO or other Section 16 Officer:

(a)    If the Board determines that knowing misconduct by any member of the Board, the CEO, the CFO or any other Section 16 officer has occurred and caused such restatement, it shall take the steps necessary to secure reimbursement from his/her:

       (1)     any bonus or other incentive-based or equity-based compensation received by the responsible officer or director from DPW during the 9-month period following the first public issuance or filing with the Commission (whichever occurs first) of the financial document embodying such error; and

       (2)     any net profits realized by the responsible officer or director from the sale of DPW securities during that 9-month period; and

    (b)    If the Board determines that the restatement was due to something other than misconduct, then the Board must recoup any excess incentive- or performance-based compensation paid to executive officers based on overstated DPW performance in order to ensure proper alignment of compensation with actual performance and long-term value creation. The Board's determination and bases therefor must be recorded in the Board resolutions or minutes;

    (c)    The Board shall disclose in DPW's proxy statement the results of its investigation into the reasons for the restatement and the amount of incentive compensation recouped, if any, on the basis of the investigation;

    (d)    This provision does not purport to limit Section 304 of the Sarbanes-Oxley Act of 2002 (the "**SOX**") in any way, but any monies recovered under this provision shall be deemed by DPW to have been recovered under Section 304 of SOX; and

    (e)    All current employment agreements and contracts relating to compensation of DPW's officers and directors shall be modified to reflect this policy.