**FARUQI & FARUQI, LLP**
Benjamin Heikali (SBN 307466)
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885
Email: bheikali@faruqilaw.com

*Counsel for Plaintiffs*

[Additional counsel on signature page]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ETHAN YOUNG and GREG YOUNG, Derivatively on Behalf of Nominal Defendant, DPW HOLDINGS, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> MILTON C. AULT III, AMOS KOHN, WILLIAM B. HORNE, and KRISTINE AULT, <br><br> Defendants, <br><br> and <br><br> DPW HOLDINGS, INC., <br><br> Nominal Defendant. | Case No. 2:18-cv-06587-PA-PLA <br><br> **PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date: June 29, 2020 <br> Time: 1:30 p.m. <br> Courtroom: 9A <br><br> Hon. Percy Anderson |

Pursuant to Federal Rule of Civil Procedure 23.1(c), and upon the Stipulation of Settlement dated and filed on February 24, 2020 (the "Stip." or "Stipulation"),[1] and Plaintiffs Ethan Young and Greg Young's (the "Plaintiffs") previously filed Unopposed Notice of Motion and Motion for Preliminary Approval of Settlement, Plaintiffs, derivatively on behalf of DPW Holdings, Inc., respectfully submit this Unopposed Motion for Final Approval of Settlement, which moves this Court for entry of a Final Judgment substantially in the form attached as Exhibit B:

1.      Granting final approval of the proposed Settlement on the terms set forth in the Stipulation; and

2.      Finally approving Plaintiffs' Counsel's mutually agreed upon Fee and Expense Award and the Service Awards to Plaintiffs.

For the reasons set forth in the Stipulation, this Motion, the accompanying Memorandum and Points of Authorities in Support thereof, and the accompanying Declarations of Alex B. Heller in Support thereof, Plaintiffs respectfully request that the Court find that the proposed Settlement merits final approval and enter the Final Judgment.

Dated:  May 29, 2020

By: */s/ Alex B. Heller*
　　　Alex B. Heller
　　　**FARUQI & FARUQI, LLP**
　　　1617 John F. Kennedy Boulevard, Suite 1550
　　　Philadelphia, PA 19103
　　　Telephone: (215) 277-5770
　　　Email: aheller@faruqilaw.com

　　　Benjamin Heikali, SBN 307466
　　　**FARUQI & FARUQI, LLP**
　　　10866 Wilshire Boulevard, Suite 1470
　　　Los Angeles, CA 90024

---

[1] Terms not defined herein shall have the meanings ascribed to them in the Stipulation.

1

2
Telephone: (424) 256-2884
Email: bheikali@faruqilaw.com

3
*Counsel for Plaintiffs Ethan Young and Greg Young*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................... 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ................................... 3

III.    TERMS AND BENEFITS OF THE SETTLEMENT ................................. 5

IV.     APPLICABLE LEGAL STANDARDS ....................................................... 6

V.      THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE,
        AND SHOULD BE FINALLY APPROVED ............................................... 9

        A.    The Settlement Confers Substantial Benefits Upon DPW and
              DPW Shareholders ........................................................................... 9

        B.    Additional Factors Supporting the Settlement ................................ 11

              1.    The Risks of Establishing Liability ....................................... 11

              2.    The Risks in Establishing Damages ...................................... 12

              3.    Complexity, Expense, Risk, and Duration of
                    Further Litigation ................................................................. 13

              4.    The Reaction of DPW Shareholders Also Supports a
                    Finding That the Settlement Should Be Finally Approved ..... 15

              5.    Opinion of Plaintiffs' Counsel .............................................. 15

VI.     PLAINTIFFS' COUNSEL'S AGREED-TO FEE AND EXPENSE
        AWARD IS FAIR AND REASONABLE AND
        SHOULD BE APPROVED ....................................................................... 16

        A.    Applicable Legal Standards ............................................................ 17

        B.    Agreed-To Fees in Litigation Are Ideal .......................................... 17

        C.    The Fee and Expense Award is Fair and Reasonable in Light of
              the Results Obtained ...................................................................... 19

        D.    The Fee and Expense Award is Fair and Reasonable in Light of
              Other Pertinent Factors .................................................................. 20

              1.    The Contingent Nature of Plaintiffs' Counsel's
                    Undertaking .......................................................................... 20

              2.    Standing and Ability of Plaintiffs' Counsel ......................... 22

              3.    Public Policy ......................................................................... 22

              4.    The Time, Effort and Expense Expended by
                    Plaintiffs' Counsel Supports the Fee and Expense Award ...... 22

iii

VII.    THE SERVICE AWARDS FOR THE PLAINTIFFS SHOULD BE
          APPROVED ............................................................................................... 24

VIII.   CONCLUSION ............................................................................................ 25

1

# TABLE OF AUTHORITIES

2

**Cases**                                                     **Page(s)**

3

*In re Am. Capital S'holder Derivative Litig.*,
   No. 11–2424,
   2013 WL 3322294 (D. Md. June 28, 2013) .......................................20

*In re Anderson Clayton S'holders Litig.*,
   CIV. A. No. 8387,
   1988 WL 97480 (Del. Ch. Sept. 19, 1988).........................................23

*In re Apple Computer, Inc. Derivative Litig.*,
   No. C 06-4128 JF (HRL),
   2008 WL 4820784 (N.D. Cal. Nov. 5, 2008) ....................................18

*In re BEA Sys., Inc. Derivative Litig.*,
   No. C–06–04459,
   2009 WL 815452 (N.D. Cal. Mar. 27, 2009) ....................................17

*Bell Atl. Corp. v. Bolger*,
   2 F.3d 1304 (3d Cir. 1993) ...............................................................10

*Blum v. Stenson*,
   465 U.S. 886 (1984).........................................................................23

*Boyd v. Bechtel Corp.*,
   485 F. Supp. 610 (N.D. Cal. 1979)....................................................16

*In re Cendant Corp. Derivative. Litig.*,
   232 F. Supp. 2d 327 (D.N.J. 2002)....................................................25

*Chiulli* v. *Hardwicke Cos.*,
   No. 6785,
   1985 WL 11532 (Del. Ch. Feb. 11, 1985).........................................15

*Chrysler Corp. v. Dann*,
   223 A.2d 384 (Del. 1966)............................................................19, 20

*Citron v. Burns*,
   C.A. No. 7647,
   1985 WL 11533 (Del. Ch. Feb. 4, 1985)..............................................9

*Cohn v. Nelson*,
   375 F. Supp. 2d 844 (E.D. Mo. 2005) .........................................*passim*

v

*In re Cont'l Ill. Sec. Litig.*,
   962 F.2d 566 (7th Cir. 1992) ............................................................. 18

*Cosgrove v. Sullivan*,
   759 F. Supp. 166 (S.D.N.Y. 1991) .................................................... 24

*Denney v. Jenkens & Gilchrist*,
   230 F.R.D. 317 (S.D.N.Y. 2005) ...................................................... 24

*In re Dun & Bradstreet Credit Servs. Customer Litig.*,
   130 F.R.D. 366 (S.D. Ohio 1990) ..................................................... 25

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15 (N.D. Cal. 1980) ............................................................ 7

*Emerald Partners v. Berlin*,
   787 A.2d 85 (Del. 2001) ................................................................... 21

*In re Emerging Commc'ns, Inc. S'holders Litig.*,
   No. Civ.A. 16415,
   2004 WL 1305745 (Del. Ch. June 4, 2004) ....................................... 13

*Girsh v. Jepson*,
   521 F.2d 153 (3d Cir. 1975) ............................................................. 11

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) ................................................................. 6

*Greenspun v. Bogan*,
   492 F.2d 375 (1st Cir. 1974) ....................................................... 15, 24

*Grunin v. Int'l House of Pancakes*,
   513 F.2d 114 (8th Cir. 1975) ........................................................... 15

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ............................................................ 7

*HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*,
   No. 3:07cv-02245-MMA-NLS,
   2010 WL 4027632 (S.D. Cal. Oct. 14, 2010) ...................................... 8

*Hefler v. Wells Fargo & Co.*,
   No. 4:16-cv-05479-JST,
   2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ...................................... 8

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)......................................................................................18

*In re Infinity Broad. Corp. S'holders Litig.*,
   802 A.2d 285 (Del. 2002).............................................................................9

*In re Intel Corp. Derivative Litig.*,
   C.A. No. 09-867-JJF,
   2010 WL 2955178 (D. Del. July 22, 2010)..........................................10, 20

*In re Jiffy Lube Sec. Litig.*,
   927 F.2d 155 (4th Cir. 1991) ........................................................................8

*Kahn v. Lynch Commc'n Sys., Inc.*,
   669 A.2d 79 (Del. 1995)..............................................................................21

*Kahn v. Sullivan*,
   594 A.2d 48 (Del. 1991)..............................................................................9

*Lewis v. Newman*,
   59 F.R.D. 525 (S.D.N.Y. 1973)..................................................................11

*In re Lloyd's Am. Trust Fund Litig.*,
   No. 96 Civ. 1262 (RWS),
   2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ..........................................13

*Lucas v. Kmart Corp.*,
   234 F.R.D. 688 (D. Colo. 2006) ................................................................16

*Maher v. Zapata Corp.*,
   714 F.2d 436 (5th Cir. 1983) ................................................................13, 19

*Maurer v. Intl Reinsurance Corp.*,
   95 A.2d 827 (Del. 1953)..............................................................................17

*Ryan ex rel. Maxim Integrated Prods. v. Gifford*,
   No. 2213-CC,
   2009 WL 18143 (Del. Ch. Jan. 2, 2009) ..................................................14

*McKittrick v. Gardner*,
   378 F.2d 872 (4th Cir. 1967) ......................................................................20

*Miller v. Republic Nat'l Life Ins. Co.*,
   559 F.2d 426 (5th Cir. 1977) ......................................................................15

*Mills v. Elec. Auto-Lite Co.*,
   396 U.S. 375 (1970)...........................................................................................19

*In re Nat'l Student Mktg. Litig.*,
   68 F.R.D. 151 (D.D.C. 1974) ..........................................................................16

*Nelson v. Bennett*,
   662 F. Supp. 1324 (E.D. Cal. 1987) ...............................................................12

*In re NVIDIA Corp. Derivative Litig.*,
   Case No. C-06-06110,
   2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ...............................................10

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ....................................................................*passim*

*In re Oracle Sec. Litig.*,
   852 F. Supp. 1437 (N.D. Cal. 1994)................................................................17

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ................................................................6, 11, 13

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997)....................................................................13

*Polk v. Good*,
   507 A.2d 531 (Del. 1986)....................................................................9, 11, 19

*Prezant v. De Angelis*,
   636 A.2d 915 (Del. 1994) .................................................................................7

*Prod. Res. Grp., LLC v. NCT Grp., Inc.*,
   863 A.2d 772 (Del. Ch. 2004) .......................................................................12

*In re Prodigy Commc'ns Corp. S'holders Litig.*,
   C.A. No. 19113,
   2002 WL 1767543 (Del. Ch. July 26, 2002) ..................................................17

*In re Remeron End-Payor Antitrust Litig.*,
   Civ. 02-2007 FSH,
   2005 WL 2230314 (D.N.J. Sept. 13, 2005)....................................................25

*Ressler v. Jacobson*,
   149 F.R.D. 651 (M.D. Fla. 1992) ...................................................................21

*In re Rite Aid Corp. Sec. Litig.*,
  146 F. Supp. 2d 706 (E.D. Pa. 2001) ................................................................ 24

*In re RJR Nabisco, Inc. Sec. Litig.*,
  No. MDL-818 (MBM),
  1992 WL 210138 (S.D.N.Y. Aug. 24, 1992) ..................................................... 24

*San Antonio Fire & Police Pension Fund v. Bradbury*,
  No. 4446-VCN,
  2010 WL 4273171 (Del. Ch. Oct. 28, 2010) ..................................................... 20

*In re Schering-Plough Corp. S'holders Derivative Litig.*,
  No. 01-1412,
  2008 WL 185809 (D.N.J. Jan. 14, 2008) ........................................................... 10

*Seinfeld v. Coker*,
  847 A.2d 330 (Del. Ch. 2000) ........................................................................... 23

*Seinfeld v. Robinson*,
  246 A.D.2d 291 (N.Y. App. Div. 1998) ............................................................. 19

*Shlensky v. Dorsey*,
  574 F.2d 131 (3d Cir. 1978) ......................................................................... 7, 11

*In re SmithKline Beckman Corp. Sec. Litig.*,
  751 F. Supp. 525 (E.D. Pa. 1990) ..................................................................... 25

*Sugarland Indus. v. Thomas*,
  420 A.2d 142 (Del. 1980) ........................................................................... 17, 19

*Swacker v. Pennroad Corp.*,
  57 A.2d 63 (Del. 1947) ...................................................................................... 17

*Tandycrafts, Inc. v. Initio Partners*,
  562 A.2d 1162 (Del. 1989) ................................................................................ 17

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ................................................................................. 7

*Unite Nat'l Ret. Fund v. Watts*,
  No. Civ. A. 04CV3603DMC,
  2005 WL 2877899 (D.N.J. Oct. 28, 2005) ......................................................... 10

*United States v. Alabama*,
  271 Fed. App'x 896 (11th Cir. 2008) ................................................................. 15

ix

*In re Walt Disney Co. Derivative Litig.,*
  906 A.2d 27 (Del. 2006) ...................................................................12

*In re Walt Disney Co. Derivative Litig.,*
  907 A.2d 693 (Del. Ch. 2005) ...........................................................21

*In re Warner Commc'ns Sec. Litig.,*
  618 F. Supp. 735 (S.D.N.Y. 1985) ............................................. 14, 22

*Weiss v. Mercedes-Benz of N. Am., Inc.,*
  899 F. Supp. 1297 (D.N.J. 1995) ............................................... 14, 24

*Wershba v. Apple Computer, Inc.,*
  91 Cal. App. 4th 224 (2001) ..............................................................24

*In re Xcel Energy, Inc. Sec., Derivative & ERISA Litig.,*
  364 F. Supp. 2d 980 (D. Minn. 2005) ...............................................25

**Other Authorities**

Alba Conte and Herbert B. Newberg, 4 *Newberg on Class Actions* §
  22:109 (4th ed. 2002) .................................................................. 7, 11

Fed. R. Civ. P. 23.1(c) .........................................................................7

Plaintiffs Ethan Young and Greg Young ("Plaintiffs"),[1] by and through their undersigned counsel, hereby submit this memorandum of points and authorities in support of their unopposed motion for final approval of the settlement of the above-captioned shareholder derivative action (the "Action") brought on behalf of DPW Holdings, Inc. ("DPW" or the "Company").

## I.   INTRODUCTION

Plaintiffs are pleased to present the Settlement for this Court's final approval. After engaging in hard-fought litigation and extensive, arm's-length negotiations, the Parties to the Action have agreed to the Settlement, which fully, finally, and forever resolves, discharges, and settles the Released Claims, while providing substantial benefits to DPW and DPW Shareholders, in the form of extensive corporate governance reforms. As a result of the filing, pendency, and settlement of the Action, DPW will implement valuable corporate governance reforms, which directly address the issues that gave rise to the Action and which will improve DPW's overall governance. *See* Declaration of Alex B. Heller In Support of Plaintiffs' Unopposed Motion For Final Approval of Settlement attached as Exhibit A ("Heller Decl."), ¶ 6. The Parties, including the Individual Defendants and DPW, agree that the Reforms will provide a material benefit to DPW and DPW Shareholders. Stip. III ¶ 2. In light of the circumstances surrounding the Action and the substantial risks, uncertainties, and challenges Plaintiffs would face through continued prosecution of the Action, the Settlement is an excellent result. Heller Decl. ¶ 8.

Plaintiffs' Counsel advised Plaintiffs to enter into the Stipulation only after approximately two years of investigation and litigation. These efforts included, *inter alia*: (1) inspecting, analyzing, and reviewing DPW's public filings with the U.S. Securities and Exchange Commission ("SEC"), press releases, announcements, transcripts of investor conference calls, and news articles; (2) drafting and filing the

---

[1] All capitalized terms not defined herein shall have the same definitions as set forth in the Stipulation and Agreement of Settlement dated and filed with the Court on February 24, 2020 (the "Stipulation," or "Stip.").

Initial Complaint; (3) researching the applicable law with respect to the claims asserted in the Action and the potential defenses thereto; (4) briefing an opposition brief to a motion to dismiss the Initial Complaint; (5) drafting the Amended Complaint; (6) drafting an opposition brief to a motion to dismiss the Amended Complaint; (7) drafting and sending discovery requests; (8) researching corporate governance issues and best practices; (9) participating in numerous settlement discussions with Defendants' Counsel; (10) preparing a settlement demand together with proposals for corporate governance reforms; (11) participating in a full day mediation session with Jed Melnick of JAMS;  and (12) numerous discussions with Defendants' Counsel to finalize the terms of the settlement and submit the Motion for Preliminary Approval of the Settlement.  *Id.* at ¶ 9.

The claims at issue in the Action are complex, and Plaintiffs faced a number of legal and practical risks.  Even if Plaintiffs survived the numerous procedural complexities inherent in shareholder derivative litigation, they would still be faced with the significant challenges of proving the elements of each of their claims, overcoming Defendants' affirmative defenses, and proving non-exculpated damages.  *Id.* at ¶ 10.

On April 15, 2020, the Court entered an order (the "Preliminary Approval Order") preliminarily approving the Settlement and directing that a final settlement hearing be held on June 29, 2020 (the "Final Hearing") to determine the fairness, reasonableness, and adequacy of the Settlement, the Fee and Expense Award, and the Service Awards.  Pursuant to the terms of the Preliminary Approval Order, on April 20, 2020, the Summary Notice was published via a Company press release; the Summary Notice was filed in a "Current Report" on a Form 8-K with the SEC; and the Notice and Stipulation were posted on the Investor Relations portion of DPW's website.  *Id.* at ¶ 12.

The Summary Notice and Notice contained a summary of the history of the Action and the Settlement, the Fee and Expense Award sought by Plaintiffs' Counsel,

and the Service Awards sought for Plaintiffs and directed DPW Shareholders to the Stipulation for a detailed description of the Action and the Reforms.  The Notice further disclosed the time and date of the Final Hearing and advised DPW Shareholders of the procedures for objecting to the proposed Settlement, Fee and Expense Award, and/or Service Awards.  *Id.* at ¶ 13.  As of the time of this filing, and despite the fact that DPW has thousands of stockholders, Plaintiffs' Counsel are unaware of any objections to the Settlement, the Fee and Expense Award, or the Service Award, which evidences their being fair, reasonable, and adequate.  *Id.* at ¶ 14.

In sum, the Settlement represents an outstanding resolution for DPW in a case of substantial complexity and costs and fully justifies this Court's final approval of the Settlement as fair, reasonable, and adequate and, in light of the extensive and successful service rendered by Plaintiffs' Counsel and Plaintiffs in initiating, prosecuting, and resolving the Action, the granting of the requested Fee and Expense Award and Service Awards.  *Id.* at ¶ 15.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs' Counsel performed an extensive and thorough investigation relating to the claims and the underlying events alleged in the Action, including, but not limited to, reviewing and analyzing numerous public filings with the United States Securities and Exchange Commission ("SEC") and other publicly available information. Stip. p.1. Plaintiffs then commenced the above-captioned action against the Individual Defendants in the U.S. District Court for the Central District of California (the "Court"), asserting claims derivatively on behalf of DPW. Plaintiffs filed their first complaint on July 31, 2018 ("Initial Complaint"), asserting, among other things, that the Individual Defendants had breached their fiduciary duties. *Id.* The detailed Initial Complaint, comprised of 332 paragraphs and 114 pages, was filed against the Individual Defendants, as well as the following current members of the board of directors: Jeff Bentz, Robert O. Smith and Mordechai Rosenberg.  *Id.*

On November 28, 2018, Defendants filed a Motion to Dismiss the Initial Complaint. *Id.* at 1-2. The motion to dismiss was fully briefed and on February 25, 2019, the Court granted in part and denied in part the Motion to Dismiss the Initial Complaint with leave to amend. *Id.*

On March 11, 2019, Plaintiffs filed an Amended Complaint (the "Amended Complaint"). *Id.* at 2. On March 25, 2019, the Defendants filed a Motion to Dismiss the Amended Complaint. *Id.* The Parties fully briefed the Motion to Dismiss the Amended Complaint. *Id.* On May 21, 2019, the Court issued an order denying in part the Motion to Dismiss the Amended Complaint (the "May 21, 2019 Order"), in which the Court: (i) dismissed Jeff Bentz, Robert O. Smith and Mordechai Rosenberg; and (ii) held, *inter alia*, that with respect to the other Defendants named in the Amended Complaint, Plaintiffs (a) adequately pled demand futility, (b) sufficiently alleged claims for breach of fiduciary duty related to certain transactions, and (c) adequately pled a claim for unjust enrichment. *Id.* The May 21, 2019 Order permitted Plaintiffs' breach of fiduciary duty allegations surrounding certain transactions to proceed, including: (i) claims based on related party transactions; (ii) claims based on loans and other debt financing; and (iii) claims based on stock issuances. *Id.* On June 27, 2019, Defendants filed an answer to the Amended Complaint. *Id.*

Plaintiffs propounded Requests for the Production of Documents on August 7, 2019, to which Defendants served responses and objections on September 6, 2019. *Id.*

On October 21, 2019, the Parties and the Defendants' directors and officers liability insurance carrier participated in a day-long mediation in New York, New York (the "Mediation"), which was presided over by Jed D. Melnick, Esq. of JAMS (the "Mediator"). *Id.* at 2-3. At the Mediation, the Parties reached an agreement in principle with respect to the material terms of the corporate governance reforms to be instituted by DPW. *Id.* As consideration for the Settlement, DPW will institute extensive corporate governance reforms, the terms of which are fully set forth in Exhibit A attached to the Stipulation. *Id.*

Only after agreeing in principle to the material terms of the Reforms to be instituted by DPW did the Parties begin to negotiate, with the assistance of the Mediator, the attorneys' fees and expenses to be paid to Plaintiffs' counsel. *Id.* at 3. The Parties did not reach an agreement on attorneys' fees and expenses at Mediation. *Id.*

Following Mediation, with the assistance of the Mediator, the Parties continued to discuss attorneys' fees and expenses to be paid by the Defendants' directors and officers liability insurance. *Id.* On October 28, 2019, the Parties reached an agreement on the attorneys' fees and expenses to be paid to Plaintiffs' counsel. *Id.*

As a result of the extensive, arm's-length negotiations among the Parties, on January 21, 2020 the Parties finalized the complete terms of the Reforms, which includes the material terms that the Parties agreed to at Mediation. *Id.*

## III.   TERMS AND BENEFITS OF THE SETTLEMENT

As discussed above, the Parties, through their respective, highly experienced counsel, have engaged in good-faith and protracted arm's-length negotiations to resolve the Action. Their diligence and extensive discussions culminated in the Stipulation, which fully sets forth the terms and conditions of the Settlement. As discussed above, as a result of the initiation, prosecution, pendency, and proposed Settlement of the Action, DPW's board of directors (the "Board") will adopt by resolution, or other means as appropriate, the corporate governance reforms set forth in Exhibit A to the Stipulation. The Reforms call for changes, modifications, and improvements to DPW's corporate governance. *See* Stip., Ex. A. The Reforms require the removal of a non-independent director from the Board and the appointment of two new independent directors, thus resulting in a board composed of five independent directors and two non-independent directors. *Id.* The Reforms also institute heightened independence requirements for Board members to qualify as independent. *Id.* The Reforms require that the two new independent directors be appointed to a three-member Governance Committee, which is tasked with, *inter alia*, reviewing related party transactions subject to a newly created related party transaction policy. *Id.* Moreover, the Reforms

institute an enhanced definition for identifying related parties.  *Id.*  Additionally, the Governance Committee is tasked with reviewing the Company's issuance of stock. *Id.* The Reforms also require the Company's Audit Committee to review all debt financing, including loans and future receipts agreements. *Id.* Moreover, the Reforms include amendments and improvements to the Company's Bylaws, Audit Committee Charter, whistleblower policy, and compensation clawback policy.  *Id.*  Further, the Reforms address and remediate issues with the Board's composition by requiring that the Board have a majority of independent members throughout the five-year term for the Reforms.  *Id.* The Reforms, thus, directly address the allegations made in the Action that this Court sustained pursuant to the May 21, 2019 Order.

The releases in the Settlement are appropriately tailored to claims brought on behalf of the Company arising from the allegations of the complaint in this Action. *See* Stip. VII. ¶ 13.  The Settlement makes clear that Plaintiffs are releasing certain claims (the Released Claims) held derivatively on behalf of DPW or by DPW itself against any of the Released Persons.  *Id.* The Plaintiffs are not releasing any direct claims held by any current, former, or future stockholder of DPW. *Id.*

## IV.   APPLICABLE LEGAL STANDARDS

There is a strong policy favoring compromises that resolve litigation, "particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."  *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995).  The "[s]ettlements of shareholder derivative actions are particularly favored because such litigation 'is notoriously difficult and unpredictable.'"  *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005).

Federal Rule of Civil Procedure 23.1 governs a district court's analysis of the fairness of a settlement of a shareholder derivative action. *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 377 (9th Cir. 1995).  Under Rule 23.1, a derivative action "may be settled, voluntarily dismissed, or compromised only with the court's approval. Notice of a

proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders." Fed. R. Civ. P. 23.1(c). The Court's function in reviewing a proposed settlement is to evaluate the facts and circumstances that bear on the reasonableness of the proposed settlement. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Prezant v. De Angelis*, 636 A.2d 915, 921-22 (Del. 1994).

The Ninth Circuit provided factors which may be considered in evaluating the fairness of a class action settlement:

> The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

As Rules 23 and 23.1 of the Federal Rules of Civil Procedure both require court approval for the compromise of class and derivative actions, the factors laid out for determining whether to approve a class action settlement are also applicable to derivative settlements. *See* Alba Conte and Herbert B. Newberg, 4 *Newberg on Class Actions* § 22:109 (4th ed. 2002); *see also Shlensky v. Dorsey*, 574 F.2d 131, 147 (3d Cir. 1978) ("While in *Girsh v. Jepson* we discussed the necessity of considering such factors in determining the fairness of the settlement of a class action in order to protect the rights of absent members of the class of plaintiffs, it is clear that the same factors are relevant in a shareholders' derivative suit.").

The district court must exercise "sound discretion" in approving a settlement. *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). Therefore, in exercising its discretion, "the court's intrusion upon what is

7

otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. The Ninth Circuit defines the limits of the inquiry to be made by the court in the following manner:

> Therefore, the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what ***might*** have been achieved by the negotiators.

*Id*. (emphasis added).

In determining whether a settlement is fair, courts focus on whether the settlement was reached as a result of good faith bargaining at arm's-length without collusion. *See In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991). As discussed above, each element of the Settlement was extensively negotiated between experienced counsel with a firm understanding of the strengths and weaknesses of the claims and defenses asserted, is the product of significant give and take by the Parties, and was reached only after extensive negotiations between counsel for the Plaintiffs and the Defendants with the assistance of an experienced Mediator. *Hefler v. Wells Fargo & Co.*, No. 4:16-cv-05479-JST, 2018 WL 4207245, at *9 (N.D. Cal. Sept. 4, 2018) ("in light of the fact that the Settlement was reached after the parties engaged in motion practice and participated in multiple days of formal mediation, the Court concludes that the negotiations and agreement were non-collusive."); *HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*, No. 3:07cv-02245-MMA-NLS, 2010 WL 4027632, at *2 (S.D. Cal. Oct. 14, 2010) ("Counsel for the parties participated in arm's length negotiations for several months before reaching an agreement. All parties are

represented by competent, experienced litigators, and the active involvement of the Honorable [Daniel] Weinstein (Ret.) as a mediator during a substantial portion of the negotiations weighs considerably in favor of concluding this is not a collusive settlement.").

An evaluation of the benefits of a settlement must also be tempered by recognition that any compromise involves concessions by each settling party.  Indeed, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'"  *Officers for Justice*, 688 F.2d at 624.

## V.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND SHOULD BE FINALLY APPROVED

### A.   The Settlement Confers Substantial Benefits Upon DPW and DPW Shareholders

In reviewing the proposed settlement of derivative litigation, courts determine whether the settlement is fair, reasonable and adequate. *See Kahn v. Sullivan*, 594 A.2d 48, 58-59 (Del. 1991); *see also Polk v. Good*, 507 A.2d 531, 536 (Del. 1986).  Plaintiffs respectfully submit that the Settlement is an outstanding result for DPW and DPW Shareholders, particularly in light of the significant challenges Plaintiffs would have faced with the continued prosecution of the Action.

The establishment of previously non-required corporate governance procedures or mechanisms (like the Reforms) confers significant benefits to the nominal corporate defendant in a derivative suit, particularly where, as here, they are directly related to the allegations raised in the Action.  *See Citron v. Burns*, C.A. No. 7647, 1985 WL 11533, at *2 (Del. Ch. Feb. 4, 1985); *see also In re Infinity Broad. Corp. S'holders Litig.*, 802 A.2d 285, 289-90 (Del. 2002) (holding settlement's future impact on corporation is properly considered and would be reversible error for a court to only consider immediate tangible results in determining fairness of a proposed settlement); *Cohn*, 375 F. Supp. 2d at 853-55 (applying Delaware law in approving settlement of derivative action, finding "[a]s a result of the implementation of the Settlement's corporate

governance changes, [the corporation] is far less likely to become subject to long and costly securities litigation in the future, as well as prosecution or investigation by regulators and prosecutors.").[2]   Corporate governance reforms that "serve to prevent and protect [the company] from the reoccurrence of" alleged wrongdoing confer a substantial benefit, warranting settlement approval. *Unite Nat'l Ret. Fund v. Watts*, No. Civ. A. 04CV3603DMC, 2005 WL 2877899, at *5 (D.N.J. Oct. 28, 2005). Indeed, "strong corporate governance is fundamental to the economic well-being and success of a corporation" and "'[c]ourts have recognized that corporate governance reforms such as those achieved here provide valuable benefits to public companies.'" *In re NVIDIA Corp. Derivative Litig.*, Case No. C-06-06110, 2008 WL 5382544, at *3 (N.D. Cal. Dec. 22, 2008).[3]

As discussed above, the Reforms call for changes, modifications, and improvements to DPW's corporate governance including: (1) removal of a non-independent director from DPW's Board and appointment of two new independent directors, so that the Board is composed of five independent directors and two non-independent directors; (2) instituting heightened independence requirements for directors to qualify as independent; (3) appointing two new independent directors to a three-member Governance Committee, which will be charged with reviewing related party transactions in accordance with a newly created related party transaction policy; (4) instituting an enhanced definition for identifying related parties; (5) tasking the Governance Committee with reviewing DPW's issuance of stock; (6) requiring DPW's Audit Committee to review all debt financing, including loans and future

---

[2] Federal courts interpreting state law (usually, Delaware law) have reached this same conclusion on numerous occasions. *See Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1311 (3d Cir. 1993) (collecting cases from the Fourth, Fifth, and Sixth Circuits and finding that remedial measures are an adequate basis for settlement of, and judicial approval of, derivative settlements).

[3] *See also In re Schering-Plough Corp. S'holders Derivative Litig.*, No. 01-1412, 2008 WL 185809, at *4 (D.N.J. Jan. 14, 2008) (improvements to corporate governance structure and oversight functions conferred a "substantial benefit" to the company); *In re Intel Corp. Derivative Litig.*, C.A. No. 09-867-JJF, 2010 WL 2955178, at *2 (D. Del. July 22, 2010) (approving settlement based on governance reforms that "have value to both the Company and its shareholders both currently and in the long-term").

receipts agreements; and (7) amending DPW's Bylaws, Audit Committee Charter, whistleblower policy, and compensation clawback policy. Stip., Ex. A; Heller Decl. ¶ 30. The Reforms, thus, directly address the allegations made in the Action. *Id.*

### B.   Additional Factors Supporting the Settlement

Although there is no "bright-line" test that courts employ in making the "fair, reasonable and adequate" determination, in addition to the benefits to be conferred upon the corporation and shareholders (which is undoubtedly the most crucial factor), additional factors that courts review are: (1) the risks of establishing liability; (2) the risks of establishing damages; (3) the complexity, expense, risk, and duration of further litigation; (4) the reaction of the affected shareholders to the proposed settlement; and (5) the views of counsel. *See Polk*, 507 A.2d at 536.[4]

### 1.   The Risks of Establishing Liability

In assessing the fairness, reasonableness and adequacy of the Settlement, the Court should balance the benefits of settlement against the continuing risks of litigation. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *see also Officers for Justice*, 688 F.2d at 625. There is no question that derivative actions are complex and fraught with risk. The Ninth Circuit, in affirming the district court's approval of a settlement of a derivative action, noted that "the odds of winning [a] derivative lawsuit [are] extremely small" because "derivative lawsuits are rarely successful." *Pac. Enters.*, 47 F.3d at 378. Indeed, courts have long recognized that shareholder derivative litigation "is notably difficult and notoriously uncertain[,]" *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y.

---

[4] Plaintiffs respectfully submit that the *Polk* factors are substantially similar to the Ninth Circuit's *Officers for Justice* factors, and that regardless of which factors are applied by this Court, the Settlement clearly is fair, adequate, and reasonable and should be finally approved. Also, as Rules 23 and 23.1 of the Federal Rules of Civil Procedure both require court approval for the compromise of class and derivative actions, the factors laid out for determining whether to approve a class action settlement – as done in *Officers for Justice* -- are also applicable to derivative settlements. *See* Alba Conte and Herbert B. Newberg, 4 *Newberg on Class Actions* § 22:109 (4th Ed. 2002); *see also Shlensky*, 574 F.2d at 147 ("While in *Girsh v. Jepson* we discussed the necessity of considering such factors in determining the fairness of the settlement of a class action in order to protect the rights of absent members of the class of plaintiffs, it is clear that the same factors are relevant in a shareholders' derivative suit.").

1973), and that compromise is particularly appropriate. *Nelson v. Bennett*, 662 F. Supp. 1324, 1334 (E.D. Cal. 1987).

Although Plaintiffs adequately established demand futility, they still would have had to overcome protections afforded under the business judgment rule. Defendants would undoubtedly contend their actions were protected by the business judgment rule, which creates a powerful presumption that they acted in the best interests of DPW. These are difficult hurdles for derivative plaintiffs to overcome, up through and including trial. *See, e.g.*, *In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 53 (Del. 2006). Although Plaintiffs believe the rule did not apply with respect to many of the acts challenged in the Action, the prospect that the Individual Defendants could have been protected by the business judgment rule made establishing liability uncertain. Heller Decl. ¶ 40. Thus, Plaintiffs are mindful of the numerous potential risks faced in continued litigation and establishing liability in the Action, which favor the Settlement.

### 2.    The Risks in Establishing Damages

Even if Plaintiffs were successful in establishing liability, to establish damages at trial they would have had to prove, *inter alia*, that the claims raised in the Action actually caused DPW to suffer non-exculpated damages and that the Individual Defendants, as a matter of law, could be held liable for those damages. Under traditional applications of law, Plaintiffs faced a formidable challenge establishing and collecting monetary damages in the Action.

Undoubtedly, Defendants would have argued that, at most, Plaintiffs alleged exculpable duty of care claims. Because the Company's Bylaws contain an exculpatory clause for such claims, Plaintiffs may have ultimately proved their claims, only to see the Individual Defendants exculpated with respect to the payment of monetary damages. *See, e.g.*, *Prod. Res. Grp., LLC v. NCT Grp., Inc.*, 863 A.2d 772, 799 (Del. Ch. 2004). Plaintiffs believe they had strong arguments against exculpation, particularly in light of Defendants' conduct here and the individuals involved, but the possibility that some or all of their claims could have been characterized as exculpable duty of care claims could

have meant that the claims were subject to dismissal well ahead of a trial.

Beyond the hurdle of establishing the Defendants' liability for their alleged wrongdoing, Plaintiffs faced considerable uncertainty with respect to establishing damages to DPW. If Plaintiffs established liability, the issue of damages to DPW would have been hotly disputed and the subject of expert testimony proffered by all parties. *See, e.g.*, *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262 (RWS), 2002 WL 31663577, at *21 (S.D.N.Y. Nov. 26, 2002), *aff'd sub nom. Adams v. Rose*, No. 03-7011, 2003 WL 21982207 (2d Cir. Aug. 20, 2003). The damages assessments of experts would surely vary substantially, and the assessment of this crucial element of Plaintiffs' claims would be reduced at trial to a "battle of the experts." *See, e.g.*, *In re Emerging Commc'ns, Inc. S'holders Litig.*, No. Civ.A. 16415, 2004 WL 1305745, at *11 (Del. Ch. June 4, 2004).  It is far from certain that a jury would have disregarded Defendants' experts' opinions.  Indeed, a jury might be swayed by defense experts seeking to establish that damages were caused by factors other than Defendants' wrongdoing, or, alternatively, trying to minimize the amount of the Company's damages. *See, e.g.*, *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997). Conceivably, a jury could find there were no damages or the damages were a mere fraction of the amount claimed.

In contrast, the Settlement provides the certainty of known, material benefits to the Company. *See Maher v. Zapata Corp.*, 714 F.2d 436, 461 (5th Cir. 1983). Accordingly, while it is clear to Plaintiffs the losses DPW suffered as a result of the conduct challenged, the question of whether DPW suffered legal, non-exculpated damages is a much more complicated question. Thus, complex damages issues versus the known benefits of the Settlement clearly weigh in favor of its final approval.

### 3.   Complexity, Expense, Risk, and Duration of Further Litigation

Shareholder derivative actions are notoriously complicated cases that involve convoluted legal and factual issues and are litigated to a conclusion on the merits only at great expense over an extended period of time. *Pac. Enters.*, 47 F.3d at 378; *Cohn*,

375 F. Supp. 2d at 852. Given the significant obstacles and uncertainties inherent in further litigation of the Action, the Settlement is an excellent result for the Company and DPW Shareholders and is unquestionably superior to another "possibility" which certainly exists – little or no recovery.

Plaintiffs' Counsel anticipated that trials of the Action would have taken, at minimum, several weeks. The expense of such trials and the use of both judicial resources and the resources of the Parties would have been substantial.  Further, submitting a matter to a jury is always, at best, an uncertain proposition. Heller Decl. ¶ 47; *see Weiss v. Mercedes-Benz of N. Am., Inc.*, 899 F. Supp. 1297, 1300-01 (D.N.J. 1995) ("[W]hen parties negotiate a settlement they have far greater control of their destiny than when a matter is submitted to a jury.  Moreover, the time and expense that precedes the taking of such a risk can be staggering."), *aff'd*, 66 F.3d 314 (3d Cir. 1995). Thus, the considerable expense of further litigation, with the risk of no recovery, likewise supports the Settlement.

Also, in light of the nature of the Action, it is likely that any judgment in favor of Plaintiffs would have been the subject of extensive post-trial motions and appeals, further prolonging the Action and adding a considerable risk factor. Thus, the Settlement, providing immediate benefits to DPW, was advantageous to the Company.[5]

Plaintiffs weighed each of these risks against the immediate benefits the Settlement will provide to the Company and to DPW Shareholders. Heller Decl. ¶ 49. These risks presented the possibility not only that the prosecution of the Action could be unsuccessful, but that prosecution of the Action through extensive depositions and trial could be potentially detrimental to the Company. *Id.*[6] In light of the complexity,

---

[5] *See, e.g.*, *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 748 (S.D.N.Y. 1985) ("[a]n appeal could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself."), *aff'd*, 798 F.2d 35 (2d Cir. 1986).

[6] *See, e.g.*, *Ryan ex rel. Maxim Integrated Prods. v. Gifford*, No. 2213-CC, 2009 WL 18143, at *9 (Del. Ch. Jan. 2, 2009) (noting that savings to the nominal defendant corporation in legal and other professional fees that would have been incurred but for the settlement "are properly considered by the Court when deciding whether a settlement is fair, reasonable, and adequate.").

length, and uncertainty of the continued prosecution of the Action, and the substantial benefits achieved by the Reforms and the Settlement, it is clear that the Settlement is fair, reasonable, and adequate, and should be finally approved. *Id.*

### 4. The Reaction of DPW Shareholders Also Supports a Finding That the Settlement Should Be Finally Approved

As discussed above, pursuant to the terms of the Preliminary Approval Order, the Summary Notice was published via a Company press release; the Summary Notice was filed in a "Current Report" on a Form 8-K with the SEC; and the Notice and Stipulation were posted on the Investor Relations portion of DPW's website. *Id.* at ¶ 50. Accordingly, here the notice period is 50 days, a period long enough to easily satisfy any due process concerns. *Id.* at ¶ 51.[7]

Pursuant to the terms of the Preliminary Approval Order, any objections to the Settlement must be lodged with the Court and served on counsel for Plaintiffs' and Defendants' Counsel no later than June 8, 2020, twenty-one days prior to the Final Hearing. *Id.* Here, and despite the fact that DPW has approximately 5.77 million shares outstanding, held by thousands of stockholders,[8] Plaintiffs are not aware of a single objection to the Settlement to date (or, for that matter, to the Fee and Expense Award or the Service Awards). Heller Decl. ¶ 52; *See Chiulli* v. *Hardwicke Cos.*, No. 6785, 1985 WL 11532, at *1 (Del. Ch. Feb. 11, 1985) (in the absence of objection, approval of settlement "would be almost perfunctory"). DPW Shareholders' lack of opposition to the Settlement strongly supports the conclusion that the Settlement is fair, reasonable, and adequate, and that it should be finally approved by this Court.

### 5. Opinion of Plaintiffs' Counsel

In appraising the fairness of the Settlement, the opinion and recommendation of

---

[7] *See United States v. Alabama*, 271 Fed. App'x 896, 901 (11th Cir. 2008) (two week notice period was sufficient); *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 429-30 (5th Cir. 1977) (four weeks between notice and settlement hearing was sufficient); *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975) (19 day notice period sufficient); *Greenspun v. Bogan*, 492 F.2d 375, 378 (1st Cir. 1974) (24-day notice period sufficient).

[8] *See* WSJ Markets page for DPW, https://www.wsj.com/market-data/quotes/DPW?mod=searchresults (last visited May 20, 2020).

experienced counsel favoring the Settlement is entitled to considerable weight. *Officers for Justice*, 688 F.2d at 625. As the courts have stated: "[b]ecause the settlement resulted from arm's length negotiations between experienced counsel . . . the Court may presume the settlement to be fair, adequate, and reasonable." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006); *In re Nat'l Student Mktg. Litig.*, 68 F.R.D. 151, 155 (D.D.C. 1974) (stating that "[t]he opinion and judgment of experienced counsel, whose labors produced the settlement, should also receive due consideration."); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979).

Here, Plaintiffs' Counsel have litigated scores of shareholder class and derivative actions and have well-known national reputations of pursuing their cases to a successful resolution, whether by trial or settlement.[9] Heller Decl. ¶ 54. Plaintiffs' Counsel have made a considered judgment based on their knowledge of the facts of the Action and their extensive experience that the Settlement is in the best interests of DPW and DPW Shareholders and is an excellent achievement under all the circumstances. Accordingly, the Settlement should be finally approved. *Id.*

## VI.   PLAINTIFFS' COUNSEL'S AGREED-TO FEE AND EXPENSE AWARD IS FAIR AND REASONABLE AND SHOULD BE APPROVED

Plaintiffs' Counsel also seek approval of the agreed-to Fee and Expense Award in the amount of $600,000.00. Stip. V. ¶ 7. The Fee and Expense Award is meant to reward Plaintiffs' Counsel for their efforts in prosecuting the Action on a fully contingent basis and obtaining an excellent Settlement that favorably resolves the issues involved in the Action. The Fee and Expense Award was negotiated at arm's-length, with the assistance of the Mediator, after the Parties agreed in principle to the material terms of the Reforms. Heller Decl. ¶ 55. As discussed herein, the Fee and Expense Award is fair and reasonable in light of the significant benefits achieved, the effort expended in securing the benefits set forth herein, and the entirety of the relevant

---

[9] *See* the firm biography of Faruqi & Faruqi, LLP, attached as Exhibit A to The Fee and Expense Declaration of Alex B. Heller ("Heller Fee Decl."), which is Exhibit 1 to the Heller Decl.

circumstances. Plaintiffs' Counsel respectfully submit that the Fee and Expense Award warrants final approval. *Id.* at ¶ 56.

## A.    <u>Applicable Legal Standards</u>

Like the standards for settlement approval, because DPW is a Delaware corporation, this Court should analyze the Fee and Expense Award under Delaware law.[10] S*ee Cohn*, 375 F. Supp. 2d at 854. Delaware law has long recognized that the successful prosecution of shareholder derivative claims entitles plaintiff's counsel to an award of reasonable attorney's fees and reimbursement of expenses. *See Maurer v. Intl Reinsurance Corp.*, 95 A.2d 827 (Del. 1953).

In shareholder litigation, the approval of a fee agreement is a matter committed to the sound discretion of the Court. *See, e.g.*, *Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162, 1164-65 (Del. 1989). In exercising its discretion, under Delaware law, the Court's primary consideration is the benefit achieved through the litigation. *See, e.g.*, *In re Prodigy Commc'ns Corp. S'holders Litig.*, C.A. No. 19113, 2002 WL 1767543, at *6 (Del. Ch. July 26, 2002). Other pertinent factors include the contingent nature of the fee arrangement, the amount of time, the effort expended, the complexity of the case, the quality of the work performed, and the standing and ability of the lawyers involved. *See, e.g.*, *Sugarland Indus. v. Thomas*, 420 A.2d 142, 149 (Del. 1980); *Swacker v. Pennroad Corp.*, 57 A.2d 63, 69 (Del. 1947). Application of these factors strongly supports the reasonableness of the Fee and Expense Award.

## B.    <u>Agreed-To Fees in Litigation Are Ideal</u>

The Fee and Expense Award was negotiated at arm's-length. Heller Decl. ¶ 60.

---

[10] Plaintiffs respectfully submit that for the same reasons the Court should consider Delaware's substantive law in considering the fairness of the Settlement, the Court should apply Delaware law to its evaluation of the Fee and Expense Award. Plaintiffs' Counsel respectfully submit that relevant federal and Delaware attorney fee caselaw is substantially similar, and the common concepts employed in awarding fees produces the same analysis and result. *See In re Oracle Sec. Litig.*, 852 F. Supp. 1437, 1445 (N.D. Cal. 1994) ("The court has analyzed state and federal law governing derivative counsel fees and has found no substantial differences between Delaware and federal law.") (citing *Lewis v. Anderson*, 692 F.2d 1267, 1270 (9th Cir. 1982)); *In re BEA Sys., Inc. Derivative Litig.*, No. C–06–04459, 2009 WL 815452, at *2 (N.D. Cal. Mar. 27, 2009) (same).

This strongly supports its fairness and reasonableness in aid of final approval. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (upholding an agreed-to fee is an ideal situation because "[a] request for attorney's fees should not result in a second major litigation.  Ideally, of course, litigants will settle the amount of a fee.").

Absent collusion, a negotiated fee is entitled to substantial weight and deference. Otherwise, Plaintiffs' Counsel would have little incentive to attempt to negotiate a fee to which Defendants would not object.  There would be little reason for compromise if the Court were prepared, absent very strong reasons, to second-guess the Parties' valuation of the services performed by Plaintiffs' Counsel.  *In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 WL 4820784, at *3 (N.D. Cal. Nov. 5, 2008) ("A court should refrain from substituting its own value for a properly bargained-for agreement.").

Here, the Parties' negotiations were based upon a knowledgeable analysis of what an appropriate fee would be for the benefits achieved and the fees awarded in similar situations. In other words, the Fee and Expense Award was negotiated under market conditions, a process courts encourage. Heller Decl. ¶ 61; *see In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 568-70 (7th Cir. 1992) (holding market factors, best known by the negotiating parties themselves, should determine the quantum of attorneys' fees). Plaintiffs' Counsel negotiated with their adversaries. Defendants' Counsel are attorneys who litigate complex shareholder actions and know the applicable law pertaining to fee awards in derivative actions. Heller Decl. ¶ 62. All counsel were able to consider and utilize as precedent fee decisions from other actions of a similar nature. *Id*.

Thus, this Court's role in approving the Fee and Expense Award is different from a "statutory fee shifting" case, in which the defendant has not agreed to pay the plaintiff's counsel's fees and thus reserves the right to challenge every item of work underlying the requested fee. Here, Defendants agreed with Plaintiffs' Counsel on a fair and reasonable sum. Stip. V. ¶ 7. Thus, the Court need only approve the overall settlement package — including the Fee and Expense Award — as fair, reasonable and

1    adequate. *See, e.g.*, *Officers for Justice*, 688 F.2d at 625.

2    **C.    The Fee and Expense Award is Fair and Reasonable in Light of the**
        **Results Obtained**

3

4    The therapeutic benefits enjoyed by DPW and DPW Shareholders as a result of

5    the Settlement are clearly compensable.[11] In fact, courts have consistently placed a

6    significant value upon non-monetary benefits obtained in cases similar to this Action,

7    involving complex corporate governance issues. *See, e.g.*, *Chrysler*, 223 A.2d at 389;

8    *Polk*, 507 A.2d at 539; *Cohn*, 375 F. Supp. 2d at 864-65 (applying Delaware law).

9    Courts often first look to the benefits conferred in evaluating a fee award. *See*

10   *Sugarland*, 420 A.2d at 149-50; *see also Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375,

11   395-96 (1970) ("an increasing number of lower courts have acknowledged that a

12   corporation may receive a 'substantial benefit' from a [shareholders' action], justifying

13   an award of counsel fees, regardless of whether the benefit is pecuniary in nature").

14   As discussed above, the Reforms call for changes, modifications, and

15   improvements to DPW's corporate governance. *See* Stip. Ex. A. The Reforms require

16   the removal of a non-independent director from the Board and the appointment of two

17   new independent directors, thus resulting in a board composed of five independent

18   directors and two non-independent directors.   *Id.* The Reforms also institute

19   heightened independence requirements for Board members to qualify as independent.

20   *Id.* The Reforms require that the two new independent directors be appointed to a

21   three-member Governance Committee, which is tasked with, *inter alia*, reviewing

22   related party transactions subject to a newly created related party transaction policy.

23   *Id.* Moreover, the Reforms institute an enhanced definition for identifying related

24   ────────────────

25   [11] *See Chrysler Corp. v. Dann*, 223 A.2d 384, 386 (Del. 1966) (holding that changes in corporate policy or a heightened level of protection for shareholders justifies an award of counsel fees); *see also Maher*, 714 F.2d at 466 (approving attorney's fees in a

26   therapeutic derivative settlement, as "a settlement may fairly, reasonably, and adequately serve the best interest of a corporation, on whose behalf the derivative action

27   is brought, even though no direct monetary benefits are paid by the defendants to the corporation"); *Seinfeld v. Robinson*, 246 A.D.2d 291, 298 (N.Y. App. Div. 1998)

28   (awarding fees in a shareholder derivative action which resulted in the corporation "implementing procedures that will prevent the exact sequence of events from reoccurring, [therefore] plaintiffs have furnished a benefit to all shareholders").

parties. *Id.* Additionally, the Governance Committee is tasked with reviewing the Company's issuance of stock. *Id.* The Reforms also require the Company's Audit Committee to review all debt financing, including loans and future receipts agreements. *Id.* Moreover, the Reforms include amendments and improvements to the Company's Bylaws, Audit Committee Charter, whistleblower policy, and compensation clawback policy. *Id.* Further, the Reforms address and remediate issues with the Board's composition by requiring that the Board have a majority of independent members throughout the five-year term for the Reforms. *Id.* The Reforms, thus, directly address the allegations made in the Action that this Court sustained pursuant to the May 21, 2019 Order. These measures will prevent harm to DPW and obviate the types of internal control problems which led to the Action. Plaintiffs' Counsel respectfully submits that the Fee and Expense Award warrants approval on this basis alone.[12]

### D. The Fee and Expense Award is Fair and Reasonable in Light of Other Pertinent Factors

#### 1. The Contingent Nature of Plaintiffs' Counsel's Undertaking

Delaware courts, among others, have long-recognized that in reviewing fee agreements, whether plaintiff's counsel's compensation was contingent upon producing a benefit must be considered. The contingency factor is based on elementary considerations of fairness and justice. As the Fourth Circuit explained in *McKittrick v. Gardner*, 378 F.2d 872, 875 (4th Cir. 1967): "The effective lawyer will not win all of his cases, and any determination of the reasonableness of his fees in those cases in which his client prevails must take account of the lawyer's risk of receiving nothing for his services." *See also Chrysler*, 223 A.2d at 389 (Chancellor exercised "sound business judgment" by taking "the contingent nature of the litigation" into consideration in fixing

---

[12] In similar cases, larger counsel fees have been awarded for "governance only" settlements. *See, e.g., In re Am. Capital S'holder Derivative Litig.*, No. 11–2424, 2013 WL 3322294, at *1 (D. Md. June 28, 2013) (governance changes warranted $710,000 award); *Intel*, 2010 WL 2955178, at *6 (awarding a total of $2.65 million in fees and expenses where relief consisted of governance enhancements alone); *San Antonio Fire & Police Pension Fund v. Bradbury*, No. 4446-VCN, 2010 WL 4273171, at *13 (Del. Ch. Oct. 28, 2010) (improved corporate governance justified a $2.9 million award).

the amount of attorneys' fees.).

The contingent nature of Plaintiffs' Counsel's engagement in the Action and the risks of litigation should be given substantial weight by the Court in reviewing the Fee and Expense Award. When Plaintiffs' Counsel undertook the representation of the Plaintiffs in the Action, they were aware that they would devote hours of hard work to the prosecution of a difficult case without any assurance of receiving any fees or even reimbursement for out-of-pocket expenses. Heller Decl. ¶ 68.

Moreover, the risk of non-payment in contingent-fee stockholder litigation is quite real. For example, in the well-known *Disney* derivative action, plaintiffs' counsel devoted thousands of hours, and incurred millions of dollars in expenses, only to see judgment entered against them on all claims, which was affirmed on appeal. *In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 779 (Del. Ch. 2005), *aff'd*, 906 A.2d 27 (Del. 2006).[13] Indeed, the reported and unreported opinions of the Delaware Chancery Court and Supreme Court are replete with examples of other stockholder actions that were dismissed outright on motion practice, or ultimately ended in post-trial defeat.[14] No fee of any sort is earned or awarded in such cases, nor do plaintiffs' counsel recover their substantial, out-of-pocket expenses.

Thus, while Plaintiffs' Counsel succeeded in obtaining an excellent result for the Company and its shareholders, it cannot be disputed they incurred substantial risk that the Action would be unsuccessful and their efforts would go entirely uncompensated. The Fee and Expense Award appropriately reflects the risk that Plaintiffs' Counsel would expend substantial time, effort, and costs only to have the Action dismissed.

[13] "The Court is well aware that there are numerous contingent cases such as this where plaintiff's counsel, after investing thousands of hours of time and effort, have received no compensation whatsoever. Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award. In evaluating [the contingent fee] factor the Court will not ignore the pecuniary loss suffered by plaintiff's counsel in other actions where counsel receive little or no fee." *Ressler v. Jacobson*, 149 F.R.D. 651, 656-57 (M.D. Fla. 1992) (citations omitted).

[14] *See, e.g.*, *Emerald Partners v. Berlin*, 787 A.2d 85, 87 (Del. 2001) (entering judgment for defendants on all claims after two trials); *Kahn v. Lynch Commc'n Sys., Inc.*, 669 A.2d 79, 90 (Del. 1995) (dismissal of all plaintiffs' derivative claims on appeal).

Thus, the Fee and Expense Award should be approved based on the contingent nature of Plaintiffs' Counsel's undertaking.

### 2.   Standing and Ability of Plaintiffs' Counsel

Another factor the Court may consider on an application for counsel fees is the standing and ability of counsel. The attorneys who prosecuted the Action are nationally recognized practitioners in the field of shareholder derivative litigation.[15] The standing of opposing counsel may also be considered in determining an allowance of counsel fees. *See, e.g.*, *Warner*, 618 F. Supp. at 749. Defendants here were represented by experienced and skillful attorneys who vigorously defended their clients' interests. Heller Decl. ¶ 71. They were motivated to negotiate an attorney fee provision that was in the best interests of their clients. Their agreement to the Fee and Expense Award is a testament to its fairness and should be approved.

### 3.   Public Policy

Individuals wronged by violations of corporate law should have reasonable access to counsel with the ability and experience necessary to analyze and litigate complex cases. The costs and fees involved in such litigation often substantially outweigh the economic interest the individual shareholder has at stake. Moreover, such individuals rarely have the financial resources to pay customary fixed hourly rates for such services. The complexity and the societal importance of shareholder litigation requires the involvement of the most able counsel obtainable. Awarding attorneys' fees encourages first-rate attorneys to represent plaintiffs on a contingent basis in this type of socially important litigation. The outstanding results achieved in the Action are a prime example of the value created by skilled counsel, and their efforts and results deserve to be rewarded.

### 4.   The Time, Effort and Expense Expended by Plaintiffs' Counsel Strongly Supports the Fee and Expense Award

In considering the time and effort expended by counsel, Delaware courts have

---

[15] *See* Ex. A to Heller Fee Decl.

"for good reasons having to do with efficiency and incentives, resisted the tendency to make hours expended in the effort a central inquiry, at least where a monetary benefit is achieved by the litigation." *In re Anderson Clayton S'holders Litig.*, CIV. A. No. 8387, 1988 WL 97480, at *1 (Del. Ch. Sept. 19, 1988). Rather, the Court looks favorably upon counsel that are able to achieve substantial benefits without unduly burdening the parties and the Court with time-consuming and costly motion practice, discovery disputes, trials, and appeals. *See, e.g.*, *Seinfeld v. Coker*, 847 A.2d 330, 333 (Del. Ch. 2000) ("One of the historic reasons Delaware judges have been so willing to award substantial attorneys' fees, even after a relatively quick settlement of the case, is that our fee awards are not structured to reward lawyers for needlessly prolonging litigation.") (internal quotation marks omitted). Also, courts recognize that counsel representing shareholders on a contingent basis are entitled to a premium for the risk taken in prosecution with no assurance of receiving any compensation for their efforts whatsoever. *Id.* at 335.

Notwithstanding Delaware law, Plaintiffs' Counsel are aware that courts sometimes review lodestar when reviewing fee applications in shareholder class actions. Initially, the lodestar is calculated by multiplying the number of hours expended by the hourly rate. Courts then multiply the lodestar amount by a risk premium factor (or "multiplier") based on the risk of recovery and other considerations (such as the contingent nature of a fee) to arrive at a reasonable fee. *See, e.g.*, *Blum v. Stenson*, 465 U.S. 886, 903 (1984).

Plaintiffs' Counsel collectively have expended approximately 1,231 hours in the prosecution and settlement of the Action for a cumulative lodestar of $791,086.25, exclusive of expenses. Heller Decl. ¶ 73. Plaintiffs' Counsel were required to spend $19,084.06 in expenses in the prosecution and settlement of the Action. *Id.* at ¶ 74.

Thus, if the Court were to approve the full Fee and Expense Award, Plaintiffs' Counsel would receive a negative multiplier on their time. *Id.* at ¶ 77. As courts in

California[16] and, indeed, nationwide,[17] have held, multipliers between two to four are presumptively reasonable to compensate counsel for the inherent risk in contingent fee litigation. Here, Plaintiffs' Counsel are seeking an agreed-upon Fee and Expense Award of a modest $600,000, less than their cumulative lodestar.  When Plaintiffs' Counsel's out-of-pocket expenses of $19,084.06 and Service Awards of $2,500 each to the two plaintiffs are factored in and subtracted from the $600,000 Fee and Expense Award, Plaintiffs' Counsel are only receiving approximately 73% of their lodestar as attorneys' fees. Therefore, while lodestar is not generally relevant in a situation where Delaware law controls and Defendants have agreed to pay a negotiated Fee and Expense Award, Plaintiffs' Counsel's cumulative lodestar as a cross-check more than justifies the Fee and Expense Award. Thus, the Fee and Expense Award should be approved.[18]

## VII.   THE SERVICE AWARDS FOR THE PLAINTIFFS SHOULD BE APPROVED

Finally, the Stipulation provides for Service Awards for Plaintiffs in the amount of $2,500.00 each. Stip. V. ¶ 11.[19] Plaintiffs' Counsel believes these nominal awards should be approved in light of the substantial benefit these DPW shareholders created for all DPW Shareholders. Heller Decl. ¶ 78.[20]

---

[16] *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 255 (2001) ("[m]ultipliers can range from 2 to 4 or even higher").

[17] *See In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 735-36 (E.D. Pa. 2001) (25% fee representing 10.73 multiplier); *In re RJR Nabisco, Inc. Sec. Litig.*, No. MDL-818 (MBM), 1992 WL 210138, at *5 (S.D.N.Y. Aug. 24, 1992) (approving fees of over $17.7 million, notwithstanding objection that such an award of fees represented a multiplier of six); *Weiss*, 899 F. Supp. at 1304 (awarding fee resulting in 9.3 multiplier); *Cosgrove v. Sullivan*, 759 F. Supp. 166, 167 n.1 (S.D.N.Y. 1991) (multiplier of 8.74).

[18] To date, no DPW shareholder has objected to the Fee and Expense Award, which was described in detail in the Notice and Summary Notice. Heller Decl. ¶ 52. This weighs in favor of approval of the Fee and Expense Award. *Greenspun*, 492 F.2d at 380 (explaining that "[t]he absence of any detailed opposition is a relevant, if not always reliable, factor in assessing the fairness of such a proposal").

[19] Any Service Awards for Plaintiffs approved by the Court would be paid from the Fee and Expense Award and would not increase the amount paid by DPW or its insurer.

[20] There is a long history of federal and Delaware common law that authorizes incentive awards for representative plaintiffs in stockholder actions. *See, e.g.*, *Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 354-55 (S.D.N.Y. 2005) (based on the common law's

## VIII. CONCLUSION

The Settlement represents a fair, adequate, and reasonable result in light of the nature and strength of the claims, the defenses thereto, and all other pertinent facts and circumstances. Moreover, the agreed-to Fee and Expense Award is entirely fair and reasonable in light of the substantial benefits achieved in the Action. Accordingly, Plaintiffs respectfully request that the Court approve the Settlement, the Fee and Expense Award, and the Service Awards.

Dated:  May 29, 2020

By: */s/ Alex B. Heller*

Alex B. Heller
**FARUQI & FARUQI, LLP**
1617 John F. Kennedy Boulevard, Suite 1550
Philadelphia, PA 19103
Telephone: (215) 277-5770
Email: aheller@faruqilaw.com

Benjamin Heikali, SBN 307466
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Email: bheikali@faruqilaw.com

---

recognition of the important policy role that plaintiffs play in representative actions), *aff'd in part, vacated in part sub nom. Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990). This principle was reaffirmed by the District of Minnesota: "[s]uch enforcement is vital because if there were no individual shareholders willing to step forward and pursue a claim on behalf of other investors, many violations of law might go unprosecuted." *In re Xcel Energy, Inc. Sec., Derivative & ERISA Litig.*, 364 F. Supp. 2d 980, 1000 (D. Minn. 2005). The proposed Service Awards in the Action are clearly modest when compared with other awards approved by federal courts and by Delaware courts. *See*, *e.g.*, *In re Remeron End-Payor Antitrust Litig.*, Civ. 02-2007 FSH, 2005 WL 2230314, at *32 (D.N.J. Sept. 13, 2005) (approving awards of $30,000 to both of the named plaintiffs); *In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 535 (E.D. Pa. 1990) (approving $5,000 award to each of the representative plaintiffs); *In re Cendant Corp. Derivative. Litig.*, 232 F. Supp. 2d 327, 344 (D.N.J. 2002) (approving award of $25,000 to the lead plaintiff).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Counsel for Plaintiffs Ethan Young and Greg Young*