# EXHIBIT A

**FARUQI & FARUQI, LLP**
Alex B. Heller (admitted *pro hac vice*)
1617 John F. Kennedy Boulevard, Suite 1550
Philadelphia, PA 19103
Telephone: (215) 277-5770
Facsimile: (215) 277-5771
Email: aheller@faruqilaw.com

Benjamin Heikali (SBN 307466),
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Fax: (424) 256-98972885
Email: bheikali@faruqilaw.com

*Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ETHAN YOUNG and GREG YOUNG, Derivatively on Behalf of Nominal Defendant, DPW HOLDINGS, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> MILTON C. AULT III, AMOS KOHN, WILLIAM B. HORNE, and KRISTINE AULT, <br><br> Defendants, <br><br> and <br><br> DPW HOLDINGS, INC., <br><br> Nominal Defendant. | Case No. 2:18-cv-06587-PA-PLA <br><br> **DECLARATION OF ALEX B. HELLER IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT** |

I, Alex B. Heller, declare as follows:

1. I am a partner at the law firm of Faruqi & Faruqi, LLP and counsel for Plaintiffs Ethan Young and Greg Young ("Plaintiffs") in the instant action. I am a member of the State Bars of Pennsylvania and New Jersey. I am admitted *pro hac vice* in the instant action. The testimony provided herein is based on my own personal knowledge, information, and belief and, if called upon, I could and would competently testify thereto.

2. All capitalized terms not defined herein shall have the same definitions as set forth in the Stipulation of Settlement dated February 24, 2020 (the "Stip." or "Stipulation"), which was previously submitted to this Court on February 24, 2020 (Docket No. 78-2) in connection with Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement (Docket No. 78). Citations to the Stipulation shall appear in the following format: Stip. __.

3. I hereby submit this declaration in support of Plaintiffs' unopposed motion for final approval of the settlement of the above-captioned shareholder derivative action (the "Action") brought on behalf of DPW Holdings, Inc. ("DPW" or the "Company") (the "Settlement").

## I. INTRODUCTION

4. On behalf of the Plaintiffs, I am pleased to present the Settlement for this Court's final approval. Derivative litigation is known for presenting serious obstacles to stockholder plaintiffs and for its extreme unpredictability, and the Action was more of the same. Nonetheless, in the face of this uncertainty, Plaintiffs were able to achieve a settlement which produced an excellent result for DPW and DPW Shareholders.

5. The Settlement is the culmination of approximately two years' worth of investigation, litigation and arm's-length negotiations among experienced counsel for the Parties, who comprehensively understood and debated the merits of the Action.

6. As a result of the initiation, prosecution, pendency, and proposed Settlement of the Action, DPW's board of directors (the "Board") will adopt by

resolution, or other means as appropriate, the corporate governance reforms set forth in Exhibit A to the Stipulation (the "Reforms").

7. The Reforms call for changes, modifications, and improvements to DPW's corporate governance. *See* Stip., Ex. A. The Reforms require the removal of a non-independent director from the Board and the appointment of two new independent directors, thus resulting in a board composed of five independent directors and two non-independent directors. *Id.* The Reforms also institute heightened independence requirements for Board members to qualify as independent. *Id.* The Reforms require that the two new independent directors be appointed to a three-member Governance Committee, which is tasked with, *inter alia*, reviewing related party transactions subject to a newly created related party transaction policy. *Id.* Moreover, the Reforms institute an enhanced definition for identifying related parties. *Id.* Additionally, the Governance Committee is tasked with reviewing the Company's issuance of stock. *Id.* The Reforms also require the Company's Audit Committee to review all debt financing, including loans and future receipts agreements. *Id.* Moreover, the Reforms include amendments and improvements to the Company's Bylaws, Audit Committee Charter, whistleblower policy, and compensation clawback policy. *Id.* Further, the Reforms address and remediate the Board composition by requiring that the Board have a majority of independent members throughout the five-year term for the Reforms. *Id.* The Reforms, thus, directly address the allegations made in the Action that this Court sustained pursuant to the May 21, 2019 Order.

8. The Parties, including the Individual Defendants and DPW, agree the Reforms will provide substantial benefit to DPW and DPW Shareholders. Stip. V. ¶ 7. In light of the circumstances surrounding the Action and the substantial risks, uncertainties, and challenges Plaintiffs would face through continued prosecution of the Action, I respectfully submit that the Settlement is an excellent result.

9. The Stipulation was entered after approximately two years of investigation and litigation. These efforts included, *inter alia*: (1) inspecting, analyzing, and

2

reviewing DPW's public filings with the SEC, press releases, announcements, transcripts of investor conference calls, and news articles; (2) drafting and filing the Initial Complaint; (3) researching the applicable law with respect to the claims asserted in the Action and the potential defenses thereto; (4) briefing an opposition brief to a motion to dismiss the Initial Complaint; (5) drafting the Amended Complaint; (6) drafting an opposition brief to a motion to dismiss the Amended Complaint; (7) drafting and sending discovery requests; (8) researching corporate governance issues and best practices; (9) participating in numerous settlement discussions with Defendants' Counsel; (10) preparing a settlement demand together with proposals for corporate governance reforms; (11) participating in a full day mediation session with Jed Melnick of JAMS; and (12) numerous discussions with Defendants' Counsel to finalize the terms of the settlement and submit the Motion for Preliminary Approval of the settlement.

10. The claims at issue in the Action are complex, and Plaintiffs faced a number of legal and practical risks. Even if Plaintiffs survived the numerous procedural complexities inherent in shareholder derivative litigation, they would still be faced with the significant challenges of proving the elements of each of their claims, overcoming Defendants' affirmative defenses, and proving non-exculpated damages.

11. On April 15, 2020, the Court entered an Order (the "Preliminary Approval Order") preliminarily approving the Settlement and directing that a final settlement hearing be held on June 29, 2020 (the "Final Hearing") to determine the fairness, reasonableness, and adequacy of the Settlement, the Fee and Expense Award, and the Service Awards. (Docket No. 82).

12. Pursuant to the terms of the Preliminary Approval Order, the Summary Notice was filed in a Current Report on a Form 8-K with the SEC on April 20, 2020, the Summary Notice was published via a press release on April 20, 2020, and the Notice was posted together with the Stipulation (and with Exhibit A to the Stipulation) on DPW's corporate website on April 20, 2020.

13. The Notice and Summary Notice contained a summary of the Action and the Settlement, the Fee and Expense Award sought by Plaintiffs' Counsel, the Service Awards sought for Plaintiffs, and directed DPW Shareholders to the Stipulation for a detailed description of the Action and the Reforms. The Notice and Summary Notice further disclosed the date and time of the Final Hearing and advised DPW Shareholders of the procedures for objecting to the proposed Settlement, Fee and Expense Award, and/or Service Awards.

14. As of the time of this filing, and despite the fact that DPW has thousands of stockholders, Plaintiffs' Counsel are unaware of any objections to the Settlement, the Fee and Expense Award, or the Service Awards, which is strong evidence that they are (each, respectively) fair, reasonable, and adequate.

15. In sum, the Settlement represents an outstanding resolution for DPW in a case of substantial complexity and cost and fully justifies this Court's final approval of the Settlement as fair, reasonable, and adequate and, in light of the extensive and successful services rendered by Plaintiffs' Counsel and Plaintiffs in initiating, prosecuting, and resolving the Action, the granting of the requested Fee and Expense Award and Service Awards.

## II. FACTUAL AND PROCEDURAL BACKGROUND

16. On July 31, 2018, Plaintiffs commenced the above-captioned action against the Individual Defendants in the U.S. District Court for the Central District of California, which asserted claims derivatively on behalf of DPW against the Individual Defendants. Stip. p.1.[1]

17. In particular, the Complaint alleged or asserted that the Individual Defendants breached their fiduciary duties related to, *inter alia*, (i) certain related party transactions; (ii) certain loans and other debt financing; and (iii) certain stock issuances made by the Company. *Id.* at 2.

---

[1] The Initial Complaint also named Jeff Bentz, Robert O. Smith and Mordechai Rosenberg as Individual Defendants.

4

18. On November 28, 2018, Defendants filed a Motion to Dismiss the Initial Complaint. *Id.* at 1-2. The motion to dismiss was fully briefed and on February 25, 2019, the Court granted, and denied, in part the Motion to Dismiss the Initial Complaint with leave to amend. *Id*.

19. On March 11, 2019, Plaintiffs filed an Amended Complaint. *Id.* at 2.

20. On March 25, 2019, the Defendants filed a Motion to Dismiss the Amended Complaint. *Id*. The Parties fully briefed the Motion to Dismiss the Amended Complaint. *Id*.

21. On May 21, 2019, the Court issued an order granting, and denying, in part the Motion to Dismiss the Amended Complaint, which, among other things: (i) dismissed Jeff Bentz, Robert O. Smith and Mordechai Rosenberg; and (ii) held, *inter alia*, that with respect to the other Defendants named in the Amended Complaint, Plaintiffs (a) adequately pleaded demand futility, (b) sufficiently alleged claims for breach of fiduciary duty related to certain transactions, and (c) adequately pleaded a claim for unjust enrichment. *Id.* The Motion to Dismiss the Amended Complaint was granted with leave to amend. Plaintiffs chose not to file a second amended complaint and to proceed on the claims asserted in the Amended Complaint. *Id.*

22. The May 21, 2019 Order permitted Plaintiffs' breach of fiduciary duty allegations surrounding certain transactions to proceed, including: (i) claims based on related party transactions; (ii) claims based on loans and other debt financing; and (iii) claims based on stock issuances. *Id.*

23. On June 27, 2019, Defendants filed an answer to the Amended Complaint. *Id.*

24. Plaintiffs propounded Requests for the Production of Documents on August 7, 2019, to which Defendants timely served responses and objections on September 6, 2019. *Id.*

25. On October 21, 2019, the Parties and the Defendants' directors and officers' liability insurer participated in a day-long mediation in New York, New York

(the "Mediation"), which was presided over by Jed D. Melnick, Esq. of JAMS (the "Mediator"). *Id.* at 2-3. At the Mediation, the Parties reached an agreement in principle with respect to the material terms of the corporate governance reforms to be instituted by DPW. *Id.* As consideration for the Settlement, DPW agreed to institute certain corporate governance reforms, the terms of which are fully set forth in the Reforms. *Id.*

26. Only after agreeing in principle to the material terms of the Reforms to be instituted by DPW did the Parties begin to negotiate, with the assistance of the Mediator, the attorneys' fee and expense award to be paid to Plaintiffs' counsel. *Id.* at 3. The Parties did not reach an agreement on attorneys' fees and expenses at Mediation. *Id.*

27. Following Mediation, with the assistance of the Mediator, the Parties continued to discuss the attorneys' fee and expense award to be paid by the Defendants' directors and officers' liability insurance. *Id.* On October 28, 2019, an agreement was reached on the issue of the attorneys' fee and expense award to be paid to Plaintiffs' counsel. *Id.*

28. As a result of the extensive, arm's length negotiations among the Parties, on January 21, 2020 the Parties finalized the complete terms of the Reforms as set forth in Exhibit A to the Stipulation, which includes the material terms that the Parties agreed to at Mediation. *Id.*

### III. TERMS AND BENEFITS OF THE SETTLEMENT

29. As a result of the initiation, prosecution, pendency, and proposed Settlement of the Action, DPW's board of directors (the "Board") will adopt by resolution, or other means as appropriate, the corporate governance Reforms set forth in Exhibit A to the Stipulation. The Reforms call for changes, modifications, and improvements to DPW's corporate governance. *See* Stip., Ex. A.

30. The Reforms require the removal of a non-independent director from the Board and the appointment of two new independent directors, thus resulting in a board composed of five independent directors and two non-independent directors. *Id.* The Reforms also institute heightened independence requirements for Board members to

qualify as independent. *Id.* The Reforms require that the two new independent directors be appointed to a three-member Governance Committee, which is tasked with, *inter alia*, reviewing related party transactions subject to a newly created related party transaction policy. *Id.* Moreover, the Reforms institute an enhanced definition for identifying related parties. *Id.* Additionally, the Governance Committee is tasked with reviewing the Company's issuance of stock. *Id.* The Reforms also require the Company's Audit Committee to review all debt financing, including loans and future receipts agreements. *Id.* Moreover, the Reforms include amendments and improvements to the Company's Bylaws, Audit Committee Charter, whistleblower policy, and compensation clawback policy. *Id.* Further, the Reforms address and remediate issues with the Board's composition by requiring that the Board have a majority of independent members throughout the five-year term for the Reforms. *Id.* The Reforms, thus, directly address the allegations made in the Action that this Court sustained pursuant to the May 21, 2019 Order.

31. Not later than thirty (30) days after the Effective Date, DPW's Board will adopt by resolution, or other means as appropriate, the Reforms set forth on Exhibit A to the Stipulation. The Company will maintain the Reforms for at least five (5) years thereafter. Stip. III. ¶ 2.[2]

32. In summary, Defendants acknowledge that in the course of the Parties' negotiations at arm's-length, the Reforms were first presented to the Defendants, and as a result of the filing, pendency, and settlement of the Action, DPW agreed to implement the Reforms. The Parties agree that the Reforms confer a substantial benefit to DPW and DPW Shareholders. *Id.*

33. To the extent that (a) any changes, modifications, and improvements to DPW's corporate governance and business ethics practices and (b) any changes to DPW's Board or management personnel were made by the Company following the

---

[2] The "Effective Date" means the first date by which all the events and conditions specified in ¶ 15 of the Stipulation have been met and have occurred.

7

1 initiation of the Action, DPW acknowledges that the filing and pendency of the Action comprised a substantial contributing factor thereto. *Id.* at ¶ 3.

34. Finally, DPW further acknowledges that the filing and the pendency of the Action comprised a substantial contributing factor to any changes, modifications, and improvements to DPW's corporate governance and business ethics practices made up to the Effective Date. *Id.* at ¶ 4.

35. Plaintiffs, acting on behalf of DPW, agreed to release certain claims (the Released Claims) against the Released Persons. Stip. VII. ¶ 13.

## IV. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND SHOULD BE FINALLY APPROVED

### A. The Settlement Confers Substantial Benefits Upon DPW and DPW Shareholders

36. Plaintiffs respectfully submit that the Settlement is an outstanding result for DPW and DPW Shareholders, particularly in light of the significant challenges Plaintiffs would have faced with the continued prosecution of the Action.

37. The establishment of previously non-required corporate governance procedures or mechanisms (like the Reforms) confers significant benefits to the nominal corporate defendant in a derivative suit, particularly where, as here, they are directly related to the allegations raised in the Action.

38. As discussed above, the Reforms call for the Company to implement changes, modifications, and improvements to DPW's corporate governance. The Reforms, thus, directly address the allegations made in the Action.

8

### B. Additional Factors Supporting the Settlement

#### 1. The Risks of Establishing Liability

39. In assessing the fairness, reasonableness and adequacy of the Settlement, the Plaintiffs considered and balanced the benefits of settlement against the continuing risks of litigation. Derivative actions are complex and fraught with risk. The prosecution and Settlement of the Action is no different.

40. Although Plaintiffs adequately alleged demand futility, they still would have had to overcome the protections afforded the Board under the business judgment rule. Defendants would undoubtedly contend their actions were protected by the business judgment rule, which creates a powerful presumption that they acted in the best interests of DPW. These are difficult hurdles for derivative plaintiffs to overcome, in motion practice and at trial. Although Plaintiffs believed the rule did not apply with respect to the acts challenged in the Action, the prospect that the Defendants could have been shielded by this protective umbrella made establishing liability uncertain.

41. In sum, Plaintiffs were mindful of the numerous potential risks faced in continued litigation and establishing liability in the Action. Accordingly, the risk of establishing liability is one of many factors that weigh in favor of final Court approval of the Settlement.

#### 2. The Risks in Establishing Damages

42. Even if Plaintiffs were successful in establishing liability, to establish damages at trial they would have had to prove, *inter alia*, that the claims raised in the Action actually caused DPW to suffer non-exculpated damages and that the Individual Defendants, as a matter of law, could be held liable for those damages. Under traditional applications of law, Plaintiffs faced a formidable challenge establishing and collecting monetary damages in the Action.

43. Undoubtedly, the Individual Defendants would have argued that, at most, Plaintiffs alleged exculpable duty of care claims. Because the Company's Bylaws contain an exculpatory clause for such claims, Plaintiffs may have ultimately proved

9

their claims, only to see the Individual Defendants exculpated with respect to the payment of monetary damages. Plaintiffs believed they had strong arguments against exculpation, particularly in light of Defendants' conduct here and the individuals involved, but the possibility that some or all of the claims could have been characterized as exculpable duty of care claims could have meant that the claims were subject to dismissal well ahead of a trial.

44. Beyond the hurdle of establishing the Individual Defendants' liability for their alleged wrongdoing, Plaintiffs faced considerable uncertainty with respect to establishing damages to DPW. If Plaintiffs' established liability, the issue of damages to DPW would have been hotly disputed and the subject of expert testimony proffered by all Parties. Conceivably, a jury could find there were no damages, or the damages were a mere fraction of the amount claimed.

45. In contrast, the Settlement terms provide the certainty of known, material benefits to the Company. Accordingly, while it is clear to Plaintiffs that the losses DPW suffered were a result of the conduct challenged, the question of whether the Company suffered legal, non-exculpated damages is a much more complicated question. Thus, complex damages issues versus the known benefits of the Settlement clearly weigh in favor of its final approval.

### 3. Complexity, Expense, Risk and Duration of Further Litigation

46. Shareholder derivative actions involve notoriously complicated legal and factual issues and are litigated to a conclusion on the merits only at great expense over an extended period of time. Given the significant obstacles and uncertainties inherent in further litigation of the Action, the Settlement is an excellent result for the Company and DPW Shareholders and is unquestionably superior to another "possibility" which certainly exists – little or no recovery.

47. The trial of the Action would have taken, at minimum, several weeks. The expense of such trials and the use of both judicial resources and the resources of the Parties would have been substantial. Further, submitting a matter to a jury is always, at

best, an uncertain proposition. The considerable expense of further litigation, with the risk of no recovery, provides further support for the Settlement.

48. Additionally, in light of the nature of the Action, it is likely that any judgment in favor of Plaintiffs would have been the subject of extensive post-trial motions and appeals, further prolonging the Action and adding a considerable risk factor. Thus, the Settlement, providing immediate benefits to DPW, was advantageous to the Company.

49. Plaintiffs weighed each of these risks against the immediate benefits the Settlement will provide to the Company and to DPW Shareholders. These risks presented the possibility not only that the prosecution of the Action could be unsuccessful, but that prosecution of the Action through extensive depositions and trial could be potentially detrimental to the Company. In light of the complexity, length, and uncertainty of the continued prosecution of the Action, and the substantial benefits achieved by the Settlement, the conclusion is inescapable – the Settlement is fair, reasonable, and adequate, and should be finally approved. Moreover, Defendants have acknowledged "the substantial benefits conferred upon DPW and DPW Shareholders by the Reforms." Stip. V. ¶ 7.

### 4. The Reaction of DPW Shareholders Also Supports a Finding That the Settlement Should Be Finally Approved

50. As discussed above, pursuant to the terms of the Preliminary Approval Order, the Summary Notice was filed in a Current Report on a Form 8-K with the SEC on April 20, 2020, the Summary Notice was published via a press release on April 20, 2020, and the Notice was posted together with the Stipulation (and with Exhibit A to the Stipulation) on DPW's corporate website on April 20, 2020.

51. Pursuant to the terms of the Preliminary Approval Order, any objections to the Settlement must be lodged with the Court and served on counsel for Plaintiffs and Defendants no later than June 8, 2020, twenty-one days prior to the Final Hearing. Accordingly, here the notice period is fifty days, a period long enough to easily satisfy

any due process concerns.

52. Here, and despite the fact that DPW has approximately 5.77 million shares outstanding, held by thousands of stockholders,[3] Plaintiffs are not aware of a single objection to the Settlement to date (or for that matter, to the Fee and Expense Award or the Service Awards). The lack of opposition to the Settlement by DPW Shareholders strongly supports the conclusion that the Settlement is fair, reasonable, and adequate, and that it should be finally approved by this Court.

### 5. Opinion of Plaintiffs' Counsel

53. In appraising the fairness of the Settlement, the opinion and recommendation of experienced counsel favoring the Settlement is entitled to considerable weight.

54. Here, Plaintiffs' Counsel have litigated scores of shareholder class and derivative actions and have well-known national reputations of pursuing their cases to a successful resolution, whether by trial or settlement.[4] Plaintiffs' Counsel made a considered judgment, based on their knowledge of the facts of the Action and their extensive experience, that the Settlement is in the best interests of DPW and DPW Shareholders and is an excellent achievement under all the circumstances. Accordingly, the Settlement should be finally approved.

## V. PLAINTIFFS' COUNSEL'S AGREED-TO FEE AND EXPENSE AWARD IS FAIR AND REASONABLE AND SHOULD BE APPROVED

55. Plaintiffs' Counsel also seek approval of the agreed-to Fee and Expense Award in the amount of Six Hundred Thousand Dollars ($600,000.00). Stip. V. ¶ 7. The Fee and Expense Award is meant to reward Plaintiffs' Counsel for their efforts in prosecuting the Action on a fully contingent basis and obtaining an excellent Settlement

---

[3] *See* WSJ Markets page for DPW, https://www.wsj.com/market-data/quotes/DPW?mod=searchresults (last visited May 26, 2020).

[4] *See* the firm biography of Faruqi & Faruqi, LLP, attached as Exhibit A to Exhibit 1 hereto (The Fee and Expense Declaration of Alex B. Heller ("Heller Fee Decl.").

that favorably resolves the issues involved in the Action. The Fee and Expense Award was negotiated at arm's-length, with the assistance of the Mediator, after the Parties agreed in principle to the material terms of the Reforms.

56. As discussed herein, the Fee and Expense Award is fair and reasonable in light of the substantial benefits achieved, the effort expended in securing the benefits set forth herein, and the entirety of the relevant circumstances. Thus, I respectfully submit that the Fee and Expense Award warrants final approval.

### A. **Applicable Legal Standards**

57. Delaware law has long recognized that the successful prosecution of shareholder derivative claims entitles plaintiff's counsel to an award of reasonable attorney's fees and reimbursement of expenses.

58. In shareholder litigation, the approval of a fee agreement is a matter committed to the sound discretion of the Court. In exercising its discretion, under Delaware law, the Court's primary consideration is the benefit achieved through the litigation.

59. Other pertinent factors include the contingent nature of the fee arrangement, the amount of time, the effort expended, the complexity of the case, the quality of the work performed, and the standing and ability of the lawyers involved. Application of these factors strongly supports the reasonableness of the Fee and Expense Award.

### B. **Agreed-To Fees in Litigation Are Ideal**

60. The Fee and Expense Award was negotiated at arm's-length. This strongly supports its fairness and reasonableness in aid of final approval.

61. Here, the Parties' negotiations were based upon a knowledgeable analysis of what an appropriate fee would be for the benefits achieved and the fees awarded in similar situations. In other words, the Fee and Expense Award was negotiated under market conditions.

62. Plaintiffs' Counsel's negotiations with their adversaries were hard fought. Defendants' Counsel are attorneys who litigate complex shareholder actions and know the applicable law pertaining to fee awards in derivative actions. All counsel were able to consider and utilize as precedent fee decisions from other actions of a similar nature. The end result of these negotiations reflects all of the Parties' experiences as to what is appropriate.

63. Thus, this Court's role in approving the Fee and Expense Award is different from a "statutory fee shifting" case, in which the defendant has not agreed to pay the plaintiff's counsel's fees. Here, Defendants agreed with Plaintiffs' Counsel on a fair and reasonable sum.

### C. The Fee and Expense Award is Fair and Reasonable in Light of the Results Obtained

64. The therapeutic benefits enjoyed by DPW and DPW Shareholders as a result of the Settlement are clearly compensable, and significant value should be placed upon the Reforms.

65. As discussed above, the Reforms call for changes, modifications, and improvements to DPW's corporate governance. *See* Stip., Ex. A.

66. The Reforms require the removal of a non-independent director from the Board and the appointment of two new independent directors, thus resulting in a board composed of five independent directors and two non-independent directors. *Id.* The Reforms also institute heightened independence requirements for Board members to qualify as independent. *Id.* The Reforms require that the two new independent directors be appointed to a three-member Governance Committee, which is tasked with, *inter alia*, reviewing related party transactions subject to a newly created related party transaction policy. *Id.* Moreover, the Reforms institute an enhanced definition for identifying related parties. *Id.* Additionally, the Governance Committee is tasked with reviewing the Company's issuance of stock. *Id.* The Reforms also require the Company's Audit Committee to review all debt financing, including loans and future

14

receipts agreements. *Id.* Moreover, the Reforms include amendments and improvements to the Company's Bylaws, Audit Committee Charter, whistleblower policy, and compensation clawback policy. *Id.* Further, the Reforms address and remediate issues with the Board's composition by requiring that the Board have a majority of independent members throughout the five-year term for the Reforms. *Id.* Furthermore, all of the Reforms are to remain in place for five (5) years. *Id.* The Reforms, thus, directly address the allegations made in the Action that this Court sustained pursuant to the May 21, 2019 Order. These measures will prevent harm to DPW and obviate the types of internal control problems which led to the Action.

67. I respectfully submit that the Fee and Expense Award warrants approval on this basis alone.

**D.  The Fee and Expense Award is Fair and Reasonable in Light of Other Pertinent Factors**

**1.  The Contingent Nature of Plaintiffs' Counsel's Undertaking**

68. The contingent nature of Plaintiffs' Counsel's engagement in the Action and the risks of litigation should be given substantial weight by the Court in reviewing the Fee and Expense Award. When Plaintiffs' Counsel undertook the representation of the Plaintiffs in the Action, they were aware that they would devote hours of hard work to the prosecution of a difficult case without any assurance of receiving any fees or even reimbursement for out-of-pocket expenses.

69. Moreover, the risk of non-payment in contingent-fee stockholder litigation is quite real. Indeed, the reported and unreported opinions of the Delaware Chancery Court and Supreme Court are replete with examples of other stockholder actions that were dismissed outright on motion practice, or ultimately ended in post-trial defeat. No fee of any sort is earned or awarded in such cases, nor do plaintiffs' counsel recover their substantial out-of-pocket expenses.

70. Thus, while Plaintiffs' Counsel succeeded in obtaining an excellent result for the Company and its shareholders, it cannot be disputed that they incurred

substantial risk that the Action would be unsuccessful and their efforts would go entirely uncompensated. The Fee and Expense Award appropriately reflects the risk Plaintiffs' Counsel would expend substantial time, effort, and costs, only to have the Action dismissed. Thus, the Fee and Expense Award should be approved based on the contingent nature of Plaintiffs' Counsel's undertaking.

### 2. Standing and Ability of Plaintiffs' Counsel

71. Another factor the Court may consider on an application for counsel fees is the standing and ability of counsel. The attorneys who prosecuted the Action on behalf of Plaintiffs are nationally recognized practitioners in the field of shareholder derivative litigation. *See* Ex. A to Heller Fee Decl. The standing of opposing counsel may also be considered in determining an allowance of counsel fees. Defendants here were represented by experienced and skillful attorneys who vigorously defended their clients' interests. Clearly, they were motivated to negotiate an attorney fee provision that was in the best interests of their clients. Under these circumstances, their agreement to the Fee and Expense Award is a testament to its fairness. It should be approved by the Court.

### 3. Public Policy

72. Individuals wronged by violations of corporate law should have reasonable access to counsel with the ability and experience necessary to analyze and litigate complex cases. The costs and fees involved in such litigation often substantially outweigh the economic interest the individual shareholder has at stake. Moreover, such individuals rarely have the financial resources to pay customary fixed hourly rates for such services. The complexity and the societal importance of shareholder litigation requires the involvement of the most able counsel obtainable. To encourage first-rate attorneys to represent plaintiffs on a contingent basis in this type of socially important litigation, attorneys' fees awarded should support this goal. The outstanding results achieved in the Action are a prime example of the value created by skilled counsel, and their efforts and results deserve to be rewarded.

### 4. The Time, Effort and Expense Expended by Plaintiffs' Counsel Strongly Supports the Fee and Expense Award

73. Plaintiffs' Counsel have expended 1,231 hours in connection with the prosecution of the Action, which, if billed on a straight hourly basis, would amount to a total lodestar of $791,086.25. *See* Heller Fee Decl. ¶ 5. A declaration submitted on behalf of Faruqi & Faruqi together with the firm biography is annexed hereto.

74. Plaintiffs' Counsel have also advanced out-of-pocket expenses in the prosecution of the derivative action in the aggregate amount of $19,084.06. *See* Heller Fee Decl. ¶ 8.

75. The requested Fee and Expense Award of $600,000.00 less the expenses incurred by Plaintiffs' Counsel (as set forth below) and less two Service Awards of $2,500.00 each represents only approximately 73% of counsel's lodestar.

76. To date, no DPW Shareholder has objected to the Fee and Expense Award, which was described in detail in the Notice and Summary Notice.

77. Thus, if the Court were to approve the full Fee and Expense Award, Plaintiffs' Counsel would receive a negative multiplier on their time. Therefore, Plaintiffs' Counsel's cumulative lodestar as a cross-check more than justifies the Fee and Expense Award. Thus, the Fee and Expense Award should be approved.

## VI. THE SERVICE AWARDS FOR THE PLAINTIFFS SHOULD BE APPROVED

78. Finally, the Stipulation provides for Service Awards for Plaintiffs in the amount of $2,500.00 each. Stip. V. ¶ 11. Any Service Awards for Plaintiffs approved by the Court would be paid from the Fee and Expense Award and would not increase the amount paid by DPW or its insurer. I believe that these nominal awards should be approved in light of the substantial benefits these DPW shareholders have created for all DPW Shareholders.

79. In addition, Defendants agreed not to take any position on the proposed Service Awards, so long as they have no obligation to pay them.

80. A modest service award of $2,500 for each of the named Plaintiffs in the Action to be paid from the Fee and Expense Award is fair and reasonable under the circumstances, is in line with similar awards of this nature, and will reward Plaintiffs for pursuing corporate governance benefits on behalf of DPW.

I declare under penalty of perjury that the foregoing is true and correct. Executed this twenty-ninth day of May 2020, at Wynnewood, Pennsylvania.

/s/ *Alex B. Heller*
Alex B. Heller